AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Michael P. Cooley
Alexis Freeman

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ARCHBROOK LAGUNA HOLDINGS LLC, *et al.*,[1] | ) Case No. 11-13292 (   ) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

## DEBTORS' APPLICATION PURSUANT TO 28 U.S.C. § 156(c) FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF THE GARDEN CITY GROUP AS NOTICE AND CLAIMS AGENT, *NUNC PRO TUNC* TO THE PETITION DATE

ArchBrook Laguna Holdings LLC ("***ArchBrook***") and certain of its affiliates, as debtors and debtors in possession (collectively, the "***Debtors***"), file this Application (the "***Section 156(c) Application***") pursuant to 28 U.S.C. § 156(c) for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "***Order***"), authorizing the employment and retention of the Garden City Group as notice and claims agent, *nunc pro tunc* to the Petition Date (as defined below). In support of the Motion, the Debtors submit the Declaration of Daniel J. Boverman,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: ArchBrook Laguna LLC (6166); ArchBrook Laguna Holdings LLC (6156); Chimerica Global Logistics LLC (3745); ArchBrook Laguna West LLC (9631); Lehrhoff ABL LLC (6386); Expert Warehouse LLC (4487); and ArchBrook Laguna New York LLC (5385).

Interim Chief Financial Officer, in Support of the First Day Pleadings (the *"Boverman Declaration"*). In further support of the Motion, the Debtors respectfully state as follows:

## Background

1.      On the date hereof (the *"Petition Date"*), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the *"Bankruptcy Code"*). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.   Contemporaneously herewith, the Debtors filed a motion seeking joint administration of the above-captioned chapter 11 cases (the *"Cases"*) pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the *"Bankruptcy Rules"*).

## Jurisdiction

2.      The Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

3.      This Section 156(c) Application is made pursuant to section 156(c) of title 28 of the United States Code and Rule 5075-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the *"Local Rules"*) for an order appointing The Garden City Group, Inc. (*"GCG"*) to act as the notice and claims agent in order to assume full responsibility for the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in the Debtors' chapter 11 cases.  The Debtors' selection of GCG to act as the notice and claims agent has satisfied the Court's *Protocol for the Employment of Claims Agents*, in that the Debtors

have obtained and reviewed engagement proposals from other court-approved notice and claims agents to ensure selection through a competitive process.

4.      Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that GCG will provide the most cost-effective and efficient service as a notice and claims agent for these Cases. The Debtors chose GCG based on its experience, reputation and the competitiveness of its fees. The Debtors rely on the *Declaration of Angela Ferrante in Support of the Application for an Order Appointing The Garden City Group, Inc. as Notice and Claims Agent for the Debtors pursuant to 28 U.S.C. § 156(c)* (the "***Ferrante Declaration***") attached hereto as **Exhibit B**. A true and correct copy of the retention agreement between GCG and the Debtors (the "***Retention Agreement***") is attached to the Ferrante Declaration. Accordingly, the Debtors believe that GCG is well-qualified to serve in the capacity of notice and claims agent, and that GCG's retention in such capacity is in the best interests of the Debtors' estates and their creditors.

5.      28 U.S.C. § 156(c) provides, in relevant part, as follows:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate . . .

Local Rule 5075-1(a) provides, in relevant part, as follows:

> The Court may direct, subject to the supervision of the Clerk, the use of agents either on or off the Court's premises to file Court records, either by paper or electronic means, to issue notices, to maintain case dockets, to maintain Judges' calendars, and to maintain and disseminate other administrative information where the costs of such facilities or services are paid for by the estate.

6.      Although the Debtors have not yet filed their schedules of assets and liabilities, the Debtors anticipate that there will be in excess of 7,500 entities to be noticed. In view of the

number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a notice and claims agent is both necessary and in the best interests of both the Debtors' estates and their creditors.

7. GCG has acted as the notice and claims agent in numerous cases of comparable size, including several cases that are currently pending in the United States Bankruptcy Court for the Southern District of New York. *See, e.g., In re Borders Grp., Inc., et al*, Case No. 11-10614 (MG) (Bankr. S.D.N.Y. Feb. 16, 2011) [Docket No. 88]; *In re: Partsearch Techs., Inc.*, Case No. 11-10282 (MG) (Bankr. S.D.N.Y. Feb. 3, 2011) [Docket No. 22]; *In re Motors Liquidation Co. (f/k/a General Motors Corp.)*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y. June 25, 2009) [Docket No. 2549]; *In re BearingPoint, Inc.*, Case No. 09-10691 (REG) (Bankr. S.D.N.Y. Feb. 19, 2009) [Docket 32]; *In re Fortunoff Holdings, LLC*, Case No. 09-10497 (RDD) (Bankr. S.D.N.Y. Feb. 10, 2009) [Docket No. 68]; *In re Star Tribune Holdings Corp.*, Case No. 09-10244 (RDD) (Bankr. S.D.N.Y. Feb. 6, 2009) [Docket No. 72]. GCG's expertise allows it to provide such services with effectiveness and efficiency.

8. By appointing GCG as the notice and claims agent in these Cases, the distribution of notices, and the processing of claims will be expedited, and the clerk of the Court (the "*Clerk*") will be relieved of the administrative burden of processing claims.

9. This Section 156(c) Application pertains only to the work performed by the notice and claims agent under the Clerk's delegation of duties permitted by 28 U.S.C. §156(c). Any work to be performed by GCG outside the scope of 28 U.S.C. §156(c) is not covered by this Section 156(c) Application or by any order granting approval of this Section 156(c) Application.[2]

---

[2] When appropriate, the Debtors intend to file a separate application to retain GCG to perform certain administrative services for the Debtors outside the scope of 28 U.S.C. § 156(c).

Accordingly, GCG will undertake, *inter alia*, the following actions and procedures in its role as notice and claims agent:

a. Notify all potential creditors of the filing of the bankruptcy petitions and of the setting of the date for the first meeting of creditors pursuant to § 341(a) of the Bankruptcy Code, under the proper provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*");

b. Maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, "*Schedules*"), listing the Debtors' known creditors and the amounts owed thereto;

c. Notify all potential creditors of the existence and amount of its respective claims as evidenced by the Debtors' books and records and as set forth in the Schedules;

d. Furnish a notice of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court;

e. Maintain a post office box for the purpose of receiving claims;

f. Print, copy, and serve (by mail, overnight courier, facsimile, e-mail, or otherwise) on the appropriate creditors and parties in interest any and all relevant notices, motions, orders and other pleadings;

g. For all notices, file with the Clerk an affidavit or certificate of service which includes a copy of the notice, a list of persons to whom it was mailed (in alphabetical order), and the date mailed, within seven (7) days of service;

h. Docket all claims received by the clerk's office, maintain the official claims register (the "*Claims Register*") for the Debtors on behalf of the Clerk, and, upon the Clerk's request, provide the Clerk with a certified duplicate, unofficial Claims Register;

i. Specify, in the Claims Register, the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, and (iv) the classification(s) of the claim (*e.g.*, secured, unsecured, priority);

j. Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

k.  Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

l.  Relocate, by messenger or overnight courier, all of the court-filed proofs of claim to the offices of GCG, not less than weekly or as agreed to by the Clerk;

m.  Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the claims register for the Clerk's review (upon the Clerk's request);

n.  Make changes in the Claims Registers pursuant to Court Order;

o.  Maintain the official mailing list for the Debtors of all entities that have filed a proof of claim, which list shall be available upon request by a party-in-interest or the Clerk;

p.  If a case is converted to chapter 7, contact the Clerk's Office within seven (7) days of the entry of the order converting the case;

q.  Thirty (30) days prior to the close of these Cases, arrange to have submitted to the Court a proposed Order dismissing the notice and claims agent and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of these Cases;

r.  File with the Court the final version of the claims register immediately before the close of these Cases; and

s.  At the close of these Cases, box and transport all original documents, in proper format, as provided by the Clerk's Office, to the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, Missouri 64064.

10.  The Claims Register maintained by GCG shall be made available, free of charge, on the Debtors' case specific website maintained and updated by GCG and shall be open to the public for examination without charge during regular business hours.

### Compensation

11.  The fees to be charged by GCG as notice and claims agent are set forth on **Schedule A** to the Retention Agreement. GCG agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred.

12.    The Debtors respectfully submit that the rates to be charged by GCG for its services are competitive and comparable to the rates charged by its competitors for similar services. Furthermore, the Debtors submit that the fees and expenses incurred by GCG are administrative in nature and thus are not subject to standard fee application procedures of professionals. As such, and as has been authorized in other chapter 11 engagements of GCG, the Debtors request authorization to compensate GCG without further order of this Court for services rendered upon the submission of monthly invoices to (i) the Debtors, (ii) any statutory committee monitoring the expenses of the Debtors, and (iii) any party-in-interest who requests service of the monthly invoice.

13.    If any dispute arises relating to the Retention Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute. If resolution is not achieved, the parties may seek resolution of the matter from the Court.

14.    GCG has received an initial retainer of $55,000 (which may be replenished from time to time) from the Debtors for its services under 28 U.S.C. § 156(c) and in the Application Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014 for Authorization to Employ and Retain The Garden City Group as Administrative Agent, *Nunc Pro Tunc* to the Petition Date, and will apply same first against all prepetition fees and expenses and then against the last bill for fees and expenses that GCG will incur in these Cases.

## GCG's Disinterestedness

15.    To the best of the Debtors' knowledge, and as disclosed in the Ferrante Declaration, GCG (i) does not have any adverse connection with the Debtors, the Debtors' creditors or any other party in interest or its respective attorneys and accountants, or the United States Trustee; and (ii) does not hold or represent an interest adverse to the Debtors' estates.

16.     Based on the Ferrante Declaration and to the best of the Debtors' knowledge, other than in connection with these Cases, (i) neither GCG nor any employee thereof has any connection with the Debtors, their creditors, the United States Trustee or any other party in interest herein; (ii) is a "disinterested person," as that term is defined in Bankruptcy Code section 101(14); and (iii) GCG does not hold or represent any interest adverse to the Debtors' estates, except as set forth herein and in the Ferrante Declaration.

17.     Prior to the Petition Date, GCG performed certain professional services for the Debtors in accordance with the Retention Agreement. The Debtors do not owe GCG any amount for services performed or expenses incurred prior to the Petition Date.

18.     In connection with its retention as notice and claims agent, GCG represents, among other things that:

    a.    GCG will not consider itself employed by the United States and shall not seek any compensation from the United States government in its capacity as the notice and claims agent in these Cases;

    b.    by accepting employment in these Cases, GCG waives any rights to receive compensation from the United States government; and

    c.    in its capacity as the notice and claims agent in these Cases, GCG will not be an agent of the United States and will not act on behalf of the United States.

19.     To the extent there is any inconsistency between this Section 156(c) Application, the Retention Agreement, and the order approving the Section 156(c) Application (the "*Retention Order*"), the Retention Order shall govern.

20.     GCG will conduct an ongoing review of its files to ensure that no conflict or other disqualifying circumstances exist or arise. If any new facts or relations are discovered, GCG will supplement its disclosure to the Court.

## Notice

21.     The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the entities listed on the Declaration Concerning List of the Debtors' 30 Largest Unsecured Claims on an Consolidated Basis filed pursuant to Bankruptcy Rule 1007(d); (c) GE Capital Commercial Services, Inc., as administrative agent under the Debtors' prepetition credit facility and debtor in possession credit facility, (d) Latham & Watkins LLP, as counsel to GE Capital Commercial Services, Inc.; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; and (g) the United States Attorney for the Southern District of New York. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

WHEREFORE, the Debtors request entry of an order, in the form annexed hereto, (a) authorizing GCG to act as notice and claims agent for the maintenance and processing of claims and the distribution of notices as requested herein, and (b) granting the Debtors such other and further relief as is just, equitable, and proper.

New York, New York
Dated: July 8 , 2011

Peter Handy
Authorized Person
ArchBrook Laguna Holdings LLC (for itself and
its affiliated Debtors and Debtors in Possession)
350 Starke Road, Suite 400
Carlstadt, NJ 07072
(201) 559-6200

**EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | )    Chapter 11 |
| | ) |
| ARCHBROOK LAGUNA HOLDINGS LLC, *et al.*,[1] | )    Case No. 11-13292 (  ) |
| | ) |
| Debtors. | )    Joint Administration Requested |
| | ) |

## ORDER PURSUANT TO 28 U.S.C. § 156(c) AUTHORIZING THE EMPLOYMENT AND RETENTION OF THE GARDEN CITY GROUP AS NOTICE AND CLAIMS AGENT, *NUNC PRO TUNC* TO THE PETITION DATE

Upon consideration of the Section 156(c) Application (the "***Section 156(c) Application***")

of ArchBrook Laguna Holdings, Inc. and its debtor subsidiaries as debtors and debtors in

possession (collectively, the "***Debtors***") seeking entry of an order pursuant to 28 U.S.C. § 156(c)

and Rule 5075-1(a) of the Local Bankruptcy Rules for the Southern District of New York,

authorizing the retention of The Garden City Group, Inc. ("***GCG***") as notice and claims agent to,

among other things, (i) distribute required notices to parties in interest, (ii) receive, maintain,

docket and otherwise administer the proofs of claim filed in the Debtors' chapter 11 cases, and

(iii) provide such other administrative services that the Debtors may require on the terms and

conditions set forth in the agreement between the Debtors and GCG (the "***Retention***

***Agreement***") and all as described more fully in the Section 156(c) Application; and upon the

Declaration of Angela Ferrante submitted in support of the Section 156(c) Application (the

"***Ferrante Declaration***"); and the Debtors having estimated that there are in excess of 7,500

creditors in these chapter 11 cases, many of which are expected to file proofs of claim, and it

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: ArchBrook Laguna LLC (6166); ArchBrook Laguna Holdings LLC (6156); Chimerica Global Logistics LLC (3745); ArchBrook Laguna West LLC (9631); Lehrhoff ABL LLC (6386); Expert Warehouse LLC (4487); and ArchBrook Laguna New York LLC (5385).

appearing that the receiving, docketing, and maintaining of proofs of claim would be unduly time consuming and burdensome for the Clerk;[2] and the Court being authorized under 28 U.S.C. § 156(c) to utilize, at the Debtors' expense, outside agents and facilities to provide notices to parties in title 11 cases and to receive, docket, maintain, photocopy and transmit proofs of claim; and the Court being satisfied that GCG has the capability and experience to provide such services and that GCG does not hold an interest adverse to the Debtors or their estates respecting the matters upon which it is to be engaged; and it appearing that the Court has jurisdiction to consider the Section 156(c) Application and the relief requested therein in accordance with 28 U.S.C. § 1334; and it appearing that this matter is core pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O); and it appearing that venue is proper in this district pursuant to 28 U.S.C. § 1408; and it appearing that GCG is disinterested and eligible for retention pursuant to Bankruptcy Code sections 101(14) and 327(a) and that the terms of the Retention Agreement are reasonable and appropriate; and good and sufficient notice of the Section 156(c) Application having been given and no other or further notice being required; and it appearing that the employment of GCG is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor

IT IS HEREBY ORDERED THAT:

1.     The Section 156(c) Application is approved as set forth herein.

2.     The Debtors are authorized to employ and retain GCG as its notice and claims agent on the terms and conditions set forth in the Retention Agreement.

---

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2

3.     GCG is authorized to perform the noticing and other services set forth in the Section 156(c) Application and to receive, maintain, record and otherwise administer the proofs of claim filed in this chapter 11 case.

4.     GCG is the custodian of Court records and designated as the authorized repository for all proofs of claim filed in these cases and is authorized and directed to maintain the official claim register for the Debtors and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

5.     GCG is authorized and directed to perform all related tasks to process the proofs of claim and maintain a claims register including:

   a.   Notify all potential creditors of the filing of the bankruptcy petitions and of the setting of the date for the first meeting of creditors pursuant to Bankruptcy Code section 341(a), under the proper provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*");

   b.   Maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, "*Schedules*"), listing the Debtors' known creditors and the amounts owed thereto;

   c.   Notify all potential creditors of the existence and amount of its respective claims as evidenced by the Debtors' books and records and as set forth in the Schedules;

   d.   Furnish a notice of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court;

   e.   Maintain a post office box for the purpose of receiving claims;

   f.   Print, copy, and serve (by mail, overnight courier, facsimile, e-mail, or otherwise) on the appropriate creditors and parties in interest any and all relevant notices, motions, orders and other pleadings;

   g.   For all notices, file with the Clerk an affidavit or certificate of service which includes a copy of the notice, a list of persons to whom it was mailed (in alphabetical order), and the date mailed, within seven (7) days of service;

h.    Docket all claims received by the Clerk's Office, maintain the official claims register (the "*Claims Register*") for the Debtors on behalf of the Clerk, and, upon the Clerk's request, provide the Clerk with a certified duplicate, unofficial Claims Register;

i.    Specify, in the Claims Register, the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, and (iv) the classification(s) of the claim (*e.g.*, secured, unsecured, priority);

j.    Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

k.    Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

l.    Relocate, by messenger or overnight courier, all of the court-filed proofs of claim to the offices of GCG, not less than weekly;

m.    Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the claims register for the Clerk's review (upon the Clerk's request);

n.    Make changes in the Claims Registers pursuant to Court Order;

o.    Maintain the official mailing list for the Debtors of all entities that have filed a proof of claim, which list shall be available upon request by a party-in-interest or the Clerk;

p.    If the case is converted to chapter 7, contact the Clerk's Office within seven (7) days of the entry of the order converting the case;

q.    Thirty (30) days prior to the close of these Cases, arrange to have submitted to the Court a proposed Order dismissing the notice and claims agent and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of these Cases;

r.    File with the Court the final version of the claims register immediately before the close of the Cases; and

s.    At the close of the Cases, box and transport all original documents, in proper format, as provided by the Clerk's Office, to the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, Missouri 64064.

6.    GCG is authorized to take such other action to comply with all duties set forth in the Section 156(c) Application.

7.    The Clerk of the Court shall release all filed claims directly to GCG, and GCG will provide the Clerk of the Court with the necessary labels and boxes for shipping the claims to GCG.

8.    GCG shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on (i) the Debtors, (ii) any statutory committee monitoring the expenses of the Debtors, and (iii) any party-in-interest who requests service of the monthly invoices (each a "*Notice Party*", and collectively, the "*Notice Parties*").

9.    The Debtors are authorized to compensate GCG on a monthly basis (without the necessity of GCG's filing of a fee application with the Court), and without further order of the Court.  GCG's fees and expenses shall be treated as an administrative expense of the Debtors' estates and shall be paid by the Debtors in accordance with the Retention Agreement upon receipt of each GCG invoice by the Debtors, unless GCG is advised, within ten (10) days of receipt of the invoice, that any of the Notice Parties objects to the invoice, in which case the Debtors will schedule a hearing before the Court to consider the disputed invoice.  In the event of a disputed invoice, the Debtors shall remit to GCG only upon the resolution of the disputed portion, as mandated by the Court.  If GCG's fees increase from the fees of the Retention Agreement, GCG shall file an affidavit with the Court describing such increases.

10.    If any amounts are prepaid by the Debtors to GCG under the terms of the Retention Agreement, then GCG shall provide notice of such prepayment to the Notice Parties and such parties shall have ten (10) days from the receipt of such prepayment to provide GCG

with notice of an objection to the prepayment, in which case the Debtors will schedule a hearing before the Court to consider the disputed amount of the prepayment. Any such disputed amount shall be subject to disgorgement up until Court resolution of the dispute.

11.     GCG and the applicable Notice Parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Retention Agreement or monthly invoices, and that the parties may seek resolution of the matter from the Court if resolution is not achieved.

12.     In the event GCG is unable to provide the services set out in this order, GCG will immediately notify the Clerk and the Debtors' counsel and cause to have all original proofs of claim and computer information turned over to another notice and claims agent with the advice and consent of the Clerk and the Debtors' counsel.

13.     In connection with its appointment as notice and claims agent in these Cases, GCG:

     a. will not consider itself employed by the United States and shall not seek any compensation from the United States government in its capacity as the notice and claims agent in this chapter 11 case;

     b. waives any rights to receive compensation from the United States government; and

     c. will not be an agent of the United States and will not act on behalf of the United States.

14.     The Debtors may submit a separate application to retain GCG pursuant to 11 U.S.C. § 327 for work to be performed outside the scope of 28 U.S.C. § 156(c).

15.     In the event of an inconsistency between the Section 156(c) Application, Retention Agreement, and this Order, this Order shall govern.

16. This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order.

New York, New York
Date: _____, 2011

_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

**Ferrante Declaration**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Michael P. Cooley
Alexis Freeman

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ARCHBROOK LAGUNA HOLDINGS LLC, *et al.*,[1] | ) | Case No. 11-13292 (   ) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

**DECLARATION OF ANGELA FERRANTE IN SUPPORT OF THE DEBTORS'**
**APPLICATION PURSUANT TO 28 U.S.C. § 156(c) FOR ENTRY OF AN**
**ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF THE**
**GARDEN CITY GROUP AS NOTICE AND CLAIMS AGENT,**
***NUNC PRO TUNC* TO THE PETITION DATE**

Angela Ferrante, being duly sworn, depose and state:

1.       I am an Assistant Vice President of The Garden City Group, Inc. ("***GCG***")

and I am authorized to make and submit this declaration on behalf of GCG. This declaration is

submitted in support of the application (the "***Section 156(c) Application***") of ArchBrook Laguna

Holdings, Inc. and its debtor subsidiaries, as debtors and debtors in possession (collectively, the

"***Debtors***") pursuant to section 156(c) of title 28 of the United States Code for authorization to

retain GCG as the official notice and claims agent ("***Claims Agent***") for the above-captioned

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: ArchBrook Laguna LLC (6166); ArchBrook Laguna Holdings LLC (6156); Chimerica Global Logistics LLC (3745); ArchBrook Laguna West LLC (9631); Lehrhoff ABL LLC (6386); Expert Warehouse LLC (4487); and ArchBrook Laguna New York LLC (5385).

chapter 11 cases (the "*Cases*") and to approve the assumption of a related agreement. The statements contained herein are based upon personal knowledge.

2.　　GCG is one of the country's leading notice and claims agents and is well-qualified to provide experienced notice and claims services in connection with these Cases. GCG is or was retained as the notice and claims agent in a number of large Chapter 11 cases in this jurisdiction including *In re Borders Group, Inc., et al*, Case No. 11-10614 (MG) (Bankr. S.D.N.Y. February 16, 2011) [Dockets 88 and 382]; *In re: Partsearch Technologies, Inc.*, Case No. 11-10282 (MG) (Bankr. S.D.N.Y. Jan. 25, 2011) [Dockets 5 and 22]; *In re Motors Liquidation Company (f/k/a General Motors Corp.)*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y. June 25, 2009) [Docket No. 2549]; *In re BearingPoint, Inc.*, Case No. 09-10691 (REG) (Bankr. S.D.N.Y. Feb. 19, 2009) [Docket 32]; *In re Fortunoff Holdings, LLC*, Case No. 09-10497 (RDD) (Bankr. S.D.N.Y. Feb. 10, 2009) [Docket No. 68]; *In re Star Tribune Holdings Corp.*, Case No. 09-10244 (RDD) (Bankr. S.D.N.Y. Feb. 6, 2009) [Docket No. 72].

3.　　The Debtors selected GCG to serve as the Claims Agent for the Debtors' estates, as set forth in more detail in the Section 156(c) Application filed contemporaneously herewith. To the best of my knowledge, neither GCG, nor any of its professional personnel, have any relationship with the Debtors that would impair GCG's ability to serve as Claims Agent. GCG does have connections to some of the Debtors' creditors in matters completely unrelated to these Cases, either as vendors or in cases where GCG serves in a neutral capacity as a class action settlement claims administrator or bankruptcy administrator. GCG's assistance in the cases where GCG acts as a class action settlement claims administrator has been primarily related to the design and dissemination of legal notice and other administrative functions in class actions. Denise Kaloudis, a Senior Consultant at GCG, and I are attorneys formerly associated

2

with the Debtors' bankruptcy counsel, Akin Gump Strauss Hauer & Feld LLP (*"Akin Gump"*).

Ms. Kaloudis and I were employed by Akin Gump from April 2009 through March 2011 and

May 2003 through December 2006, respectively. While employed at Akin Gump, Ms. Kaloudis

and I did not work on any matters involving the Debtors nor were we employed by Akin Gump

when these Cases were filed.

        4.     Certain GCG personnel may have relationships with some of the Debtors'

creditors; however, such relationships are of a personal financial nature and completely unrelated

to these Cases. In addition, GCG has working relationships with certain of the professionals

retained by the Debtors and other parties in interest but such relationships are completely

unrelated to these Cases. GCG has and will continue to represent clients in matters unrelated to

the Debtors and these Cases and has had and will continue to have relationships in the ordinary

course of its business with certain vendors and professionals in connection with matters

unrelated to the Debtors and these Cases.

        5.     Since 1999, GCG has been a wholly owned subsidiary of Crawford &

Company. I am advised that Crawford & Company has no material relationships with the

Debtors, and while it may have rendered services to certain creditors, received services from

certain creditors or have a vendor relationship with some creditors, such relationships were (or

are) in no way connected to GCG's representation of the Debtors in these Cases.

        6.     GCG is a "disinterested person," as that term is defined in section 101(14)

of the Bankruptcy Code, in that GCG and its professional personnel:

        (a)     are not creditors, equity security holders or insiders of the Debtors;

        (b)     are not and were not, within two years before the date of the filing

of these Cases, directors, officers or employees of the Debtors; and

(c)     do not have an interest materially adverse to the interests of the

Debtors' estate or any class of creditors or equity security holders, by reason of any direct or

indirect relationship to, connection with, or interest in, the Debtors.

7.     GCG has not been retained to assist any entity or person other than the Debtors on

matters relating to, or in connection with, these Cases.  If GCG's proposed retention is approved

by this Court, GCG will not accept any engagement or perform any service for any entity or

person other than the Debtors in these Cases unless expressly authorized by the Debtors and their

professionals.  GCG may, however, provide professional services to entities or persons that are

creditors or parties in interest in these Cases, which services do not relate to, or have any direct

connection with, these Cases or the Debtors.

8.     GCG represents, among other things, that:

(a)     it will not consider itself employed by the United States

government and shall not seek any compensation from the United States government in its

capacity as Claims Agent;

(b)     by accepting employment in these Cases, GCG waives

any right to receive compensation from the United States government;

(c)     in its capacity as Claims Agent, GCG will not be an agent of the

United States and will not act on behalf of the United States; and

(d)     GCG will not employ any past or present employees of the Debtors

in connection with its work as Claims Agent.

9.     Subject to the Court's approval, the Debtors have agreed to compensate GCG for

professional services rendered pursuant to 28 U.S.C. §156(c) in connection with these Cases

according to the terms and conditions of the retention agreement by and between the Debtors and

4

GCG, a true and correct copy of which is attached as **Exhibit A**. Payments are to be based upon the submission to the Debtors by GCG of a billing statement, which includes a detailed listing of services and expenses, at the end of each calendar month. GCG has received a $55,000.00 retainer from the Debtors and will apply same first against all pre-petition fees and expenses and then against the last bill for fees and expenses that GCG will render in these Cases.

10.     A copy of the list of the parties searched by GCG is annexed hereto as **Exhibit B** (collectively, the "*Searched Parties*"). None of the Searched Parties appeared in GCG's conflict database.

11.     GCG will comply with all requests of the Clerk of the Court and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

Angela Ferrante

# EXHIBIT A

## Retention Agreement



BANKRUPTCY ADMINISTRATION AGREEMENT

This Bankruptcy Administration Agreement, dated as of June 9, 2011, is between The Garden City Group, Inc., a Delaware corporation (the "Company"), and ArchBrook Laguna Holdings, LLC, ArchBrook Laguna LLC, Lehrhoff ABL, Expert Warehouse LLC, Debtors (the "Clients").

The Clients desire to retain the Company to perform certain noticing, claims processing and balloting administration services for the Clients in their Chapter 11 cases anticipated to be filed in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and the Company desires to be so retained, in accordance with the terms and conditions of this Agreement.

The Clients shall file one or more applications with the Bankruptcy Court seeking approval of this Agreement (each, an "Application"). If an order or orders is or are entered approving the Application (each, an "Order"), any discrepancies between the Agreement, Application and Order shall be controlled by the Order.

In consideration of the mutual covenants herein contained, the parties hereby agree as follows:

1.    Services.  The Company agrees to provide the services necessary to perform the tasks specified in the pricing schedule that has been supplied to the Clients and is attached hereto as Exhibit A. Such services are hereinafter referred to as "Services." The Clients agree and understand that none of the Services constitute legal advice.

2.    Payment for Services; Expenses.

2.1    Compensation. As full compensation for the Services to be provided by the Company, the Clients agree to pay the Company its fees as outlined in the pricing schedule that has been supplied to the Clients and is attached hereto as Exhibit A (subject to Bankruptcy Court approval in the event of an unresolved dispute).  Billing rates may be adjusted from time to time by the Company in its reasonable discretion, although billing rates generally are changed on an annual basis. Clients agree to pay the Company a retainer of $25,000.   (which may be replenished from time to time), to be applied first against the pre-petition fees and expenses incurred by the Clients in connection with Services rendered by the Company and then against the final bill that will be rendered by the Company to the Clients for the post-petition fees and expenses incurred by the Clients in connection with Services rendered by the Company.

2.2    Expenses. In addition to the compensation set forth in Section 2.1, the Clients shall reimburse the Company for all out-of-pocket expenses reasonably incurred by the Company in connection with the performance of the Services (subject to Bankruptcy Court determination in the event of an unresolved dispute). The out-of-pocket expenses will be billed on the expense (non-fee) portion of the Company's invoice to the Clients and may include, but are not limited to, postage, banking fees, brokerage fees, costs of messenger and delivery service, travel, filing fees, staff overtime meal expenses and other similar expenses. In some cases, the Company may receive a rebate at the end of a year from a vendor.

2.3    <u>Billing and Payment</u>. Except as provided in Section 2.2, the Company shall bill the Clients for its fees and expenses for services performed under section 156(c) of title 28 of the United States Code on a monthly basis, and the Clients shall pay the Company within thirty (30) days of its receipt of each such bill in the ordinary course of business (subject to Bankruptcy Court approval in the event of an unresolved dispute). For services performed outside the scope of section 156(c) of title 28 of the United States Code, the Company shall apply for compensation and reimbursement of expenses in accordance with the procedures set forth in sections 330 and 331 of title 11 of the United States Code, the applicable Federal Rules of Bankruptcy Procedures, the Local Bankruptcy Rules for the Southern District of New York, any applicable orders of the Bankruptcy Court, the guidelines established by the United States Trustee for the Southern District of New York, and such other procedures that have been or may be fixed by order of the Bankruptcy Court. Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) as well as certain expenses such as postage must be paid at least three (3) business days in advance of those fees and expenses being incurred. Each of the Clients is jointly and severally liable for the Company's fees and expenses

3.    <u>Term and Termination</u>.

3.1    <u>Term</u>. The term of this Agreement shall commence on the date hereof and shall continue until performance in full of the Services, unless earlier terminated as set forth herein.

3.2    <u>Termination</u>.

(a)    In the event of any material breach of this Agreement by either party hereto, either party may apply to the Bankruptcy Court for an order allowing termination of the Agreement. Grounds for termination include: (i) failure to cure a material breach within thirty (30) days after receipt of the notice by the non-breaching party or (ii) in the case of any breach which requires more than thirty (30) days to effect a cure, failure to commence and continue in good faith efforts to cure such breach, provided that such cure shall be effected no later than ninety (90) days after receipt of such notice of such breach. Waiver of any such default or material breach by either party hereto shall not be construed as limiting any right of termination for a subsequent default or material breach.

(b)    The Company shall be entitled to an administrative claim for all fees and expenses outstanding at the time of termination (subject to Bankruptcy Court approval in the event of an unresolved dispute).

(c)    In accordance with the Bankruptcy Court's Local Rules, procedures and/or directives, or in the absence thereof, as soon as practicable (1) following the entry of a final decree closing the case, or (2) following the conversion of the case to Chapter 7, the Company shall forward to the Bankruptcy Court all paper copies of documents required to be provided thereto. For all other documents, the Company shall retain paper copies and electronic copies for one (1) year (1) following the entry of a final decree closing the case, or (2) following the conversion of the case to Chapter 7. Following the one (1) year retention period, the Company shall have the right to destroy all such documents. This provision shall not affect the Company's normal course business processes for archives and back-up tapes.

4.    <u>Independent Contractor</u>. It is understood and agreed that the Company, through itself or any of its agents, shall perform the Services as an independent contractor. Neither the Company nor any of its employees shall be deemed to be an employee of the Clients. Neither the Company nor any of its employees shall be entitled to any benefits provided by the Clients to their employees, and the Clients will make no deductions from any of the payments due to the Company hereunder for state or federal tax purposes. The Company agrees that the Company shall be responsible for any and all taxes and other payments due on payments received hereunder by the Company from the Clients. Nothing in this

Agreement requires the Clients to use the Company for any future work relating to the Services, and, in the event the Clients decide to use another party for such future work, the Company agrees to cooperate fully with the Clients to ensure a smooth transition to the new party.

5.     <u>Accuracy of Client Supplied Information</u>. The Clients are responsible for the accuracy of all programs, data and other information they submit to the Company (including all information for schedule and statement preparation) and for the output of such information. The Company may undertake to place that data and information into certain systems and programs, including in connection with the generation of Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"). The Company does not verify information provided by the Clients and, with respect to Schedules and Statements preparation, all decisions are at the sole discretion and direction of the Clients. All Schedules and Statements filed on behalf of, or by, the Clients are reviewed and ultimately approved by the Clients, and the Company bears no responsibility for the accuracy or contents therein.

6.     <u>Confidential Information</u>.

6.1     <u>Confidentiality</u>. In connection with this Agreement, each of the Clients and the Company (as the case may be, the "Disclosing Party") may disclose to the Company or the Clients (as the case may be, the "Receiving Party") certain information (a) that is marked or otherwise identified in writing as confidential or proprietary information of the Disclosing Party ("Confidential Information") prior to or upon receipt by the Receiving Party; or (b) which the Receiving Party reasonably should recognize from the circumstances surrounding the disclosure to be Confidential Information. The Receiving Party (x) shall hold all Confidential Information in confidence and will use such information only for the purposes of fulfilling the Receiving Party's obligations hereunder and for no other purpose, and (y) shall not disclose, provide, disseminate or otherwise make available any Confidential Information to any third party other than for the purposes of fulfilling the Receiving Party's obligations hereunder, in either case without the express prior written permission of the Disclosing Party. Notwithstanding the foregoing, the Receiving Party may disclose Confidential Information pursuant to a validly issued subpoena or order of a court of competent jurisdiction.

6.2     <u>Protection of Intellectual Property</u>. The Clients acknowledge that the Company's intellectual property, including, without limitation, the Company's inventions (whether or not patentable), processes, trade secrets and know how are of ultimate importance to the Company. Accordingly, the Clients agree to use their best efforts to protect such intellectual property, and shall not, either during the term of this Agreement or subsequent to its termination, utilize, reveal or disclose any of such intellectual property. The Clients understand that the software programs and other materials furnished by the Company pursuant to this Agreement and/or developed during the course of this Agreement by the Company are the sole property of the Company. The term "program" shall include, without limitation, data processing programs, check printing programs, specifications, applications, routines, sub-routines, procedural manuals, and documentation. The Clients further agree that any ideas, concepts, know-how or techniques relating to the claims management software used or developed by the Company during the course of this Agreement shall be the exclusive property of the Company.

6.3     <u>Scope</u>. The foregoing obligations in Sections 6.1 and 6.2 shall not apply to (a) information that is or becomes generally known or available by publication, commercial use or otherwise through no fault of the Receiving Party; (b) information that is known by the Receiving Party prior to the time of disclosure by the Disclosing Party to the Receiving Party; (c) information that is obtained from a third party who, to the Receiving Party's knowledge, has the right to make such disclosure without restriction; (d) any disclosure required by applicable law; or (e) information that is released for publication by the Disclosing Party in writing. The obligations set forth under Sections 6.1 and 6.2 shall survive the termination of this Agreement.

3

7. <u>Limitation on Damages</u>. The Company shall be without liability to the Clients with respect to anything done or omitted to be done, in accordance with the terms of this Agreement or instructions properly received pursuant hereto, if done in good faith and without negligence or willful or wanton misconduct. In no event shall liability to the Clients for any claims, losses, costs, fines, penalties or damages, including court costs and reasonable attorneys' fees (collectively, "Losses"), whether direct or indirect, arising out of or in connection with or related to this Agreement, exceed the total amount billed or billable to the Clients for the portion of the particular work which gave rise to the Losses. Under no circumstances will the Company be liable to the Clients for any special, consequential or incidental damages incurred by the Clients relating to this Agreement or the performance of Services hereunder, regardless of whether the Clients' claim is for breach of warranty, contract, tort (including negligence), strict liability or otherwise.

8. <u>Indemnification</u>. The Clients, jointly and severally, hereby indemnify and hold harmless the Company and its directors, officers, employees, affiliates and agents against any Losses incurred by the Company arising out of or in connection with or related to (a) any gross negligence or willful misconduct by Clients, their employees, agents or representatives, or any misrepresentations made by such persons to third parties in connection with the Company's acts or omissions in connection with its rendition of the Services; (b) any breach of this Agreement by any of the Clients; or (c) any erroneous instructions or information provided to the Company by any of the Clients for use in providing the Services.

9. <u>Jurisdiction</u>. This Agreement is subject to the approval of the Bankruptcy Court, and such Court shall retain jurisdiction over all matters regarding this Agreement.

10. <u>Force Majeure</u>. Whenever performance by the Company of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock-out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reason of any other matter beyond the Company's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

11. <u>Notice</u>. Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid, or overnight courier. Any such notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in the United States mail, or, if sent by overnight courier, one business day after delivery to such courier, as follows: if to the Company, to The Garden City Group, Inc., 1985 Marcus Avenue, Suite 200, Lake Success, New York 11042, Attention: David Isaac, Chief Executive Officer; and if to the Clients, to Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036-6745, Attention: Alexis Freeman, Esquire.

12. <u>Governing Law</u>. This contract will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

13. <u>Severability.</u> All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

14. <u>Assignment</u>. This Agreement and the rights and obligations of the Company and the Clients hereunder shall bind and inure to the benefit of any successors or assigns thereto.

15.     General.  This Agreement supersedes and replaces any existing agreement entered into by the Company and the Clients relating generally to the same subject matter, and may be modified only in a writing signed by the Company and the Clients.  The paragraph headings in this Agreement are included only for convenience, do not in any manner modify or limit any of the provisions of this Agreement and may not be used in the interpretation of this Agreement. Failure to enforce any provision of this Agreement shall not constitute a waiver of any term hereof.  This Agreement contains the entire agreement between the parties with respect to the subject matter hereof.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year set forth above.

ArchBrook Laguna Holdings, LLC

By: _____
Name: PETER A. HAND
Title: AUTHORIZED PERSON

THE GARDEN CITY GROUP, INC.

By: _____
Name: Karen Shaer
Title: EVP & GC

**Exhibit B**
**Searched Parties**

# SCHEDULE 1

## PARTIES SEARCHED IN THE CONFLICT DATABASE

## CONFLICTS LIST- ARCHBROOK LAGUNA HOLDINGS LLC

### ALL ARCHBROOK LAGUNA ENTITIES
(including non-debtor affiliates and former names)

ArchBrook Laguna Holdings LLC
ArchBrook Laguna LLC
Lehrhoff ABL LLC
Expert Warehouse LLC
Chimerica Global Logistics LLC
BDILH Consolidated
Chimerica Global Logistics
ABL Management LLC
ABL Invest LLC
BDI Laguna Inc.
BDI Laguna Holdings, Inc.
ArchBrook Laguna West
Sterling Imports, a Division of Lehrhoff ABL, LLC

BDI-BLM Trucking, Inc.
BDI-CL Holdings, Inc.
BDI Distributors, Inc.
BDI-Big City Express, Inc.
Esend, Inc.
BDI Laguna West, Inc
Entroute Solutions, Inc.
I Lehrhoof # Co
Sterling Imports
Integrated Premium Concepts
Beyond Technology, Inc.

### ALL ARCHBROOK LAGUNA JOINT VENTURE PARTIES
(including non-debtor affiliates and former names)

Associated Volume Buyers of "AVB" Anaheim
California

### THIRTY LARGEST UNSECURED CREDITORS

Direct Entertainment Media Group Inc.
Toshiba America Inform. System
Hewlett-Packard US Operations
Tomtom Inc
LG Electronics USA Inc
Panasonic/First Chicago Nat'l
Acer America
Tongfang Global LLC
Federal Express Freight East

Dell Marketing LP
Garmin International Inc.
Samsung Electronics America
Toshiba Consumer Products
DXG Technology USA Inc
Lenovo
Mitac Digital Corp
Sterling Commerce
Jarden

Sharp Appliances
Centon Electronics Inc
Home Entertainment Source
Helen of Troy LP
Mcelroy, Deutsch, Mulvaney & Carpenter, LLP
Philips

Fuego North America LLC
YRC Worldwide, Inc.
Manhattan Associates
EB Excalibur
Hamilton Beach
Sharp Electronics Corp

## KEY VENDORS

Acer America Corporation
Dell Marketing LLP
Garmin USA Inc.
Panasonic Consumer Electronics
Samsung Electronics America, Inc.
Sharp Electronics Corp
TomTom, Inc.
Toshiba Consumer Products
Toshiba America Information Systems, Inc.
Acer America Corporation
LG Electronics
Samsung Electronics America, Inc.
Sharp Electronics Corp
Applica, Inc. / Spectrum Brands
Jarden

Garmin International Inc
Hewlett-Packard Us Operations
Lehrhoff Abl interco Purch
LG Electronics USA Inc
DXG Technology USA Inc
Panasonic/First Chicago Nat'l
Lenovo
Direct Entertainment Media Group Inc.
Philips
Electrolux Home Products, Inc.
General Electric Company
Pioneer Home Electronics
Whirlpool Corporation, Inc.
Hamilton Beach/Proctor Silex

## ADDITIONAL MAJOR CREDITORS

Expresso Satellite Navigation, Inc.

## CONTRACT COUNTER-PARTIES

Amazon Fulfillment Services, Inc
Samsung Electronics America, Inc
Hewlett-Packard Company
Toshiba America Information Systems, Inc.
HSN LP
Magnell Associate, Inc. (Newegg Inc.)
Rent-A-Center, Inc.
Crown Leasing Corp.

Raymond Handling Concepts Corp.
Carolina Handling LLC
The Raymond Corporation
Dell Marketing LLP
Raymond Leasing (Raymond Leasing Corp.)
Crown Credit
Hewlett Packard Financial Services
Delage Landen.

## PREPETITION LENDERS TO THE DEBTORS

Bank of America NA
GE Capital Commercial Services, Inc.

GE Capital Markets, Inc.
PNC Bank

## LEASE COUNTER-PARTIES

D/P Rickenbacker, LLC
Whirlpool Corporation
ITS Logistics
Heller Family L.L.C.
Panatoni Development Company, LLC
Pannatoni development DE, LLC
Carmel River LLC
Shelby Properties DE, Inc.
Roberts Investments, LLC
James Patrick Conahan, trustee James Patrick Conahan Revocable Trust
Kathleen Kani Conahan, trustee Kathleen Kani Conahan Revocable trust
Meadowlands Partners, LLC
LIT/Hodges development Holdco LLC
Serbing Associates

## DEBTORS' FINANCIAL INSTITUTIONS

Bank of America
Wells Fargo
PNC Bank

## AGENTS FOR THE PREPETITION LENDERS

GE Capital Commercial Services, Inc.

## PARTIES TO SIGNIFICANT LITIGATION WITH THE DEBTORS

New Age Electronics (Adverse)
Yvette Myers Zimmerman
Marshall Mizell (Adverse)

Chuck Marsh (Adverse)
D&H Distributing (Adverse)

## MAJOR CUSTOMERS OF THE DEBTORS

Rent-A-Center Inc.
Magnell Associates Inc.
Wal-Mart Stores Inc.
Beach Camera

Buy.Com
Jair Electronics Corporation
Eraguna Usa
Digital In The House; Inc.

Intent International Inc
ValueVision Media Inc.
Amazon.Com
ATEC Distribution NJ
Abboud Trading Corp
IQVC
Sears Holding Corporation
Compuwiz Group South Florida
Digital Data Devices Ltd
SYX Distribution Inc.
Micro Informatica, LLC
Home Shopping Network
B&H Photo-Video
Sunshine Computers

Bed Bath & Beyond Inc
Rand's Camera & Hi Fi; Inc.
Direct Entertainment Media Group
AF Services LLC
Bassgar-Illinois, Inc.
Burlington Coat Factory
Fred Meyers Stores Inc.
Best Buy Co. Inc.
J & R Electronics DBA
EGANET
Costco Wholesale Corp.
GVO Trading Inc.
The Wise Computer, Inc.
Mezuri Systems

## MAJOR INSURANCE CARRIERS, AGENTS, AND BROKERS

| Insurance | Insurer |
| --- | --- |
| Risk Management Property Policy | CAN |
| Workers Compensation | Palomar Insurance Corporation |
| Workers Compensation | American CAS Co. of Reading PA |
| General Liability | National Fire Ins of Hartford |
| Commercial Umbrella | Continental Casualty Company |
| International Commercial General Liability | The Continental Insurance Company |
| Commercial Package Policy | Palomar International Corp, LLC |
| Employers Liability | Valley Forge Ins Co |
| Medical Insurance/Dental Insurance | Horizon Blue Cross/Blue Shield of New Jersey |
| Long Term Disability, Short Term Disability, Life Insurance | Guardian |
| Long Term Care for Executives & Wives | John Hancock Financial Services |
| Long Term Disability (excess) | Mass Mutual Financial Group |

## EQUITY HOLDERS HOLDING MORE THAN 5% OF ARCHBROOK LAGUNA HOLDINGS LLC

BDI Laguna Holdings, Inc.
ABL Invest LLC

## CURRENT DIRECTORS AND OFFICERS OF THE DEBTORS

Joel Blank
Darren Marino

## CURRENT DIRECTORS AND OFFICERS OF THE DEBTORS

William Fritz Kopeinig
Daniel Lehrhoff
Michael McIntyre
John White
Arthur Lehrhoff
Daniel Boverman
Michael Bohardt
Robert Lawrence
Dean Sottile
Stephen Gawrylewski
Peter Handy

## OTHER PROFESSIONALS RETAINED BY THE DEBTORS

Macquarie Capital (USA) Inc.
PricewaterhouseCoopers LLC
Akin Gump Strauss Hauer & Feld LLP
Hawkwood Consulting
Lee Garza
Dennis Killeen
David Drinan
Susan Tall

## ORDINARY COURSE PROFESSIONALS

Bondurant, Mixson & Elmore, LLC
Carruthers & Roth, P.A.
Christian & Barton LLP
Cross & Simon, LLC
Duane Morris LLP
Gibbons, P.C.
Mcelroy, Deutsch, Mulvaney & Carpenter, LLP
Seyfarth Shaw LLP
Sharma Yaskhi & Ishar LLP
O'Toole Fernandez Weiner Van Lieu

## KEY STAFF MEMBERS OF THE OFFICE OF THE UNITED STATES TRUSTEE FOR THE SOUTHERN DISTRICT OF NEW YORK

Tracy Hope Davis
Vincent Abriano
Linda A. Riffkin

Marylou Martin
Anna M. Martinez
Brian S. Masumoto

## KEY STAFF MEMBERS OF THE OFFICE OF THE UNITED STATES TRUSTEE FOR THE SOUTHERN DISTRICT OF NEW YORK

Catletha Brooks
Maria Catapano
Danny A. Choy
Stephanie B. Crowder
Elizabetta C. Dub
Marilyn Felton
Myrna R. Fields
Elizabeth Gasparini
Susan Golden
Nadkarni Joseph
Nazar Khodorovsky

Ercilia A. Mendoza
Mary V. Moroney
Richard C. Morrissey
Serene Nakano
Savitri Nguyen
Andrea B. Schwartz
Paul K. Schwartzberg
Sylvester Sharp
Andy Velez-Rivera
Greg M. Zipes

## FORMER DIRECTORS AND OFFICERS OF DEBTOR ENTITIES

### ARCHBROOK LAGUNA HOLDINGS LLC

| Former Directors | Former Officers |
|---|---|
| | Peter Handy |

### ARCHBROOK LAGUNA LLC

| Former Directors | Former Officers |
|---|---|
| Peter Castenfelt | Peter Handy |

### BDI LAGUNA HOLDINGS, INC.

| Former Directors | Former Officers |
|---|---|
| | Peter Handy |

### ARCHBROOK LAGUNA WEST LLC

| Former Directors | Former Officers |
|---|---|
| Peter Castenfelt | Peter Handy |

# FORMER DIRECTORS AND OFFICERS OF DEBTOR ENTITIES

## LEHRHOFF ABL LLC (NEVADA)

| Former Directors | Former Officers |
| --- | --- |
| Joel Blank | Peter Handy |
| Darren Marino | |
| Steven Silverman | |

## EXPERT WAREHOUSE LLC

| Former Directors | Former Officers |
| --- | --- |
| Peter Castenfelt | Peter Handy |
| James Ristow | David Meekings |
| Robert Lawrence | |

## PROSPECTIVE DIP LENDERS

GE Capital Commercial Services, Inc.

## PROSPECTIVE DIP AGENT

GE Capital Commercial Services, Inc.

## COUNSEL TO PROSPECTIVE DIP AGENT

Latham & Watkins LLP