AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Michael P. Cooley
Alexis Freeman

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ARCHBROOK LAGUNA HOLDINGS LLC, *et al.*,[1] | Case No. 11-13292 (   ) |
| Debtors. | Joint Administration Requested |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (A) AUTHORIZING, BUT NOT DIRECTING, DEBTORS
(I) TO PAY CERTAIN PREPETITION WAGES AND REIMBURSABLE
EMPLOYEE EXPENSES, (II) TO PAY AND HONOR EMPLOYEE
MEDICAL AND OTHER BENEFITS AND (III) TO CONTINUE EMPLOYEE
BENEFITS PROGRAMS AND (B) AUTHORIZING FINANCIAL INSTITUTIONS
TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS**

ArchBrook Laguna Holdings LLC ("***ArchBrook***") and certain of its affiliates, as debtors

and debtors in possession (collectively, the "***Debtors***"), file this motion (the "***Motion***"), seeking

entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "***Interim Order***"),

(a) authorizing the Debtors to (i) pay certain prepetition wages, salaries and other compensation,

taxes, withholdings and reimbursable expenses, (ii) pay and honor obligations relating to

medical and other benefits programs, and (iii) continue their employee benefits programs on a

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: ArchBrook Laguna LLC (6166); ArchBrook Laguna Holdings LLC (6156); Chimerica Global Logistics LLC (3745); ArchBrook Laguna West LLC (9631); Lehrhoff ABL LLC (6386); Expert Warehouse LLC (4487); and ArchBrook Laguna New York LLC (5385).

postpetition basis, and (b) scheduling a final hearing (the "***Final Hearing***") to consider entry of a final order, substantially in the form annexed hereto as **Exhibit B** (the "***Final Order***"), granting the relief provided in the Interim Order on a permanent basis and the additional relief described in this Motion. In support of this Motion, the Debtors submit the Declaration of Daniel J. Boverman, Interim Chief Financial Officer, in Support of the First Day Pleadings (the "***Boverman Declaration***"), filed concurrently herewith. In further support of this Motion, the Debtors respectfully state as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105(a), 363(b), 507(a)(4), 507(a)(5), 1107(a), 1108 and 1129(a)(9)(B) of title 11 of the United States Code (the "***Bankruptcy Code***") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

## Background

4.      On July 8, 2011 (the "**Petition Date**"), each of the Debtors filed a petition with this Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no statutory committees have been appointed or designated.

5.      Contemporaneously with the filing of this Motion, the Debtors have sought procedural consolidation and joint administration of these chapter 11 cases under the case of

ArchBrook Laguna Holdings LLC. A description of the Debtors' businesses, the reasons for filing these chapter 11 cases and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set forth in the Boverman Declaration, which is being filed contemporaneously with this Motion.

**Basis for Relief**

**A.      Overview of the Debtors' Workforce and Employee Obligations**

6.      As of the Petition Date, the Debtors employ a total of approximately 267 employees, 149 of which are employed by the Debtors on an hourly or seasonal basis (the "***Hourly Employees***") and the remainder of which are employed by the Debtors on a full-time, salaried basis (the "***Full-Time Employees***" and, together with the Hourly Employees, the "***Employees***"). In addition to their Employees, the Debtors supplement their workforce with independent contractors depending on the Debtors' business needs.

7.      The Employees perform a variety of critical functions, including: accounting, administrative support, accounts payable, billing operations, corporate development, customer care, human resources, information technology, legal, marketing, operations & maintenance, payroll, procurement, sales and treasury. The Employees' skills and their knowledge and understanding of the Debtors' operations and infrastructure are essential to the effective reorganization of the Debtors' businesses.

8.      Just as the Debtors depend on the Employees for their day-to-day operations, the Employees depend on the Debtors. Indeed, the vast majority of the Employees rely exclusively on payments received from the Debtors for their compensation, benefits and expense reimbursements to continue to pay their daily living expenses. In addition, the Debtors pay and incur a number of obligations related to their Employees, such as federal and state withholding taxes and other withheld amounts (including wage garnishments, Employees' share of insurance

premiums, taxes and 401(k) contributions), health benefits, retirement benefits, workers' compensation benefits, vacation time, life and accidental death and dismemberment insurance, short- and long-term disability coverage, various reimbursable expenses and other benefits that the Debtors have historically provided in the ordinary course of business (collectively, and as more fully described herein, the "***Employee Obligations***").

9.      As of the Petition Date, certain wage obligations have accrued since the Debtors' last payroll payment.  Additionally, certain amounts may remain outstanding due to a number of factors, including (a) discrepancies that exist between amounts paid prepetition and the amounts that should have been paid, (b) the possibility that some prepetition checks or other payments may not have cleared before the Petition Date, (c) the fact that certain accrued obligations may not yet have become due and payable as of the Petition Date, and (d) the possibility that certain prepetition amounts related to the Employees may have accrued but remain outstanding because they are pending approval or they have not yet been submitted.

10.      In an effort to minimize the personal hardship to Employees and to maintain morale and stability in the Debtors' business operations during this critical juncture, the Debtors now seek authority to continue to pay and honor, in their discretion (except where payments are required by applicable law), subject to Court approval, amounts arising under or in connection with the Employee Obligations.

**B.      Employee Obligations**

**i.      Employee Payroll Obligations**

11.      The Debtors pay the majority of their Employees on a bi-weekly basis.  The Debtors' payroll obligations generally include base wages and salaries, overtime compensation and bonuses, as applicable (collectively, the "***Employee Payroll Obligations***").  On average, the Debtors' gross payroll totals approximately $869,778.00 every two weeks.

12.     The Debtors' payroll for the last applicable payroll period was paid by check or direct deposit, as applicable, to each Employee, on July 7, 2011, covering the payroll period June 17, 2011 through July 1, 2011.  Prepetition payroll amounts have accrued for the payroll period beginning July 2, 2011.  Further, wire transfers may not have been completed or various checks may not have cleared before the Petition Date.  The Debtors estimate that approximately $259,515 in non-officer Employee Payroll Obligations (the "***Unpaid Non-Officer Compensation***"), and approximately $42,231 in officer Employee Payroll Obligations (the "***Unpaid Officer Compensation***" and, together with the Unpaid Non-Officer Compensation, the "***Unpaid Compensation***") remain unpaid as of the Petition Date.

13.     In connection with their Employee Payroll Obligations, the Debtors outsource their payroll to a third-party service provider, Certipay America ("***Certipay***").  CertiPay is responsible for paying certain of the Debtors' withholding and payroll taxes to applicable third parties, and the Debtors incur approximately $39,491.00 per year in fees in connection with CertiPay's services (the "***Service Fees***").  As of the Petition Date, the Debtors estimate that approximately $950.00 has accrued but remains unpaid on account of the Service Fees during the prepetition period (the "***Unpaid Service Fees***").

**ii.     Employee Commission Payments**

14.     In addition to paying salaries and hourly wages, the Debtors pay sales-based commissions the ("***Commissions***") to certain of the Employees.  Approximately 35 Employees are eligible to receive Commissions.  The annual cost associated with the Commissions is approximately $1,523,952.00.  The Debtors estimate that $158,658 remains unpaid as of the Petition Date on account of the Commissions.

### iii. Employee Incentive Programs

15.     In addition to paying salaries, hourly wages and Commissions, to offer appropriate incentives to encourage their Employees and thereby maximize the value of their businesses, the Debtors offer a performance-based bonus program to their Employees (as more fully described herein, the "***Employee Incentive Program***").  The Employee Incentive Program is an important component of the Debtors' compensation structure for the Employees and is designed to encourage Employees to achieve performance goals and enhance the success of the Debtors' operations.  Specifically, 25 of the Employees are eligible to receive a discretionary performance bonus payable on a monthly or quarterly basis depending on each eligible Employee's employment agreement.  The annual cost associated with the Employee Incentive Program is approximately $717,192.00.  The Debtors estimate that $74,667 remains unpaid as of the Petition Date on account of the Employee Incentive Program.

### iv. Severance Plan

16.     The Debtors maintain a discretionary severance pay plan (the "***Severance Plan***") for Employees who are not a party to (i) a separate severance agreement with the Debtors or (ii) an individual employment agreement with the Debtors that provides for severance benefits.  The Severance Plan provides continuation of the Employee's base salary, at the Debtors' sole discretion, to eligible Employees whose employment with the Debtors is involuntarily terminated without cause as a result of a reduction in workforce, elimination of the Employee's position, closure or sale of the facility where the Employee is employed, or other permanent separation, and provided that the Employee signs a release of claims against the Debtors.

17.     The amount of severance benefits payable under the Severance Plan (the "***Severance Payments***") depends on an Employee's tenure.  Employees with at least one month

of service are eligible to receive Severance Payments. Pursuant to the Severance Plan, eligible Employees receive one week of severance for each year of service up to a maximum of 10 weeks. Employees that have been employed for less than one year receive a prorated Severance Payment based on the number of months of their employment.

18. As of the Petition Date, approximately 260 Employees would be eligible for Severance Payments. By this Motion, the Debtors request authority, in their sole discretion, on both an interim and final basis, to continue the Severance Plan in the ordinary course of business and provide any eligible Employees thereunder with a Severance Payment in the event such Employee is terminated postpetition, subject to the requirements of Bankruptcy Code section 503(c)(2).

**v.     Gross Pay Deductions, Governmental Withholdings and Payroll Taxes**

19. The Debtors routinely deduct certain amounts from their Employees' gross pay, including, without limitation: (a) garnishments, child support, and similar deductions and (b) other pre-tax and after tax deductions payable pursuant to the Employee benefit plans discussed herein (e.g., contributions relating to health care benefits, insurance premiums and flexible spending programs,) (collectively, the "***Deductions***"). On a bi-weekly basis, the Debtors deduct and remit to appropriate third-party recipients approximately $56,443.00 from the Employees' paychecks for the Deductions. The Debtors believe that, as of the Petition Date, the deductions that are owed are approximately $28,221.43. However, in an abundance of caution, the Debtors request authority to remit any unpaid prepetition Deductions (collectively, the "***Unremitted Deductions***") that may exist.

20. In addition to the Deductions, the Debtors are required by law to withhold amounts related to federal, state, and local income taxes, as well as Social Security and

Medicare taxes, for remittance to the appropriate taxing authority (collectively, the "**Withheld Amounts**"). The Debtors are also required to pay additional amounts for federal and state unemployment insurance (together with the Withheld Amounts, the "**Payroll Taxes**"). On a bi-weekly basis, the Debtors remit approximately $188,076.00 in Payroll Taxes. As of the Petition Date, the Debtors owe approximately $94,038 in payroll taxes (collectively, the "**Unremitted Payroll Taxes**"). However, to the extent any such Unremitted Payroll Taxes exist, the Debtors request authority to remit such amounts.

**C.    Reimbursable Expenses**

21.    In the ordinary course of business, the Debtors reimburse their Employees for certain allowed expenses incurred on behalf of the Debtors or while traveling on business or that are related to business-development (collectively, the "**Reimbursable Expenses**"). More specifically, Reimbursable Expenses include, among other things, auto allowances, cellular telephone allowances, business travel (e.g. airfare/rail, rental car, gas for rental car, taxis, parking/toll fare, mileage, hotel, telephone/internet), meals (client entertainment, business travel-related, onsite), postage & delivery, printing expenses, office and computer supplies, publications, subscriptions and miscellaneous other expenses, subject to manager approval. Reimbursable Expenses must be (a) reasonable in amount and (b) necessary to the performance of the business involved.

22.    Reimbursable Expenses are paid directly by Employees, who then seek reimbursement from the Debtors. Specifically, the Debtors estimate that they reimburse Employees for approximately $175,000.00 in Reimbursable Expenses each month, with certain increases for particular months based on heightened business activity. The Debtors estimate that, as of the Petition Date, approximately $87,500 in Reimbursable Expenses remain outstanding (the "**Unpaid Reimbursable Expenses**").

**D.     Employee Benefits**

23.     The Employee Obligations include obligations based on comprehensive benefits that the Debtors provide to all of their Full-Time Employees and certain of their dependents and beneficiaries, including medical and dental benefits, short- and long-term disability, life insurance, retirement plans and other miscellaneous company benefits, as described below (collectively, and as more fully described below, the "***Employee Benefits***").

**i.     Medical and Dental Plans**

24.     The Debtors provide health care coverage, including prescription drug coverage and dental care to approximately 150 Employees and their dependents (including coverage under COBRA for approximately 10 subscribers[2] under various self-funded benefit plans, as follows (collectively, the "***Medical and Dental Plans***"):

- ***Medical Plans.***  Employees are able to enroll in the Horizon MyWay HRA, which is administered by Horizon Blue Cross Blue Shield of New Jersey ("***Horizon BCBS***"), which covers, among other things, prescription drugs and doctor visits.  Employees contribute to the cost of their medical plans with pre-tax deductions from their paychecks. The Debtors pay approximately 50% of the Medical Plan premium.

- ***Dental Plans.***  Employees are able to enroll in Horizon Benefit Options plan, which is covered by Horizon BCBS.  The plan covers, among other things, preventative services, as well as dependent and adult orthodontia with a $1,500 annual maximum limit.

25.     The Debtors estimate that they pay a total of approximately $89,989.00 in monthly premiums and administrative costs associated with the Medical and Dental Plans described above.  As of the Petition Date, the Debtors estimate they owe approximately

---

[2]  Seven former employees are currently eligible to subscribe for COBRA coverage, but have not yet subscribed for such coverage.  Additional former employees may also become eligible to subscribe for COBRA coverage in the future.

$113,986 on account of accrued but unpaid prepetition Medical and Dental Plans (the "***Unpaid Medical and Dental Expenses***").

26.     The Debtors believe that much, if not all, of the remaining Unpaid Medical and Dental Expenses would qualify for priority payment pursuant to Bankruptcy Code section 507(a)(5).

### ii.     Insurance and Disability Benefits

27.     The Debtors provide approximately 207 Employees with life insurance, accidental death and dismemberment and short-term and long-term disability coverage (collectively, the "***Insurance and Disability Benefits***").  The Insurance and Disability Benefits are provided through the Guardian Life Insurance Company of America and the State of New Jersey, and the Debtors pay the premiums for this coverage.  The combined monthly premium for the Debtors' Insurance and Disability Benefits is approximately $5,557.00.  As of the Petition Date, the Debtors estimate they owe approximately $7,039 on account of accrued but unpaid prepetition premiums for the Insurance and Disability Benefits (the "***Unpaid Insurance and Disability Benefits***").

28.     The Debtors believe that amounts withheld from Employee pay checks on account of the Unpaid Insurance and Disability Benefits are likely held in trust by the Debtors and are not property of the Debtors' estates.  Nevertheless, out of an abundance of caution and as discussed below, the Debtors seek Court authorization to pay the Unpaid Insurance and Disability Benefits, including costs associated with the Unpaid Insurance and Disability Benefits that are borne by the Debtors in the ordinary course of business.

### iii. Workers' Compensation

29. The Debtors provide workers' compensation insurance for their Employees (the "***Workers' Compensation Program***") through American Casualty Company of Reading, Pennsylvania. The annual premium for the Workers' Compensation Program for the period beginning August 1, 2010 and ending August 1, 2011 is approximately $138,047, which has been paid in full by the Debtors as of May 2011. As of the Petition Date, the Debtors have approximately $59,004.00 outstanding on account of claims under the Workers' Compensation Program (the "***Unpaid Workers' Compensation Claims***").

### iv. Paid Time-Off and Leaves of Absence

30. The Debtors offer regular full-time Employees holiday pay for pre-determined holidays (*e.g.*, New Year's Day) and personal days (collectively, "***Paid Time Off***"). Eligible Employees may be entitled to cash payment for accrued Paid Time Off. In accordance with state regulations, a maximum of five earned but unused Paid Time Off days may be carried forward from one calendar year to the next. In addition, earned but unused Paid Time Off may be paid out upon termination from the Company. The Debtors anticipate that certain Employees will seek to use Paid Time Off accrued during the prepetition period after the Petition Date (the "***Unused Paid Time Off***"). Paid Time Off is the Debtors' system of managing paid leave that can be used for scheduled and unscheduled absences from work. These absences include personal illness, family illness, personal days, floating holidays and vacation time. Effective January 1st of each year, regular full-time employees of the Debtors are eligible for paid time away from work under the following Paid Time Off guidelines within one calendar year based on the Employee's length of service: 2 days a month up to a maximum of 20 days of Paid Time Off for less than 5 years; and 27 days of Paid Time Off for 5 or more years of service. The

Debtors are seeking, through this Motion, to honor Unused Paid Time Off that accrued prior to the Petition Date, pursuant to their historical practices and in the ordinary course of business.

### v. Employee Savings Plan

31.     The Debtors maintain an Employee savings plan, administered through Principal Financial Group, for the benefit of eligible Employees, which is a tax-qualified plan within the meaning of, and administered in accordance with, the requirements of section 401(k) and other applicable sections of the Internal Revenue Code (the "***401(k) Plan***").  There are approximately 290 participants in the 401(k) Plan, with the Debtors withholding certain amounts from Employees' paychecks and contributing such amounts to the 401(k) Plan (the "***Employee 401(k) Contributions***").  Specifically, the Debtors estimate that they withhold a total of approximately $23,987.00 in Employee 401(k) Contributions each month.  The 401(k) Plan does not include an employer matching component.  The Debtors estimate that they pay a total of approximately $2,000 annually in administration costs related to the 401(k) Plan.  As of the Petition Date, the Debtors believe there are no unpaid obligations on account of the 401(k) Plan.

### vi. Flexible Spending

32.     The Debtors provide a flexible spending account for their Employees, which is administered by Discovery Benefits (the "***Flexible Spending Account***").  The Flexible Spending Account is available to all Full-Time Employees and enables them to contribute pre-tax dollars to an account available for payment of essential health care expenses that are not covered or partially covered by medical and dental insurance plans.  Employees may elect up to a maximum of $10,000 per year to put into the healthcare spending account.

33.     The Flexible Spending Account program is fully funded by participating Employees.  As a result, the Debtors anticipate that there are no unpaid administrative costs for the Flexible Spending Account as of the Petition Date.

## Relief Requested

34.     To minimize the personal hardship that Employees will suffer if prepetition amounts outstanding on account of any of the Employee Obligations are not paid when due or as expected, and to maintain morale and continuity of the Debtors' workforce during this critical time, the Debtors request entry of an order, substantially in the form of the Interim Order, pursuant to Bankruptcy Code sections 105(a), 363(b), 507(a)(4), 507(a)(5), 1107(a), 1108 and 1129(a)(9)(B) and Bankruptcy Rule 6003, authorizing the Debtors to pay and honor, in the ordinary course of business and in their sole discretion, prepetition claims and obligations related to or arising from certain of the Employee Obligations that become due and payable in the period between the Petition Date and the date of the Final Hearing (the "***Interim Period***").

35.     Specifically, the Debtors seek authority to continue to honor and pay all prepetition claims and obligations related to the following Employee Obligations during the Interim Period as follows:[3]   (a) Unpaid Compensation, including payments related to Commissions and the Employee Incentive Program, if any, up to a maximum of $11,725 per individual for prepetition payroll amounts outstanding; (b) Unpaid Service Fees; (c) Unremitted Deductions; (d) Unremitted Payroll Taxes; (e) Unpaid Reimbursable Expenses; (f) Unpaid Medical and Dental Expenses; (g) Unpaid Insurance and Disability Benefits; (h) Unpaid Workers' Compensation Premiums; and (i) Unused Paid Time Off.

---

[3]  To provide continuity to their Employees, in certain instances the Debtors are seeking interim authority to honor prepetition amounts associated with prepetition programs that are unlikely to become due or payable in the period before the Final Hearing on the Motion.

36. Additionally, although the Debtors believe that continuing to honor many of their Employee Obligations would constitute postpetition use of estate assets in the ordinary course of business, out of an abundance of caution, the Debtors hereby seek interim authority to continue the following Employee Obligations in effect after the Petition Date and to pay and honor claims related thereto: (a) Employee Payroll Obligations; (b) Service Fees; (c) the Commissions; (d) the Employee Incentive Program; (e) the Severance Plan; (f) Deductions; (g) Payroll Taxes; (h) Reimbursable Expenses; (i) the Medical and Dental Plans; (j) the Insurance and Disability Benefits; (k) the Workers' Compensation Program; (l) Paid Time Off; (m) the 401(k) Plan; and (n) the Flexible Spending Account.

37. The Debtors further request that, pursuant to the Interim Order, the Court schedule the Final Hearing on this Motion 21 days after the Petition Date, or as soon thereafter as is practicable.

38. At the Final Hearing, the Debtors will seek entry of an order, substantially in the form of the Final Order, authorizing the Debtors to pay and honor, in the ordinary course of business and in their sole discretion, the pre- and postpetition claims and obligations related to or arising from the Employee Obligations, as permitted by the Interim Order, on a permanent basis, with the addition that at the Final Hearing the Debtors will request authority to honor prepetition obligations related to or arising from the following: (a) Unpaid Compensation, in an amount exceeding $11,725 per each eligible Employee, if any; and (b) Unpaid Reimbursable Expenses, if any, including amounts above $1,000 per Employee.

**Supporting Authority**

**A.      The Court Should Authorize the Debtors to Honor Their Employee Obligations**

      **i.      Certain of the Employee Obligations are Entitled to Priority Treatment**

39.      Pursuant to Bankruptcy Code sections 507(a)(4) and 507(a)(5), certain of the unpaid prepetition Employee Obligations – including the Unpaid Compensation – are entitled to administrative expense priority treatment in an amount up to $11,725 for each individual Employee.  To the extent such claims are afforded administrative priority status, the Debtors are required to pay these claims in full to confirm a chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for (a) wages, salaries, commissions, including vacation, severance and sick leave pay earned by an individual, and (b) contributions to an employee benefit plan).

40.      As noted above, the Debtors are not seeking interim authority to pay Unpaid Compensation above $11,725 per Employee.  Accordingly, granting the relief sought with respect to compensation only affects the timing of payments to Employees and former Employees, and does not have any material negative impact on recoveries for general unsecured creditors.  Indeed, the Debtors submit that payment of up to $11,725 per Employee of the Unpaid Compensation at this time will enhance value for the benefit of all interested parties because it will help ensure that the Employees, which are the lifeblood of the Debtors' business operations, continue to provide vital services to the Debtors at this critical juncture.  The Debtors firmly believe that, because of the highly competitive nature of the Debtors' industry, finding and attracting qualified talent would be extremely difficult, and most likely would require higher salaries, guaranteed bonuses and overall higher cost compensation packages than are currently provided to the Employees, should the Debtors be unable to honor the Employee Obligations as and when due and payable.

15

### ii. Payment of Certain of the Employee Obligations is Required by Law

41. The Debtors also seek authority to honor and pay the Unremitted Deductions and Unremitted Payroll Taxes to the appropriate third party entities when such obligations are owed. These amounts principally represent Employee earnings that governments, Employees and judicial authorities have designated for deduction or withholding from Employees' wages. Indeed, certain of the Unremitted Deductions, including contributions to the Employee Benefits and child support and alimony payments, are not property of the Debtors' estates because they have been withheld from Employees' wages on another party's behalf. *See* 11 U.S.C. § 541(b). Accordingly, continued payment of the Unremitted Deductions and Unremitted Payroll Taxes will not harm or prejudice the Debtors' creditors, including unsecured creditors.

42. Additionally, certain federal and state laws require the Debtors and their officers to make certain tax payments that have been withheld from their Employees' paychecks. *See* 26 U.S.C. §§ 6672 and 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *DuCharmes & Co. v. Mich. (In re DuCharmes & Co.)*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Accordingly, the Unremitted Payroll Taxes likely are not property of the Debtors' estates, and the Debtors' officers may be held responsible if the Debtors are unable to timely remit the Unremitted Payroll Taxes.

43. Finally, the Debtors must continue certain of the programs described above in order to maintain the legal right to operate their businesses. This is especially true with respect to the Workers' Compensation Program – pursuant to state law, the Debtors' failure to

adequately maintain the Workers' Compensation Program may prohibit them from operating in a particular jurisdiction. Thus, permitting the Debtors to continue to honor their obligations under the Workers' Compensation Program will ensure a smooth transition to operations in chapter 11.

**B.      Payment of the Employee Obligations is Warranted Under the Doctrine of Necessity**

44.      Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition obligations in appropriate circumstances. *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers who were potential lien claimants). In authorizing payments of certain prepetition obligations, courts have relied on several legal theories, rooted in Bankruptcy Code sections 1107(a), 1108, 363(b) and 507.

45.      Pursuant to Bankruptcy Code sections 1107(a) and 1108, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id.* Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate. . . ." *Id.*

46.     Consistent with a debtor's fiduciary duties, courts have also authorized payment of prepetition obligations under Bankruptcy Code section 363(b) where a sound business purpose exists for doing so.  *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to pay prepetition wages); *see also Armstrong World Indus.*, 29 B.R. at 397 (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors).  Specifically, the business judgment standard requires that a debtor "articulate some business justification, other than the mere appeasement of major creditors." *Ionosphere Clubs*, 98 B.R. at 175.

47.     In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on Bankruptcy Code section 105(a).  Bankruptcy Code section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a), courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of the debtor's business.  Specifically, the Court may use its power under section 105(a) to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *In re NVR L.P.,* 147 B.R. 126, 127 (Bankr. E.D. Va. 1992).

48.     The "doctrine of necessity" or the "necessity of payment" rule originated in railway cases and was first articulated in *Miltenberger v. Logansport, C. & S. W. R. R. Co.*, 106 U.S. 286 (1882).  The doctrine was expanded to non-railroad debtors in the mid-century, *see Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (holding, in a hotel reorganization case, that the court was not "helpless" to apply the rule to supply creditors of non-railroad debtors where

the alternative was the cessation of operations), and has long been recognized as precedent within the Second Circuit. *Ionosphere Clubs,* 98 B.R. at 175-76.

49.     Courts also have permitted postpetition payment of prepetition claims pursuant to section 105(a) in other situations, such as if nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtors' business reorganization plan. *Ionosphere Clubs*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

50.     This flexible approach is particularly critical where a prepetition creditor – here, the Employees and related third parties – provides vital goods or services to a debtor that would be unavailable if the debtor did not satisfy its prepetition obligations.  For example, in *In re Structurlite Plastics Corp.*, the bankruptcy court stated that "a bankruptcy court may exercise its equity powers under §105(a) [of the Bankruptcy Code] to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'" 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (citation omitted).  The court explained that "a *per se* rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *Id.* at 932.

51.     The Debtors' proposed payment of certain prepetition amounts related to their Employee Obligations satisfies each of these standards.  The vast majority of the Debtors' Employees rely exclusively on their compensation, benefits and reimbursement of expenses to satisfy their daily living expenses.  Consequently, these Employees will be exposed to significant financial difficulties if the Debtors are not permitted to honor prepetition obligations

for unpaid compensation, benefits and reimbursable expenses. Accordingly, the Debtors' failure to satisfy such obligations will jeopardize Employee morale and loyalty when Employee support and workforce continuity is critical to their post-filing stabilization and overall restructuring efforts.

52.     Furthermore, if the Court does not authorize the Debtors to honor their various obligations under the Medical and Dental Plans, the Employees may lose their health coverage and, thus, may become obligated to pay certain health care claims that were previously covered by insurance. The loss of health care coverage will result in considerable hardship and anxiety for Employees (and likely attrition) at a time when the Debtors need Employees to focus and perform their jobs at peak efficiency. Additionally, any Employee attrition would cause the Debtors to incur additional expenses related to finding appropriate and experienced replacements, which could severely disrupt the Debtors' operations at an important juncture.

53.     For all of the foregoing reasons, the relief requested herein will benefit the Debtors' estates and creditors by allowing the Debtors' business operations to continue without interruption. In the absence of such payments, the Debtors believe their Employees may seek alternative employment opportunities. Such a development would deplete the Debtors' workforce and hinder the Debtors' ability to provide top-quality service. Moreover, the loss of valuable Employees and the recruiting efforts that would be required to replace such Employees would be a massive and costly distraction at a time when the Debtors should be focusing on their restructuring. Accordingly, the Debtors should be authorized to continue to honor their Employee Obligations, including those that accrued before the Petition Date.

54.     Courts in this district have repeatedly recognized the importance of a debtor's employees to its operations and have granted relief similar to that relief requested herein.

*See, e.g.*, *In re Uno Rest. Holdings Corp.,* No. 10-10209 (MG) (Bankr. S.D.N.Y. Feb. 17, 2010) [Docket No. 144]; *In re DBSD N. Am. Inc.,* No. 09-13061 (REG) (Bankr. S.D.N.Y. June 15, 2009) [Docket No. 110]; *In re Ion Media Networks, Inc.,* No. 09-13125 (JMP) (Bankr. S.D.N.Y. May 21, 2009) [Docket No. 31]; *In re Chemtura Corp.*, No. 09-11233 (REG) (Bankr. S.D.N.Y. Apr. 13, 2009) [Docket No.175]; *Ionosphere Clubs*, 98 B.R. at 177 (discussing prior order authorizing payment of prepetition wages, salaries, medical benefits and business expense claims); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp.* (*In re Chateaugay Corp.*), 80 B.R. 279, 287 (S.D.N.Y. 1987) (affirming a bankruptcy court order authorizing the debtor to pay pre-bankruptcy wages, salaries, employee benefits and reimbursements, and workers' compensation claims and premiums).

## C. Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers

55.     The Debtors represent that they have sufficient availability of funds to pay the amounts described herein in the ordinary course of business by virtue of cash reserves, expected cash flows from ongoing business operations and anticipated access to debtor in possession financing.  Under the Debtors' existing cash management system, the Debtors represent that checks or wire transfer requests can be readily identified as relating to an authorized payment made to an Employee.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable financial institutions should be authorized, when requested by the Debtors, to receive, process, honor and pay any and all checks or wire transfer requests in respect of the Employee claims.

## The Requirements of Bankruptcy Rule 6003 are Satisfied

56.     Bankruptcy Rule 6003 provides, in pertinent part, that:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding. . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition. . . .

Fed. R. Bankr. P. 6003(b).

57.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date to the extent that relief is "necessary to avoid immediate and irreparable harm." *Id.* Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001(c)(2)).

58.     Bankruptcy courts have held that irreparable harm to the bankruptcy estate exists where distractions to employees would burden the reorganization. *See Nev. Power Co. v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 410 (S.D.N.Y. 2007) (holding that potential distractions to employees constitutes "imminent irreparable harm" if they would impact the restructuring process); *Lomas Fin. Corp. v. N. Trust Co. (In re Lomas Fin. Corp.)*, 117 B.R. 64, 67 (S.D.N.Y. 1990) (imminent and irreparable harm found where "key personnel would be distracted from participating in the reorganization process") (citation omitted). Further, a lapse in benefit coverage and financial hardship imposed on employees may also constitute "immediate and irreparable harm." *Id.; see also Commc'ns Workers of Am., District One, AFL-CIO v. NYNEX Corp.*, 898 F.2d 887, 891 (2d Cir. 1990) (termination of insurance

coverage constitutes irreparable harm); *Whelan v. Colgan*, 602 F.2d 1060, 1062 (2d Cir. 1979) (same).

59.     Immediate and irreparable harm would result if the relief requested herein on an interim basis is not granted.  The Employees are one of the Debtors' most valued assets.  In addition, the Employees depend upon wages and benefits to support themselves and their families.  If the Debtors do not continue to provide uninterrupted compensation and benefits that their Employees rely on, the Employees may suffer hardship, and many may seek alternative employment.  Moreover, the Debtors' failure to honor certain of the Employee Obligations during the Interim Period may put at risk the Debtors' ability to continue operating in all relevant jurisdictions, and may impose liability on certain of the Debtors' officers for unpaid taxes.

60.     As described above, the Debtors have identified the Employee Obligations that must be honored during the Interim Period to avoid immediate and irreparable harm to their estates, and are seeking in the Interim Order authorization to honor only those obligations.  Accordingly, the Debtors submit that the relief requested to be included in the Interim Order is essential to preserve the ongoing value of the Debtors' operations and, therefore, will benefit the Debtors, their estates, their creditors, and all other parties in interest.

**Waiver of Bankruptcy Rules 6004(a) and (h)**

61.     The Debtors' need for immediate authority to honor certain prepetition Employee Obligations also justifies elimination of the notice requirements under Bankruptcy Rule 6004(a) and the 14 day stay period imposed by Bankruptcy Rule 6004(h).  That rule provides that, unless a court orders otherwise, an order authorizing the use, sale or lease of property (other than cash collateral) is stayed until the expiration of 14 days after entry of the

order. Fed. R. Bankr. P. 6004(h). The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the order takes effect. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

62. As described above, any delay in the Debtors obtaining the relief requested herein may undermine the purpose of that relief – to maintain the value of the Debtors' estates by assuring Employees that the most important Employee Obligations will continue uninterrupted. Accordingly, the Court should waive the 14 day stay period provided for in Bankruptcy Rule 6004(h), and order that the Debtors are immediately authorized to honor and pay the Employee Obligations as described in this Motion.

### The Debtors' Reservation of Rights

63. Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors, a waiver of the Debtors' or any other party's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights to subsequently dispute such claim.

### Motion Practice

64. This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

**<u>Notice</u>**

65.     The Debtors have provided notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of New York; (b) the entities listed on the Declaration Concerning List of the Debtors' 30 Largest Unsecured Claims on an Consolidated Basis filed pursuant to Bankruptcy Rule 1007(d); (c) GE Capital Commercial Services, Inc., as administrative agent under the Debtors' prepetition credit facility and debtor in possession credit facility, (d) Latham & Watkins LLP, as counsel to GE Capital Commercial Services, Inc.; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; and (g) the United States Attorney for the Southern District of New York.  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Interim Order and, after a final hearing, the Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, authorizing, and to the extent required by law, directing, the Debtors to (i) pay certain prepetition amounts and honor certain prepetition obligations related to or arising from the Employee Obligations and (ii) continue the practices and programs relating to the Employee Obligations on a postpetition basis, (b) schedule the Final Hearing on the Motion within 21 days of the Petition Date or as soon as is otherwise practicable and (c) grant such other and further relief as may be just, proper and equitable.

New York, New York
Dated: July 8, 2011

*/s/ Ira S. Dizengoff*

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Michael P. Cooley
Alexis Freeman

*Proposed Counsel to the Debtors and Debtors in Possession*

## EXHIBIT A

## Proposed Interim Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ARCHBROOK LAGUNA HOLDINGS LLC, *et al.*,[1] | Case No. 11- 13292 (    ) |
| Debtors. | Joint Administration Requested |

## INTERIM ORDER (A) AUTHORIZING, BUT NOT DIRECTING, DEBTORS (I) TO PAY CERTAIN PREPETITION WAGES AND REIMBURSABLE EMPLOYEE EXPENSES, (II) TO PAY AND HONOR EMPLOYEE MEDICAL AND OTHER BENEFITS AND (III) TO CONTINUE EMPLOYEE BENEFITS PROGRAMS AND (B) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS

Upon the motion (the "***Motion***")[2] of the above-captioned debtors (collectively, the "***Debtors***") for entry of an order (the "***Order***") (a) authorizing the Debtors to (i) pay certain prepetition wages, salaries and other compensation, taxes, withholdings and reimbursable expenses, (ii) pay and honor obligations relating to medical and other benefits programs and (iii) continue their employee benefits programs on a postpetition basis (collectively, and as further described in the Motion, the "***Employee Obligations***"), and (b) scheduling a final hearing (the "***Final Hearing***") to consider entry of an order granting this and other relief on a permanent basis (the "***Final Order***"), all as more fully set forth in the Motion; and upon the Boverman Declaration; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: ArchBrook Laguna LLC (6166); ArchBrook Laguna Holdings LLC (6156); Chimerica Global Logistics LLC (3745); ArchBrook Laguna West LLC (9631); Lehrhoff ABL LLC (6386); Expert Warehouse LLC (4487); and ArchBrook Laguna New York LLC (5385).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that notice of the Motion was appropriate under the particular circumstances; and this Court having reviewed the Motion and the Boverman Declaration, and having heard the statements in support of the relief requested therein at the hearing; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor

IT IS HEREBY ORDERED THAT:

1.       The Motion is granted on an interim basis as set forth herein.

2.       The Debtors are authorized, but not directed, to honor and pay, in the ordinary course of business, in accordance with the Debtors' prepetition policies and practices and in the Debtors' sole discretion (subject to the terms of this Order), prepetition amounts outstanding on account of the Employee Obligations as follows:  (a) Unpaid Compensation, including payments related to Commissions and the Employee Incentive Program, if any, up to a maximum of $11,725 per individual for prepetition payroll amounts outstanding in an aggregate amount not to exceed $535,071; (b) Unpaid Service Fees; (c) Unremitted Deductions; (d) Unremitted Payroll Taxes; (e) Unpaid Reimbursable Expenses in an amount not to exceed $1,000 per Employee; (f) Unpaid Medical and Dental Expenses;  (g) Unpaid Insurance and Disability Benefits; (h)  Unpaid Workers' Compensation Premiums; and (i) Unused Paid Time Off.

3.       The Debtors are authorized, but not directed, to continue the following Employee Obligations during the Interim Period in the ordinary course of business on a postpetition basis,

in accordance with the Debtors' prepetition policies and practices and in the Debtors' sole discretion (subject to the terms of this Order), and to pay and honor claims related thereto: (a) Employee Payroll Obligations; (b) Service Fees; (c) the Commissions; (d) the Employee Incentive Program; (e) the Severance Plan; (f) Deductions; (g) Payroll Taxes; (h) Reimbursable Expenses; (i) the Medical and Dental Plans; (j) the Insurance and Disability Benefits; (k) the Workers' Compensation Program; (l) Paid Time Off; (m) the 401(k) Plan; and (n) the Flexible Spending Account.

4. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order, in accordance with the Motion.

5. The Debtors are authorized, but not directed, to pay all postpetition costs and expenses incidental to payment of the Employee Obligations, including all administrative and processing costs and payments to outside professionals in the ordinary course of business.

6. The Debtors are authorized to forward any unpaid amounts on account of Deductions or Payroll Taxes to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' prepetition policies and practices.

7. Pursuant to Bankruptcy Code section 362(d), Employees are authorized to proceed with their workers' compensation claims in the appropriate judicial or administrative forum under the Workers' Compensation Program, and the Debtors are authorized to take all steps necessary and appropriate with respect to the resolution of any such claims.

8. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these cases with respect to prepetition amounts owed to their Employees.

9.    Nothing in the Motion or this Order, nor as a result of the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as:  (a) an admission as to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors' or other parties in interest's rights to dispute any claim; or (c) an approval or assumption of any agreement, contract, or lease pursuant to Bankruptcy Code section 365.

10.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(a), 6004(h), 7062, 9014 or otherwise, this Order shall be immediately effective and enforceable upon its entry.

11.    Notwithstanding any provision herein to the contrary, the Debtors shall not be authorized to make any payments under this Order from any amounts loaned to the Debtors pursuant to the debtor-in-possession financing unless such payments or disbursements are included in the budget contained therein or otherwise authorized to be paid pursuant to the debtor-in-possession financing agreement.

12.    The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as being approved by this Order.

13.    The Final Hearing on the Motion shall be held on _____, 2011 at ___:___ _.m. (prevailing Eastern Time).  Any objections or responses to entry of the Final Order must be filed with this Court and served so as to be actually received on or before five (5) business days before the Final Hearing by the following parties: (a) the Office of the United

States Trustee for the Southern District of New York; (b) the entities listed on the Declaration Concerning List of the Debtors' 30 Largest Unsecured Claims on an Consolidated Basis filed pursuant to Bankruptcy Rule 1007(d); (c) GE Capital Commercial Services, Inc., as administrative agent under the Debtors' prepetition credit facility and debtor in possession credit facility, (d) Latham & Watkins LLP, as counsel to GE Capital Commercial Services, Inc.; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) the United States Attorney for the Southern District of New York; and (h) the parties listed on the Master Service List and any parties that have, pursuant to Bankruptcy Rule 2002, formally appeared and requested service since the last Master Service List was filed with the Court.

14.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion and the Boverman Declaration, or are otherwise deemed waived.

15.     This Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

New York, New York
Date: _____, 2011                    _____
                                               UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ARCHBROOK LAGUNA HOLDINGS LLC, *et al.*,[1] | ) Case No. 11- 13292 (   ) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

## FINAL ORDER (A) AUTHORIZING, BUT NOT DIRECTING, DEBTORS (I) TO PAY CERTAIN PREPETITION WAGES AND REIMBURSABLE EMPLOYEE EXPENSES, (II) TO PAY AND HONOR EMPLOYEE MEDICAL AND OTHER BENEFITS AND (III) TO CONTINUE EMPLOYEE BENEFITS PROGRAMS AND (B) AUTHORIZING FINANCIAL INSTITUTIONS TO <u>HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS</u>

Upon the motion (the "***Motion***")[2] of the above-captioned debtors (collectively, the "***Debtors***") for entry of an order (the "***Order***") authorizing the Debtors to (a) pay certain prepetition wages, salaries and other compensation, taxes, withholdings and reimbursable expenses, (b) pay and honor obligations relating to medical and other benefits programs and (c) continue their employee benefits programs on a postpetition basis (collectively and as further described in the Motion, the "***Employee Obligations***"), all as more fully set forth in the Motion; and this Court having entered the Interim Order on _____ __, 2011; and this Court having held the Final Hearing (the "***Hearing***") on _____ __, 2011; and upon the Boverman Declaration; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: ArchBrook Laguna LLC (6166); ArchBrook Laguna Holdings LLC (6156); Chimerica Global Logistics LLC (3745); ArchBrook Laguna West LLC (9631); Lehrhoff ABL LLC (6386); Expert Warehouse LLC (4487); and ArchBrook Laguna New York LLC (5385).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that notice of the Motion and of the Hearing was appropriate under the particular circumstances; and this Court having reviewed the Motion and the Boverman Declaration, and having heard the statements in support of the relief requested therein at the hearing; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor

IT IS HEREBY ORDERED:

1.     The Motion is granted on a final basis as set forth in this Order.  The relief granted in the Interim Order is reaffirmed and approved on a permanent basis as provided in this Order.

2.     The Debtors are authorized, but not directed, to honor and pay, in the ordinary course of business, in accordance with the Debtors' prepetition policies and practices and in the Debtors' sole discretion (subject to the terms of this Order), prepetition amounts outstanding on account of the following Employee Obligations:  (a) Unpaid Compensation, including payments related to Commissions and the Employee Incentive Program, if any, up to a maximum of $11,725 per individual for prepetition payroll amounts outstanding; (b) Unpaid Service Fees; (c) Unremitted Deductions; (d) Unremitted Payroll Taxes; (e) Unpaid Reimbursable Expenses in an amount not to exceed $1,000 per Employee; (f) Unpaid Medical and Dental Expenses; (g) Unpaid Insurance and Disability Benefits; (h)  Unpaid Workers' Compensation Premiums; and (i) Unused Paid Time Off.

3.    The Debtors are authorized, but not directed, to continue the following Employee Obligations in the ordinary course of business on a postpetition basis, in accordance with the Debtors' prepetition policies and practices and in the Debtors' sole discretion (subject to the terms of this Order), and to pay and honor claims related thereto:   (a) Employee Payroll Obligations; (b) Service Fees; (c) the Commissions; (d) the Employee Incentive Program; (e) the Severance Plan; (f) Deductions; (g) Payroll Taxes; (h) Reimbursable Expenses; (i) the Medical and Dental Plans; (j) the Insurance and Disability Benefits; (k) the Workers' Compensation Program; (l) Paid Time Off; (m) the 401(k) Plan; and (n) the Flexible Spending Account.

4.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order, in accordance with the Motion.

5.    The Debtors are authorized to forward any unpaid amounts on account of Deductions or Payroll Taxes to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' prepetition policies and practices.

6.    Pursuant to Bankruptcy Code section 362(d), Employees are authorized to proceed with their workers' compensation claims in the appropriate judicial or administrative forum under the Workers' Compensation Program, and the Debtors are authorized to take all steps necessary and appropriate with respect to the resolution of any such claims.

7.    The Debtors are authorized to pay all postpetition costs and expenses incidental to payment of the Employee Obligations, including all administrative and processing costs and payments to outside professionals in the ordinary course of business.

8.    The Debtors are authorized to issue postpetition checks, or to affect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these cases with respect to prepetition amounts owed to their Employees.

9.     Nothing in the Motion or this Order, nor as a result of the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as:  (a) an admission as to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors' or other parties in interest's rights to dispute any claim; or (c) an approval or assumption of any agreement, contract, or lease pursuant to Bankruptcy Code section 365.

10.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(a), 6004(h), 7062, 9014 or otherwise, this Order shall be immediately effective and enforceable upon its entry.

11.     Notwithstanding any provision herein to the contrary, the Debtors shall not be authorized to make any payments under this Order from any amounts loaned to the Debtors pursuant to the debtor-in-possession financing unless such payments or disbursements are included in the budget contained therein or otherwise authorized to be paid pursuant to the debtor-in-possession financing agreement.

12.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as being approved by this Order.

13.     This Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

New York, New York
Date: _____, 2011

_____
UNITED STATES BANKRUPTCY JUDGE