AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Michael P. Cooley
Alexis Freeman

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ARCHBROOK LAGUNA HOLDINGS LLC, *et al.*,[1] | ) | Case No. 11-13292 (   ) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

**DEBTORS' MOTION FOR
ENTRY OF INTERIM AND FINAL ORDERS
(A) AUTHORIZING DEBTORS TO PAY PREPETITION CLAIMS
OF DISTRIBUTION NETWORK VENDORS AND THIRD-PARTY
WAREHOUSES; (B) AUTHORIZING THE DEBTORS TO GRANT
ADMINISTRATIVE EXPENSE PRIORITY TO ALL UNDISPUTED
OBLIGATIONS FOR MERCHANDISE ORDERED PREPETITION AND
DELIVERED POSTPETITION AND SATISFY SUCH OBLIGATIONS IN THE
ORDINARY COURSE OF BUSINESS; AND (C) SCHEDULING A FINAL HEARING**

ArchBrook Laguna Holdings LLC ("***ArchBrook***") and certain of its affiliates, as debtors

and debtors in possession (collectively, the "***Debtors***"), file this Motion (the "***Motion***"), for the

entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and

**Exhibit B**, respectively, (a) authorizing, but not directing, the Debtors to pay undisputed

prepetiton Distribution Network Charges (as defined below) and Warehouse Charges (as defined

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: ArchBrook Laguna LLC (6166); ArchBrook Laguna Holdings LLC (6156); Chimerica Global Logistics LLC (3745); ArchBrook Laguna West LLC (9631); Lehrhoff ABL LLC (6386); Expert Warehouse LLC (4487); and ArchBrook Laguna New York LLC (5385).

below) in their sole discretion; (b) authorizing, but not directing, the Debtors to pay the amounts in connection with the Outstanding Orders (defined below) to customers; (c) authorizing and directing the banks and other financial institutions to receive, process, honor and pay checks presented for payment and electronic payment requests relating to the foregoing; and (d) scheduling a final hearing.  In support of this Motion, the Debtors submit the Declaration of Daniel J. Boverman, Interim Chief Financial Officer, in Support of the First Day Pleadings (the "***Boverman Declaration***") filed concurrently herewith.  In further support of the Motion, the Debtors respectfully state as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 363(b) and 503(b) of title 11 of the United States Code (the "***Bankruptcy Code***").

## Background

4.      On July 8, 2011 (the "***Petition Date***"), each of the Debtors filed a petition with this Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no statutory committees have been appointed or designated.

5.      Contemporaneously with the filing of this Motion, the Debtors have sought procedural consolidation and joint administration of these chapter 11 cases under the case of ArchBrook Laguna Holdings LLC.  A description of the Debtors' businesses, the reasons for filing these chapter 11 cases and the relief sought from this Court to allow for a smooth transition

into operations under chapter 11 is set forth in the Boverman Declaration, which is being filed contemporaneously with this Motion.

<u>**Basis for Relief**</u>

6.       As described in more detail in the Boverman Declaration, the Debtors are a total solution provider committed to supplying consumer electronics and computer products to the nation's most successful retailers and e-tailers through state-of-the-art logistical services.   The success of the Debtors' businesses hinge on their ability to fulfill their customers' orders in a timely and efficient manner.   As such, it is critical to the Debtors' success that their warehouse facilities are continuously stocked, and replenished, with a supply of goods, including, but not limited to, computers, televisions, personal electronics and houseware items (collectively, the "***Merchandise***"), for sale to their customers and that their customers timely receive such Merchandise.

**A.       The Distribution Network Charges**

7.       Maintaining the Debtors' businesses requires the coordinated efforts of, among others, a variety of third-party common carriers, movers, shippers, and customs brokers (collectively, the "***Distribution Network Vendors***") who ship, transport, move through customs and deliver goods through distribution networks.   In addition to delivery charges, the Debtors' customs fees are also paid initially by the Distribution Network Vendors.   The Distribution Network Vendors invoice the Debtors directly for their fees and custom charges (the "***Distribution Network Charges***").   The delay between the shipment of the Merchandise and the Debtors' payment of the Distribution Network Charges varies depending on each Distribution Network Vendor's payment terms.

8.       While the amount the Debtors pay to their Distribution Network Vendors fluctuates, the average weekly amount paid over the last two months was approximately

$500,000.00. The estimated value of Merchandise in transit on the Petition Date is approximately $12 million. As of the Petition Date, the Debtors estimate that they owe the Distribution Network Vendors approximately $2.6 million which, absent the commencement of these chapter 11 cases, would be paid over the course of the next few weeks, depending on the terms of the Debtors' contract with each individual Distribution Network Vendor.

9. The Debtors are concerned that, pursuant to applicable state law, if the Distribution Network Charges are not paid by the Debtors, the Distribution Network Vendors may have possessory liens against the goods in their possession absent payments of the Distribution Network Charges and may refuse to deliver the goods.[2] Additionally, pursuant to Bankruptcy Code section 362(b)(3), the act of perfecting such liens, to the extent consistent with Bankruptcy Code section 546(b), is expressly excluded from the automatic stay. 11 U.S.C. § 362(b)(3). Bankruptcy Code section 546(b)(1)(A) provides, in pertinent part, that a debtor in possession's avoidance powers 'are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against any entity that acquires rights in such property before the date of perfection." 11 U.S.C. § 546(b)(1)(A). Accordingly, the Distribution Network Vendors, notwithstanding the automatic stay imposed by Bankruptcy Code section 362(a), may (i) be entitled to assert and perfect liens against the Merchandise, which would entitle them to payment ahead of other general unsecured creditors and (ii) hold the Merchandise subject to the asserted liens pending payment, to the direct detriment of the Debtors, their estates, customers and other parties in interest. In contrast, prompt and continued payment of the

---

[2] In addition to any available liens, a substantial portion, if not all, of the customs duties sought to be paid (or reimbursed to the Debtors' customers brokers) hereunder would be entitled to priority pursuant to Bankruptcy Code section 507(a)(8)(F). As priority claims, these customs duties would need to be paid in full before the Debtors could make any distributions to holders of general unsecured claims in connection with a chapter 11 plan.

Distribution Network Charges promotes the uninterrupted flow of Merchandise that is critical to the success of the Debtors' businesses.

10.     Further, section 9-333(b) of the Uniform Commercial Code (the "***UCC***") grants to such creditors, such as Distribution Network Vendors holding possessory liens, a priority in payment over consensual lien creditors. Thus, under the Bankruptcy Code, as secured creditors, the Distribution Network Vendors are entitled to receive payment in full for the Distribution Network Charges pursuant to any confirmed plan(s) of reorganization in these chapter 11 cases. Consequently, payment of such charges and fees gives the Distribution Network Vendors no more than that to which they are already entitled. On the other hand, absent payment of the amounts owed, Merchandise having an approximate aggregate value of $12 million would likely be retained by the Distribution Network Vendors as security for payment of approximately $2.6 million in outstanding prepetition Distribution Network Charges.

**B.     Warehouse Charges**

11.     The Debtors utilize a number of warehouse facilities for the purpose of storing the Merchandise prior to the point of sale to their customers. A majority of these warehouse facilities are leased by the Debtors. However, the Debtors currently have two warehouse facility agreements in place with third-party warehouse facilities (collectively, the "***Third-Party Warehouses***" and, together with the Distribution Network Vendors, the "***Lien Claimants***"). The Third-Party Warehouses are located in Columbus, Ohio and Sparks, Nevada. The Third-Party Warehouses invoice the Debtors directly (such charges, the "***Warehouse Charges***" and, together with the Distribution Network Charges, the "***Lien Claimant Charges***").

12.     While the amount the Debtors pay in Warehouse Charges fluctuates, the average weekly amount paid over the last two months was approximately $10,000. The estimated value of the merchandise currently being stored in the Third-Party Warehouses as of the Petition Date

is approximately $3.6 million. As of the Petition Date, the Debtors estimate that they owe Warehouse Charges of approximately $125,000.00, which, absent the commencement of these chapter 11 cases, would be paid over the course of the next few weeks.

13. As with the Distribution Network Charges, the Debtors are concerned that, pursuant to applicable state law, if the Warehouse Charges are not paid by the Debtors, the Third-Party Warehouses may have possessory liens in the Merchandise in their possession absent payments of the Warehouse Charges. As detailed above, pursuant to Bankruptcy Code section 362(b)(3), the act of perfecting such liens, to the extent consistent with Bankruptcy Code section 546(b), is expressly excluded from the automatic stay. Accordingly, the Third-Party Warehouses, notwithstanding the automatic stay, may (i) be entitled to assert and perfect liens against the Merchandise, which would entitle them to payment ahead of other general unsecured creditors and (ii) hold the Merchandise subject to the asserted liens pending payment, to the direct detriment of the Debtors, their estates and other parties in interest. In contrast, the prompt and continued payment of the Warehouse Charges promotes the uninterrupted flow of Merchandise that is critical to the success of the Debtors' businesses.

14. The Debtors are similarly concerned that pursuant to section 9-333(b) of the UCC, as detailed above, the Third-Party Warehouses have a priority in payment over consensual lien creditors. Thus, under the Bankruptcy Code, as secured creditors, the Third-Party Warehouses are entitled to receive payment in full for the Warehouse Charges pursuant to any confirmed plan(s) of reorganization in these chapter 11 cases. Consequently, payment of the Warehouse Charges gives the Third-Party Warehouses no more than that to which they are already entitled. On the other hand, absent payment of the amounts owed, goods having an approximate aggregate

value of $3.6 million would likely be retained by the Third-Party Warehouses as security for payment of approximately $125,000 in outstanding prepetition Warehouse Charges.

## C.    Outstanding Orders

15.    Prior to the Petition Date, and in the ordinary course of business, the Debtors ordered Merchandise from certain manufacturers, the delivery of which will not occur until after the Petition Date (the "***Outstanding Orders***").  To avoid becoming general unsecured creditors of the Debtors' estates with respect to related Merchandise, certain suppliers may refuse to ship or transport such Merchandise (or may recall such shipments) with respect to such Outstanding Orders unless the Debtors issue substitute purchase orders postpetition.  To prevent any disruption to the Debtors' retail operations, and given that Merchandise delivered after the Petition Date is afforded administrative expense priority under Bankruptcy Code section 503(b), the Debtors seek an order (a) granting administrative expense priority under Bankruptcy Code section 503(b) to all undisputed obligations of the Debtors arising from the acceptance of Merchandise subject to Outstanding Orders and (b) authorizing the Debtors to satisfy such obligations in the ordinary course of business.

## Relief Requested

16.    By this Motion, the Debtors seek entry of interim and final orders substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, pursuant to Bankruptcy Code sections 105(a) and 363(b)(1) and Bankruptcy Rules 6003(b) and 6004(h), (a) authorizing, but not directing, the Debtors to pay undisputed prepetiton Distribution Network Charges and Warehouse Charges in their sole discretion; (b) authorizing, but not directing, the Debtors to pay the amounts in connection with the Outstanding Orders; (c) authorizing and directing the banks and other financial institutions to receive, process, honor and pay checks presented for payment and electronic payment requests relating to the foregoing; and (d) scheduling a final hearing.

17.     Furthermore, subject to the terms set forth below, the Debtors, in their sole discretion, shall undertake appropriate efforts to cause the Lien Claimants to acknowledge in writing that payment of their respective claims is conditioned upon such Lien Claimants continuing to supply services to the Debtors on trade terms that, at a minimum, such Lien Claimants provided to the Debtors on a historical basis prior to the Petition Date, or such other trade practices and programs that are at least as favorable to the Debtors as those in effect during such time, and the Debtors reserve the right to negotiate new trade terms with any Lien Claimant as a condition to payment of any such Lien Claimant Charge (the "***Trade Terms***").

18.     If any Lien Claimant accepts payment on account of its Lien Claimant Charges and thereafter does not continue to provide services to the Debtors on the Trade Terms, then the Debtors may, in their sole discretion and without further order of the Court:  (a) declare that any payments made to such Lien Claimant on Lien Claimant Charges be deemed to have been in payment of any then-outstanding (or subsequently accruing) postpetition claims of such party without further action by any person or entity; and (b) recover any payments made to such Lien Claimant on account of its Lien Claimant Charges, as applicable, to the extent that such payments exceeded the undisputed postpetition claims of such Lien Claimant, without giving effect to any rights of setoff or recoupment, claims, provision for payment of reclamation or trust fund claims or other defenses.   Under any such circumstances, such Lien Claimant shall immediately repay to the Debtors any payment made to it on account of its Lien Claimant Charge to the extent that such payments exceed any undisputed postpetition claims of such Lien Claimant then outstanding or subsequently accruing, without giving effect to any rights of setoff or recoupment, claims, provision for payment of reclamation or trust fund claims, or other defenses.   Upon recovery of any such payments by the Debtors, the applicable portion of the

Lien Claimant Charge shall be reinstated as a prepetition claim in the amount recovered by the Debtors.

**Supporting Authority**

**A.     Payment of Prepetition Claims of the Lien Claimants is in the Best Interests of the Debtors' Estates and is Warranted Under the Doctrine of Necessity**

19.     Courts have authorized payment of prepetition obligations under Bankruptcy Code section 363(b) where a sound business purpose exists for doing so. *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of certain claims); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc.* (*In re James A. Phillips, Inc.*), 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 to allow contractor to pay prepetition claims); *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks.").

20.     In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on Bankruptcy Code section 105(a).  Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."   Under Bankruptcy Code section 105(a), courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses. *See In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999).  Specifically, the Court may use its power under section 105(a) to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *See Ionosphere Clubs*, 98 B.R. at 176.  A bankruptcy court's use of its equitable powers to "authorize the

payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Id*. at 175-176 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).

21.     The "doctrine of necessity" or the "necessity of payment" rule has long been recognized as precedent within the Second Circuit Court of Appeals. *See In re Ionosphere Clubs*, 98 B.R. at 175-76. Today, the rationale for the necessity of payment rule—the rehabilitation of a debtor's reorganization cases—is "the paramount policy and goal of Chapter 11." *Id.*; *see also In re Just For Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.*), 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition workers' compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); 2 COLLIER ON BANKRUPTCY, 105.02[4][a] (16th ed. rev. 2009) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

22.     This flexible approach is particularly critical where prepetition creditors—here, the Distribution Network Vendors and Third-Party Warehouses—provide vital services to a debtor that would be unavailable if the debtor did not satisfy its prepetition obligations. In *In re Structurlite Plastics Corp.*, the bankruptcy court stated that "a bankruptcy court may exercise its equity powers under § 105(a) [of the Bankruptcy Code] to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood of survival of the debtors and payment of creditors in full or at least proportionately.'" 86 B.R. 922, 931 (Bankr.

S.D. Ohio 1988).  The court explained that "a per se rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the [Bankruptcy] Code."  *Id*. at 932.

23.     Paying the Distribution Network Vendors and Third-Party Warehouses will benefit the Debtors' estates and their creditors by allowing the Debtors' business operations to continue without interruption.  If the Distribution Network Charges and Warehouse Charges are not paid, the Debtors believe that the Merchandise held by the Lien Claimants may be subject to possessory liens under applicable law.  The Debtors' businesses are inextricably tied to their ability to deliver the Merchandise to their customers in a timely and efficient manner.  To this end, the Debtors rely heavily on the Distribution Network Vendors and Third-Party Warehouses to deliver and store, respectively, their Merchandise.  At this critical point in the Debtors' business operations, any interruption in the timely delivery of products resulting from the retention of such goods by the Lien Claimants would immediately disrupt and irreparably harm the Debtors' businesses, as well as harm the Debtors' long-term operations.  Moreover, the payment of charges and fees, which may be subject to possessory liens under applicable law, is merely an issue of timing, because the Debtors anticipate they will be able to pay their secured creditors in full.  Thus, the interests of the Debtors and their estates will be best served by an order of this Court allowing the payment of the Distribution Network Charges and Warehouse Charges.  The Debtors respectfully submit that the amount of the Distribution Network Charges and Warehouse Charges are modest in comparison to the value of the Debtors' products held by the Distribution Network Vendors and Third-Party Warehouses and the value the Debtors' estates will receive from an uninterrupted supply of Merchandise.

24.     Courts in this jurisdiction and others have approved relief similar to the relief requested in this Motion for debtors seeking the authority and the discretion to pay prepetition claims of potential lien claimants. *See, e.g., The Great Atlantic & Pacific Tea Co., Inc.*, Case No. 10-24549 (RDD) (Bankr. S.D.N.Y. Dec. 15, 2010) [Docket No. 77]; *In re Innkeepers USA Trust*, Case No. 10-13800 (SCC) (Bankr. S.D.N.Y. Aug. 12, 2010) [Docket No. 183]; *In re Lear Corp*., Case No. 09-14326 (ALG) (Bankr. S.D.N.Y. July 7, 2009) [Docket No. 56]; *In re General Motors Corp*., Case No. 09-50026 (REG) (Bankr. S.D.N.Y. June 1, 2009) [Docket No. 167]; *In re Chrysler LLC*, Case No. 09-50002 (AJG) (Bankr. S.D.N.Y. May 5, 2009) [Docket No. 280]; *In re Tronox Inc*., Case No. 09-10156 (ALG) (Bankr. S.D.N.Y. Jan. 13, 2009) [Docket No. 48]; *In re Wellman, Inc*., Case No. 08-10595 (SMB) (Bankr. S.D.N.Y. Feb. 28, 2008) [Docket No. 57]; *In re Dana Corp*., Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 3, 2006) [Docket No. 54]; *In re Musicland Holding Corp*., Case No. 06-10064 (SMB) (Bankr. S.D.N.Y. Feb. 8, 2006) [Docket No. 417]; *In re Delphi Corp.*, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Oct. 13, 2005) [Docket No. 202]; *In re Winn-Dixie Stores, Inc*., Case No. 05-11063 (RDD) (Bankr. S.D.N.Y. Mar. 15, 2005) [Docket No. 433]; *In re Tower Auto. Inc*., Case No. 05-10578 (ALG) (Bankr. S.D.N.Y. Feb. 3, 2005) [Docket No. 52].  Accordingly, the Debtors submit that similar relief is warranted in these chapter 11 cases.

**B.     The Court Should Confirm that Outstanding Orders are Administrative Expense Priority Claims and that Payment of Such Claims is Authorized**

25.     Pursuant to Bankruptcy Code section 503(b), obligations that arise in connection with the postpetition delivery of goods and services, including goods ordered prepetition, are administrative expense priority claims because they benefit the estate postpetition.  Thus, the granting of the relief sought herein with respect to the Outstanding Orders will not afford such claimants any greater priority than they otherwise would have if the relief requested herein were

not granted, and will not prejudice any other party in interest. Absent such relief, however, the Debtors may be required to expend substantial time and effort reissuing the Outstanding Orders to provide certain suppliers with assurance of such administrative priority. The attendant disruption to the continuous and timely flow of the Merchandise to the Debtors' customers, and any resulting inability to keep their warehouses adequately stocked with Merchandise for the benefit of the Debtors' customers, would damage the Debtors' business reputation, erode the Debtors' customer base and ultimately lead to a loss of revenue, all to the detriment of the Debtors and their creditors. Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of the Outstanding Orders and should authorize the Debtors to pay the Outstanding Orders in the ordinary course of business.

**C.     Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers**

26.     The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to debtor in possession financing and cash collateral. Also, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Distribution Network Charges, Warehouse Charges and Outstanding Orders. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that the Court should authorize, but not direct, all applicable financial institutions, when requested by the Debtors, to receive, process, honor and pay any and all checks or wire transfer requests in respect of the relief requested herein, solely to the extent the Debtors have sufficient funds standing to their credit with such financial institution, and such financial institution may rely on the representations of such Debtors as to which checks are

issued and authorized and which transfers are authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

## The Requirements of Bankruptcy Rule 6003 are Satisfied

27. Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a prepetition claim within twenty-one days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm. Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

28. As described above, payment of Distribution Network Charges, Warehouse Charges, and Outstanding Orders is integral to the Debtors' operations and is necessary to maintain the Debtors' operations, as well as the confidence and goodwill of the Debtors' customer base, which are critical to a successful reorganization. Failure to implement the relief with respect to the Lien Claimants and Outstanding Orders during the first 21 days of the chapter 11 cases will jeopardize the Debtors' future as a going concern. Moreover, it is the Debtors' business judgment that continuation of their positive relationship with the Lien Claimants is imperative to their continued operations and greatly increases the likelihood of a successful reorganization. Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 to support immediate payment of Lien Claimant Charges and Outstanding Orders.

### Reservation of Rights

29.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365.  The Debtors expressly reserve their rights to contest claims asserted by the Lien Claimants or related to the Distribution Network Charges, the Warehouse Charges, or the outstanding orders under applicable non-bankruptcy law.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

30.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14 day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).   Pursuant to Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  As set forth above, the payments proposed herein are essential to prevent potentially irreparable damage to the Debtors' operations, value, and ability to reorganize.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14 day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

### Motion Practice

31.     This motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this

motion. Accordingly, the Debtors respectfully submit that this motion satisfies Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

**<u>Notice</u>**

32.     The Debtors have provided notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of New York; (b) the entities listed on the Declaration Concerning List of the Debtors' 30 Largest Unsecured Claims on an Consolidated Basis filed pursuant to Bankruptcy Rule 1007(d); (c) GE Capital Commercial Services, Inc., as administrative agent under the Debtors' prepetition credit facility and debtor in possession credit facility, (d) Latham & Watkins LLP, as counsel to GE Capital Commercial Services, Inc.; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; and (g) the United States Attorney for the Southern District of New York.  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary..

WHEREFORE, the Debtors respectfully request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) authorizing, but not directing, the Debtors to pay undisputed prepetiton Distribution Network Charges and Warehouse Charges in their sole discretion; (b) authorizing, but not directing, the Debtors to pay the amounts in connection with the Outstanding Orders to suppliers; (c) authorizing and directing the banks and other financial institutions to receive, process, honor and pay checks presented for payment and electronic payment requests relating to the foregoing; (d) scheduling a final hearing; and (e) granting them such other and further relief as the Court deems just, proper and equitable.

New York, New York
Dated: July 8, 2011

*/s/ Ira S. Dizengoff*
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Michael P. Cooley
Alexis Freeman

*Proposed Counsel to the Debtors and Debtors in Possession*

**EXHIBIT A**

**Proposed Interim Order**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ARCHBROOK LAGUNA HOLDINGS LLC, *et al.*,[1] | ) | Case No. 11-13292 (    ) |
|  | ) |  |
| Debtors. | ) | Joint Administration Requested |
|  | ) |  |

## INTERIM ORDER (A) AUTHORIZING DEBTORS TO PAY PREPETITION CLAIMS OF DISTRIBUTION NETWORK VENDORS AND THIRD-PARTY WAREHOUSES; (B) AUTHORIZING THE DEBTORS TO GRANT ADMINISTRATIVE EXPENSE PRIORITY TO ALL UNDISPUTED OBLIGATIONS FOR MERCHANDISE ORDERED PREPETITION AND DELIVERED POSTPETITION AND SATISFY SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS; AND (C) SCHEDULING A FINAL HEARING

Upon the motion (the "***Motion***") of ArchBrook Laguna Holdings LLC ("***ArchBrook***") and certain of its affiliates, as debtors and debtors in possession (collectively, the "***Debtors***"), seeking entry of an interim order (this "***Order***") (a) authorizing, but not directing, the Debtors to pay undisputed prepetition Distribution Network Charges[2] and Warehouse Charges in their sole discretion; (b) authorizing, but not directing, the Debtors to pay the amounts in connection with the Outstanding Orders to customers; (c) authorizing and directing the banks and other financial institutions to receive, process, honor and pay checks presented for payment and electronic payment requests relating to the foregoing; and (d) scheduling a final hearing; and upon the Boverman Declaration; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and this Motion in this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: ArchBrook Laguna LLC (6166); ArchBrook Laguna Holdings LLC (6156); Chimerica Global Logistics LLC (3745); ArchBrook Laguna West LLC (9631); Lehrhoff ABL LLC (6386); Expert Warehouse LLC (4487); and ArchBrook Laguna New York LLC (5385).

[2] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and notice of the Motion appearing to be adequate and appropriate under the circumstances; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor

IT IS HEREBY ORDERED THAT:

1.    The Motion is granted as set forth herein on an interim basis until such time as the Court conducts a final hearing on this matter (the "***Final Hearing Date***").

2.    The Final Hearing Date shall be on _____, 2011 at __:__ a.m./p.m. (prevailing Eastern Time).

3.    Any objections or responses to this Order becoming a final order shall be filed on or before _____, 2011 at __:__ a.m/p.m (prevailing Eastern Time) (the "***Objection Deadline***") and served on the following parties: (a) the Office of the United States Trustee for the Southern District of New York; (b) the entities listed on the Declaration Concerning List of the Debtors' 30 Largest Unsecured Claims on an Consolidated Basis filed pursuant to Bankruptcy Rule 1007(d); (c) GE Capital Commercial Services, Inc., as administrative agent under the Debtors' prepetition credit facility and debtor in possession credit facility, (d) Latham & Watkins LLP, as counsel to GE Capital Commercial Services, Inc.; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) the United States Attorney for the Southern District of New York; and (h) parties in interest who have filed a notice of appearance in these cases pursuant to Bankruptcy Rule 2002.

4.     The Debtors shall serve a notice of the Final Hearing Date.  Such notice shall be served via first class mail, postage prepaid.  No further notice of the Final Hearing Date or of the entry of this Order need be served by the Debtors.

5.     Subject to further order, the Debtors are authorized, but not directed, in their sole discretion, to pay all undisputed prepetition Distribution Network Charges consistent with their customary practices in the ordinary course of business; *provided, however*, that, prior to the entry of a final order, the Debtors shall only make those payments that actually become due and owing prior to the Final Hearing Date.

6.     Subject to further order, the Debtors are authorized, but not directed, in their sole discretion, to pay all undisputed prepetition Warehouse Charges consistent with their customary practices in the ordinary course of business; *provided, however*, that, prior to the entry of a final order, the Debtors shall only make those payments that actually become due and owing prior to the Final Hearing Date.

7.     The Debtors, in their sole discretion, shall undertake appropriate efforts to cause the Lien Claimants to acknowledge in writing that payment of their respective Lien Claimant Charges is conditioned upon such Lien Claimants continuing to supply services to the Debtors on trade terms that, at a minimum, such Lien Claimants provided to the Debtors on a historical basis prior to the Petition Date, or such other trade practices and programs that are at least as favorable to the Debtors as those in effect during such time, and the Debtors reserve the right to negotiate new trade terms with any Lien Claimant as a condition to payment of any such Lien Claimant Charge (the "***Trade Terms***").

8.     If any Lien Claimant accepts payment on account of its Lien Claimant Charges and thereafter does not continue to provide services to the Debtors on the Trade Terms, then the

Debtors may, in their sole discretion and without further order of the Court: (a) declare that any payments made to such Lien Claimant on Lien Claimant Charges be deemed to have been in payment of any then-outstanding (or subsequently accruing) postpetition claims of such party without further action by any person or entity; and (b) recover any payments made to such Lien Claimant on account of its Distribution Network Charge and Warehouse Charge, as applicable, to the extent that such payments exceeded the undisputed postpetition claims of such Lien Claimant, without giving effect to any rights of setoff or recoupment, claims, provision for payment of reclamation or trust fund claims or other defenses. Under any such circumstances, such Lien Claimant shall immediately repay to the Debtors any payment made to it on account of its Lien Claimant Charge the extent that such payments exceed any undisputed postpetition claims of such Lien Claimant then outstanding or subsequently accruing, without giving effect to any rights of setoff or recoupment, claims, provision for payment of reclamation or trust fund claims, or other defenses. Upon recovery of any such payments by the Debtors, the applicable portion of the Lien Claimant Charge shall be reinstated as a prepetition claim in the amount recovered by the Debtors.

9.     Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as: (i) an admission as to the validity of any claims and/or liens against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim and/or lien on any grounds, including such claim's validity and/or seeking the avoidance of all such liens and payments; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim would constitute a Distribution Network Charge or a Warehouse Charge; or (v) a request to assume any executory contract or unexpired lease, pursuant to Bankruptcy Code section 365.

10.     All undisputed amounts arising from the Debtors' acceptance of Merchandise subject to Outstanding Orders are hereby deemed postpetition administrative expense claims pursuant to Bankruptcy Code section 503(b) and the Debtors are authorized, but not directed, to pay, such amounts in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date.

11.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall constitute, nor is it intended to constitute, the assumption or adoption of any contract or agreement under Bankruptcy Code section 365.

12.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized, but not directed to receive, process, honor and pay all such checks and electronic payment requests when presented for payment, to the extent the Debtors have sufficient funds standing to their credit with such financial institutions, and that all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order.

13.     The entry of this Order is necessary to avoid immediate and irreparable harm and to the extent the relief granted herein implicates the use of property of the estates and Bankruptcy Code section 363, the requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

14.     Notwithstanding the possible applicability of Rules 6004(a) and 6004(h) of the Federal Rules of Bankruptcy Procedure or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

15.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

16.     Notwithstanding any provision herein to the contrary, the Debtors shall not be authorized to make any payments under this Order from any amounts loaned to the Debtors pursuant to the debtor in possession financing unless such payments or disbursements are included in the budget contained therein or otherwise authorized to be paid pursuant to the debtor in possession financing agreement.

17.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.


New York, New York                          _____
Date: _____, 2011                  UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ARCHBROOK LAGUNA HOLDINGS LLC, *et al.*,[1] | ) | Case No. 11-13292 (    ) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

---

### FINAL ORDER (A) AUTHORIZING DEBTORS TO PAY PREPETITION CLAIMS OF DISTRIBUTION NETWORK VENDORS AND THIRD-PARTY WAREHOUSES AND (B) AUTHORIZING THE DEBTORS TO GRANT ADMINISTRATIVE EXPENSE PRIORITY TO ALL UNDISPUTED OBLIGATIONS FOR MERCHANDISE ORDERED PREPETITION AND DELIVERED POSTPETITION AND SATISFY SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS

Upon the motion (the "***Motion***") of ArchBrook Laguna LLC ("***ArchBrook***") and certain of its affiliates, as debtors and debtors in possession (collectively, the "***Debtors***"), for the entry of an order (this "***Order***") (a) authorizing, but not directing, the Debtors to pay undisputed prepetiton Distribution Network Charges[2] and Warehouse Charges in their sole discretion; (b) authorizing, but not directing, the Debtors to pay the amounts in connection with the Outstanding Orders (defined below) to customers; and (c) authorizing and directing the banks and other financial institutions to receive, process, honor and pay checks presented for payment and electronic payment requests relating to the foregoing; and upon the Boverman Declaration; it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: ArchBrook Laguna LLC (6166); ArchBrook Laguna Holdings LLC (6156); Chimerica Global Logistics LLC (3745); ArchBrook Laguna West LLC (9631); Lehrhoff ABL LLC (6386); Expert Warehouse LLC (4487); and ArchBrook Laguna New York LLC (5385).

[2] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein on a final basis.

2.      Subject to further order, the Debtors are authorized, but not directed, in their sole discretion, to pay all undisputed prepetition Distribution Network Charges consistent with their customary practices in the ordinary course of business.

3.      Subject to further order, the Debtors are authorized, but not directed, in their sole discretion, to pay all undisputed prepetition Warehouse Charges consistent with their customary practices in the ordinary course of business.

4.      The Debtors, in their sole discretion, shall undertake appropriate efforts to cause the Lien Claimants to acknowledge in writing that payment of their respective Lien Claimant Charges is conditioned upon such Lien Claimants continuing to supply services to the Debtors on trade terms that, at a minimum, such Lien Claimants provided to the Debtors on a historical basis prior to the Petition Date, or such other trade practices and programs that are at least as favorable to the Debtors as those in effect during such time, and the Debtors reserve the right to negotiate new trade terms with any Lien Claimant as a condition to payment of any such Lien Claimant Charges (the "***Trade Terms***").

5.      If any Lien Claimant accepts payment on account of its Lien Claimant Charges and thereafter does not continue to provide services to the Debtors on the Trade Terms, then the Debtors may, in their sole discretion and without further order of the Court:  (a) declare that any

payments made to such Lien Claimant on Lien Claimant Charges be deemed to have been in payment of any then-outstanding (or subsequently accruing) postpetition claims of such party without further action by any person or entity; and (b) recover any payments made to such Lien Claimant on account of its Distribution Network Charge and Warehouse Charge, as applicable, to the extent that such payments exceeded the undisputed postpetition claims of such Lien Claimant, without giving effect to any rights of setoff or recoupment, claims, provision for payment of reclamation or trust fund claims or other defenses. Under any such circumstances, such Lien Claimant shall immediately repay to the Debtors any payment made to it on account of its Lien Claimant Charge the extent that such payments exceed any undisputed postpetition claims of such Lien Claimant then outstanding or subsequently accruing, without giving effect to any rights of setoff or recoupment, claims, provision for payment of reclamation or trust fund claims, or other defenses. Upon recovery of any such payments by the Debtors, the applicable portion of the Lien Claimant Charge shall be reinstated as a prepetition claim in the amount recovered by the Debtors.

6. Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as: (i) an admission as to the validity of any claims and/or liens against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim and/or lien on any grounds, including such claim's validity and/or seeking the avoidance of all such liens and payments; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim would constitute a Distribution Network Charge or a Warehouse Charge; or (v) a request to assume any executory contract or unexpired lease, pursuant to Bankruptcy Code section 365.

7.     All undisputed amounts arising from the Debtors' acceptance of Merchandise subject to Outstanding Orders are hereby deemed postpetition administrative expense claims pursuant to Bankruptcy Code section 503(b) and the Debtors are authorized, but not directed, to pay, such amounts in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date.

8.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall constitute, nor is it intended to constitute, the assumption or adoption of any contract or agreement under Bankruptcy Code section 365.

9.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized, but not directed to receive, process, honor and pay all such checks and electronic payment requests when presented for payment, to the extent the Debtors have sufficient funds standing to their credit with such financial institutions, and that all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order.

10.    The entry of this Order is necessary to avoid immediate and irreparable harm and to the extent the relief granted herein implicates the use of property of the estates and Bankruptcy Code section 363, the requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

11.    Notwithstanding the possible applicability of Rules 6004(a) and 6004(h) of the Federal Rules of Bankruptcy Procedure or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

13.     Notwithstanding any provision herein to the contrary, the Debtors shall not be authorized to make any payments under this Order from any amounts loaned to the Debtors pursuant to the debtor in possession financing unless such payments or disbursements are included in the budget contained therein or otherwise authorized to be paid pursuant to the debtor in possession financing agreement.

14.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.


New York, New York
Date: _____, 2011

_____
UNITED STATES BANKRUPTCY JUDGE