AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Michael P. Cooley
Alexis Freeman

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ARCHBROOK LAGUNA HOLDINGS LLC, *et al.*,[1] | ) Case No. 11-13292 (    ) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

**DEBTORS' MOTION FOR ENTRY OF AN INTERIM AND FINAL
ORDER AUTHORIZING THE DEBTORS TO (A) CONTINUE THEIR
EXISTING CASH MANAGEMENT SYSTEM AND (B) MAINTAIN
EXISTING BANK ACCOUNTS AND BUSINESS FORMS**

ArchBrook Laguna Holdings LLC ("***ArchBrook***") and certain of its affiliates, as debtors

and debtors in possession (collectively, the "***Debtors***"), file this Motion (the "***Motion***"), seeking

entry of an interim and final order, substantially in the form attached hereto as **Exhibit A** (the

"***Order***"), authorizing the Debtors to (a) continue using their existing cash management system

and (b) maintain their existing bank accounts and business forms. In support of this Motion, the

Debtors submit the Declaration of Daniel J. Boverman, Interim Chief Financial Officer, in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: ArchBrook Laguna LLC (6166); ArchBrook Laguna Holdings LLC (6156); Chimerica Global Logistics LLC (3745); ArchBrook Laguna West LLC (9631); Lehrhoff ABL LLC (6386); Expert Warehouse LLC (4487); and ArchBrook Laguna New York LLC (5385).

Support of the First Day Pleadings (the "***Boverman Declaration***"). In further support of this Motion, the Debtors respectfully state as follows:

**Jurisdiction**

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.    Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The bases for the relief requested herein are sections 345, 363, 364, 503 and 507 of title 11 of the United States Code (the "***Bankruptcy Code***") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

**Background**

4.    On July 8, 2011 (the "***Petition Date***"), each of the Debtors filed a petition with this Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no statutory committees have been appointed or designated.

5.    Contemporaneously with the filing of this Motion, the Debtors have sought procedural consolidation and joint administration of these chapter 11 cases under the case of ArchBrook Laguna Holdings LLC. A description of the Debtors' businesses, the reasons for filing these chapter 11 cases and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set forth in the Boverman Declaration, which is being filed contemporaneously with this Motion.

## Basis For Relief

### I.    Description of the Debtors' Cash Management System

6.    In the ordinary course of business, and as is common with businesses of this kind, the Debtors maintain an integrated, centralized cash management system that provides well-established mechanisms for the collection, management and disbursement of funds used in their operations (the *"Cash Management System"*). Such a system provides numerous benefits, including the ability to: (a) quickly create status reports on the location and amount of funds, thereby allowing management to track and control company funds; (b) ensure cash availability; and (c) reduce administrative costs by facilitating the efficient movement of funds.

7.    As of the Petition Date, the Debtors maintained with various banks (the *"Banks"*) the bank accounts (collectively, the *"Bank Accounts"*) identified on **Exhibit B** attached hereto. The principal components of the Cash Management System are described below.[2]

#### A.    Collections and Deposits

8.    Each Debtor generates and receives funds from the sale of various home solutions products, including consumer electronics, computers and house wares, to a variety of customers that consist of major retailers such as Amazon.com, Inc., Rent-A-Center, Inc., HSN, Inc., Systemax, Inc. and Newegg Inc., and independent dealers of such products. The payments by the Debtors' customers are made either in the form of cash, check, credit card, or wire and automated clearing house (*"ACH"*) transfers. On a daily basis, all cash, check or wire and ACH transfers (collectively, the *"Cash Receipts"*) of ArchBrook Laguna LLC (*"ABL"*) and Expert Warehouse LLC (*"EW"*) customers are deposited into the ABL and EW depository accounts respectively, each maintained at Bank of America, N.A. (*"Bank of America"*) (collectively, the

---

[2]    A chart depicting the Debtors' Cash Management System is attached hereto as **Exhibit C**.

"**Bank of America Depository Accounts**"). Additionally, certain ABL customers use credit cards to pay ABL invoices. These credit card receipts are deposited into various Bank of America merchant accounts, which are swept daily into the ABL depository account. Additionally, certain ABL customers that purchase the Debtors' products through Appliance.com use Pay Pal to pay for the Debtors' products. ABL subsequently invoices Appliance.com on net 15 day terms and payments of those invoices are deposited into a separate account at Bank of America (the "**Pay Pal Account**"). Funds from the Pay Pal Account are swept daily into ABL's depository account.

9.       As with ABL and EW, Lehrhoff ABL LLC ("**Lehrhoff**") maintains a depository account at Wells Fargo Bank ("**Wells Fargo**") (the "**Lehrhoff Depository Account**"). Integrated Premium Concepts ("**IPC**") and Sterling Imports ("**Sterling**"), each a division of Lehrhoff, maintain their individual depository accounts at Wells Fargo. Cash receipts of IPC and Sterling are deposited daily into the Lehrhoff Depository Account (together with the Bank of America Depository Accounts, the "**Depository Accounts**"). All Depository Accounts are blocked and swept daily, and the proceeds therein are applied against the Debtors' revolving loan balance with GE Capital Commercial Services, Inc. ("**GE Capital**").

10.       In addition to the revolving loan with GE Capital, EW has a separate financing arrangement with GE Commercial Distribution Finance Corporation ("**GECDF**"). GECDF provides a line of credit to EW (the "**Inbound Floor Plan Financing Facility**"), which EW uses to purchase inventory from various appliance manufacturers. Similarly, GECDF also provides individual lines of credit ("**Outbound Floor Plan Financing Facilities**") to various appliance dealers that purchase products from EW using these Outbound Floor Plan Financing Facilities. EW's receipts from the Outbound Floor Plan Financing Facilities are swept daily into two

GECDF blocked depository accounts at Bank of America. The funds from these accounts are subsequently used to pay down the Inbound Floor Plan Financing Facility that EW has with GECDF.

**B.     Disbursement Accounts**

11.     The Debtors make payments to their lenders, debt holders, vendors, employees and other third parties directly from a series of disbursement accounts maintained at Bank of America and Wells Fargo (each a *"Disbursement Account"* and collectively, the *"Disbursement Accounts"*). On a regular basis, the Debtors will determine the cash needs of the businesses based on anticipated costs and expenses. Based on these determinations, ABL, as the administrative borrower, will submit an advance request against the Debtors' revolving credit facility with GE Capital. Subject to availability under the revolving credit facility, GE Capital will transfer the requested funds to either one or all of the following Disbursement Accounts depending on which entity requires the advance: (a) EW Disbursement Account with Bank of America, (b) ABL Master Funding Account with Bank of America, or (c) Lehrhoff Disbursement Account with Wells Fargo. The ABL Master Funding Account is used to manually transfer money received from GE Capital to the Georgia disbursement account (the *"Georgia Disbursement Account"),* which is used for both product payables and for selling general and administrative expenses. The Debtors also maintain a New Jersey disbursement account; however, there is no activity currently in the New Jersey disbursement account.

**II.     The Debtors' Existing Business Forms and Checks**

12.     In the ordinary course of business, the Debtors use a variety of business forms, including various check types. Additionally, the Debtors use a variety of correspondence and business forms, including, but not limited to, letterhead, purchase orders and invoices. The Debtors keep a large quantity of the appropriate business forms on hand at each of their offices

and facilities. To minimize delay and expenses to their estates and to avoid unnecessary confusion of their employees and trade partners, the Debtors seek authority to continue to use all business forms as such forms were in existence immediately before the Petition Date and without reference to the Debtors' status as debtors in possession, the bankruptcy case name and number, and the type of account, rather than incurring the expense and delay of ordering entirely new business forms immediately. The Debtors will order new business forms with a "Debtor in Possession" designation once their existing stocks are depleted.

## Relief Requested

13.     By this Motion, the Debtors request authority to (a) continue using their existing Cash Management System and (b) maintain their existing Bank Accounts and business forms, and pay any related fees as set forth herein. The Debtors also request that the Order be entered on an interim basis, and, in the absence of objections to the interim relief granted, become final on the date specified in the Order.

## Supporting Authority

### I.     The Continued Use of the Debtors' Cash Management System and Existing Bank Accounts is Essential to the Debtors' Ongoing Operations and Restructuring Efforts

14.     The Debtors have complex business and financial affairs, requiring the collection, disbursement and movement of funds through several bank accounts. The United States Trustee Guidelines (the "*U.S. Trustee Guidelines*") require debtors to, among other things, establish one debtor in possession account for all estate monies required for the payment of taxes (including payroll taxes), close all existing bank accounts and open new debtor in possession accounts, maintain a separate debtor in possession account for cash collateral, obtain checks that bear the designation "debtor in possession" and reference the bankruptcy case number and the type of account on such checks. These requirements are designed to provide a clear line of demarcation

between prepetition and postpetition claims and payments, and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date. Strict enforcement of those guidelines in these chapter 11 cases, however, would severely disrupt the ordinary financial operations of the Debtors, reducing efficiencies and causing unnecessary expense.

15.     In other large, complex and/or well publicized chapter 11 cases, such as here, courts in this district routinely waive certain U.S. Trustee Guideline requirements and allow the continued use of cash management systems and prepetition bank accounts employed in the ordinary course of a debtor's prepetition business. *See, e.g., In re TerreStar Networks Inc.*, No. 10-15446 (SHL) (Bankr. S.D.N.Y. Nov. 17, 2010) [Docket No. 177]; *In re Uno Rest. Holdings Corp.*, No. 10-10209 (MG) (Bankr. S.D.N.Y. Feb. 17, 2010) [Docket No. 146]; *In re ION Media Networks, Inc.*, No. 09-13125 (JMP) (Bankr. S.D.N.Y. July 2, 2009) [Docket No. 130]; *In re DBSD N. Am., Inc.*, No. 09-13061 (REG) (Bankr. S.D.N.Y. June 15, 2009) [Docket No. 109]; *In re Chemtura Corp.*, No. 09-11233 (REG) (Bankr. S.D.N.Y. May 1, 2009) [Docket No. 295]. Recognizing that the U.S. Trustee Guidelines are often impractical and potentially detrimental to a debtor's postpetition business operations and restructuring efforts, courts in this district have authorized alternative procedures that provide the same protection.

16.     Bankruptcy courts treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). This is particularly true where, as here, a chapter 11 case involves affiliated debtors with complex financial affairs. In *Charter Co.*, for example, the bankruptcy court entered an order authorizing the debtor and 43 of its subsidiaries "to 'continue to consolidate the management of their cash as has been usual and customary in the past, and to

transfer monies from affiliated entity to entity, including operating entities that are not debtors.'"

*Charter Co. v. Prudential Ins. Co. (In re Charter Co.)*, 778 F.2d 617, 620 (11th Cir. 1985). The

Eleventh Circuit Court of Appeals then affirmed a subsequent district court decision denying a

creditor's motion for leave to appeal the bankruptcy court's cash management order, holding that

authorizing the debtors to utilize their prepetition "routine cash management system" was

"entirely consistent" with applicable provisions of the Bankruptcy Code. *Id.* at 621.

17.     Likewise, in another context, the bankruptcy court in the *Columbia Gas*

chapter 11 case explained that an integrated cash management system "allows efficient

utilization of cash resources and recognizes the impracticalities of maintaining separate cash

accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*,

136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir.

1993); *see also In re US Airways, Inc.*, No. 04-13819 (SSM) (Bankr. E.D. Va. Sept. 14, 2004)

[Docket No. 105]; *In re NTELOS, Inc.*, No. 03-32094 (DOT) (Bankr. E.D. Va. Mar. 4, 2003)

[Docket No. 38]. As a result, courts have concluded that the requirement to maintain all

accounts separately "would be a huge administrative burden and economically inefficient."

*Columbia Gas*, 997 F.2d at 1061; *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49

F.3d 1111, 1114 (5th Cir. 1995) (cash management system allows debtor "to administer more

efficiently and effectively its financial operations and assets").

18.     Consistent with the foregoing authority, the Debtors hereby seek authority to

continue utilizing their current integrated Cash Management System and prepetition Bank

Accounts, as described above, and a waiver of the U.S. Trustee's requirement that the Bank

Accounts be closed and that new postpetition bank accounts be opened. It is critical both to the

continuing operation of the Debtors' businesses and the preservation of the value of the Debtors'

businesses that the Debtors be allowed to continue to utilize their existing Cash Management System and prepetition Bank Accounts without disruption. Substantial disruption to the Debtors' Cash Management System would severely impair the Debtors' ability to preserve and enhance their value and to successfully reorganize. Moreover, creating an entirely new cash management system would inevitably have some level of negative effect on the Debtors' recordkeeping, which would subvert the goal of the U.S. Trustee Guidelines.

19. Indeed, if the Debtors were required to open additional separate bank accounts as a consequence of their chapter 11 filings, it would necessitate opening numerous new accounts for cash concentration and disbursements. The delays that would result from opening additional new accounts would negatively impact the Debtors' ability to operate their businesses while pursuing these arrangements. Conversely, maintaining the Bank Accounts would greatly facilitate the Debtors' transition to operations under chapter 11. Therefore, to avoid delays in paying debts incurred postpetition, and to ensure as smooth a transition into chapter 11 as possible, the Debtors should be permitted to continue to maintain the existing Bank Accounts and, if necessary, to open new accounts and close existing accounts in the normal course of business operations. To require the Bank Accounts to be transferred would be tremendously disruptive, time consuming and expensive.

20. In a similar vein, were the U.S. Trustee Guidelines strictly enforced, the Debtors would be subject to significant administrative burdens and expenses because they would need to execute new signatory cards and depository agreements and create an entirely new manual system for issuing checks and paying postpetition obligations. *See* U.S. Trustee Guidelines, at pp. 2-3.

21.     The Debtors request that all applicable banks and other financial institutions be authorized to receive, process, honor, and pay all checks presented for payment and to honor all electronic payment requests made by the Debtors, related to the postpetition obligations described herein. The Debtors further request that all such banks and financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion. To ensure that prepetition checks are not honored, except as provided herein or pursuant to further order of the Court, the Debtors will serve a copy of this Motion with exhibits and any order entered approving the relief requested herein on the Banks that make disbursements under the Cash Management System as soon as practicable. The Debtors also have served or will serve upon such Banks a copy of any pleadings filed by the Debtors on the Petition Date seeking to honor prepetition obligations.

22.     The Debtors represent that, if the relief requested herein is granted, they will implement appropriate mechanisms to ensure that no payments will be made on any debts incurred by them before the Petition Date, other than those authorized by this Court. Procedures the Debtors have implemented and will implement include: (a) notification to banks of all prepetition checks that should not be honored; (b) segregation of the Debtors' accounts payables into prepetition and postpetition; (c) training of the Debtors' accounting staff on procedures for identifying and segregating prepetition obligations; and (d) specific authorization procedures to issue a check for any prepetition liabilities to assure that it is authorized by a specific Court order.

23.     Accordingly, the Debtors request that this Court waive the strict enforcement of bank account closing requirements and replace them with alternative procedures that provide the same protection. The Debtors further request that the Bank Accounts be deemed debtor in

possession accounts and that the Debtors be authorized to maintain and continue using these accounts in the same manner and with the same account numbers, styles and document forms as those employed during the prepetition period.

24. The Debtors respectfully submit that permitting the Debtors to utilize their existing Cash Management System and Bank Accounts, open new accounts and close existing accounts in the normal course of business operations, and continue existing disbursement practices would avoid delays in paying debts incurred postpetition or otherwise approved by the Court, preserve the "business as usual" atmosphere, and facilitate the Debtors' seamless transition into chapter 11. Under the circumstances, the requested relief is both essential and in the best interests of the Debtors' estates, their creditors, and other parties in interest.

## II. The Debtors Should Be Granted Authority to Use Existing Business Forms and Checks

25. To minimize expenses to their chapter 11 estates, the Debtors request authority to continue to use all correspondence and business forms (including letterhead, purchase orders, invoices, and the like) as such forms were in existence immediately before the Petition Date, without reference to the Debtors' status as debtors in possession. The Debtors also request authorization to use their existing check stock without the "debtor in possession" label for checks that they manually write until such check stock runs out. As soon as practicable after the Petition Date, the Debtors will include "debtor in possession" on the checks they print electronically. Upon depletion of the Debtors' check stock and/or business forms stock, the Debtors will obtain new check stock and/or business forms stock reflecting their status as debtors in possession.

26. In other large, complex or well publicized cases, this Court has allowed debtors to use their prepetition check forms without the "debtor in possession" label at least until the debtors' existing check stock was depleted. *See, e.g., In re TerreStar Networks Inc.*, No. 10-

15446 (SHL) (Bankr. S.D.N.Y. Nov. 17, 2010) [Docket No. 177]; *In re Uno Rest. Holdings Corp.*, No. 10-10209 (MG) (Bankr. S.D.N.Y. Feb. 17, 2010) [Docket No. 146]; *In re ION Media Networks, Inc.*, No. 09-13125 (JMP) (Bankr. S.D.N.Y. July 2, 2009) [Docket No. 130]; *In re DBSD N. Am., Inc.*, No. 09-13061 (REG) (Bankr. S.D.N.Y. June 15, 2009) [Docket No. 109]; *In re Chemtura Corp.*, No. 09-11233 (REG) (Bankr. S.D.N.Y. May 1, 2009) [Docket No. 295]; *In re Tower Auto., Inc.*, No. 05-10578 (ALG) (Bankr. S.D.N.Y. Feb. 3, 2005) [Docket No. 50] (holding U.S. Trustee's requirement prohibiting issuance of checks without "debtor in possession" designation to be unenforceable).

27.     For these reasons, the Debtors submit that authority to use their existing business forms will minimize expenses and administrative delays without harming the interests of those parties conducting business with the Debtors postpetition.

## III.     The Court Should Authorize the Debtors to Continue Using Debit, Wire Transfer and ACH Transfers

28.     The Debtors request further relief from the requirement in the U.S. Trustee Guidelines that all receipts and all disbursements of estate funds be by check with a notation representing the reason for the disbursement.   Considering the complexity of the Debtors' operations, it is necessary for the Debtors to conduct transactions by debit, wire or ACH Transfers and other similar methods, as discussed above.  To deny the Debtors the opportunity to conduct transactions by debit, wire or ACH Transfers or other similar methods would likely interfere with the Debtors' performance of their contracts and unnecessarily disrupt the Debtors' business operations, as well as create additional costs to be borne by the Debtors and their creditors.

## The Requirements of Bankruptcy Rule 6003 are Satisfied

29.     Under Bankruptcy Rule 6003, the Court may authorize the Debtors to continue using the Cash Management System because such relief is necessary to avoid immediate and irreparable harm. Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001(c)(2)); *see also* Fed. R. Bankr. P. 6003, Committee Notes (noting that cases applying Bankruptcy Rule 4001(b)(2) and (c)(2) may "provide guidance" for relief under Bankruptcy Rule 6003).

30.     The Cash Management System is crucial to the Debtors' continued operations. Without the Cash Management System, payments may not be made in a timely manner. Late payments may cause the Debtors' contract counterparties to be unwilling to provide necessary services. Moreover, lack of an integrated cash management system would make the tracking of cash movements and balances much more difficult, potentially causing the Debtors to lack critical information on current liquidity. As a result, it is clear that immediate and irreparable harm would result without the relief requested herein being granted.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

31.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). Pursuant to Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the payments proposed herein are essential to prevent potentially irreparable damage to the Debtors' operations, value, and ability to reorganize. Accordingly, the Debtors submit that

ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## Motion Practice

32.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

## Notices

33.     The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the entities listed on the Declaration Concerning List of the Debtors' 30 Largest Unsecured Claims on an Consolidated Basis filed pursuant to Bankruptcy Rule 1007(d); (c) GE Capital Commercial Services, Inc., as administrative agent under the Debtors' prepetition credit facility and debtor in possession credit facility, (d) Latham & Watkins LLP, as counsel to GE Capital Commercial Services, Inc.; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; and (g) the United States Attorney for the Southern District of New York. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the order substantially in the form attached hereto as **Exhibit A** authorizing the Debtors to (i) continue using their existing Cash Management System and (ii) maintain their existing Bank Accounts and business forms; and (b) grant such other and further relief as is just, proper and equitable.

New York, New York
Dated: July 8, 2011

*/s/ Ira S. Dizengoff*

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Michael P. Cooley
Alexis Freeman

*Proposed Counsel to the Debtors and Debtors in Possession*

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ARCHBROOK LAGUNA HOLDINGS LLC, *et al.*,[1] | ) Case No. 11-13292 ( ) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

## INTERIM AND FINAL ORDER AUTHORIZING THE DEBTORS TO (A) CONTINUE THEIR EXISTING CASH MANAGEMENT SYSTEM AND (B) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS

Upon the motion (the "*Motion*")[2] of the above-captioned debtors (collectively, the

"*Debtors*") for the entry of an order authorizing the Debtors to (a) continue using their existing

Cash Management System and (b) maintain existing Bank Accounts and business forms; and

upon the Boverman Declaration; and it appearing that the relief requested is in the best interests

of the Debtors' estates, their creditors and other parties in interest; and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157

and 1334; and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409; and notice of the Motion appearing to be adequate and appropriate

under the circumstances; and any objections to the requested relief having been withdrawn or

overruled on the merits; and after due deliberation and sufficient cause appearing therefor

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: ArchBrook Laguna LLC (6166); ArchBrook Laguna Holdings LLC (6156); Chimerica Global Logistics LLC (3745); ArchBrook Laguna West LLC (9631); Lehrhoff ABL LLC (6386); Expert Warehouse LLC (4487); and ArchBrook Laguna New York LLC (5385).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

IT IS HEREBY ORDERED THAT:

1.     The Motion is granted as set forth herein on an interim basis, subject to becoming a final order as provided herein.

2.     The Debtors are authorized to continue using their integrated Cash Management System as described in the Motion.

3.     The Debtors are authorized to: (a) continue to use, with the same account numbers, all of the bank accounts in existence as of the Petition Date, including, without limitation, those accounts identified on **Exhibit B** to the Motion; (b) use, in their present form, all correspondence and business forms (including, but not limited to, letterhead, purchase orders and invoices), as well as checks written manually and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to their status as debtors in possession; *provided, however*, that upon depletion of the Debtors' correspondence and business forms, the Debtors will obtain new business forms reflecting their status as debtors in possession; and, *provided, further, however*, that as soon as practicable after the Petition Date, the Debtors will note their status as "debtors in possession" on checks that are electronically printed; and (c) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession.

4.     Except as otherwise expressly provided in this Order, all Banks are authorized and directed to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, and to receive, process, honor and pay any and all checks, drafts, wires and automated clearing house transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

5.     The Debtors are authorized to open any new bank accounts or close any existing Bank Accounts as they may deem necessary and appropriate in their sole discretion; *provided, however*, that the Debtors may only open a new bank account with a bank designated as an Authorized Depository under the U.S. Trustee Guidelines, unless first obtaining the consent of the U.S. Trustee.

6.     The Debtors are authorized to direct the Banks and the Banks are authorized and directed to pay obligations in accordance with this or any separate order of this Court.

7.     Except as otherwise provided in this Order or in a separate order of this Court, all Banks provided with notice of this Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued prior to the Petition Date.

8.     As soon as practicable after the entry of this Order, the Debtors shall serve a copy of this Order on those Banks that make disbursements pursuant to the Debtors' Cash Management System except as expressly directed by the Debtors pursuant to paragraph 10, above.

9.     Any objections to the relief requested in the Motion on a permanent basis must be filed no later than _____, 2011 at 4:00 p.m. (prevailing Eastern Time) (the "*Objection Deadline*"). If an objection is timely filed and served so as to be received on or before the Objection Deadline, such objection shall be set for hearing on _____, 2011 at _:__ _.m. (prevailing Eastern Time). This Order, and all acts taken in furtherance of or reliance upon this Order, shall be effective notwithstanding the filing of an objection.

10.     Any objections or responses to this Order becoming a final order shall be filed on or before the Objection Deadline and served on the following parties: (a) the Office of the

United States Trustee for the Southern District of New York; (b) the entities listed on the Declaration Concerning List of the Debtors' 30 Largest Unsecured Claims on an Consolidated Basis filed pursuant to Bankruptcy Rule 1007(d); (c) GE Capital Commercial Services, Inc., as administrative agent under the Debtors' prepetition credit facility and debtor in possession credit facility, (d) Latham & Watkins LLP, as counsel to GE Capital Commercial Services, Inc.; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; and (g) the United States Attorney for the Southern District of New York.  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

11.     In the event that no objection to the Motion or this Order is timely filed and served, then this Order shall become a final order as of the day immediately following the Objection Deadline, *nunc pro tunc* to the Petition Date, without further hearing or order of this Court.

12.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

13.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

14.     Notwithstanding any provision herein to the contrary, the Debtors shall not be authorized to make any payments under this Order from any amounts loaned to the Debtors pursuant to the debtor in possession financing unless such payments or disbursements are included in the budget contained therein or otherwise authorized to be paid pursuant to the debtor in possession financing agreement.

15. Notwithstanding the possible applicability of Rules 6004(a) and 6004(h) of the Federal Rules of Bankruptcy or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

16. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Date: _____, 2011

_____
UNITED STATES BANKRUPTCY JUDGE

## <u>EXHIBIT B</u>

**Bank Accounts**

| Bank Name | Bank Address | Entity | Last 5 Digits of Account Numbers | Type of Account |
|---|---|---|---|---|
| Bank of America NA | P. O. Box 4899 Atlanta, Ga. 30302-4899 | ArchBrook Laguna Holdings LLC | xxxxxx79303 | Disbursement |
| Bank of America NA | P. O. Box 4899 Atlanta, Ga. 30302-4899 | ArchBrook Laguna LLC | xxxxxx60171 | Depository |
| Bank of America NA | P. O. Box 4899 Atlanta, Ga. 30302-4899 | ArchBrook Laguna LLC | xxxxxx22844 | Funding |
| Bank of America NA | P. O. Box 4899 Atlanta, Ga. 30302-4899 | ArchBrook Laguna LLC | xxxxxx18932 | Disbursement |
| Bank of America NA | P. O. Box 4899 Atlanta, Ga. 30302-4899 | ArchBrook Laguna LLC | xxxxxx20631 | Disbursement |
| Bank of America NA | P. O. Box 4899 Atlanta, Ga. 30302-4899 | ArchBrook Laguna LLC | xxxxxx93954 | Credit Card Clearing |
| Bank of America NA | P. O. Box 4899 Atlanta, Ga. 30302-4899 | ArchBrook Laguna LLC | xxxxxx93947 | Credit Card Clearing |
| Bank of America NA | P. O. Box 4899 Atlanta, Ga. 30302-4899 | Expert Warehouse LLC | xxxxxx64725 | Disbursement |
| Bank of America NA | P. O. Box 4899 Atlanta, Ga. 30302-4899 | Expert Warehouse LLC | xxxxxx64767 | Depository |
| Bank of America NA | P. O. Box 4899 Atlanta, Ga. 30302-4899 | Expert Warehouse LLC | xxxxxx94182 | Depository |
| Bank of America NA | P. O. Box 4899 Atlanta, Ga. 30302-4899 | Expert Warehouse LLC | xxxxxx94179 | Depository |
| Bank of America NA | P. O. Box 4899 Atlanta, Ga. 30302-4899 | Expert Warehouse LLC | xxxxxx64767 | Credit Card Clearing |
| Wells Fargo (Wachovia) | 1525 West Harris Blvd. Charlotte, NC 28262 | Lehrhoff ABL LLC | xxxxxx16827 | Depository |
| Wells Fargo (Wachovia) | 1525 West Harris Blvd. Charlotte, NC 28262 | Lehrhoff ABL LLC | xxxxxx96843 | Depository |
| Wells Fargo (Wachovia) | 1525 West Harris Blvd. Charlotte, NC 28262 | Lehrhoff ABL LLC | xxxxxx96830 | Depository |
| Wells Fargo (Wachovia) | 1525 West Harris Blvd. Charlotte, NC 28262 | Lehrhoff ABL LLC | xxxxxx009546 | Disbursement |
| Wells Fargo (Wachovia) | 1525 West Harris Blvd. Charlotte, NC 28262 | Lehrhoff ABL LLC | xxxxxx076329 | Disbursement |
| Wells Fargo (Wachovia) | 1525 West Harris Blvd. Charlotte, NC 28262 | Lehrhoff ABL LLC | xxxxxx873147 | Disbursement |
| Wells Fargo (Wachovia) | 1525 West Harris Blvd. Charlotte, NC 28262 | Lehrhoff ABL LLC | xxxxxx009546 | Credit Card Clearing |

# EXHIBIT C

## Cash Management System



| ABL | | EW |
|---|---|---|

Bank of America
ABL Credit Card Accts.:
xxxxxxx93954
xxxxxxx97802
xxxxxxx93947

ABL Cash Receipts

EW Consumer Electronics Cash Receipts =50%
from GE Commercial Distribution Finance's
("GECDF") outbound floor planning facility & 10%
from Floor Dealers

EW Appliance & Cross Deck Cash Receipts from
GECDF's outbound floor planning facilities

Bank of America
Depository Acct.
xxxxxx93171

Bank of America
Pay Pal Acct.
xxxxxxx93962

Bank of America Depository Acct. (*)

xxxxxxx64767
xxxxxxx64767
* Includes Credit Card Pmts.

Bank of America
GECDF Blocked Depository Acct. (Appliance &
Crossdeck) Floorplanning
xxxxxxx94179

xxxxxxx94182

GE Commercial Financial
Services' Revolver

GECDF Inbound Appliance - Whirlpool, GE
Appliances & Electrolux

GECDF Inbound Cross Deck - Whirlpool
Exclusively

Wachovia Bank
IPC Depository Acct.
xxxxxxx96843

Wachovia Bank
Lekehoff ABL Depository Acct.
xxxxxxx96827

Wachovia Bank
Sterling Depository Acct.
xxxxxxx96830

Lekehoff ABL Cash Receipts

LKH

Note: All depository accounts (with the exception of the Appliance & Cross Deck accounts noted above) are blocked and swept daily to GECFS' Revolver.

Funding



EW - Bank of America
Disbursement Acct.
xxxxxxx64725

GECFS Revolver

LEH - Wachovia
Disbursement Acct.
xxxxxxx09546

ABL - Bank of America
Master Funding Acct.
xxxxxxx22844

ABL/EW - Bank of America
Disbursement Acct. (NI)
xxxxxxx20651

ABL - Bank of America
Disbursement Acct. (GA)
xxxxxxx18932

Company Payroll Services