AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Michael P. Cooley
Alexis Freeman

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ARCHBROOK LAGUNA HOLDINGS LLC, *et al.*,[1] | ) | Case No. 11-13292 (   ) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

**DEBTORS' APPLICATION FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING THE EMPLOYMENT AND RETENTION OF MACQUARIE
CAPITAL (USA) INC. AS FINANCIAL ADVISOR FOR THE DEBTORS AND
DEBTORS IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE**

ArchBrook Laguna Holdings LLC ("***ArchBrook***") and certain of its affiliates, as debtors

and debtors in possession (collectively, the "***Debtors***"), file this Application (the "***Application***"),

seeking entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A**

and **Exhibit B**, respectively, authorizing the Debtors to employ and retain Macquarie Capital

(USA) Inc. ("***Macquarie***") as their financial advisor in connection with their chapter 11 cases

*nunc pro tunc* to the commencement of these chapter 11 cases. In support of this Application, the

Debtors submit the Declaration of David Miller, a Managing Director of Macquarie (the "***Miller***

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer
identification number, are: ArchBrook Laguna LLC (6166); ArchBrook Laguna Holdings LLC (6156); Chimerica
Global Logistics LLC (3745); ArchBrook Laguna West LLC (9631); Lehrhoff ABL LLC (6386); Expert
Warehouse LLC (4487); and ArchBrook Laguna New York LLC (5385).

*Declaration*"), which is attached hereto as **Exhibit C**.  In further support of this Application, the Debtors respectfully state as follows:

**Jurisdiction**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "***Local Rules***").

**Background**

4.      On July 8, 2011 (the "***Petition Date***"), each of the Debtors filed a petition with this Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no statutory committees have been appointed or designated.

5.      Contemporaneously with the filing of this Application, the Debtors have sought procedural consolidation and joint administration of these chapter 11 cases under the case of ArchBrook Laguna Holdings LLC.  A description of the Debtors' businesses, the reasons for filing these chapter 11 cases and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set forth in the Boverman Declaration, which is being filed contemporaneously with this Application.

## Macquarie's Qualifications

6.　　The Debtors have been working closely with Macquarie since selecting them as their financial advisor and Macquarie has become intimately familiar with the Debtors' businesses, affairs, assets and contractual arrangements.　Macquarie's employees have worked closely with the Debtors in analyzing the Debtors' financial positions and assisting the Debtors in evaluating various restructuring alternatives, including conducting a marketing and sales process. Accordingly, Macquarie has the necessary background to deal effectively and efficiently with many financial issues and problems that may arise in the context of the Debtors' chapter 11 cases.

7.　　Macquarie is a member firm of the Macquarie Group ("***MG***"), a diversified international provider of specialist investment, advisory, trading and financial services in select markets around the world.　Headquartered in Sydney, Australia, MG is a global investment bank and the leading Australian investment bank. MG employs over 12,000 people in 28 countries.　In the United States, MG operates through a number of subsidiaries, including Macquarie, a Securities and Exchange Commission registered broker-dealer and member of the Financial Industry Regulatory Authority.　Such subsidiaries are further arranged into different business divisions.　The Macquarie professionals advising the Debtors in their chapter 11 cases sit within the Capital Advisors divisions of Macquarie. Macquarie, through its Capital Advisors divisions, is a distinguished leader in providing advisory services to companies, creditors and stakeholders in financially distressed situations. Macquarie's employees have assisted and advised numerous chapter 11 debtors in the development of plans of reorganization, as well as asset sales under Bankruptcy Code section 363, and are experienced in analyzing restructuring and related chapter 11 issues.　In particular, Macquarie's employees have provided services to debtors and other constituencies in numerous chapter 11 cases, including, *In re Delta Air Lines, Inc.*, Case No. 05-

17923 (CGM) (Bankr. S.D.N.Y) and *In re Lazy Days' R.V. Center, Inc., et al.*, Case No. 09-13911 (KG) (Bankr. D. Del.) and *In re Ala. Aircraft Indus., Inc., et al.* Case No. 11-10452 (PJW) (Bankr. D. Del.), the Chapter 11 trustee in *In re Sentinel Mgmt. Grp., Inc.*, Case No. 07-14987 (JHS) (Bankr. N.D. Ill.), the senior lenders in *In re Refco Inc.*, Case No. 05-60006 (RDD) (Bankr. S.D.N.Y.), and the statutory committees of unsecured creditors in *In re Mesa Air Grp., Inc., et al.*, Case No. 10-10018 (MG) (Bankr. S.D.N.Y.), *In re Enron Creditors Recovery Corp.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y.), and *In re USG Corp.*, Case No. 01-2094 (JKF) (Bankr. D. Del.).

8.     The resources, capabilities and experience of Macquarie in advising the Debtors are crucial to the Debtors' successful restructuring.  An experienced financial advisor such as Macquarie fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.  Broadly speaking, Macquarie has assisted in the commencement of the chapter 11 cases and will continue to assist in the administration of these cases, render financial advisory services to the Debtors in connection with their ongoing restructuring efforts and assist with the formulation of a business plan and plan of reorganization.

### A.     Services to be Provided

9.     Subject to further order of the Court and consistent with that certain engagement letter dated as of May 19, 2011 and amended as of July 8, 2011 (the "***Engagement Letter***"), attached as **Schedule 1** to **Exhibit C**, and the related indemnification attached as **Schedule 2** to **Exhibit C** (the "***Indemnification Agreement***"), the Debtors have engaged Macquarie to, among other things:

a)   assist in the evaluation of the Debtors' business and prospects;

b)   assist in the development of the Debtors' long-term business plan and related financial projections;

c)  assist in the development of financial data and presentations to the Debtors' Board of Directors, various creditors and other third parties;

d)  analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of various stakeholders impacted by the restructuring;

e)  provide strategic advice with regard to restructuring or refinancing the Debtors' obligations;

f)  evaluate the Debtors' debt capacity and alternative capital structures;

g)  participate in negotiations among the Debtors and their creditors, suppliers, lessors and other parties in interest;

h)  value potential securities offered by the Debtors in connection with a restructuring;

i)  advise the Debtors and negotiate with lenders with respect to potential waivers or amendments of various debt instruments and preferred stock;

j)  advise and assist the Debtors in evaluating a potential financing, contact potential sources of capital and assist the Debtors in negotiating and consummating financing;

k)  analyze the Debtors' financial liquidity and evaluate alternatives to improve such liquidity;

l)  assist in arranging debtor in possession financing for the Debtors;

m)  provide expert witness testimony concerning any financial advisory services provided by Macquarie;

n)  provide general advice on asset sale alternatives; and

o) provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a restructuring as reasonably requested.

**B.**     **Professional Compensation**

10.     Macquarie intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines (the "***U.S. Trustee Guidelines***") established by the United States Trustee for the Southern District of New York and any other applicable procedures and orders of the Court and consistent with the proposed compensation set forth in the Engagement Letter (the "***Fee Structure***").   Before the commencement of these chapter 11 cases and under the terms of the Engagement Letter, the Debtors paid Macquarie total fees of $75,000 per month for services rendered from May 19, 2011 through July 7, 2011 and for reasonable out-of-pocket expenses related thereto.

11.     In summary, the Fee Structure provides for the following compensation to Macquarie:

a) A monthly advisory fee of $125,000 per month (a "***Monthly Fee***") with 50% of all Monthly Fees after the third Monthly Fee credited (without duplication) against any earned Restructuring Fee, Sale Transaction Fee or Financing Fee (each as defined in the Engagement Letter); and

b) A Financing Fee of in an amount equal to (i) 1.0% of the gross proceeds of all senior indebtedness, (ii) 2.0% of the gross proceeds of all junior secured indebtedness, (iii) 3.0% of the gross proceeds of all mezzanine indebtedness, (iv) 5.0% of the gross proceeds of all equity, equity-linked or equity-like securities or indebtedness and (v) with respect to any other securities of a Financing (as

defined in the Engagement Letter), such underwriting discounts, placement fees or other compensation (as applicable), customary under the circumstances, as shall be mutually agreed upon by the Company and Macquarie; and

c) A Restructuring Fee equal to 2.0% of the aggregate outstanding principal amount of the restructured obligations, which shall not be less than $1,250,000, payable upon consummation of any restructuring pursuant to a bankruptcy proceeding; or

d) A Sale Transaction Fee equal to 1.5% of the Transaction Value up to $100,000,000 and 2.0% of incremental Transaction Value above $100,000,000, provided that the Sale Transaction Fee shall not be less than $1,250,000, *provided further* that, notwithstanding the foregoing, if a Sale Transaction for a material portion of the assets occurs through a series of transactions, the Sale Transaction Fee payable in the case of such liquidation shall not be based on the Transaction Value and shall instead be $650,000; and

e) Reasonable out-of-pocket expenses in connection with the services provided.

12.     The Fee Structure is consistent with Macquarie's normal and customary billing practices for comparably sized and complex cases, both in and out-of-court, involving the services to be provided in these chapter 11 cases. The Fee Structure is consistent with and typical of arrangements entered into by Macquarie and other financial advisory firms of comparable standing in connection with the rendering of similar services to clients such as the Debtors. Macquarie and the Debtors believe that the Fee Structure is both reasonable and market-based.

13.     To induce Macquarie to do business with the Debtors in bankruptcy, the Fee Structure described above was established to reflect the difficulty of the extensive assignments

Macquarie expects to undertake and the potential for an unfavorable outcome as a result of factors outside of Macquarie's control.

14.    Although Macquarie does not charge for its services on an hourly basis, Macquarie will nonetheless maintain records (in summary format) of time spent by its professionals in connection with the rendering of services for the Debtors by category and the amount of time spent on each date by each such professional in rendering services on behalf of the Debtors.  Macquarie will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with services provided to the Debtors during these cases.

15.    The Debtors acknowledge that Macquarie's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Macquarie's engagement hereunder, were important factors in determining the Fee Structure, and the ultimate benefit to the Debtors of Macquarie's services hereunder could not be measured by reference to the number of hours to be expended by Macquarie's professionals in the performance of such services.

16.    The Debtors also acknowledge that the Fee Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Macquarie and its professionals hereunder and in light of the fact that (a) such commitment may foreclose other opportunities for Macquarie and (b) the actual time and commitment required of Macquarie and its professionals to perform its services hereunder may vary substantially from week to week and month to month, creating "peak load" issues for Macquarie.

17.     In light of the foregoing, and given the numerous issues that Macquarie may be required to address in the performance of its services hereunder, Macquarie's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Macquarie's services for engagements of this nature both out-of-court and in a chapter 11 context, the Debtors believe that the Fee Structure is fair, reasonable and market-based under the standards set forth in Bankruptcy Code sections 328(a) and 330.

18.     Payment to Macquarie pursuant to the terms of the Engagement Letter shall not be subject to further review in these Cases except as expressly permitted by Bankruptcy Code section 328(a).

## C.     Indemnification

19.     The Indemnification Agreement provides for, and the Debtors agree to, indemnify and hold harmless Macquarie and its affiliates and their respective partners (both general and limited), members, officers, directors, employees and agents and each other person, if any, controlling Macquarie or any of Macquarie's affiliates (collectively, the "***Indemnified Persons***") related to, arising out of or in connection with the retention of Macquarie by the Debtors, as more fully described in the Indemnification Agreement.[2] However, the following conditions will apply:

> a)   All requests of Indemnified Persons for payment of indemnity, contribution or otherwise pursuant to the indemnification provisions of the Indemnification Agreement shall be made by means of an interim or final fee application and shall

---

[2] The Indemnification Agreement provides, among other things, that the Debtors will indemnify and hold harmless Macquarie and the other Indemnified Persons from and against any losses, claims, damages, liabilities or expenses to which they may become subject to, related to, arising out of or in connection with Macquarie's engagement, except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct.

be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Indemnification Agreement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the orders of this Court and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided*, *however*, that in no event shall an Indemnified Person be indemnified or receive contribution to the extent that any claim or expense is judicially determined by final non-appealable order to have resulted primarily from the gross negligence or willful misconduct on the part of that Indemnified Person.

b) In the event an Indemnified Person seeks reimbursement for attorneys' fees from the Debtors pursuant to the Indemnification Agreement, the invoices and supporting time records from such attorneys shall be annexed to Macquarie's own interim and final fee applications, and such invoices and time records shall be subject to the U.S. Trustee Guidelines and the approval of the Court under the standards of Bankruptcy Code section 330 without regard to whether such attorney has been retained under Bankruptcy Code section 327.

20. Macquarie and the Debtors believe that such an indemnification is customary and reasonable for financial advisory engagements, both out of court and in chapter 11. The terms of such indemnification shall be the subject of a final hearing on Macquarie's retention.

### D.    <u>Macquarie's Disinterestedness</u>

21. To the best of the Debtors' knowledge, Macquarie (i) is a "disinterested person," as such term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), and, as required by Bankruptcy Code section 327(a) and referenced by Bankruptcy Code section 328(c), (ii) neither holds nor represents any interest adverse to the

Debtors and their estates and (iii) except as disclosed in the Miller Declaration, has no connection to the Debtors or to their significant creditors or certain other potential Parties in Interest whose names were supplied to Macquarie by the Debtors.

22.     As set forth in the Miller Declaration, Macquarie has represented, currently represents and will likely in the future represent certain parties in interest or potential parties in interest in these Cases in matters unrelated to the Debtors, these Cases, or such entities' claims against the Debtors.   As part of its customary practice, Macquarie is retained in cases, proceedings, and transactions involving many different parties throughout the United States and worldwide, some of whom may represent or be employed by the Debtors, claimants and parties in interest in these Cases.

23.     Pursuant to Bankruptcy Code section 327(c), Macquarie is not disqualified from acting as the Debtors' financial advisor merely because it previously represented or currently represents the Debtors' creditors, or other parties in interest in matters unrelated to the Debtors or these Cases.

24.     The Debtors have been informed that Macquarie is conducting an ongoing review of its files to ensure that no disqualifying circumstances arise and, if new relevant facts or relationships are discovered, Macquarie will use reasonable efforts to supplement its disclosure to the Court.

25.     The Debtors submit that the appointment of Macquarie on the terms and conditions set forth in the Engagement Letter and herein is in the best interest of the Debtors, their creditors, and all parties in interest.

## Relief Requested

26.     By this Application, the Debtors request entry of interim and final orders, pursuant to Bankruptcy Code sections 327(a) and 328(a), Bankruptcy Rules 2014(a) and 2016,

and Local Rule 2014-1 authorizing the Debtors to retain and employ Macquarie as their financial advisor, *nunc pro tunc* to the Petition Date, in accordance with the terms and conditions set forth in the Engagement Letter and Indemnification Agreement, which are incorporated by reference herein.

### Supporting Authority

27.     The Debtors seek approval of the Fee Structure, the Engagement Letter and the Indemnification Agreement pursuant to Bankruptcy Code section 328(a), which provides in relevant part that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a).  Accordingly, Bankruptcy Code section 328 permits the Court to approve, at the outset of a case, the compensation of professionals, including financial advisors, on flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co.* (*In re Nat'l Gypsum Co.*):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).  Owing to this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms

and conditions under Bankruptcy Code section 328. *See, e.g.*, *In re Uno Rest. Holdings Corp.*, Case No. 10-10209 (MG) (Bankr. S.D.N.Y. Mar. 5, 2010) [Docket No. 345]; *In re Ion Media Networks, Inc.,* Case No. 09-13125 (JMP) (Bankr. S.D.N.Y. July 13, 2009) [Docket No. 154].

28.     Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases. *See, e.g., In re Terrestar Newtworks, Inc.*, Case No. 10-15446 (SHL) (Bankr. S.D.N.Y. June 16, 2011) [Docket No. 626]; *In re Star Tribune Holdings Corp., et al*., No. 09-10244 (RDD) (Bankr. S.D.N.Y. Mar. 13, 2009) [Docket No. 153]; *In re Delta Air Lines Inc., et al*., No. 05-17923 (CGM) (Bankr. S.D.N.Y. Dec. 15, 2006) [Docket No. 3870]; *In re Calpine Corp.*, No. 05-60200 (BRL) (Bankr. S.D.N.Y. May 2, 2006) [Docket No. 1422]; *In re DPH Holdings Corp.*, No. 05-44481 (RDD) (Bankr. S.D.N.Y. Nov. 30, 2005) [Docket No. 1363]; *In re Solutia Inc.*, No. 03-17949 (SCC) (Bankr. S.D.N.Y. April 14, 2004) [Docket No. 752]; *see also In re TOUSA, Inc.*, No. 08-10928 (JKO) (Bankr. S.D. Fla., Mar. 26, 2008) [Docket No. 667]; *In re New Century TRS Holdings, Inc.*, No. 07-10416 (KJC) (Bankr. D. Del., Apr. 25, 2007) [Docket No. 405].

29.     Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended Bankruptcy Code section 328(a) as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, *on a fixed or percentage fee* basis, or on a contingent fee basis.

11 U.S.C. § 328(a) (emphasis added).  This change makes clear that the Court may approve both fixed and percentage fee arrangements, such as the Fee Structure, at the outset of a case.

30.     The Debtors believe the Fee Structure set forth in the Engagement Letter is reasonable terms and conditions of employment and should be approved under Bankruptcy Code section 328(a).  The Fee Structure adequately reflects: (i) the nature of the services to be provided by Macquarie; and (ii) fee structures and indemnification provisions typically utilized by Macquarie and other leading investment banking firms, which do not bill their time on an hourly basis and generally are compensated on a transactional basis.

31.     In particular, the Debtors believe the Fee Structure creates a proper balance between fixed, monthly fees and contingency fees based on the successful consummation of certain sales of the Debtors' assets, raises of new capital, confirmation of a reorganization plan and the overall success of these Cases.  Moreover, Macquarie's substantial experience with respect to financial advisory services, coupled with the nature and scope of work already performed by Macquarie before the Petition Date, further suggest the reasonableness of the Fee Structure.

## Motion Practice

32.     This Application includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this Application.  Accordingly, the Debtors submit that this Application satisfies Local Rule 9013-1(a).

## Notice

33.     The Debtors have provided notice of this Application to:  (a) the Office of the United States Trustee for the Southern District of New York; (b) the entities listed on the Declaration Concerning List of the Debtors' 30 Largest Unsecured Claims on an Consolidated Basis filed pursuant to Bankruptcy Rule 1007(d); (c) GE Capital Commercial Services, Inc., as administrative agent under the Debtors' prepetition credit facility and debtor in possession credit

14

facility, (d) Latham & Watkins LLP, as counsel to GE Capital Commercial Services, Inc.; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; and (g) the United States Attorney for the Southern District of New York. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter interim and final orders, substantially in the form attached hereto as **Exhibit A** and **Exhibit B** respectively, (i) authorizing the Debtors to employ and retain Macquarie as their financial advisor effective as of the Petition Date and (ii) approving the terms of the Engagement Letter and Indemnification Agreement and (b) grant such other and further relief as is just and proper.

New York, New York
Dated: July ___8___, 2011

Peter Handy
Authorized Person
ArchBrook Laguna Holdings LLC (for itself and
its affiliated Debtors and Debtors in Possession)
350 Starke Road, Suite 400
Carlstadt, NJ  07072
(201) 559-6200

**EXHIBIT A**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | )  | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ARCHBROOK LAGUNA HOLDINGS LLC, *et al.*,[1] | ) | Case No. 11-13292 (   ) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

### INTERIM ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MACQUARIE CAPITAL (USA) INC. AS FINANCIAL ADVISOR FOR THE DEBTORS AND DEBTORS IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE

Upon the application (the "***Application***")[2] of the above-captioned debtors (collectively, the "***Debtors***") for entry of an order authorizing the Debtors to employ and retain Macquarie Capital (USA) Inc. as their financial advisor effective as of the date the Debtors filed their chapter 11 petitions, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure, Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York; and upon the Boverman Declaration; and upon the Declaration of David Miller, a Managing Director of Macquarie in support of the Application; and the Court having considered the Application and the Boverman Declaration and determined that the employment of Macquarie by the Debtors is in the best interests of the Debtors' estates, their creditors and other Parties in Interest and that the terms of the Engagement Letter and Indemnification Agreement are reasonable for purposes of Bankruptcy Code section 328(a); and the Court having considered the Miller Declaration and the Court being satisfied that Macquarie neither holds nor represents any interest adverse to the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: ArchBrook Laguna LLC (6166); ArchBrook Laguna Holdings LLC (6156); Chimerica Global Logistics LLC (3745); ArchBrook Laguna West LLC (9631); Lehrhoff ABL LLC (6386); Expert Warehouse LLC (4487); and ArchBrook Laguna New York LLC (5385).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

Debtors' estates with respect to the matters upon which it is to be employed; and the Court having determined that Macquarie is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14); and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that the relief requested herein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Application appearing to be adequate and appropriate under the circumstances; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      The Application is approved as set forth herein.

2.      In accordance with Bankruptcy Code sections 327(a) and 328(a), Bankruptcy Rule 2014, and Local Rule 2014-1, the Debtors are authorized to employ and retain Macquarie, on an interim basis, in accordance with the terms and conditions set forth in the Engagement Letter and the Indemnification Agreement effective *nunc pro tunc* to May 19, 2011.

3.      The Debtors will be bound by the fees and expense reimbursement provisions of the Engagement Letter.

4.      The terms and conditions of Macquarie's compensation, as set forth in the Engagement Letter, are approved on an interim basis pursuant to Bankruptcy Code section 328(a).

5.      Notwithstanding anything in this Order to the contrary, Macquarie and its professionals shall be excused from maintaining time records as set forth in the applicable Local Rules and other rules and the United States Trustee Fee Guidelines in connection with the

services to be rendered pursuant to the Engagement Letter, and shall instead submit time records in one-half hour increments.

6.     In the event Macquarie seeks reimbursement for attorneys' fees pursuant to the terms of the Indemnification Agreement, the invoices and supporting time records from such attorneys shall be included in Macquarie's own application and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of Bankruptcy Code sections 330 and 331.

7.     The Debtors will be bound by the indemnification, contribution, reimbursement, exculpation and other provisions of the Engagement Letter and Indemnification Agreement and will indemnify and hold harmless Macquarie and its affiliates, and its and their respective directors, officers, members, agents, employees and controlling persons, and each of their respective successors and assigns (collectively, the "***Indemnified Persons***"), during the pendency of these Cases, subject to the following conditions:

     a)    All requests of Indemnified Persons for payment of indemnity, contribution or otherwise pursuant to the indemnification provisions of the Indemnification Agreement shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Indemnification Agreement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the orders of this Court and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall an Indemnified Person be indemnified or receive contribution to the extent that any

claim or expense is judicially determined by final non-appealable order issued by a court of competent jurisdiction to have resulted primarily from gross negligence or willful misconduct on the part of that Indemnified Person.

b) In the event an Indemnified Person seeks reimbursement for attorneys' fees from the Debtors pursuant to the Indemnification Agreement, the invoices and supporting time records from such attorneys shall be annexed to Macquarie's own interim and final fee applications, and such invoices and time records shall be subject to the U.S. Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Court under the standards of Bankruptcy Code section 330 without regard to whether such attorney has been retained under Bankruptcy Code section 327.

8. The Debtors are authorized, empowered and directed to take all actions necessary to implement the relief granted pursuant to this Order.

9. To the extent this Order is inconsistent with the Engagement Letter, Indemnification Agreement or the Application, this Order shall govern.

10. The Debtors shall serve the Application upon all creditors of the Debtors accompanied by a short notice that discloses to the served parties the material terms of Macquarie's proposed retention.

11. A final hearing on Macquarie's retention shall be held on [_____] at [_____] at the United States Bankruptcy Court, Room [___], United States Customs House, One Bowling Green Plaza, New York, New York 10004.

12. Any objections or responses to this Order becoming a final order shall be filed on or before the Objection Deadline and served on the following parties: (a) the Office of the United

States Trustee for the Southern District of New York; (b) the entities listed on the Declaration

Concerning List of the Debtors' 30 Largest Unsecured Claims on an Consolidated Basis filed

pursuant to Bankruptcy Rule 1007(d); (c) GE Capital Commercial Services, Inc., as

administrative agent under the Debtors' prepetition credit facility and debtor in possession credit

facility, (d) Latham & Watkins LLP, as counsel to GE Capital Commercial Services, Inc.; (e) the

Internal Revenue Service; (f) the Securities and Exchange Commission; and (g) the United States

Attorney for the Southern District of New York.

13. This Court shall retain jurisdiction with respect to all matters arising from or

relating to the implementation of this Order.

New York, New York

Date: _____, 2011    _____
                                UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ARCHBROOK LAGUNA HOLDINGS LLC, *et al.*,[1] | ) | Case No. 11- 13292 (    ) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

### FINAL ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MACQUARIE CAPITAL (USA) INC. AS FINANCIAL ADVISOR FOR THE DEBTORS AND DEBTORS IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE

Upon the application (the "***Application***")[2] of the above-captioned debtors (collectively,

the "***Debtors***") for entry of an order authorizing the Debtors to employ and retain Macquarie

Capital (USA) Inc. as their financial advisor effective as of the Petition Date, pursuant to

sections 327(a) and 328(a) of title 11 of the United States Code, Rules 2014(a) and 2016 of the

Federal Rules of Bankruptcy Procedure, Rule 2014-1 of the Local Rules for the United States

Bankruptcy Court for the Southern District of New York; and upon the Boverman Declaration;

and upon the Declaration of a David Miller, a Managing Director of Macquarie in support of the

Application; and the Court having considered the Application and the Boverman Declaration and

determined that the employment of Macquarie by the Debtors is in the best interests of the

Debtors' estates, their creditors and other parties in interest and that the terms of the Engagement

Letter and Indemnification Agreement are reasonable for purposes of Bankruptcy Code section

328(a); and the Court having considered the Miller Declaration and the Court being satisfied that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: ArchBrook Laguna LLC (6166); ArchBrook Laguna Holdings LLC (6156); Chimerica Global Logistics LLC (3745); ArchBrook Laguna West LLC (9631); Lehrhoff ABL LLC (6386); Expert Warehouse LLC (4487); and ArchBrook Laguna New York LLC (5385).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

Macquarie neither holds nor represents any interest adverse to the Debtors' estates with respect to the matters upon which it is to be employed; and the Court having determined that Macquarie is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14); and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that the relief requested herein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Application appearing to be adequate and appropriate under the circumstances; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     The Application is granted on a final basis as set forth herein, *nunc pro tunc* to May 19, 2011.

2.     The Debtors are authorized, pursuant to Bankruptcy Code sections 327(a) and 328(a), Bankruptcy Rule 2014(a) and Local Rule 2014-1, to employ and retain Macquarie as their financial advisor in accordance with the terms and conditions set forth in the Engagement Letter and the Indemnification Agreement.

3.     All of Macquarie's compensation as set forth in the Engagement Letter, including, without limitation, the Monthly Advisory Fee, the Restructuring Fee, the Sale Transaction Fee and the Financing Fees (each as defined in the Engagement Letter), are approved pursuant to Bankruptcy Code section 328(a) and shall not hereafter be subject to challenge except under the standard of review set forth in Bankruptcy Code section 328(a).

4.     Macquarie shall file fee applications for monthly, interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in the

Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules and any other applicable orders of this court; *provided*, *however*, that Macquarie shall be compensated and reimbursed pursuant to Bankruptcy Code section 328(a) and that Macquarie's compensation shall not be evaluated under any other standard of review, including the standard set forth in Bankruptcy Code section 330; *provided*, *further,* however that Macquarie and its professionals shall be excused from maintaining time records as set forth in the applicable Local Rules and other rules and the United States Trustee Fee Guidelines in connection with the services to be rendered pursuant to the Engagement Letter and (a) shall only be required to maintain time records for services rendered post-petition, in half-hour increments; and (b) shall not be required to provide or conform to any schedule of hourly rates.

5.      None of the fees payable to Macquarie shall constitute a "bonus" or fee enhancement under applicable law.

6.      In the event Macquarie seeks reimbursement for attorneys' fees pursuant to the terms of the Indemnification Agreement, the invoices and supporting time records from such attorneys shall be included in Macquarie's own application and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of Bankruptcy Code sections 330 and 331.

7.      The Debtors shall be bound by the indemnification, contribution, reimbursement, exculpation and other provisions of the Engagement Letter and Indemnification Agreement and will indemnify and hold harmless Macquarie and its affiliates, and its and their respective directors, officers, members, agents, employees and controlling persons, and each of their

respective successors and assigns (collectively, the "***Indemnified Persons***"), during the pendency of these chapter 11 cases, subject to the following conditions:

a) All requests of Indemnified Persons for payment of indemnity, contribution or otherwise pursuant to the indemnification provisions of the Indemnification Agreement shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Indemnification Agreement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the orders of this Court and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall an Indemnified Person be indemnified or receive contribution to the extent that any claim or expense is judicially determined by final non-appealable order issued by a court of competent jurisdiction to have resulted primarily from gross negligence or willful misconduct on the part of that Indemnified Person.

b) In the event an Indemnified Person seeks reimbursement for attorneys' fees from the Debtors pursuant to the Indemnification Agreement, the invoices and supporting time records from such attorneys shall be annexed to Macquarie's own interim and final fee applications, and such invoices and time records shall be subject to the U.S. Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Court under the standards of Bankruptcy Code section 330 without regard to whether such attorney has been retained under Bankruptcy Code section 327.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

9.      To the extent this Order is inconsistent with the Engagement Letter, Indemnification Agreement, or Application, this Order shall govern.

10.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Date: _____, 2011                    _____
                                                UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT C

## Declaration of David Miller

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ARCHBROOK LAGUNA HOLDINGS LLC, *et al.*,[1] | ) Case No. 11-13292 (   ) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

### DECLARATION OF DAVID MILLER PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 2014(a) AND LOCAL RULE 2014-1 FOR ORDER AUTHORIZING THE RETENTION OF MACQUARIE CAPITAL (USA) INC. AS FINANCIAL ADVISOR *NUNC PRO TUNC* TO THE PETITION DATE

I, David Miller, hereby declare under penalty of perjury that, to the best of my knowledge and belief, and after reasonable inquiry, the following is true and correct:

1.       I am a Managing Director of Macquarie Capital (USA) Inc. ("***Macquarie***"), a Delaware corporation that maintains offices at 125 W. 55th Street, New York, NY 10019.  I am authorized to execute this declaration on behalf of Macquarie.

2.       I am filing this declaration in support of the application (the "***Application***")[2] of Archbrook Laguna Holdings LLC and its affiliated debtors (collectively, the "***Debtors***"), as debtors and debtors in possession in the above-captioned chapter 11 cases (the "***Chapter 11 Cases***"), for entry of an order authorizing the employment and retention of Macquarie as financial advisor to the Debtors in the Chapter 11 Cases.  Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein.  To the extent any

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: ArchBrook Laguna LLC (6166); ArchBrook Laguna Holdings LLC (6156); Chimerica Global Logistics LLC (3745); ArchBrook Laguna West LLC (9631); Lehrhoff ABL LLC (6386); Expert Warehouse LLC (4487); and ArchBrook Laguna New York LLC (5385).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

information disclosed herein requires amendment or modification upon Macquarie's completion of further review or as additional party-in-interest information becomes available to it, a supplemental declaration will be submitted to the Court reflecting such amended or modified information.

## A.    Macquarie's Qualifications

3.     Macquarie is a member firm of the Macquarie Group ("**MG**"), a diversified international provider of specialist investment, advisory, trading, and financial services in select markets around the world. Headquartered in Sydney, Australia, MG is a global investment bank and the leading Australian investment bank. MG employs over 15,500 people in 28 countries. In the United States, MG operates through a number of subsidiaries including Macquarie, an SEC-registered broker-dealer and member of the Financial Industry Regulatory Authority. Such subsidiaries are further arranged into different business divisions. The Macquarie professionals advising the Debtors in these Chapter 11 Cases sit within the Capital Advisors division of Macquarie. Furthermore, Macquarie Group Limited, the parent company of MG, is a top 20 company listed on the Australian Stock Exchange with total assets under management exceeding $A317 billion. Macquarie, through its Capital Advisors division, is a distinguished leader in providing advisory services to companies, creditors, and stakeholders in financially distressed situations.

4.     Macquarie's employees have been leading advisors to debtors, creditors' committees, bondholder groups, secured and unsecured creditors, acquirers, and other parties in interest involved in financially troubled companies both in and out of bankruptcy proceedings. Macquarie's engagements have included providing financial advisory services to the debtors in *In re Delta Air Lines, Inc.*, Case No. 05-17923 (CGM) (Bankr. S.D.N.Y), and *In re Lazy Days'*

*R.V. Center, Inc., et al.*, Case No. 09-13911 (KG) (Bankr. D. Del.), the Chapter 11 trustee in *In re Sentinel Mgmt. Grp., Inc.*, Case No. 07-14987 (JHS) (Bankr. N.D. Ill.), the senior lenders in *In re Refco Inc.*, Case No. 05-60006 (RDD) (Bankr. S.D.N.Y.), and the statutory committees of unsecured creditors in *In re Mesa Air Grp., Inc.*, Case No. 10-10018 (MG) (Bankr. S.D.N.Y.), *In re Enron Creditors Recovery Corp.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y.), and *In re USG Corp.*, Case No. 01-2094 (JKF) (Bankr. D. Del.). Through its role in these and other restructuring engagements, the Macquarie team has developed considerable expertise in many of the issues that will be present in this engagement.

**B.     Professional Services to be Rendered and Macquarie's Compensation**

5.      Macquarie has provided and agrees to continue to provide assistance to the Debtors in accordance with the terms and conditions as set forth in the Application, as well as the Engagement Letter. All of the services that Macquarie will provide to the Debtors will be (i) at the request of the Debtors and (ii) performed in accordance with customary market practices of the financial advisory profession.

6.      It is the intention of Macquarie to seek compensation for its services as described in the Application and Engagement Letter in accordance with the Bankruptcy Code, the Bankruptcy Rules, the United States Trustee Guidelines, and any and all rules of this Court. Further, as described in the Application, Macquarie will make an application to this Court for final allowance of compensation with respect to its fees in accordance with sections 327 and 328 of the Bankruptcy Code, the *U.S. Trustee Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses Filed under 11 U.S.C. § 330* and any orders of this Court governing such matters.

7.     Macquarie charges its clients for reasonable expenses associated with an assignment.  Except as necessary to comply with an applicable order, all such expense billings are in accordance with Macquarie's customary practices.

8.     Based on its experience and independent analysis, Macquarie believes that its fee and expense structure described in the Engagement Letter and summarized in the Application is fair and reasonable.  Macquarie believes that the fee and expense structure appropriately reflects the nature and scope of the services to be provided by Macquarie, Macquarie's substantial experience with respect to financial advisory services, and the fee structures typically utilized by Macquarie and other leading financial advisors which do not bill their clients on an hourly basis.

9.     Additionally, as of May 19, 2011, and pursuant to the Engagement Letter and the Indemnification Agreement attached hereto as **Schedules 1** and **2**, respectively, Macquarie was retained by the Debtors on a pre-petition basis to provide financial advisory services to the Debtors in its restructuring and reorganization efforts (the "***Prepetition Assignment***").  In connection with the Prepetition Assignment, Macquarie was paid a $100,000 Upfront Retainer and $117,500 in Monthly Advisory Fees (each as defined in the Engagement Letter).

10.     As of the date of filing, Macquarie has earned $217,500 for the 48 calendar days it was employed prepetition.  Further, Macquarie has incurred $44,284 in out-of-pocket expenses in connection with the Prepetition Assignment.

C.     **Disinterestedness of Professionals**

11.     As part of its diverse practice, Macquarie may have in the past represented, may currently represent, and likely will represent, in matters wholly unrelated to the Chapter 11 Cases, entities that are Parties in Interest (as defined below) in the Chapter 11 Cases. Additionally, Macquarie may have in the past been involved, may currently be involved, or may

in the future be involved, with cases, proceedings and transactions involving attorneys, accountants, investment bankers, financial consultants, and other professionals some of which may represent Parties in Interest. Based on Macquarie's current knowledge of the professionals involved in the Chapter 11 Cases, and to the best of my knowledge, none of these business relations constitute interests materially adverse to the Debtors and none are in connection with the Chapter 11 Cases.

12.     In the ordinary course of its business as a global securities trading firm, MG may be involved in transactions with respect to securities of Parties in Interest (as defined below). For the reasons described below, none of these relationships constitutes interests of Macquarie that are adverse to the Debtors or materially adverse to any class of the Debtors' creditors or equity security holders.

a)  MG and its affiliates regularly engage in trading securities. These trades may include trades of securities of Parties in Interest and/or trades with Parties in Interest for the account of MG or its customers (including parties in interest).

b)  MG and its affiliates may also trade indexes, portfolios or baskets of securities that may include securities of the Parties in Interest for the account of a member of MG or its customers.

c)  The business units engaging in the trading activities referred to in the clauses above are separate from the business unit that will be providing services to the Debtors in the Chapter 11 Cases. None of the professionals who will be providing services to the Debtors in the Chapter 11 Cases will be involved in any such trading activities. In addition, the information barrier described below restricts disclosure of material

confidential information by persons in the business unit providing services to the Debtors in the Chapter 11 Cases to persons in the trading business units.

d) In addition, MG has affiliates, joint ventures and other businesses other than Macquarie's Capital Advisors division, which are separated by permanent information barriers from Macquarie's Capital Advisors division, that may maintain relationships that may not be captured in the conflicts check described below. These relationships have not been reviewed against the list of Parties in Interest.

13. Macquarie does not believe that any of the above described connections will adversely affect the Debtors in any way. Macquarie has not represented, does not represent, and will not represent any entity's interest in the Debtors' chapter 11 cases nor have any relationship with any such entity which would be adverse to the Debtors. Macquarie does not believe that any potential relationship it may have with any Party in Interest will interfere with or impair Macquarie's representation of the Debtors in the Chapter 11 Cases.

14. In preparation for its representation of the Debtors' Macquarie and/or MG performed an analysis of its connections to entities (the "***Parties in Interest***")[3] listed in the following categories on the master list of potential parties in interest that was provided to Macquarie by the Debtors:

- Debtors and affiliated entities;
- Debtors' joint venture parties;
- Debtors' thirty largest unsecured creditors;
- Prepetition lenders to the Debtors;
- Debtors' financial institutions;
- Agents for prepetition lenders;
- Parties to significant litigation with the Debtors;
- Equity holders holding more than 5% of Archbrook Laguna Holdings LLC;
- Current directors and officers of the Debtors;

---

[3] A list of the Parties in Interest is annexed hereto as **Schedule 3**.

- Other professionals retained by the Debtors;
- Key staff members of the Office of the United States Trustee for Region 2;
- Prospective DIP lenders;
- Prospective DIP agent; and
- Counsel to the prospective DIP agent.

15.     To determine whether Macquarie had any potential conflicts of interest or other relationships with the Parties in Interest, compliance staff in Macquarie's Capital Advisors division researched the master record database of clients used for its global Capital Advisors conflicts clearance process (the "***Conflicts Register***") and a central customer database ("***Central Customer Database***") that MG maintains to keep track of trading counterparties and certain other customers of MG to determine whether Macquarie had, within the past two (2) years, any relationship with any of the Parties in Interest.  Specifically, Macquarie and/or MG undertook the following review:

a) MG compared each of the Parties In Interest to MG's Conflicts Register consisting of the names of clients and certain other parties with connections to Macquarie's Capital Advisors businesses.  It is the policy of MG that no new Capital Advisors matter may be accepted or opened without first completing and submitting to those charged with maintaining the conflict check system information necessary to check each such matter for conflicts, including the identity of the prospective client.

b) MG also compared each of the Parties In Interest to MG's Central Customer Database, consisting of trading counterparties and certain other customer relationships.

c) Where MG identified connections between Parties In Interest and entities listed in the Conflicts Register or the Central Customer Database, MG personnel knowledgeable about the current or former matters, as appropriate, were contacted to ascertain whether there was any connection to the Chapter 11 Cases.

16. To the extent that the research of connections with the Parties In Interest indicated that Macquarie has a connection with any such entity, or certain affiliates and/or subsidiaries thereof, the identities of such entities are set forth on **<u>Schedule 4</u>** attached hereto. These connections may include any of the types of relationships described above, but none is such that Macquarie holds or represents an interest adverse to the Debtors or materially adverse to any class of the Debtors' creditors or equity security holders. Additionally, MG checked the list of Parties In Interest and determined that none of them is a company controlled by MG.

17. Additionally, following the public announcement of the commencement of the Chapter 11 Cases, Macquarie intends to a conduct a general inquiry to all MG personnel by electronic mail to determine whether any such individual or any member of his or her immediate family (spouse, minor child, or other member of his or her household) (i) owns any debt or equity securities of the Debtors; (ii) holds a claim against the Debtors; (iii) is or was an officer, director, or employee of the Debtors or (iv) is related to or has any connections to Bankruptcy Judges in the Southern District of New Work, or to anyone working in the Office of the United States Trustee for Region 2. To the extent that this inquiry uncovers any additional connections to the Chapter 11 Cases, Macquarie will provide additional disclosure.

18. After reviewing the results of the above described analysis, it is my belief that Macquarie is a "disinterested person" as that term is defined in section 101(14) and as required by section 327(a) and referenced by section 328(c) of the Bankruptcy Code in that its employees:

a) are not creditors, equity security holders or insiders of the Debtors;

b) are not and, were not, within two (2) years before the date of the filing of the Debtors' chapter 11 petitions, directors, officers, or employees of the Debtors; and

c) do not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or for any other reason.

19.     Macquarie will periodically review its files during the pendency of its engagement by the Debtors to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, Macquarie will use reasonable efforts to identify such further developments and will promptly supplement its disclosure.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 8, 2011

MACQUARIE CAPITAL (USA) INC.

_____
David Miller
as Managing Director of Macquarie Capital
(USA) Inc.

## Schedule 1

## Engagement Letter

| | | |
|---|---|---|
| 5 Concourse Parkway, Suite 2750 | Telephone | 1 404 815 3420 |
| Atlanta, GA 30328 | Tollfree | 1 800 648 2878 |
| UNITED STATES | Facsimile | 1 404 815 3430 |
| | Internet | www.macquarie.com |

May 19, 2011

STRICTLY CONFIDENTIAL

Peter Handy
Executive Vice President
ArchBrook Laguna, LLC
350 Starke Road, Suite 400
Carlstadt, NJ 07072

Dear Mr. Handy:

This letter agreement (including Attachment A hereto, this "Letter Agreement") confirms the understanding between Archbrook Laguna, LLC and its affiliates (collectively, the "Company" or "you") and Macquarie Capital (USA) Inc. ("Macquarie Capital" or "we") with regard to the engagement of Macquarie Capital as financial advisor to assist the Company in its analysis and consideration of various financial alternatives available to it, including a possible Restructuring (as defined below), Sale Transaction (as defined below), Financing (as defined below), and such other matters as to which the Company and Macquarie Capital may agree during the course of this engagement.

**Defined Terms**

1.      The following terms shall have the following meanings for purposes of this Letter Agreement:

        a.      "Financing" means any transaction or series of transactions involving the public or private issuance, sale, or placement of newly issued (or treasury) equity, equity-linked, or debt securities, instruments, or obligations of the Company, including, without limitation, any exit financing or debtor-in-possession financing in connection with a case commenced under the Bankruptcy Code (as defined below).

        b.      "Restructuring" means any restructuring, recapitalization, refinancing, capital raising or financing (including, without limitation, debtor-in-possession financing), or exchange, conversion, cancellation, reduction, or retirement of all or a portion of the Company's debt securities and/or other indebtedness, financial obligations, or liabilities (collectively, the "Restructured Obligations"), including, without limitation, pursuant to a repurchase or an exchange transaction, a plan of reorganization (including, without limitation, with respect to a prepackaged or prearranged plan of reorganization or other plan pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")), solicitations of waivers or consents, rescheduling of maturities, change in interest rates, conversion into equity, or any other similar transaction or series of transactions.

        c.      "Sale Transaction" means any sale, transfer, or other disposition, directly or indirectly, of all or a material portion of the equity securities, assets, or business of the Company,

Macquarie Capital (USA) Inc. is not an authorized deposit-taking institution for the purposes of the Banking Act 1959 (Commonwealth of Australia), and its obligations do not represent deposits or other liabilities of Macquarie Bank Limited ABN 46 008 583 542. Macquarie Bank Limited does not guarantee or otherwise provide assurance in respect of the obligations of Macquarie Capital (USA) Inc.

whether effected in one transaction or a combination or series of transactions and whether by way of any merger, consolidation, business combination, recapitalization, reorganization, restructuring, investment, sale or issuance of capital stock or other equity interests, leveraged buyout, exchange offer, tender offer, sale or lease of assets, formation of a joint venture, partnership or similar relationship, or any other similar transaction however structured and involving the Company or any of its affiliates.

      d.     "Transaction" means any of a Financing, Restructuring, Sale Transaction, or any combination thereof.

## Macquarie Capital's Services

2.     Subject to the terms and conditions of this Letter Agreement, Macquarie Capital shall provide the services described below.

      a.     In connection with a possible Restructuring, Macquarie Capital shall provide services that are customary for financial advisory engagements involving a possible Restructuring, including the following

          i.     review and analyze the Company's business plan and financial projections;

          ii.     advise the Company regarding its capital structure, liquidity and debt capacity;

          iii.     advise the Board of Directors of the Company (the "Board") in connection with its consideration of a possible Restructuring;

          iv.     engage in discussions and negotiations with key constituents and parties-in-interest;

          v.     in the event of a case commenced by the Company under the Bankruptcy Code, participate in meetings with any official committee of unsecured creditors or other committee appointed in such case or ad hoc committee of creditors with respect thereto; and

          vi.     in the event of a case commenced by the Company under the Bankruptcy Code, provide testimony and/or attend court hearings in any proceedings before the Bankruptcy Court (as defined below), as necessary, with respect to matters on which we have been engaged to advise the Company.

      b.     In connection with a possible Sale Transaction, Macquarie Capital shall provide services that are customary for financial advisory engagements involving a possible Sale Transaction, including the following:

          i.     advise the Board in developing the Company's strategy with regard to the Sale Transaction;

          ii.     assist in analyzing the financial effects of the proposed Sale Transaction;

          iii.     assist in the preparation, if necessary, of a descriptive memorandum regarding the Sale Transaction; and

          iv.     advise the Company in its negotiations regarding the financial terms of the Sale Transaction.

      c.     In connection with a possible Financing, Macquarie Capital shall provide services that are customary for financial advisory engagements involving a possible Financing, including the following:

      i.      provide financial advice to the Company in structuring a Financing, identifying potential investors and, at the Company's request, contacting such potential investors; and

      ii.     advise the Board in negotiations with potential investors.

**Fees and Expenses**

3.     As consideration for the services to be performed under this Letter Agreement, the Company shall pay Macquarie Capital the following fees:

    a.     a retainer fee of $100,000 ("Upfront Retainer") to be due upon execution of this Letter Agreement which shall be fully creditable towards the Restructuring Fee, Sale Transaction Fee or aggregate amount of Financing Fees (as defined below) earned by MCUSA; and

    b.     a monthly advisory fee of $75,000 per month ("Monthly Advisory Fee") for the first three months and $50,000 per month for each month thereafter. The first Monthly Advisory Fee will be earned and be due thirty (30) days from execution of this Letter Agreement, with additional Monthly Advisory Fees due and fully earned thirty (30) days in arrears for the period until the earlier of (i) the date of consummation of a Restructuring, or (ii) the eighteen (18) month anniversary of the date of execution of this Letter Agreement; and

    c.     a fee (the "Restructuring Fee") in an amount equal to 2.0% of the aggregate outstanding principal amount (and, if applicable, the unpaid accreted amount) of the Restructured Obligations that are the subject of any Restructuring, payable upon the date of consummation of such Restructuring <u>provided</u> that the minimum Restructuring Fee payable shall be $1,250,000; or

    d.     a fee in an amount equal to 1.5% of the Transaction Value (as defined below) up to $100,000,000 and 2.0% of incremental Transaction Value above $100,000,000 payable upon the consummation of a Sale Transaction (the "Sale Transaction Fee") <u>provided</u> that the minimum Sale Transaction Fee payable shall be $1,250,000; and

    e.     a fee (the "Financing Fee"), in an amount equal to the following, payable upon the closing of a Financing:

      i.      1.0% of the gross proceeds of all senior indebtedness;

      ii.     2.0% of the gross proceeds of all junior secured indebtedness;

      iii.    3.0% of the gross proceeds of all mezzanine indebtedness;

      iv.    5.0% of the gross proceeds of all equity, equity-linked or equity-like securities or indebtedness; and

      v.    with respect to any other securities of a Financing, such underwriting discounts, placement fees or other compensation (as applicable), customary under the circumstances, as shall be mutually agreed upon by the Company and Macquarie Capital

For purposes of this Letter Agreement, "Transaction Value" means the total consideration (whether in the form of cash, capital stock, options, warrants, other securities, notes, assets, property, assumption of indebtedness, or otherwise) paid or payable or received or to be received (and in the case of a partnership, joint venture, or similar transaction, contributed or to be contributed, by the parties thereto, in the aggregate) directly or indirectly, in connection with the Sale Transaction, including, but not limited to, the following (without duplication): (1) the total amount paid or payable to the Company or to the holders of equity interests, and the holders of warrants, options, equity appreciation rights, or similar rights, in the Company, (2) the total amount paid or payable to equity holders, management, or employees of the Company pursuant to covenants not to compete, employment contracts, consulting contracts, employee benefit plans, or

other similar arrangements, (3) the total amount of indebtedness for borrowed money and other similar non-trade liabilities or obligations (including, but not limited to, pension liabilities, guarantees, capitalized leases and the like) repaid, retired, extinguished, refinanced, or assumed in connection with, or which are incurred or otherwise remain outstanding as of the closing of, a Sale Transaction (the "Closing"), (4) the total amount of any fees payable, reserves established, and other costs payable in connection with any indebtedness relating to a Sale Transaction, (5) the total amount of any other reserves established relating to a Sale Transaction, (6) the net value (if positive) of current assets not sold, (7) the total amount of any extraordinary dividend or other distribution, spin-off, stock buyback, split-off, or similar transaction, and (8) in the event of a Sale Transaction that takes the form of, or is preceded by, a recapitalization or restructuring, the fair market value of the equity interests of the applicable entity retained by its security holders upon consummation of such Sale Transaction (all such cash, securities, or other consideration being deemed to have been paid in connection with such Sale Transaction). For purposes of calculating Transaction Value, non-cash consideration shall be valued as follows: (x) publicly traded securities shall be valued at the average of their closing prices (as reported in the *Wall Street Journal*) for the five trading days prior to the closing of the Sale Transaction, (y) warrants and options shall be valued using the treasury stock method without giving effect to tax implications and (z) any other non-cash consideration shall be valued at the fair market value thereof as determined in good faith by Macquarie Capital. If any portion of the Transaction Value is not readily determinable as of the Closing, then the Company and Macquarie Capital will determine the value of such portion by agreement before the Closing. For purposes of calculating Transaction Value, (I) Sale Transaction consideration payable in installments shall be deemed to be paid at the Closing and valued at the net present value thereof and (II) earn-outs and other amounts to be paid contingent upon future events shall be estimated in a manner mutually agreeable to the Company and Macquarie Capital and be deemed be paid at the Closing valued at the net present value of such estimated amount; provided, however, that amounts held in escrow shall in each case be deemed paid at the Closing. If less than 100% of the assets or outstanding shares, options, warrants or convertible securities of the Company are acquired, the Sale Transaction Fee will be calculated as if all of such assets or securities had been acquired.

It is understood and agreed that if the proceeds of any Financing are to be funded in more than one issuance or drawing, Macquarie Capital shall be entitled to the applicable fees hereunder upon the closing date of each issuance or drawing even if one or more of such issuances or drawings is consummated after the termination of this Letter Agreement, as long as one or more of such issuances or drawings is consummated during the term of this Letter Agreement.

4.        The Company agrees to reimburse Macquarie Capital periodically, upon request, and upon termination of our services pursuant to this Letter Agreement for our reasonable expenses, including, without limitation, the fees and disbursements of our attorneys, arising in connection with any matter referred to in this Letter Agreement. The provisions of this Section shall not in any way limit the Company's obligations pursuant to Attachment A hereto.

5.        Notwithstanding anything to the contrary in this Letter Agreement, in connection with any Transaction that is intended to be effected, in whole or in part, as a prepackaged plan of reorganization, as may be modified from time to time (a "Prepackaged Plan") or a prearranged or pre-negotiated plan of reorganization, as may be modified from time to time (a "Prearranged Plan"), involving or anticipated to involve the solicitation of acceptances of such plan in compliance with the Bankruptcy Code, by or on behalf of the Company, from holders of claims in any class of the Company's securities, indebtedness, or obligations, the Refinancing Fee shall be payable (a) in the case of a Prepackaged Plan, upon receipt of the votes from the applicable creditors necessary to confirm such Prepackaged Plan or (b) in the case of a Prearranged Plan, upon obtaining written indications of support from those creditors of the Company that in the

good faith judgment of the Board are sufficient to justify filing such Prearranged Plan; provided, however, that if the Prepackaged Plan or Prearranged Plan for which the Refinancing Fee was paid prior to the filing of the bankruptcy case is not subsequently confirmed by the bankruptcy court having jurisdiction over the Company's chapter 11 cases (the "Bankruptcy Court") and such Prepackaged Plan or Prearranged Plan, as the case may be, is not subsequently consummated, Macquarie Capital shall, at the request of the Company, refund the Refinancing Fee received by it; provided, further, that notwithstanding any such refund, Macquarie Capital shall be entitled to the Refinancing Fee in the event a subsequent plan of reorganization is consummated, subject to court approval, if necessary.

6.      The Company acknowledges and agrees that Macquarie Capital's restructuring expertise and experience were important factors in determining the amount of the fees set forth herein, and that the ultimate benefit of Macquarie Capital's services hereunder could not be measured merely by reference to the number of hours to be expended by Macquarie Capital's professionals in the performance of such services, the results achieved, or the ultimate benefit to the Company of the work performed. Each party hereto also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties hereto in anticipation that a substantial commitment of professional time and effort will be required of Macquarie Capital and that the actual time and commitment required of Macquarie Capital and its professionals to perform its services hereunder may vary substantially from week to week or month to month. Given the numerous issues the Company anticipates may arise in connection with any Transaction, the time and effort necessary to address all such issues as they arise, and the market prices for Macquarie Capital's services for engagements of this nature in an out-of-court context, each party hereto agrees that the fee and expense arrangements set forth hereunder are reasonable under all applicable legal standards. The Company further acknowledges and agrees that, in the event the Company commences a case under chapter 11 of the Bankruptcy Code, the fees, expenses, and other amounts payable to Macquarie Capital hereunder (including Attachment A hereto) shall be entitled to priority as administrative expenses under sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code and any and all such expenses and other amounts shall be entitled to the benefit of any "carve-outs" for professional fees and expenses in effect in any case commenced by the Company under the Bankruptcy Code pursuant to any financing orders and/or cash collateral orders now or hereafter in effect.

7.      Macquarie Capital's engagement under this Letter Agreement may be terminated at any time by either Macquarie Capital or the Company, upon written notice to that effect to the other party; provided that the provisions set forth under the first paragraph, Section 1, Section 5, Section 6, this Section 7, and each subsequent Section of this Letter Agreement, and Attachment A hereto, shall survive any termination of this Letter Agreement. In addition, in the event of the termination of this Letter Agreement, Macquarie Capital shall continue to be entitled to receive (a) all fees described in this Letter Agreement that have accrued prior to such termination, (b) reimbursement for expenses incurred prior to termination, and (c) the Restructuring Fee, Financing Fee, and/or Sale Transaction Fee, as the case may be, in the event that at any time prior to the date falling on the second anniversary of such termination (i) a Transaction is consummated or (ii) a definitive agreement, letter of intent or agreement in principle with respect to a Transaction is entered into and subsequently consummated, which fees shall be payable promptly upon consummation of such Transaction.

## Application for Retention

8.      If a case with respect to the Company is commenced under the Bankruptcy Code, the Company shall promptly apply to the Bankruptcy Court for approval pursuant to sections 327 and 328(a) of the Bankruptcy Code of this Letter Agreement and the retention of Macquarie Capital by the Company under the terms of this Letter Agreement, nunc pro tunc to the date of

commencement of such case, and for this Letter Agreement to be subject to the standard of review under section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Company shall provide Macquarie Capital and its counsel with a draft of such application and a proposed order authorizing such retention sufficiently prior to the filing of such documents with the Bankruptcy Court for review and comment by Macquarie Capital and its counsel. Following the commencement of a case with respect to the Company under the Bankruptcy Code, Macquarie Capital shall have no obligations under this Letter Agreement unless and until this Letter Agreement in its entirety (including Attachment A) and the retention of Macquarie Capital under the terms of this Letter Agreement are so approved by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Macquarie Capital in all respects.

9.      Macquarie Capital does not charge for its services on an hourly basis and, accordingly, does not maintain time records in support of costs and expenses. The Company shall, as a part of any application or order submitted to the Bankruptcy Court for approval of this Letter Agreement and authorizing the retention of Macquarie Capital as contemplated hereby, seek a waiver from the Bankruptcy Court of any requirement of Macquarie Capital to maintain and/or submit time records notwithstanding anything to the contrary in the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, local rules of the Bankruptcy Court, or any other guidelines or further orders of the Bankruptcy Court.

## Information

10.      The Company agrees to make available to Macquarie Capital all information concerning the business, assets, operations, financial condition, and prospects of the Company that Macquarie Capital reasonably requests in connection with the services to be performed for the Company hereunder and shall provide Macquarie Capital with reasonable access to the Company's officers, directors, employees, independent accountants, and other advisors and agents as Macquarie Capital shall deem appropriate. The Company understands that Macquarie Capital will assume that any financial projections or forecasts that may be furnished by or discussed with the Company have been reasonably prepared and reflect the best then currently available estimates and judgments of the Company's management, and the Company agrees to advise Macquarie Capital regarding any material developments relating to the Company of which it becomes aware during the term of Macquarie Capital's engagement hereunder in order to assist Macquarie Capital in performing services hereunder. The Company represents and agrees that all information furnished to Macquarie Capital by or on behalf of the Company and any other information or documents (including, without limitation, any descriptive memoranda) furnished by or on behalf of the Company to third parties (a) will not contain any untrue statement of a material fact or omit to state any material fact necessary to make the statements therein, in light of the circumstances in which they were made, not be false or misleading, and (b) will be true, complete and correct in all material respects. Macquarie Capital will have no obligation to conduct any independent evaluation or appraisal of the respective assets or liabilities of the Company or any other party or to advise or opine on any related solvency issues. The Company recognizes and confirms that in advising the Company and completing its engagement hereunder, Macquarie Capital will be using and relying on publicly available information and on data, materials, and other information furnished to Macquarie Capital by the Company and other parties. The Company recognizes that, in providing our services pursuant to this Letter Agreement, we will rely upon and assume the accuracy and completeness of all of the financial, accounting, tax, and other information discussed with or reviewed by us for such purposes, and we do not assume responsibility for the accuracy or completeness thereof.

11.     The Company will be the issuer of and shall be responsible for any descriptive memorandum, and such descriptive memorandum shall be based exclusively upon information provided by the Company. The Company shall be exclusively responsible for the accuracy and completeness of the descriptive memorandum, and Macquarie Capital may rely upon the accuracy and completeness of all such information without independent verification.

## Confidentiality

12.     Macquarie Capital's role as advisor to the Company and the terms and conditions of this Letter Agreement may not be disclosed by the Company nor may any references to Macquarie Capital be made without the prior written consent of Macquarie Capital. Any advice, analysis, opinion or documentation (whether written or oral) rendered or provided by Macquarie Capital in its role as advisor to the Company will be solely for the confidential use of the Board and may not be disclosed, quoted, reproduced, summarized, described, or referred to without the prior written consent of Macquarie Capital. Notwithstanding the foregoing, Macquarie Capital acknowledges and agrees that if a case with respect to the Company is commenced under the Bankruptcy Code (a) this Letter Agreement must be filed with the Bankruptcy Court as an exhibit to its application for retention or any declaration in support thereof, (b) Macquarie Capital's valuation determinations will be summarized in the Company's disclosure statement(s) regarding any plan of reorganization(s) to be filed with the Bankruptcy Court during the term of Macquarie Capital's engagement hereunder, and (c) Macquarie Capital's advice may be required to be disclosed in the Bankruptcy Court or in related court proceedings in connection with the Company's bankruptcy cases, and Macquarie Capital agrees that during the term of its engagement hereunder Macquarie Capital will not unreasonably withhold its consent to any such disclosure provided that Macquarie Capital has been provided with reasonable advance notice thereof and has approved in advance in writing the text of any such disclosure and all references to Macquarie Capital.

13.     Macquarie Capital agrees to keep all information furnished by or on behalf of the Company to Macquarie Capital in connection with this engagement confidential; provided that (a) such information may be disclosed to affiliates of Macquarie Capital and to the extent necessary for Macquarie Capital to perform its duties under this Letter Agreement and (b) Macquarie Capital shall not be obligated to keep such information confidential to the extent that it (i) is or becomes publicly available through a source other than Macquarie Capital, (ii) was known to Macquarie Capital at the time such information was furnished to Macquarie Capital, (iii) is independently developed by Macquarie Capital without reference to such information, (iv) is learned from a third party that does not impose an obligation of confidentiality upon Macquarie Capital, (v) is required to be disclosed pursuant to applicable law or regulation, stock exchange or self regulatory organization requirements, government authority, duly authorized subpoena or court order or directive, or (vi) is approved for disclosure by prior consent of the Company. The obligations of Macquarie Capital under the immediately preceding sentence shall terminate upon the first anniversary of the date Macquarie Capital ceases to perform services for the Company under this Letter Agreement.

## Other Provisions

14.     In addition, if during the term of Macquarie Capital's engagement by the Company or prior to the second anniversary of the termination of this Letter Agreement, the Company determines to undertake a tender offer, exchange offer, consent solicitation, or similar transaction, then the Company shall offer to engage Macquarie Capital (in addition to its role as financial advisor) as the sole dealer manager in connection therewith. In such an event, if Macquarie Capital agrees to act in such capacity the Company and Macquarie Capital shall enter into a dealer manager agreement which shall contain Macquarie Capital's customary terms for the applicable type of transaction at such time (including with respect to representations, warranties,

covenants, conditions, fees, indemnification and delivery of legal opinions). The Company understands that Macquarie Capital may decline any such engagement in its sole and absolute discretion.

15.     This Letter Agreement does not constitute an underwriting agreement, a commitment on the part of Macquarie Capital to subscribe for securities or to provide or arrange debt or a commitment to invest in any way in any transaction.

16.     The Company acknowledges and agrees that the Company is solely responsible for ensuring that it complies with all applicable law, including, without limitation, that any offer or sale of securities is made in compliance with the registration requirements of the Securities Act of 1933 and the requirements of any applicable state securities laws or qualifies for an exemption from such registration requirements and/or such state securities laws.

17.     I is understood and agreed that Macquarie Capital will act under this Letter Agreement as an independent contractor with duties solely to the Company and nothing in this Letter Agreement or the nature of our services in connection with this engagement or otherwise shall be deemed to create a fiduciary duty or fiduciary or agency relationship between or among Macquarie Capital, the Company or its security holders, employees, creditors, any other party in interest in any case commenced by the Company under the Bankruptcy Code, or any other person or entity, and the Company agrees that it shall not make, and hereby waives, any claim based on an assertion of any such fiduciary duty or other relationship. Neither this Letter Agreement nor the delivery of any advice in connection with this Letter Agreement confers upon any person or entity not a party hereto (including, without limitation, security holders, employees, creditors, any other party in interest in any case commenced by the Company under the Bankruptcy Code, or any other person or entity) any rights or remedies hereunder or by reason hereof as against Macquarie Capital or the other Indemnified Parties (as defined in Attachment A hereto).

18.     Macquarie Capital's area of expertise is in financial advisory matters. In rendering its services to the Company hereunder, the Company understands and acknowledges that Macquarie Capital cannot provide any assurance that a Transaction will be consummated, and Macquarie Capital is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any Transaction. The Company agrees that Macquarie Capital shall not have any obligation or responsibility to provide accounting, audit, "crisis management," or business consulting services or to conduct any appraisal of any assets or liabilities of the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements. The Company will be responsible for obtaining its own professional advice on legal, accounting, taxation, and other specialist matters outside Macquarie Capital's area of expertise. Moreover, Macquarie Capital will not be responsible for setting the scope of or for reviewing the Company's due diligence exercise.

19.     All payments due to Macquarie Capital under this Letter Agreement shall be quoted and payable in cash in United States dollars by wire transfer of immediately available funds.

20.     In connection with engagements such as this, it is our firm policy to receive indemnification. The Company agrees to the provisions of Attachment A hereto, which is an integral part of this Letter Agreement and is incorporated herein in full.

21.     Upon the earlier of the public announcement of the Transaction or the consummation of the Transaction, Macquarie Capital may, at its option and expense, (a) disclose to any party or publicly announce its role as financial advisor to the Company and/or (b) place "tombstone" advertisements in financial and other publications and media describing its services to the Company under this Letter Agreement.

22.     Macquarie Capital and its affiliates are engaged in a broad range of securities activities and financial advisory services.  Macquarie Capital and its affiliates carry on a range of businesses on their own account and for their clients, including providing stock brokerage, investment advisory, investment management, proprietary financings and custodial services.  It is possible that the various divisions, business groups and affiliates of Macquarie Capital which provide these services may hold long, short or derivative positions in securities or obligations of companies which are or may be involved in any transaction contemplated hereby and effect transactions in those securities or obligations for their own account or for the account of their clients.  Accordingly, there may be situations where these divisions, business groups and affiliates and/or their clients either now have or may in the future have interests, or take actions, that may conflict with the interests of the Company, and the Company agrees that such divisions, business groups and affiliates, and their clients, may hold such positions, effect such transactions and take such other actions without regard to the Company's interests.  In addition, research analysts of Macquarie Capital and its affiliates may hold and make statements or investment recommendations and/or publish research reports with respect to the Company, the transactions contemplated by this Letter Agreement or any other party involved in such transactions that differ from or are inconsistent with the views or advice communicated by Macquarie Capital's Capital Advisors division.  The Company agrees that Macquarie Capital and its affiliates are not required to restrict their activities as a result of this engagement, and may undertake any business activity (including, without limitation, performing the same or similar engagements for other clients in the Company's industry) without further consultation with or notification to the Company.  Furthermore, the Company agrees that Macquarie Capital shall not have a duty to disclose to the Company or use on behalf of the Company any information whatsoever about, relating to or derived from those activities.

23.     Macquarie Capital, as a registered broker-dealer and FINRA member, is required to obtain, verify and record certain information regarding the individuals or entities with which Macquarie Capital does business.  The Company agrees to provide Macquarie Capital with the Company's tax identification number and/or other identifying information, as necessary to enable Macquarie Capital to comply with applicable law or regulation.  The Company may also be asked to provide documents to verify its identity, including a copy of its constituent documents (i.e., articles of incorporation, partnership agreement, limited liability company agreement, trust agreement or government-issued business license).

24.     This Letter Agreement constitutes the entire agreement between the Company and Macquarie Capital relating to this engagement, and supersedes any and all prior agreements between the parties relating to this engagement.  No waiver, amendment or other modification of this Letter Agreement shall be effective unless in writing and signed by each party intended to be bound thereby.

25.     The Company acknowledges that Macquarie Capital may carry out the services contemplated hereunder through or in conjunction with one or more affiliates.  Unless otherwise agreed in writing by the parties, any such services performed by any such affiliate shall be subject to the terms and conditions of this Letter Agreement (including, without limitation, Attachment A hereto).

26.     This Letter Agreement may not be assigned by the Company or Macquarie Capital, except with the written consent of the non-assigning party; provided that Macquarie Capital may assign its rights and obligations hereunder to any affiliate of Macquarie Capital upon written notice to the Company of such assignment.  Any attempted assignment in violation of the provisions hereof shall be void and of no effect.  The benefits of this Letter Agreement shall inure to the Company, Macquarie Capital, the Indemnified Parties (as defined in Attachment A hereto) and their respective successors and permitted assigns, and the obligations and liabilities assumed

in this Letter Agreement by the parties hereto (including, without limitation, Attachment A hereto) shall be binding upon their respective successors and assigns. Neither this Letter Agreement nor the delivery of any advice in connection with this Letter Agreement is intended to confer rights upon any person not a party hereto (including security holders, employees or creditors of the Company) as against Macquarie Capital or the other Indemnified Parties.

27.     To the extent that the Company requests that Macquarie Capital perform additional services not contemplated by this Letter Agreement, the scope and fees for such services shall be mutually agreed upon in writing by Macquarie Capital and the Company.

28.     This Letter Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute the same agreement. Transmission by telecopy, facsimile, email or other form of electronic transmission of an executed counterpart of this Letter Agreement shall be deemed to constitute due and sufficient delivery of such counterpart. If any portion of this Letter Agreement is held to be void, invalid or otherwise unenforceable, in whole or in part, the remaining portions of this Letter Agreement shall remain in effect, whereupon the parties shall negotiate in good faith to replace the void, invalid or otherwise unenforceable provision with a valid and enforceable provision that effects the original intent of the parties to the fullest extent possible.

29.     This Letter Agreement shall be governed by, and construed in accordance with, the laws of the state of New York applicable to contracts executed in and to be performed in that state. The Company hereby (a) irrevocably consents to personal jurisdiction (i) in the event the Company commences a case under the Bankruptcy Code and to the extent the Company's bankruptcy cases are then pending, or if not then pending the relevant bankruptcy court shall have retained exclusive jurisdiction over the subject matter of such suit or proceeding, in the Bankruptcy Court, or (ii) in all other cases, the Supreme Court of the State of New York in New York County, Commercial Part, or any Federal court sitting in the Southern District of New York, for the purposes of any suit, action or other proceeding arising out of this Letter Agreement or any of the agreements or transactions referred to herein or contemplated hereby, which is brought by or against the Company, (b) waives any objection to venue with respect thereto, and (c) agrees that all claims in respect of any such suit, action or proceeding may be heard and determined in any such court, and that such courts shall have jurisdiction over any claims arising out of or relating to the Letter Agreement or such agreements or transactions, and agrees not to commence any suit, action or proceeding arising out of or relating to the Letter Agreement except in such courts. The Company hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the Company at its address set forth above, such service to become effective ten (10) days after such mailing. ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS LETTER AGREEMENT OR CONDUCT IN CONNECTION WITH THIS ENGAGEMENT IS HEREBY WAIVED.

[Signature Page Follows]

This engagement is important to us and we appreciate the opportunity to be of service to the Company.  If the Company is in agreement with the terms set forth herein, please indicate by signing and returning the enclosed copy of this Letter Agreement to us.  If you have any questions about this Letter Agreement or wish to discuss these matters further, please contact David Miller at (404) 815-3421.

Very truly yours,

MACQUARIE CAPITAL (USA) INC.

By: _____
        Name:
        Title:

By: _____
        Name:
        Title:

Agreed to and Accepted as of
the date first written above by:

ARCHBROOK LAGUNA, LLC

By: _____
        Name: PETER A. FLOW
        Title: EXECUTIVE VICE PRESIDENT

Enclosure/Attachment

This engagement is important to us and we appreciate the opportunity to be of service to the Company. If the Company is in agreement with the terms set forth herein, please indicate by signing and returning the enclosed copy of this Letter Agreement to us. If you have any questions about this Letter Agreement or wish to discuss these matters further, please contact David Miller at (404) 815-3421.

Very truly yours,

MACQUARIE CAPITAL (USA) INC.

By: _David S. Miller_
    Name: _David S. Miller_
    Title: _Managing Director_

By: _____
    Name:
    Title:

Agreed to and Accepted as of
the date first written above by:

ARCHBROOK LAGUNA, LLC

By: _____
    Name:
    Title:

Enclosure/Attachment

This engagement is important to us and we appreciate the opportunity to be of service to the Company. If the Company is in agreement with the terms set forth herein, please indicate by signing and returning the enclosed copy of this Letter Agreement to us. If you have any questions about this Letter Agreement or wish to discuss these matters further, please contact David Miller at (404) 815-3421.

Very truly yours,

MACQUARIE CAPITAL (USA) INC.

By: _____
    Name:
    Title:

By: _____
    Name: VIKRAM CHITKARA
    Title: Senior Vice President

Agreed to and Accepted as of
the date first written above by:

ARCHBROOK LAGUNA, LLC

By: _____
    Name:
    Title:

Enclosure/Attachment

## FIRST AMENDMENT

This First Amendment (the "Amendment") to the letter agreement dated May 19, 2011 (the "Agreement") between ArchBrook Laguna, LLC (together with its affiliates, the "Company") and Macquarie Capital (USA) Inc. ("MCUSA"), is made and entered into this 6th day of July, 2011.

## WITNESSETH:

WHEREAS, the Company and MCUSA entered into the Agreement pursuant to which the Company retained MCUSA to provide certain services as financial advisor in connection with a Transaction; and

WHEREAS, the Company and MCUSA have now agreed to amend the Agreement to modify certain provisions of the Agreement as set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    Definitions. Capitalized terms not defined in this Amendment have the meanings given to them in the Agreement.

2.    Amendments.

(i)    Clause (b) of Section 3 of the Agreement is hereby deleted in its entirety and replaced with the following:

> "b. a monthly advisory fee of $125,000 per month ("Monthly Advisory Fee"). The first Monthly Advisory Fee will be earned and be due thirty (30) days from execution of this Letter Agreement, with additional Monthly Advisory Fees due and fully earned thirty (30) days in arrears for the period until the earlier of (i) the date of consummation of a Restructuring, or (ii) the eighteen (18) month anniversary of the date of execution of this Letter Agreement. Fifty percent of all Monthly Advisory Fees paid after the third Monthly Advisory Fee will be credited (without duplication) against any Restructuring Fee, Sale Transaction Fee or Financing Fee that becomes payable under this Letter Agreement; and"

(ii)    The following is hereby added to the end of clause (d) of Section 3 of the Agreement:

> "further provided that, notwithstanding the foregoing, if a Sale Transaction for a material portion of the assets occurs through a series of transactions, the Sale Transaction Fee payable in the case of such liquidation shall not be based on the Transaction Value and shall instead be $650,000; and"

3.    Binding Effect. This Amendment is binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and permitted assigns.

4.    Recitals.    The recitals set forth above are hereby incorporated into this Amendment.

5.    Counterparts. This Amendment may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute the same agreement. In addition, facsimile signatures shall be valid, enforceable, and effective as if they were originals.

6.    Conflict. This Amendment shall be deemed to revise the terms and provisions of the Agreement to the extent necessary to give effect to the terms and provisions set forth herein. In the event of a conflict between the terms and provisions of this Amendment and the terms and provisions of the Agreement, this Amendment shall govern.

7.    Continuation of Agreement. As amended hereby, the Agreement shall continue in full force and effect and the parties hereto hereby ratify and reaffirm all provisions thereof. This Amendment shall not constitute an amendment or waiver of any provision of the Agreement not expressly referred to herein.

8.    Interpretation. The term "Letter Agreement" as used in the Agreement shall be deemed to refer to the Agreement as amended hereby

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have duly executed this Amendment as of the date first written above.

MACQUARIE CAPITAL (USA) INC.

By
Title

By
Title

ACCEPTED AND AGREED:

ARCHBROOK LAGUNA, LLC

By *Peter Hundy*
Title *Authorized Person*

IN WITNESS WHEREOF, the parties hereto have duly executed this Amendment as of the date first written above.

MACQUARIE CAPITAL (USA) INC.

By    David Miller
Title   Managing Director

By    Vikram Chitkara
Title   Senior Vice President

ACCEPTED AND AGREED:

ARCHBROOK LAGUNA, LLC

By
Title

**Schedule 2**

**Indemnification Agreement**

**Indemnification and Limitation of Liability Provisions**

The Company agrees to indemnify and hold harmless Macquarie Capital and its affiliates, and their respective directors, officers, managers, members, partners, employees, agents, and controlling persons (Macquarie Capital and each such person being an "Indemnified Party") from and against any and all losses, damages, liabilities, claims, actions, proceedings or expenses ("Claims," and each a "Claim"), joint or several, to which any Indemnified Party may become subject in connection with the restructuring, restructuring services, any transactions contemplated by this Letter Agreement (whether or not consummated) or the engagement of Macquarie Capital pursuant to, and the performance by Macquarie Capital of the services contemplated by, this Letter Agreement. The Company will also promptly reimburse each Indemnified Party for all expenses (including reasonable fees and expenses of legal counsel) as such expenses are incurred in connection with investigating, preparing to defend, or defending such Claims, whether or not such Indemnified Party is a party and whether or not such Claim is initiated or brought by or on behalf of the Company. The Company will not, however, be responsible to indemnify or reimburse any Indemnified Party pursuant to this Attachment A for any Claim or expenses relating thereto, if such Claim is judicially determined by final non-appealable order issued by a court of competent jurisdiction to have resulted primarily from the gross negligence or willful misconduct of such Indemnified Party.

In the event that the foregoing indemnification is for any reason unavailable to any Indemnified Party or insufficient to hold it harmless, the Company agrees to contribute to the Claims for which such indemnification is unavailable or insufficient (a) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and the Indemnified Party, on the other hand, of the restructuring, transaction or comparable transaction as contemplated (whether or not consummated) or (b) if (but only if) the allocation provided for in clause (a) of this paragraph is judicially determined not to be permitted, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (a) but also the relative fault of the Company, on the one hand, and the Indemnified Party, on the other hand, as well as any other relevant equitable considerations; provided that in no event shall the Indemnified Parties be responsible for or required to contribute an aggregate amount in excess of the aggregate fees actually paid to, and retained by, Macquarie Capital under this Letter Agreement (exclusive of amounts paid for reimbursement of expenses under this Letter Agreement or amounts paid to an Indemnified Party under this Attachment A). The Company agrees that for the purposes of this paragraph, the relative benefits to the Company and the Indemnified Parties of the restructuring, transaction or comparable transaction as contemplated (whether or not consummated) shall be deemed to be in the same proportion that the total value paid or contemplated to be paid or received or contemplated to be received by the Company, its security holders or creditors, as the case may be, as a result of or in connection with the restructuring, transaction or comparable transaction (whether or not consummated) bears to the fees actually paid to, and retained by, Macquarie Capital under this Letter Agreement (exclusive of amounts paid for reimbursement of expenses under this Letter Agreement or amounts paid to an Indemnified Party under this Attachment A). The Company and Macquarie Capital agree that it would not be just and equitable if contribution were determined by pro rata allocation or by any other method of allocation that does not take account of the equitable considerations referred to above.

The Company agrees that, without Macquarie Capital's prior written consent, it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action or proceeding in respect of which indemnification could be sought under the indemnification provisions of this Letter Agreement (whether or not Macquarie Capital or any other Indemnified Party is an actual or potential party to such claim, action or proceeding), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Party from all liability arising out of such claim, action or proceeding and Macquarie Capital's engagement and conduct in connection therewith.

In the event that any Indemnified Party is requested or authorized by the Company or is required by government regulation, subpoena, or other legal process to produce Macquarie Capital's documents as evidence or personnel as witnesses with respect to Macquarie Capital's services for the Company, the Company will reimburse Macquarie Capital for its professional time and expenses, including the reasonable fees and expenses of its counsel, incurred in responding to such requests.

The Company will also promptly reimburse Indemnified Parties for reasonable expenses (including reasonable counsel fees and expenses) as they are incurred in connection with enforcing this Attachment A.

In no event shall any Indemnified Party have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or any of its affiliates, security holders or creditors related to, arising out of or in connection with Macquarie Capital's engagement, performance of any service in connection therewith or any transaction contemplated thereby, other than with respect to any Claim that is judicially determined by final non-appealable order issued by a court of competent jurisdiction to have resulted primarily from such Indemnified Party's gross negligence or willful misconduct. Neither party shall be liable to the other for consequential, incidental, indirect, punitive or special damages (including loss of profits, data, business or goodwill), regardless of the legal theory advanced or of any notice given as to the likelihood of such damages; provided that (a) this provision shall not limit an Indemnified Party's indemnity or contribution rights as provided for in this Letter Agreement or applicable law and (b) damages required to be paid by an Indemnified Party to any third party that is not an Indemnified Party may be considered direct damages to such Indemnified Party. The Company's recourse with respect to any liability or obligation of Macquarie Capital hereunder shall be limited to the assets of Macquarie Capital, and the Company shall have no recourse against, and expressly waives its right to bring any claim against, any other Indemnified Party or any of their assets.

Prior to entering into any agreement or arrangement with respect to, or effecting, any merger, statutory exchange or other business combination or proposed sale or exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth herein, the Company will promptly notify Macquarie Capital in writing thereof and, if requested by Macquarie Capital, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth herein, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in an amount and on terms and conditions satisfactory to Macquarie Capital.

The foregoing provisions of this Attachment A are in addition to rights Macquarie Capital may have at common law or otherwise and shall inure to the benefit of the Indemnified Parties and their respective successors and assigns. The provisions of this Attachment A shall remain in full force and effect notwithstanding any termination or expiration of this Letter Agreement.

\*     \*     \*

## Schedule 3

## Parties in Interest Reviewed for Current Relationships

## CONFLICTS LIST- ARCHBROOK LAGUNA HOLDINGS LLC

### ALL ARCHBROOK LAGUNA ENTITIES
(including non-debtor affiliates and former names)

ArchBrook Laguna Holdings LLC
ArchBrook Laguna LLC
Lehrhoff ABL LLC
Expert Warehouse LLC
Chimerica Global Logistics LLC
BDILH Consolidated
Chimerica Global Logistics
ABL Management LLC
ABL Invest LLC
BDI Laguna Inc.
ArchBrook Laguna West
BDI Laguna Holdings, Inc.
Integrated Premium Concepts, a
Division of Lehrhoff ABL, LLC

BDI-BLM Trucking, Inc.
BDI-CL Holdings, Inc.
BDI Distributors, Inc.
BDI-Big City Express, Inc.
Esend, Inc.
BDI Laguna West, Inc
Entroute Solutions, Inc.
Sterling Imports, a Division of Lehrhoff ABL, LLC
Beyond Technology, Inc.
I Lehrhoof # Co
Sterling Imports
Integrated Premium Concepts

### ALL ARCHBROOK LAGUNA JOINT VENTURE PARTIES
(including non-debtor affiliates and former names)

Associated Volume Buyers of "AVB" Anaheim
California

### THIRTY LARGEST UNSECURED CREDITORS

Direct Entertainment Media Group Inc.
Toshiba America Inform. System
Hewlett-Packard US Operations
Tomtom Inc
Canon Inc
Fuego North America LLC
Centon Electronics Inc

Dell Marketing LP
Garmin International Inc.
Samsung Electronics America
Toshiba Consumer Products
Manhattan Associates
YRC Worldwide, Inc.
Sharp Appliances

## KEY VENDORS

Panasonic Consumer Electronics

## CONTRACT COUNTER-PARTIES

| | |
|---|---|
| Magnell Associate, Inc. (Newegg Inc.) | Crown Credit |
| Rent-A-Center, Inc. | Hewlett Packard Financial Services |
| Crown Leasing Corp | Delage Landen |
| Rent-A-Center | Amazon Fulfillment Services, Inc. |

## PREPETITION LENDERS TO THE DEBTORS

| | |
|---|---|
| Bank of America NA | GE Capital Markets, Inc. |
| GE Capital Commercial Services, Inc. | |
| GECDF/BSEF Outbound Facility | |
| GECFS Facility | |
| PNC Bank | |

## DEBTORS' FINANCIAL INSTITUTIONS

Bank of America
Wells Fargo
PNC Bank

## AGENTS FOR THE PREPETITION LENDERS

GE Capital Commercial Services, Inc.

## PARTIES TO SIGNIFICANT LITIGATION WITH THE DEBTORS

| | |
|---|---|
| New Age Electronics (Adverse) | Chuck Marsh (Adverse) |
| Yvette Myers Zimmerman | D&H Distributing (Adverse) |
| Marshall Mizell (Adverse) | |

## MAJOR INSURANCE CARRIERS, AGENTS, AND BROKERS

| | |
|---|---|
| Long Term Disability (excess) | Mass Mutual Financial Group |

## EQUITY HOLDERS HOLDING MORE THAN 5% OF ARCHBROOK LAGUNA HOLDINGS LLC

BDI Laguna Holdings, Inc.
ABL Invest LLC

## CURRENT DIRECTORS AND OFFICERS OF THE DEBTORS

Joel Blank                     William F. Kopeinig
Darren Marino                  Alexander K. Sudnick
Fritz Kopeinig                 David Drinan
Daniel Lehrhoff                Michael Bohardt
Michael McIntyre               David Meekings
Susan Tell                     Dean Sottile
John White                     Kay Shackleford Tibbetts
Daniel Boverman                Stephen Gawrylewski
Arthur Lehrhoff


## OTHER PROFESSIONALS RETAINED BY THE DEBTORS

Macquarie Capital (USA) Inc.
Akin Gump Strauss Hauer & Feld LLP
Garden City Group, Inc.
Hawkwood Consulting
O'Toole Fernandez Weiner Van Lieu
PricewaterhouseCoopers LLC

## KEY STAFF MEMBERS OF THE OFFICE OF THE UNITED STATES TRUSTEE FOR THE SOUTHERN DISTRICT OF NEW YORK

Sylvester Sharp                Marylou Martin
Andy Velez-Rivera              Anna M. Martinez
Linda A. Riffkin               Brian S. Masumoto
Catletha Brooks                Ercilia A. Mendoza
Nazar Khodorovsky              Mary V. Moroney
Danny A. Choy                  Richard C. Morrissey
Greg M. Zipes                  Serene Nakano
Elizabetta C. Dub              Nadkarni Joseph
Marilyn Felton                 Andrea B. Schwartz
Myrna R. Fields                Paul K. Schwartzberg
Elizabeth Gasparini
Susan Golden


## FORMER DIRECTORS AND OFFICERS OF DEBTOR ENTITIES

## ARCHBROOK LAGUNA HOLDINGS LLC

| Former Directors | Former Officers |
| --- | --- |
|  | PeterHandy |

# FORMER DIRECTORS AND OFFICERS OF DEBTOR ENTITIES

## ARCHBROOK LAGUNA LLC

| Former Directors | Former Officers |
|---|---|
| Peter Castenfelt | PeterHandy |

## BDI LAGUNA HOLDINGS, INC.

| Former Directors | Former Officers |
|---|---|
| | PeterHandy |

## ARCHBROOK LAGUNA WEST LLC

| Former Directors | Former Officers |
|---|---|
| Peter Castenfelt | PeterHandy |

## LEHRHOFF ABL LLC (NEVADA)

| Former Directors | Former Officers |
|---|---|
| Joel Blank | Peter Handy |
| Darren Marino | |
| Steven Silverman | |

## EXPERT WAREHOUSE LLC

| Former Directors | Former Officers |
|---|---|
| Peter Castenfelt | Peter Handy |
| James Ristow | David Meekings |
| Robert Lawrence | |

## PROSPECTIVE DIP AGENT

GE Capital Commercial Services, Inc.

## COUNSEL TO PROSPECTIVE DIP AGENT

Latham & Watkins LLP

**Schedule 4**

**Parties in Interest with Connections to Macquarie**

## THIRTY LARGEST UNSECURED CREDITORS

Canon Inc

YRC

Hewlett-Packard Us Operations

Jarden

Dell Marketing LLP

LG Electronics

Lenovo

Samsung Electronics America, Inc

Sharp Electronics Corp

Toshiba America Inform. System

Sharp Electronics Corp.

## KEY VENDORS

DELL MARKETING LP

General Electric Company

Hewlett-Packard Us Operations

Jarden

LG Electronics

Dell Marketing LLP

Applica, Inc. / Spectrum Brands

Lenovo

Sharp Electronics Corp.

Toshiba America Inform. System

Whirlpool Corporation, Inc.

## LEASE COUNTER-PARTIES

Whirlpool Corporation, Inc.

## COUNSEL TO PROSPECTIVE DIP AGENT

Latham & Watkins LLP

## DEBTORS' FINANCIAL INSTITUTIONS

Bank of America

Wells Fargo

PNC Bank

## KEY STAFF MEMBERS OF THE OFFICE OF THE UNITED STATES TRUSTEE FOR THE SOUTHERN DISTRICT OF NEW YORK

Andrea B. Schwartz

Andy Velez-Rivera

Brian S. Masumoto

Greg M. Zipes

Linda A. Riffkin

Marylou Martin

Paul K. Schwartzberg

Richard C. Morrissey

Serene Nakano

Susan Golden

Tracy Hope Davis

Nazar Khodorovsky