AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Michael P. Cooley
Alexis Freeman

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ARCHBROOK LAGUNA HOLDINGS LLC, *et al.,*[1] | Case No. 11-13292 (   ) |
| Debtors. | Joint Administration Requested |

**DEBTORS' APPLICATION FOR ENTRY OF AN**
**ORDER AUTHORIZING (A) THE EMPLOYMENT AND**
**RETENTION OF HAWKWOOD CONSULTING LLC AS CRISIS**
**MANAGER FOR THE DEBTORS AND (B) THE APPOINTMENT OF**
**STEPHEN J. GAWRYLEWSKI AS CHIEF RESTRUCTURING OFFICER**
**FOR THE DEBTORS EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

ArchBrook Laguna Holdings LLC (*"**ArchBrook**"*) and certain of its affiliates, as debtors

and debtors in possession (collectively, the *"**Debtors**"*), file this Application (the *"**Application**"*),

for the entry of an order (the *"**Proposed Order**"*), substantially in the forms attached hereto as

**Exhibit A**, (a) authorizing the Debtors to employ and retain Hawkwood Consulting LLC

(*"**Hawkwood**"*) as crisis manager for the Debtors, (b) approving the terms of Hawkwood's

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: ArchBrook Laguna LLC (6166); ArchBrook Laguna Holdings LLC (6156); Chimerica Global Logistics LLC (3745); ArchBrook Laguna West LLC (9631); Lehrhoff ABL LLC (6386); Expert Warehouse LLC (4487); and ArchBrook Laguna New York LLC (5385).

employment, including the proposed Fee Structure (as defined below), and the indemnification provisions set forth in the Engagement Letter (as defined below), and (c) appointing Stephen J. Gawrylewski as their Chief Restructuring Officer (*"CRO"*), in each case effective as of the commencement of these chapter 11 cases. In support of this application, Hawkwood submits the declaration of Stephen J. Gawrylewski, a Principal of Hawkwood (the *"Gawrylewski Declaration"*), which is attached hereto as **Exhibit B** and the Declaration of Daniel J. Boverman, Interim Chief Financial Officer, in Support of the First Day Pleadings (the *"Boverman Declaration"*) filed concurrently herewith. In further support of the Application, the Debtors respectfully state as follows:

## Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 363(b) and 105(a) of title 11 of the United States Code (the *"Bankruptcy Code"*), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the *"Bankruptcy Rules"*) and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the *"Local Rules"*).

## Background

4.      On July 8, 2011 (the *"Petition Date"*), each of the Debtors filed a petition with this Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no statutory committees have been appointed or designated.

5.     Contemporaneously with the filing of this Application, the Debtors have sought procedural consolidation and joint administration of these chapter 11 cases under the case of ArchBrook Laguna Holdings LLC.  A description of the Debtors' businesses, the reasons for filing these chapter 11 cases and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set forth in the Boverman Declaration, which is being filed contemporaneously with this Application.

### Basis for Relief

**A.     Hawkwood's Involvement**

6.     Certain of the Hawkwood Professionals (as defined below) have been providing crisis management services to the Debtors since May 26, 2011, when the Debtors initially selected those individuals as restructuring consultants to assist in the Debtors' restructuring process, in order to address certain financial issues.  On June 13, 2011, certain of the Hawkwood Professionals formed Hawkwood, which the Debtors seek authority to retain to assist in the Debtors restructuring process as set for in the engagement letter dated June 13, 2011 (the *"Engagement Letter"*), attached hereto as **Exhibit 1** to the Proposed Order.

7.     Beginning in May 2011, and continuing through the Petition Date, several of the Hawkwood Professionals, including Mr. Gawrylewski, have devoted substantial amounts of time and effort working with members of the Debtors' senior management to, among other things, selloff ineligible inventory to generate additional cash, reduce the current balance of past due accounts receivable by improving internal communications between departments, and reducing the overadvance on the Debtors' prepetition revolving credit facility.

8.     Pursuant to the Engagement Letter, Mr. Gawrylewski serves as the Debtors' CRO.  Further, Hawkwood will provide other Hawkwood professionals (the *"Additional Professionals"* and, together with the CRO, the *"Hawkwood Professionals"*) as necessary to support Mr.

3

Gawrylewski and the Debtors' existing management team in their restructuring efforts during these chapter 11 cases.

## B. Hawkwood's and Mr. Gawrylewski's Qualifications

9.     Hawkwood's core services include turnaround advisory services, crisis management, revenue enhancement, claims management and creditor and risk management advisory services. The Hawkwood Professionals are adept at working alongside Debtors' management and key constituents to assist in the development of feasible and executable plans of reorganization, advising on specific aspects of the turnaround process and helping to manage complex constituency relations and communications.

10.     Mr. Gawrylewski is a Principal of Hawkwood. He has more than forty years' experience in operations, turnarounds, restructurings and mergers and acquisitions. He served as President of C.T. Film Corporation and as General Engineering Manager at Tenneco Chemicals. Mr. Gawrylewski's clients have included both publicly held and privately owned companies ranging from $50 million to $1.5 billion in revenues. Mr. Gawrylewski's equity sponsors clients have included Investcorp, KPS, Citicorp Venture Capital, RFE Investment Partners and Pegasus Partners. Prior to joining Hawkwood, he was a managing director of a restructuring firm and previously a partner in the Restructuring Practice of Deloitte & Touche LLP and Arthur Andersen LLP.

11.     Hawkwood and Hawkwood Professionals—and particularly Mr. Gawrylewski— have become thoroughly familiar with the Debtors' operations over the last several weeks. Through the services that Hawkwood and Mr. Gawrylewski have provided to the Debtors to date, Hawkwood has become deeply familiar with the Debtors' business operations and the circumstances of their financial distress, and is highly qualified to serve the Debtors in these cases. The Debtors believe Hawkwood Professionals' familiarity with their business coupled

4

with the Hawkwood Professionals' extensive experience in providing crisis management services to distressed companies enables them to advise the Debtors in a cost-effective, efficient and timely manner. As such, Hawkwood is well-qualified and able to provide the requested services. Accordingly, the Debtors submit that the proposed employment of Hawkwood for the purposes specified herein is in the best interest of the Debtors, their estates and creditors.

### C.    Services to be Provided[2]

12.    Under the Engagement Letter, Mr. Gawrylewski will serve as the CRO of the Debtors, reporting to Manager and/or Chairman of the Debtors (the "*Appropriate Persons*") and directing the Debtors' reorganization with an objective of completing a restructuring of the Debtors. Mr. Gawrylewski, with the Additional Professionals, will be responsible for assisting the Debtors' senior management team in their postpetition restructuring efforts, including negotiating with parties in interest and coordinating the "working group" of professionals who are or will be assisting the Debtors in the restructuring process or who are working for the Debtors' stakeholders. The Debtors believe that Mr. Gawrylewski and the Additional Professionals will not duplicate the services that are being provided to the Debtors in these cases by any other professionals.

13.    Subject to further order of the Court and consistent with the Engagement Letter, the duties of Mr. Gawrylewski and the Additional Professionals will include, but are not limited to the following:

a) Represent the interests of the Debtors during lender negotiations;

b) Report progress on restructuring initiative;

---

[2] The summaries of the Engagement Letter and the Indemnification Agreement contained herein are provided for convenience only, and are qualified in all respects by reference to the actual terms of the respective agreements. Capitalized terms used but not defined herein have the meanings set forth in the Engagement letter or the Indemnification Agreement, as applicable.

c) Analyze, develop and implement all aspects of the Debtors' operational and financial restructuring plan, including, but not limited to, the following areas of focus:

    1.    Liquidity – (i) review, analyze and monitor the rolling 13 week cash flow forecast; and (ii) develop strategies to maintain and improve liquidity;

    2.    Financial reporting and monthly lender reporting requirements;

    3.    Revised 2011 budget and financial forecast; and

    4.    Lender negotiations and communication;

d) Advise and assist management with their ongoing communication with the current lenders;

e) Review and, as required, report on the Debtors' operating results;

f) Review and, as required, report on management's business plan, financial forecasts and other expense reduction and restructuring initiatives

g) Participate in meetings and covenant negotiations relative to the Debtors' credit agreements;

h) Negotiate, among other things, forbearance agreements, covenants, waiver agreements;

i) Monitor the progress being made to achieve the operational restructuring plan and working with the senior management team to report the results to the Appropriate Persons;

j) Manage the various projects and initiatives underway throughout the Debtors;

k) Assist in necessary refinements to the Debtors' business plan and financial forecasts;

l) Review and analyze alternative operating scenarios;

m) Meet with various members of management as required to discuss the business strategies, processes, and other matters facing the Debtors;

n) Direct and manage operational assessment of the following (non-exclusive) list of items: (i) 2011 sales forecast and financial plan; (ii) customer and product profitability; (iii) organizational review and assessment; (iv) overhead cost structure; (v) sales management; (vi) distribution/fulfillment/logistics; and (vii) working capital management; (viii) other functional areas as deemed necessary; (ix) financial reporting;

o) Meet with and serve as contact with respect to the Debtors' financial and operational matters for the Debtors' creditors, prepetition and postpetition lenders and any committees formed during any chapter 11 case; and

p) Assist in the development and preparation of any chapter 11 plan; assist with the preparation of any schedules and statements of financial affairs; and assist in claims management process.

## D.    Professional Compensation

14.    Hawkwood intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the United States Trustee's ("*U.S. Trustee*") Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses and any other applicable procedures and orders of the Court and consistent with the proposed compensation agreed to by the Debtors and set forth in the Engagement Letter (the "*Fee Structure*").

15.    In summary, the Fee Structure provides for the following compensation to Hawkwood:

(a)    *Retainer* — the Debtors paid Hawkwood a retainer in the amount of $200,000. Any unearned portion of the retainer will be returned to the Debtors upon the termination of the engagement.

(b)    *Hourly Rates* — Fees for the CRO and the Additional Professionals based on the following hourly rates:

| Title | Hourly Rate |
|---|---|
| Principals | $450 |
| Managing Directors | $350-$450 |
| Directors | $275-$350 |

(c)    *Value Added Fee* — The Company also agrees to pay Hawkwood a contingent value added fee (*"Value Added Fee"*) of $400,000 to be awarded and paid upon the earlier to occur of (a) the consummation of a plan of reorganization for the Debtors or (b) the consummation of the sale of all or a substantial portion of the assets of the Debtors through one transaction or a series of transactions (and in the event of a series of transactions, the Value Added Fee may be awarded as of the consummation of the final transaction in such series).

16. In addition to the fees described above, the Debtors agree to reimburse Hawkwood for its reasonable out-of-pocket expenses of the CRO and Hawkwood incurred in connection with this assignment, including, without limitation, for travel, lodging, duplicating, computer research, messenger, and telephone charges. In addition, Hawkwood shall be reimbursed for the reasonable fees and expenses of its counsel incurred in connection with the negotiation, preparation and enforcement of the Engagement Letter.

17. The Fee Structure is consistent with normal and customary billing practices for comparably sized and complex cases, both in and out of court, involving the services to be provided in these chapter 11 cases. Accordingly, Hawkwood and the Debtors believe that the foregoing compensation arrangement is both reasonable and market-based.

18. Because Hawkwood is not being employed as a professional under Bankruptcy Code section 327, it will not be submitting quarterly fee applications pursuant to Bankruptcy Code sections 330 and 331. However, Hawkwood will submit quarterly reports of compensation paid. Parties in interest shall have the right to object to fees paid when quarterly reports of compensation are filed with this Court.

19. The nature of Hawkwood's engagement is not easily captured in discrete six-minute time increments. Accordingly, each Hawkwood Professional will record his or her time in a single contemporaneous record setting forth the exact number of hours worked each day by the professional, with a description of the general tasks and issues on which such professional was engaged that day and an estimate of the approximate time devoted to such tasks and issues. These time entries will form a daily activity log that will be submitted to the Court with Hawkwood's quarterly reports of compensation earned. The Debtors seek this Court's approval of this billing method as being in substantial compliance with the applicable provisions of the

Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the guidelines established by the U.S. Trustee.

### E. Dispute Resolution Procedures

20. The Debtors and Hawkwood have agreed, subject to the Court's approval of the Application, that notwithstanding the Engagement Letter: (a) any controversy or claim with respect to, in connection with, arising out of, or in any way related to the Application or the services provided by Hawkwood to the Debtors as outlined in the Application shall be brought in the federal and state courts located in the Southern District of New York; (b) Hawkwood and the Debtors consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such courts do not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions, or lawsuits; and (c) Hawkwood and the Debtors waive trial by jury, such waiver being informed and freely made. By the Application, the Debtors seek approval of this agreement by the Court.

### F. Indemnification Provisions

21. Pursuant to the Engagement Letter, the Debtors have negotiated with Hawkwood the indemnification agreement attached thereto (the *"Indemnification Agreement"*), a copy of which is attached as **Exhibit 2** of the Proposed Order. Pursuant to the Indemnification Agreement, the Debtors have agreed to indemnify and hold harmless Hawkwood and its affiliates (including past, present, or future partners, principals and personnel of each of them) (collectively, the *"Indemnified Parties"*) under certain circumstances.[3]

---

[3] The Indemnification Agreement generally provides that the Debtors will indemnify and hold harmless Hawkwood and its affiliates (including past, present, or future partners, principals and personnel of each of them) (collectively called the *"Indemnified Persons"*), to the fullest extent lawful, from and against all costs, fees, expenses, damages, and liabilities, joint or several, (including defense costs) associated with any claim relating to or arising as a result of the Services, the Company's use or disclosure of the Deliverables, this Agreement or any actions taken or omitted to be taken by an Indemnified Person in connection with this Agreement (collectively called the *"Losses"*). This provision is intended to apply regardless of the nature of any claim (including contract, statute, any form of

22.     Moreover, the Debtors have agreed to indemnify the CRO to the same extent as the most favorable indemnification it extends to its officers or directors, and no reduction or termination in any of the benefits provided under such indemnities shall affect the benefits provided to the CRO or Additional Professionals. The CRO shall be covered as an officer under the Debtors' existing director and officer liability insurance policy. The Debtors have agreed to maintain such insurance coverage for the CRO for a period of not less than two years following the date of the termination of such officer's services hereunder.

23.     The terms and conditions of the Engagement Letter and the Indemnification Agreement were negotiated by the Debtors and Hawkwood at arm's-length and in good faith. The Debtors respectfully submit that the indemnification provisions contained in the Indemnification Agreement, viewed in conjunction with the other terms of Hawkwood's proposed retention, are reasonable and in the best interests of the Debtors, their estates and creditors in light of the fact that the Debtors require Hawkwood's services to maximize value for their estates and creditors through a sale process. Accordingly, as part of the Application, the Debtors request that the Court approve the Indemnification Agreement.

## G.     Hawkwood's Disinterestedness

24.     Even though Hawkwood is not being retained as a professional under Bankruptcy Code section 327(a), Hawkwood performed a conflicts check in connection with its initial engagement under the Engagement Letter. Hawkwood has informed the Debtors that, except as may be set forth in the Gawrylewski Declaration attached hereto, Hawkwood (a) has no connection with the Debtors, their creditors or other parties in interest in these chapter 11 cases,

---

negligence, whether of the Company, Hawkwood, or others, tort, strict liability or otherwise), except to the extent such Losses are finally judicially determined by a court of competent jurisdiction to be the result of Hawkwood's gross negligence or willful misconduct.

(b) does not hold any interest adverse to the Debtors' estates, and (c) believes it is "disinterested" as defined by Bankruptcy Code section 101(14).

25.     If any new material facts or relationships are discovered or arise, Hawkwood will provide the Court with a supplemental affidavit. Hawkwood has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with these chapter 11 cases.

## Relief Requested

26.     By the Application the Debtors request entry of an order, pursuant to Bankruptcy Code sections 363(b) and 105(a), Bankruptcy Rules 2014(a) and 2016 and Local Rule 2014-1 and 2016-1 (a) authorizing the Debtors to employ and retain Hawkwood as crisis manager for the Debtors effective *nunc pro tunc* to the Petition Date, (b) approving the terms of the Engagement Letter and the Indemnification Agreement, and (c) authorizing the Debtors to appoint Stephen J. Gawrylewski as their CRO effective *nunc pro tunc* to the Petition Date.

## Supporting Authority

27.     Bankruptcy Code section 363(b)(1) provides, in relevant part, that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). In reviewing a debtor's decision to use estate property pursuant to Bankruptcy Code section 363, courts within the Second Circuit routinely have held that transactions should be approved when they are supported by the sound business judgment of management. *See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1066 (2d. Cir. 1983) (outlining requirements for the sale of assets under section 363(b)(1)).

28.     Bankruptcy courts have considered the propriety of a debtor in possession's employment of a corporate officer under Bankruptcy Code section 363 on numerous occasions

and regularly concluded that it is an appropriate exercise of business judgment to employ a corporate officer in such manner. *See, e.g., In re Calpine Corp.*, No. 05-60200 (BRL) Bankr. S.D.N.Y. Jan. 17, 2007) [Docket No. 3412]; *In re Mirant Corp.*, No. 03-46590 (BJH) (Bankr. N.D. Tex. Sept. 29, 2003) [Docket No. 999]; *In re Fleming Cos., Inc.*, No. 03-10945 (MFH) (Bankr. D. Del. June 25, 2003) [Docket No. 1698]; *In re LJM2 Co-Inv., L.P.*, No. 02-38335 (HDH) (Bankr. N.D. Tex. Dec. 13, 2002) [Docket No. 96].

29. Indeed, courts in this jurisdiction have approved the retention of professionals to perform crisis management services and management services for the debtors under Bankruptcy Code section 363 in numerous cases. *See, e.g., In re Dana Corp.*, No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006) [Docket No. 740]; *In re Parmalat USA Corp.*, No. 04-11139 (RDD) (Bankr. S.D.N.Y. June 25, 2004) [Docket No. 494] (retention converted from section 327 to section 363); *In re WorldCom, Inc.*, No. 02-13533 (AJG) (Bankr. S.D.N.Y. Sept. 17, 2002) [Docket No. 1051]; *In re Acterna Corp.*, No. 03-12837 (BRL) (Bankr. S.D.N.Y. July 9, 2003) [Docket No. 163].

30. Here, the decision to employ and retain Hawkwood and appoint Mr. Gawrylewski as CRO should be authorized because it is based on the sound exercise of the business judgment of the Debtors' senior management.

31. First, Mr. Gawrylewski is well qualified to serve as CRO. He has extensive experience either in senior management roles or as a restructuring advisor for several large companies and is a seasoned turnaround and restructuring expert. In addition, Hawkwood Professionals have extensive experience in providing restructuring consulting services in reorganization proceedings and have an excellent reputation for the services they have rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.

32. Second, Mr. Gawrylewski and the Additional Professionals, working in conjunction with the Debtors' senior management, have already proven to be of invaluable assistance in the Debtors' efforts in the development of near-term projections, assisting in short-term cash management activities and coordinating the Debtors' efforts to prepare for a chapter 11 filing. The Debtors believe that Hawkwood, with Mr. Gawrylewski in his capacity as CRO, will be able to continue to provide services that benefit the Debtors' estates and their creditors. Moreover, the existing relationship that Hawkwood Professionals, and notably Mr. Gawrylewski, have with the Debtors ensures that the appointment of a CRO at this juncture will not disrupt the administration of these chapter 11 cases.

33. Third, through arm's-length negotiations, the Debtors have been able to secure the services of Hawkwood and Mr. Gawrylewski during these chapter 11 cases on economic terms that are fair and reasonable and beneficial to the estates. Moreover, the compensation arrangement provided for in the Engagement Letter is consistent with and typical of arrangements entered into by other restructuring consulting firms with respect to rendering similar services for clients such as the Debtors.

34. In light of the foregoing, the Debtors believe that the retention of Hawkwood and Mr. Gawrylewski as CRO is a sound exercise of the Debtors' business judgment and is in the best interests of all parties in interest in these chapter 11 cases. The Debtors believe that Hawkwood is well qualified and able to represent the Debtors in a cost effective, efficient and timely manner. Hawkwood has indicated a willingness to act on behalf of the Debtors and to subject itself to the jurisdiction and supervision of the Court. For the reasons set forth above, the Debtors respectfully request that the Court authorize the retention and employment of

Hawkwood as crisis managers and Mr. Gawrylewski as the Debtors' CRO pursuant to Bankruptcy Code section 363.

## Motion Practice

35.     The Application includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to the Application. Accordingly, the Debtor submit that the Application satisfies Local Rule 9013-1(a).

## Notice

36.     The Debtors have provided notice of this Aotion to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the entities listed on the Declaration Concerning List of the Debtors' 30 Largest Unsecured Claims on an Consolidated Basis filed pursuant to Bankruptcy Rule 1007(d); (c) GE Capital Commercial Services, Inc., as administrative agent under the Debtors' prepetition credit facility and debtor in possession credit facility, (d) Latham & Watkins LLP, as counsel to GE Capital Commercial Services, Inc.; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; and (g) the United States Attorney for the Southern District of New York. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

WHEREFORE, for the reasons set forth herein and in the Gawrylewski Declaration, the Debtors respectfully request that the Court (a) enter an order (i) authorizing the Debtors' to employ and retain Hawkwood as crisis manager for the Debtors effective *nunc pro tunc* to the Petition Date, (ii) approving the terms of the Engagement Letter and the Indemnification Agreement, and (iii) appointing Stephen J. Gawrylewski as their CRO effective *nunc pro tunc* to the Petition Date; and (b) grant such other further relief as is just, proper and equitable.

New York, New York
Dated: July ___8___, 2011

Peter Handy
Authorized Person
ArchBrook Laguna Holdings LLC (for itself and
its affiliated Debtors and Debtors in Possession)
350 Starke Road, Suite 400
Carlstadt, NJ  07072
(201) 559-6200

**EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ARCHBROOK LAGUNA HOLDINGS LLC, *et al.*,[1] | ) Case No. 11-13292 ( ) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

### ORDER AUTHORIZING (A) THE EMPLOYMENT AND RETENTION OF HAWKWOOD CONSULTING LLC AS CRISIS MANAGER FOR THE DEBTORS AND (B) THE APPOINTMENT OF STEPHEN J. GAWRYLEWSKI AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

Upon the application (the *"Application"*)[2] of the Debtors for entry of an order (a) authorizing the Debtors to employ and retain Hawkwood as crisis manager for the Debtors, (b) approving the terms of Hawkwood's employment, including the proposed Fee Structure and the indemnification provisions set forth in the Engagement Letter, and (c) appointing Stephen J. Gawrylewski as their CRO, in each case effective *nunc pro tunc* to the Petition Date, pursuant to Bankruptcy Code sections 363(b) and 105(a), Bankruptcy Rules 2014(a), and Local Rules 2014-1 and 2016-1; and upon the Gawrylewski Declaration; and upon Boverman Declaration; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed the Application, the Gawrylewski Declaration and the Boverman Declaration; and it appearing to the Court that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: ArchBrook Laguna LLC (6166); ArchBrook Laguna Holdings LLC (6156); Chimerica Global Logistics LLC (3745); ArchBrook Laguna West LLC (9631); Lehrhoff ABL LLC (6386); Expert Warehouse LLC (4487); and ArchBrook Laguna New York LLC (5385).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and good, adequate, and sufficient cause has been shown to justify the immediate entry of this Order; and notice of the Application appearing to be adequate and appropriate under the circumstances; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor

IT IS ORDERED THAT:

1.     The Application is approved as set forth herein.

2.     The Debtors are authorized to employ and retain Hawkwood as their crisis manager and to appoint Stephen J. Gawrylewski as their CRO in accordance with the terms and conditions set forth in the Engagement Letter, attached hereto as **Exhibit 1**, effective *nunc pro tunc* to the Petition Date.

3.     Hawkwood is authorized to render professional services to the Debtors as described in the Engagement Letter. Hawkwood will render the following services, including:

a)  Represent the interests of the Debtors during lender negotiations;

b)  Report progress on restructuring initiative;

c)  Analyze, develop and implement all aspects of the Debtors' operational and financial restructuring plan, including, but not limited to, the following areas of focus:

1.  Liquidity – (i) review, analyze and monitor the rolling 13 week cash flow forecast; and (ii) develop strategies to maintain and improve liquidity;

2.  Financial reporting and monthly lender reporting requirements;

3.  Revised 2011 budget and financial forecast; and

4.  Lender negotiations and communication;

d)  Advise and assist management with their ongoing communication with the current lenders;

e)  Review and, as required, report on the Debtors' operating results;

f) Review and, as required, report on management's business plan, financial forecasts and other expense reduction and restructuring initiatives

g) Participate in meetings and covenant negotiations relative to the Debtors' credit agreements;

h) Negotiate, among other things, forbearance agreements, covenants, waiver agreements;

i) Monitor the progress being made to achieve the operational restructuring plan and working with the senior management team to report the results to the Appropriate Persons;

j) Manage the various projects and initiatives underway throughout the Debtors;

k) Assist in necessary refinements to the Debtors' business plan and financial forecasts;

l) Review and analyze alternative operating scenarios;

m) Meet with various members of management as required to discuss the business strategies, processes, and other matters facing the Debtors;

n) Direct and manage operational assessment of the following (non-exclusive) list of items: (i) 2011 sales forecast and financial plan; (ii) customer and product profitability; (iii) organizational review and assessment; (iv) overhead cost structure; (v) sales management; (vi) distribution/fulfillment/logistics; and (vii) working capital management; (viii) other functional areas as deemed necessary; (ix) financial reporting;

o) Meet with and serve as contact with respect to the Debtors' financial and operational matters for the Debtors' creditors, prepetition and postpetition lenders and any committees formed during any chapter 11 case; and

p) Assist in the development and preparation of any chapter 11 plan; assist with the preparation of any schedules and statements of financial affairs and assist in claims management process.

4.    The terms of the Indemnification Agreement attached hereto as **Exhibit 2**, are approved, subject to the following modifications:

(a)    All requests of Hawkwood, its affiliates or any of its or their respective directors, officers, members, employees, agents or controlling persons (each being an *"Indemnified Person"*) for payment of indemnity, contribution or otherwise pursuant to the Indemnification Agreement shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Hawkwood

Agreement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the orders of this Court;

(b)     Notwithstanding the foregoing, in no event shall an Indemnified Person be indemnified or receive contribution or other payment under the Indemnification Agreement if the Debtors, their estates or the statutory committee of unsecured creditors appointed in these chapter 11 cases assert a claim, to the extent that the Court determines by final order that such claim arose out of bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence or willful misconduct on the part of that or any other Indemnified Person; and

(c)     In the event an Indemnified Person seeks reimbursement for attorneys' fees from the Debtors pursuant to the Indemnification Agreement, the invoices and supporting time records from such attorneys shall be attached to Hawkwood's own interim and final fee applications, and such invoices and time records shall be subject to the U.S. Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses and the approval of this Court under the standards of Bankruptcy Code section 330 without regard to whether such attorney has been retained under Bankruptcy Code section 327.

5.     Hawkwood and Mr. Gawrylewski shall not act in more than one of the following capacities in the Debtors' chapter 11 cases: crisis manager, financial advisor, claims agent and investor or acquirer. For a period of three years after the conclusion of the engagement, Hawkwood shall not make any investments in the Debtors or reorganized Debtors where Hawkwood has been engaged.

6.     In the event that the Debtors and Hawkwood agree that Mr. Gawrylewski will assume an additional or different executive officer position or agree to modify materially the duties of Mr. Gawrylewski, the Debtors will file a supplemental application to modify the retention specified in the Application.

7.     Hawkwood shall receive (a) compensation as specified in the Engagement Letter and (b) reimbursement of expenses, which in each case Hawkwood shall file quarterly reports of compensation paid and expenses reimbursed with the Court, with notice to the U.S Trustee. The fees and expenses summarized in a quarterly report shall not be subject to further review by the Court unless an objection is filed within ten (10) days after the filing of such a quarterly report.

8.      Notwithstanding anything to the contrary in the Engagement Letter or the Application, Hawkwood shall be entitled to seek and obtain payment of the Value Added Fee only upon submission of an application for allowance of same pursuant to Bankruptcy Code section 330.

9.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

10.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Date: _____, 2011

_____
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT 1

## Engagement Letter

June 13, 2011

Mr. Peter Handy
ArchBrook Laguna LLC
350 Starke Road
Suite 400
Carlstadt, New Jersey 07072

Dear Mr. Handy,

This letter agreement ("Agreement") confirms that ArchBrook Laguna LLC (the "Company" or the "Debtor") has engaged Hawkwood Consulting LLC ("HC"), effective June 13, 2011 (the "Commencement Date"), for the services of Mr. Stephen J Gawrylewski to be the acting Chief Restructuring Officer ("CRO"), and to provide the services described in more detail below. This Agreement amends and restates in its entirety that certain letter agreement between the Company and HC dated May 26, 2011.

## HC Services and Responsibilities

### Scope of Services

As the Company's Chief Restructuring Officer (CRO), Mr. Gawrylewski will report directly to the Manager and/or Chairman (the "Appropriate Persons"). Subject to the fiduciary duties of the Appropriate Persons and any limitations imposed by applicable state corporate or limited liability company law, Mr. Gawrylewski will have decision making authority on all matters related to the restructuring, including all operational and financial activities which affect the liquidity and profitability of the Company; provided, however, that the Appropriate Persons must approve in advance the following types of transaction: (i) all transactions outside the ordinary course of business, (ii) any and all financing transactions, (iii) the hiring of consultants, (iv) the appointment of any officer or (v) the filing of any chapter 11 plan or any proceedings under title 11 of the United States Code. In addition to Mr. Gawrylewski's ordinary course duties as CRO, the roles of Mr. Gawrylewski, and the HC team will include working with the Company's Senior Management team, outside counsel for the Company and the Company's other professionals and advisors, to provide the following services during the course of their engagement pursuant to this Agreement (collectively, the "Services"):

    A.    Represent the interests of the Company during Lender Negotiations

    B.    Report progress on Restructuring Initiative

    C.    Analyze, Develop and Implement all aspects of the Company's operational and Financial Restructuring Plans. The primary areas of focus are the following:

        a.    Liquidity

            i.    Review, analyze and monitor the rolling 13 week cash flow forecast

      ii.      Develop strategies to maintain and improve liquidity

   b.     Financial reporting and monthly lender reporting requirements

   c.     Revised 2011 Budget and Financial Forecast

   d.     Lender Negotiations and communication

D.     Advise and assist Management with their ongoing communication with the current Lenders

   a.     Review and, as required, report on the Company's operating results

   b.     Review and, as required, report on Management's Business Plan, Financial Forecasts and other expense reduction and restructuring initiatives

   c.     Participate in meetings and covenant negotiations relative to the Company's credit agreements

   d.     Negotiate:

      i.      Forbearance Agreements

      ii.      Covenants

      iii.     Waiver Agreement

      iv.     Other

E.     Monitor the progress being made to achieve the operational restructuring plan and working with the Senior Management Team to report the results to the Appropriate Persons.

F.     Manage the various projects and initiatives underway throughout the Company

G.     Assist in necessary refinements to the Company's Business Plan and Financial Forecasts

H.     Review and analyze alternative operating scenarios

I.     Meet with various members of Management as required to discuss the business strategies, processes, and other matters facing the Company

J.     Direct and Manage Operational Assessment

   a.     2011 Sales Forecast and Financial Plan

   b.     Customer and Product Profitability

    c.      Organizational Review and Assessment

    d.      Overhead Cost Structure

    e.      Sales Management

    f.      Distribution/fulfillment/logistics

    g.      Working Capital Management

        i.      Inventories

        ii.      Accounts Receivables

        iii.      Accounts Payables

    h.      Other Functional Areas as deemed necessary

    i.      Financial Reporting

  K.      Meet with and serve as contact with respect to the Company's financial and operational matters for the Company's creditors, pre and post-petition lenders and any committees formed during any chapter 11 case

  L.      Assist in the development and preparation of any chapter 11 plan; assist with the preparation of any schedules and statements of financial affairs and assist in claims management process

**Staffing**

The parties agree that, except as to Mr. Gawrylewski, HC staff may be added or deleted from this assignment from time to time. Each month HC shall provide the Company with a report on staffing of the engagement for the previous month and shall reflect the names, titles and billable hour rates of the individuals performing professional services. HC staff may be assisted by other professionals at various levels, as the tasks require.

**Deliverables**

Materials prepared in connection with our engagement hereunder (The "Deliverables") may contain factual data, the interpretation of which may change over the project term as more information or better understanding becomes available. The parties understand and acknowledge that HC will not have an obligation to update the deliverables as part of its services hereunder in the event of such change. Any materials prepared by HC are solely for the Company's confidential use as it relates to this matter, and may not be reproduced, summarized, referred to, disclosed publicly or given to any other person without our prior written consent, which consent shall not be unreasonably withheld, provided that such consent shall not be required if the materials are required to be disclosed by process of law.

## Limitations on Services

HC's services are limited to those specifically noted in this agreement. The services to be provided by HC do not include accounting, auditing, any type of financial statement reporting or consulting engagement that is subject to the rules of the AICPA, the SSCS or other such state and national professional bodies, tax related assistance or other advisory services, except as specifically described in this agreement. HC shall not express any professional opinions on financial statements or perform attest procedures with respect to other information in conjunction with this engagement. HC's services are not designed, nor should they be relied upon, to disclose weaknesses in internal controls, financial statement errors, irregularities or illegal acts. The accuracy and completeness of such information submitted by the Company to HC for analysis, on which HC relies and which will form the basis of HC's conclusions, are the responsibility of the Company, to the extent ArchBrook Laguna LLC asks us to reach conclusions or form opinions, HC shall do so without regard to or consideration of the impact that such conclusions or opinions may have upon the initiation or outcome of any litigation.

HC's services hereunder do not include preparing, auditing or otherwise attesting in any way (including without limitation, the accuracy, achievability, reliability, relevance, usefulness or other appropriateness) to the Company's financial projections. The Company acknowledges that it will remain at all times solely responsible for its financial projections (including preparation thereof), developing underlying assumptions and providing any disclosure related thereto. There will usually be differences between the projected and actual results, and those differences may be material. To the extent that, during the performance of services hereunder, HC is required to consider the Company's financial projections, the parties acknowledge that HC's procedures with respect to such projections do not constitute an examination in accordance with procedures established by the American Institute of Certified Public Accountants and do not and are not intended to provide any assurance on any aspect of such projections, including, without limitation, the reasonableness of the assumptions underlying such projections, nor do they provide any assurance that HC might not become aware of significant matter affecting the reasonableness of the projections that might be disclosed by more extensive procedures. The Company understands and agrees that HC will have no responsibility or liability relating to any such differences.

## Company Responsibilities

In connection with HC's provision of the services, the Company shall perform those tasks and assume those responsibilities specified herein and as stated elsewhere in this agreement (the "Company Responsibilities"). The Company understands that HC's performance depends on the Company's timely decisions and approvals by the Company. The Company shall promptly provide HC with all decisions, approvals, and acceptances as requested by HC, and further, HC shall be entitled to rely on all such decisions and approvals of the Company in connection with the Services. Further, the Company understands that HC is relying upon the information that the Company provides, and consequently, the Company represents that all information (whether written or oral) and materials given or made available by it to HC in order for HC to provide the Services hereunder will be current, complete, accurate, will not omit to state any material fact and will be updated on a prompt and continuous basis. HC's ability to perform acceptably under this agreement is expressly conditioned and contingent upon the foregoing understanding.

In performing the Services hereunder, except for Mr. Gawrylewski and except as otherwise agreed to by the Company, HC staff will not be assuming the role of management; HC staff's role will be advisory only. It is expressly agreed that HC is acting as an independent contractor in rendering the Services solely to the Company and that HC and HC staff, except for Mr. Gawrylewski, are not acting as fiduciaries of the Company, any constituent of the Company or any other person in connection with the engagement under this agreement. The parties will acknowledge that, other than Mr. Gawrylewski, none of the HC staff will constitute an employee of the Company. The Company agrees that it will not solicit or hire any HC staff during the term of this agreement and for a period of one (1) year thereafter.

**Fees and Expenses**

**A.     Compensation**

As compensation for the Services provided by HC, as identified in this agreement, the Company shall compensate HC as follows:

**B.     Hourly Fees**

Non-refundable professional fees based on the actual hours incurred by HC personnel in performing the Services (the "Hourly Fees"). Hourly rates for professional services shall be billed as follows:

| Title | Hourly Rate |
|---|---|
| Principal | 450 |
| Managing Director | 350-450 |
| Director | 275-350 |

**C.     Testimony**

It is understood and agreed by the parties that if employees of HC are required to testify at any administrative or judicial proceeding relating to the Company after termination of this engagement, HC will be compensated by the Company at the regular hourly rates for each such employee in effect at the time, and reimbursed for reasonable out-of-pocket expenses, including attorneys' fees.

**D.     Value Added Fee**

The Company also agrees to pay HC a contingent value added fee ("Value Added Fee") of $400,000 to be awarded and paid upon the earlier to occur of (a) the consummation of a plan of reorganization for the Debtors or (b) the consummation of the sale of all or a substantial portion of the assets of the Debtors through one transaction or a series of transactions (and in the event of a series of transactions, the Value Added Fee may be awarded as of the consummation of the final transaction in such series). The Company shall use its reasonable best efforts to seek approval to pay the Value Added Fee at the conclusion of any chapter 11 case in accordance with the J. Alix Protocol.

**E.     Out-of-Pocket Expenses**

The Company shall promptly pay directly or reimburse HC upon receipt of periodic billings, for all reasonable costs and expenses that HC has incurred or may hereafter incur in connection with this agreement and the engagement hereunder (including, but not limited to, the negotiation, preparation, and enforcement of this agreement, the collection of all amounts due hereunder and any amendment, modification, consent or waiver of the provisions of this agreement which may hereafter be requested by the Company or otherwise required), which costs and expenses shall include, without limitation, travel, lodging, postage, computer and research charges, attorneys' fees and other charges customarily recoverable as out-of-pocket expenses (collectively, the "'out-of-pocket expenses"). The Company's obligations with respect to the Out-of-Pocket expenses shall survive the termination or expiration of this agreement for any reason.

**F.     Retainer**

The parties acknowledge and agree that the Company will pay HC a retainer in the amount of $200,000. Any portion of the retainer remaining as of the effective date of this agreement shall be held by HC in accordance with this agreement and any unearned portion of the retainer shall be returned to the Company upon the termination of this agreement.

**G.     Invoices**

Invoices are due and payable upon receipt.

Invoices for which payment is not received within ten (10) days of the invoice date shall be deemed "past due" and shall be set off against the retainer to satisfy payment. HC reserves the right to suspend further services, until payment is received on past due invoices and/or the retainer is restored. In the event that HC so suspends its services, HC shall not be responsible or liable for any resulting loss, damage, or expense due to such suspension.

**<u>Termination of Engagement</u>**

This agreement shall continue in effect until terminated in accordance with the terms hereof. Both the Company and HC shall have the right to terminate this agreement upon thirty (30) days prior written notice to the other. Upon such termination, the Company shall remain obligated to pay HC: (I) Any unpaid hourly fees incurred on or before the date of the termination, and (II) All out-of-pocket expenses hereunder incurred on or before the date of termination.

**<u>Conflicts</u>**

HC is not aware of any business relationship it has that creates a potential conflict of interest with the Company, based on its current knowledge of the Company. Should any potential conflict pertaining to HC's engagement hereunder come to the attention of either party hereto, such party shall immediately advise the other. HC reserves the right to terminate this engagement at any time, if a conflict of interest arises or becomes known to it that, in its judgment, would impair its ability to perform the services objectively. However, HC agrees to accept no engagement after the date hereof that, at the time of engagement, could reasonable be foreseen to involve such a conflict.

## Confidentiality

Any information supplied to HC in connection with this agreement shall be deemed to be confidential unless designated by the Company as not confidential, and HC agrees to: (I) Protect the confidential information in a reasonable and appropriate manner and in accordance with any applicable professional standards; (II) use confidential information only to perform its obligations under this agreement; and (III) to reproduce confidential information only as required to perform its obligations under this agreement. This paragraph shall not apply to information that is (A) publicly known, (B) already known to HC from a source other than the Company, who is under no obligation of confidentiality to the Company, or (C) independently developed without using any confidential information.

Confidential information may be disclosed pursuant to a subpoena or other valid legal or administrative process only, to the extent lawful and to the extent time permits, after HC has provided the Company notice of such process and with an opportunity to quash, modify, or otherwise contest such process (and HC shall cooperate with such efforts, at the Company's expense), and only insofar as is necessary to comply with such process. Subject to the foregoing, HC may disclose the Company's confidential information to HC subcontractors, advisors, agents, and affiliations on a "need to know" basis, provided that these subcontractors have been informed of the confidential nature of the information and have agreed to comply with these confidentiality provisions. HC retains the right in any event to use for any purpose whatsoever the ideas, concepts, techniques, industry data, and know-how used or developed in the course of this agreement, except in each case, to the extent that the foregoing constitutes confidential information. Each party agrees that, to the extent consistent with the confidentiality provisions set forth in this agreement, any document or information contemplated by this agreement may be communicated by fax, e-mail (including e-mail exchanged via internet media) and voicemail communications, as well as other means of communication used or accepted by the other.

## Indemnification for Mr. Gawrylewski

The parties agree that Mr. Gawrylewski will be entitled to the benefit of the most favorable indemnities provided by the Company to its officers and directors, whether under the Company's by-laws, certificates of incorporation, by contract or otherwise. This agreement is a supplement to and in furtherance of the indemnification provided to officers and directors in the Company's by-laws, certificate of incorporation, by contract or otherwise, and shall not be deemed a substitute therefor, nor to diminish or abrogate any rights of Mr. Gawrylewski thereunder.

The Company agrees that Mr. Gawrylewski will be covered under the Company's policy for directors' and officers' ("D&O") insurance. The Company agrees to maintain D&O insurance coverage for Mr. Gawrylewski for so long as he shall serve as CRO and for a period of not less than two (2) years following the date of termination of his service thereas. In the event of a claim related to the fact that Mr. Gawrylewski is or was a director or officer of the Company, the Company shall give prompt notice of such claim to the insurer in accordance with the procedures set forth in the D&O insurance policy and shall thereafter take all necessary or desirable action to cause such insurer to pay, on behalf of Mr. Gawrylewski, all amounts payable as a result of such claim in accordance with the terms of the D&O insurance policy.

In the event that Mr. Gawrylewski is not covered under the Company's D&O insurance policies for any reason, if coverage for Mr. Gawrylewski lapses for any reason, or if the Company's D&O policies do not have first dollar coverage in effect for at least the first $10,000,000, if is agreed that HC is permitted to purchase a separate policy for D&O insurance that covers only Mr. Gawrylewski. HC shall invoice the Company for the costs associated with such policy as an out-of-pocket expense reimbursement under this agreement. If HC is unable to purchase such coverage, then HC will have the right to terminate this agreement upon notice to the Company.

For the avoidance of doubt, the provisions of this section are contractual in nature and no change in the Company's by-laws, certificates of incorporation, or other organizational documents shall negatively affect either Mr. Gawrylewski or HC's rights hereunder; provided that, to the extent a change in the Company's organizational documents or in Delaware law permits greater indemnification than would be afforded currently under the organizational documents and this agreement, it is the intent of the parties hereto that HC and Mr. Gawrylewski shall enjoy by this agreement the greater benefits afforded by such change. The rights of indemnification as provided by this agreement shall not be deemed exclusive of any other rights to which HC or Mr. Gawrylewski may at any time be entitled under applicable law, the certificate of incorporation of the Company, the by-laws of the Company, any agreement, a vote of stockholders, or a resolution of directors of the Company, or otherwise.

The indemnification for Mr. Gawrylewski provisions contained in this agreement shall survive the termination or expiration of this agreement for any reason.

### Additional Engagements

It is understood and agreed that, in connection with HC's engagement by the Company under this agreement, the Company may desire to engage HC in one or more additional capacities, and that the terms of any such additional engagement may be embodied in one or more separate agreements acceptable to the Company and HC.

### Notices

All notices, request, demands, and other communications under this agreement shall be in writing and shall be deemed to have been duly given if (A) delivered by hand and receipted for by the party to whom said notice or other communication shall have been directed, (B) mailed by certified or registered mail with postage prepaid, on the third business day after the date on which it is so mailed, (C) mailed by reputable overnight courier and receipted for by the party to whom said notice or other communication shall have been directed, or (D) sent by facsimile transmission, with receipt of the oral confirmation that such transmission has been received:

If to HC:

Hawkwood Consulting
4822 Lower Mtn Rd.
New Hope, PA 18938

If to the Company:

ArchBrook Laguna LLC
350 Starke Road
Suite 400
Carlstadt, New Jersey 07072
Attn: Peter Handy

and

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
Attn: Ira Dizengoff
      Alexis Freeman

## Complete Agreement; Amendments; Severability; Governing Law; Sole Benefit

This agreement (including all annexes) (A) constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes any other prior communications, understandings, and agreements (both written and oral) between the parties with respect to the subject matter hereof and (B) may be modified, amended, or supplemented only by written agreement between the parties hereto.

If any provision or provisions of this agreement shall be held to be invalid, illegal, or unenforceable for any reason whatsoever: (A) the validity, legality, and enforceability of the remaining provisions of this agreement (including without limitation, each portion of any section of this agreement containing any such provision held to be invalid, illegal, or unenforceable, that is not itself invalid, illegal or unenforceable) shall not in any way be affected or impaired thereby and shall remain enforceable to the fullest extent permitted by law; (B) such provision or provisions shall be deemed reformed to the extent necessary to conform to applicable law and to give the maximum effect to the intent of the parties hereto; and (C) to the fullest extent possible, the provisions of this agreement (including, without limitation, each portion of any section of this agreement containing any such provision held to be invalid, illegal, or unenforceable, that is not itself invalid, illegal, or unenforceable) shall be construed so as to give effect to the intent manifested thereby.

## Dispute Resolution Procedures

This Agreement and all controversies or claims with respect to, in connection with, arising out of, or in any way related to the Agreement or the services provided by Hawkwood to the Company as outlined herein shall be brought in the federal and state courts located in the Southern District of New York. Furthermore, Hawkwood and the Company consents to the jurisdiction and venue of such court as the sole and exclusive forum (unless such courts do not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions, or lawsuits; Hawkwood and the Company waive trial by jury, such waiver being informed and freely made.

The parties hereby irrevocably consent to the service of process of any of the aforementioned courts in any such dispute by the delivery of copies thereof to the Company or HC, as applicable, at its address set forth above.

This agreement has been and is made solely for the benefit of the Company, and HC, and the indemnified parties, and their respective successors and assigns, and no other person or entity shall acquire or have any rights under or by virtue of this agreement.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this agreement, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,

Hawkwood Consulting LLC

By _____
Stephen Gawrylewski

Accepted and agreed to this 13 th day of June, 2011.

ArchBrook Laguna, LLC

By _____
Peter Handy, in his capacity solely
as an Authorized Person

# ANNEX A

## Indemnification Agreement

## INDEMNIFICATION, ADVANCEMENT, CONTRIBUTION AND LIMITATION OF LIABILITY

As HC is performing the Services for the benefit of the Company, the Company shall, upon receipt of written notice, indemnify and hold harmless HC and its affiliates (including past, present, or future partners, principals and personnel of each of them) (collectively called the "Indemnified Persons"), to the fullest extent lawful, from and against all costs, fees, expenses, damages, and liabilities, joint or several, (including defense costs) associated with any claim relating to or arising as a result of the Services, the Company's use or disclosure of the Deliverables, this Agreement or any actions taken or omitted to be taken by an Indemnified Person in connection with this Agreement (collectively called the "Losses"). This provision is intended to apply regardless of the nature of any claim (including contract, statute, any form of negligence, whether of the Company, HC, or others, tort, strict liability or otherwise), except to the extent such Losses are finally judicially determined by a court of competent jurisdiction to be the result of HC's gross negligence or willful misconduct.

The Company shall not, without HC's prior written consent, settle, compromise, or consent to the entry of any judgment in any pending or threatened claim, action, or proceeding in respect of which indemnification could be sought hereunder (whether or not HC or any other Indemnified Person is an actual or potential party to such claim, action, or proceeding), if such settlement, compromise, or consent does not include an unconditional release of each Indemnified Person from all liability arising out of such claim, action, or proceeding. Promptly after receipt by any Indemnified Person claiming the benefit of this provision of notice of its involvement in any action, proceeding, or investigation, such Indemnified Person shall, if a claim in respect thereof is to be made against the Company under the preceding paragraph, notify the Company in writing of such involvement; provided, that failure by such Indemnified Person to so notify the Company shall not relieve the Company from any liability hereunder, except to the extent that the Company is prejudiced thereby, and shall not in any event relieve the Company from any other obligation or liability that it may have to any Indemnified Person otherwise than under this Agreement. The Company and its counsel, who shall be reasonably satisfactory to the Indemnified Person, shall be entitled to participate therein with the Indemnified Person and its counsel. To the extent it wishes, the Company shall be entitled to assume the defense of any action that is the subject of the preceding sentence with counsel reasonably satisfactory to the Indemnified Person, and, if it elects to do so, the Company shall be thereafter relieved of any further obligation for the payment of the fees and expenses of the Indemnified Person's counsel, provided, however, that the Indemnified Person shall be entitled to continued separate counsel at such Indemnified Person's own expense.

In the event that any HC personnel are requested or required to appear as a witness in connection with any action, claim or proceeding for which indemnification is available hereunder, the Company shall reimburse HC for all reasonable out-of-pocket expenses incurred by it in

connection with such personnel appearing and preparing to appear as a witness, including, without limitation, the fees and disbursements of its legal counsel, and to compensate HC in an amount to be mutually agreed upon per person per day for each day that such personnel is involved in preparation, discovery proceedings or testimony pertaining to such action, claim or proceeding.

The Company shall advance, to the extent not prohibited by law, the Losses incurred by any Indemnified Person in any pending or threatened claim, action or proceeding in respect of which indemnification could be sought hereunder, and such advancement shall be made within twenty (20) days after the receipt by the Company of a statement or statements requesting such advances from time to time, whether prior to or after final disposition of any such claim, action or proceeding. The execution and delivery of this Agreement by HC shall constitute an undertaking to the fullest extent required by law to repay the advance if and to the extent that it is ultimately determined by a court of competent jurisdiction in a final judgment that an Indemnified Person is not entitled to be indemnified by the Company.

To the fullest extent permissible under applicable law, if for any reason whatsoever the indemnification provided for in this Agreement is unavailable to an Indemnified Person or insufficient to fully indemnify an Indemnified Person or to hold it harmless, the Company, in lieu of indemnifying such Indemnified Person, shall contribute to the amount incurred by the Indemnified Person for Losses in connection with any pending or threatened claim, action or proceeding in respect of which indemnification could be sought hereunder, in such proportion as is deemed fair and reasonable in light of all of the circumstances of such claim, action or proceeding in order to reflect (i) the relative benefits received by the Company and the Indemnified Person as a result of the event(s) and/or transaction(s) giving cause to such claim, action or proceeding; and/or (ii) the relative fault of the Company (and its directors, officers, employees and agents) and the Indemnified Person in connection with such event(s) and/or transaction(s), as well as any other relevant equitable considerations.

HC's total aggregate liability to the Company relating to this Agreement shall in no event exceed the fees HC receives hereunder for the portion of the work giving rise to liability, except for liability finally judicially determined by a court of competent jurisdiction to have resulted primarily from the gross negligence or willful misconduct of HC, which will not be so limited. In no event shall HC have any responsibility for any special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity). This paragraph shall apply regardless of the nature of any claim(s) (including contract, statute, any form of negligence, tort, strict liability or otherwise), regardless of any failure of the essential purpose of any remedy and whether or not HC was advised of the possibility of the damage or loss asserted, but shall not apply to the extent finally determined to be prohibited by applicable law. The indemnity and other obligations and agreements of the Company set forth herein (i) shall be in addition to any obligation or liability which the Company may otherwise have to any Indemnified Person and (ii) shall survive the completion of the Services described in this Agreement.

The Indemnification, Advancement, Contribution and Limitation of Liability provisions contained in this Annex A shall survive the termination or expiration of this Agreement for any reason.

Confirmed and Agreed to this

13 th day of June, 2011.

ArchBrook Laguna, LLC

By

Peter Handy, in his capacity solely as an Authorized Person

# EXHIBIT B

## Declaration of Stephen J. Gawrylewski

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ARCHBROOK LAGUNA HOLDINGS LLC, *et al.*,[1] | ) Case No. 11-13292 (   ) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

## DECLARATION OF STEPHEN J. GAWRYLEWSKI IN SUPPORT OF THE APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING (A) THE EMPLOYMENT AND RETENTION OF HAWKWOOD CONSULTING LLC AS CRISIS MANAGER FOR THE DEBTORS AND (B) THE APPOINTMENT OF STEPHEN J. GAWRYLEWSKI AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

I, Stephen J. Gawrylewski, state the following under penalty of perjury:

1.     I am a Principal with Hawkwood Consulting, LLC (*"Hawkwood"*), a restructuring advisory services firm which maintains offices in New Hope, Pennsylvania. I submit this declaration (the *"Declaration"*) on behalf of Hawkwood in support of the application (the *"Application"*)[2] of the Debtors for an order authorizing the employment and retention of Hawkwood as restructuring advisors and the appointment of myself, Stephen J. Gawrylewski, as Chief Restructuring Officer, under the terms and conditions set forth in the Application. Except as otherwise noted,[3] I have personal knowledge of the matters set forth herein.

2.     Hawkwood Professionals have provided and agree to continue to provide assistance to the Debtors in accordance with the terms and conditions set forth in the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: ArchBrook Laguna LLC (6166); ArchBrook Laguna Holdings LLC (6156); Chimerica Global Logistics LLC (3745); ArchBrook Laguna West LLC (9631); Lehrhoff ABL LLC (6386); Expert Warehouse LLC (4487); and ArchBrook Laguna New York LLC (5385).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

[3] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at Hawkwood and are based on information provided by them.

Engagement Letter, attached to the Proposed Order as **Exhibit 1**, and the terms and conditions set forth in the Indemnification Agreement, attached to the Engagement Letter as **Annex A**.

3.  All of the services that Hawkwood will provide to the Debtors will be (a) at the request of the Debtors and (b) performed in accordance with customary market practice of the restructuring advisory profession.

## Professional Compensation

4.  Subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, applicable U.S. Trustee guidelines, and the Local Rules of this Court, Hawkwood will seek payment for compensation on an hourly basis, plus reimbursement of actual and necessary expenses incurred by Hawkwood. Hawkwood's hourly rates for the professionals assigned to this engagement are outlined in the Application. These hourly rates will be adjusted annually.

5.  According to Hawkwood's books and records, during the ninety day period prior to the Petition Date, Hawkwood and Hawkwood Professionals received payments in the total amount of approximately $200,000 in a retainer, which Hawkwood still holds, and $631,000 in fees and expenses.

## Disinterestedness

6.  Even though Hawkwood is not being retained as a professional under Bankruptcy Code section 327(a), in connection with the preparation of this Declaration, Hawkwood conducted an analysis to determine whether it holds or represents any interests adverse to the Debtors. Such analysis consisted of a review of its contacts with the Debtors, their non-debtor affiliates, and certain entities holding large claims against or interests in the Debtors that were made reasonably known to Hawkwood by the Debtors. A listing of the parties reviewed is attached as **Schedule 1** to this Declaration. Hawkwood's review included providing a list of

2

such parties to all Hawkwood Professionals and conducting a query of whether any Hawkwood Professionals previously represented any of the entities listed on **Schedule 1**.

7.      Based on the results of its review, to the best of my knowledge, Hawkwood does not have an active relationship with any of the parties listed in **Schedule 1** in matters related to these proceedings.

8.      In addition to the above, Hawkwood has provided and could reasonably be expected to provide services unrelated to the Debtors' cases for the following entities: (i) GE Capital Commercial Services, Inc.; (ii) Bank of America N.A.; (iii) PNC Bank; (iv) Wells Fargo; and (v) John Hancock Financial Services.

9.      Hawkwood does not believe it is a "creditor" of any of the Debtors within the meaning of Bankruptcy Code section 101(10). Further, neither I nor any member of the Hawkwood engagement team serving the Debtors, to the best of my knowledge, is a holder of any of the Debtors' debt or equity securities.

10.      To the best of my knowledge, no professional of Hawkwood is a relative of, or has been connected with, any judge of the bankruptcy court for this district, the U.S. Trustee in this district or any employee of the office of the U.S. Trustee in this district. Hawkwood has not reviewed the relationship that the members of the Hawkwood engagement team may have against a comprehensive list of professionals within the U.S. Trustee's office in this District, but will do so upon being provided with a list of such persons by the office of the U.S. Trustee.

11.      To the best of my knowledge, Hawkwood is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), in that Hawkwood:

    (a)      is not a creditor, equity security holder, or insider of the Debtors;

    (b)      was not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors; and

(c)     does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders.

12.     In addition, to the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, other than as described herein, Hawkwood neither holds nor represents an interest adverse to the Debtors.

13.     If any new material relevant facts or relationships are discovered or arise, Hawkwood will promptly file a supplemental declaration pursuant to Bankruptcy Rule 2014(a).

Executed on _July 8_, 2011

By: _____
Name: Stephen J. Gawrylewski
Title: Chief Restructuring Officer

**Schedule 1**

**Parties in Interest Reviewed for Current Relationships**

# SCHEDULE 1

## PARTIES SEARCHED IN THE CONFLICT DATABASE

## CONFLICTS LIST- ARCHBROOK LAGUNA HOLDINGS LLC

### ALL ARCHBROOK LAGUNA ENTITIES
(including non-debtor affiliates and former names)

| | |
|---|---|
| ArchBrook Laguna Holdings LLC | BDI-BLM Trucking, Inc. |
| ArchBrook Laguna LLC | BDI-CL Holdings, Inc. |
| Lehrhoff ABL LLC | BDI Distributors, Inc. |
| Expert Warehouse LLC | BDI-Big City Express, Inc. |
| Chimerica Global Logistics LLC | Esend, Inc. |
| BDILH Consolidated | BDI Laguna West, Inc |
| Chimerica Global Logistics | Entroute Solutions, Inc. |
| ABL Management LLC | I Lehrhoof # Co |
| ABL Invest LLC | Sterling Imports |
| BDI Laguna Inc. | Integrated Premium Concepts |
| ArchBrook Laguna West | Beyond Technology, Inc. |
|     (a)    BDI Laguna Holdings, Inc. | ArchBrook Laguna West |
|     (b)    Sterling Imports, a Division of Lehrhoff ABL, LLC | |

### ALL ARCHBROOK LAGUNA JOINT VENTURE PARTIES
(including non-debtor affiliates and former names)

Associated Volume Buyers of "AVB" Anaheim
California

### THIRTY LARGEST UNSECURED CREDITORS

| | |
|---|---|
| Direct Entertainment Media Group Inc. | Dell Marketing LP |
| Toshiba America Inform. System | Garmin International Inc. |
| Hewlett-Packard US Operations | Samsung Electronics America |
| Tomtom Inc | Toshiba Consumer Products |
| LG Electronics USA Inc | DXG Technology USA Inc |
| Panasonic/First Chicago Nat'l | Lenovo |
| Acer America | Mitac Digital Corp |

Tongfang Global LLC
Federal Express Freight East
Sharp Appliances
Centon Electronics Inc
Jarden
Helen of Troy LP
Mcelroy, Deutsch, Mulvaney & Carpenter, LLP
Philips

Sterling Commerce
Home Entertainment Source
Fuego North America LLC
YRC Worldwide, Inc.
Manhattan Associates
EB Excalibur
Hamilton Beach
Sharp Electronics Corp

## KEY VENDORS

Acer America Corporation
Dell Marketing LLP
Garmin USA Inc.
Panasonic Consumer Electronics
Samsung Electronics America, Inc.
Sharp Electronics Corp
TomTom, Inc.
Toshiba Consumer Products
Toshiba America Information Systems, Inc.
Acer America Corporation
LG Electronics
Samsung Electronics America, Inc.
Sharp Electronics Corp
Applica, Inc. / Spectrum Brands
Jarden

Garmin International Inc
Hewlett-Packard Us Operations
Lehrhoff Abl interco Purch
LG Electronics USA Inc
DXG Technology USA Inc
Panasonic/First Chicago Nat'l
Lenovo
Direct Entertainment Media Group Inc.
Philips
Electrolux Home Products, Inc.
General Electric Company
Pioneer Home Electronics
Whirlpool Corporation, Inc.
Hamilton Beach/Proctor Silex

## ADDITIONAL MAJOR CREDITORS

Expresso Satellite Navigation, Inc.

## CONTRACT COUNTER-PARTIES

Amazon Fulfillment Services, Inc
Samsung Electronics America, Inc
Hewlett-Packard Company
Toshiba America Information Systems, Inc.
HSN LP
Magnell Associate, Inc. (Newegg Inc.)
Rent-A-Center, Inc.
Crown Leasing Corp.

Raymond Handling Concepts Corp.
Carolina Handling LLC
The Raymond Corporation
Dell Marketing LLP
Raymond Leasing (Raymond Leasing Corp.)
Crown Credit
Hewlett Packard Financial Services
Delage Landen.

## PREPETITION LENDERS TO THE DEBTORS

Bank of America NA

GE Capital Markets, Inc.

GE Capital Commercial Services, Inc.          PNC Bank

## LEASE COUNTER-PARTIES

D/P Rickenbacker, LLC
Whirlpool Corporation
ITS Logistics
Heller Family L.L.C.
Panatoni Development Company, LLC
Pannatoni development DE, LLC
Carmel River LLC
Shelby Properties DE, Inc.
Roberts Investments, LLC
James Patrick Conahan, trustee James Patrick Conahan Revocable Trust
Kathleen Kani Conahan, trustee Kathleen Kani Conahan Revocable trust
Meadowlands Partners, LLC
LIT/Hodges development Holdco LLC
Serbing Associates


## DEBTORS' FINANCIAL INSTITUTIONS

Bank of America
Wells Fargo
PNC Bank


## AGENTS FOR THE PREPETITION LENDERS

GE Capital Commercial Services, Inc.


## PARTIES TO SIGNIFICANT LITIGATION WITH THE DEBTORS

New Age Electronics (Adverse)          Chuck Marsh (Adverse)
Yvette Myers Zimmerman                  D&H Distributing (Adverse)
Marshall Mizell (Adverse)


## MAJOR CUSTOMERS OF THE DEBTORS

Rent-A-Center Inc.                     Buy.Com
Magnell Associates Inc.                Jair Electronics Corporation
Wal-Mart Stores Inc.                   Eraguna Usa
Beach Camera                           Digital In The House; Inc.
Intent International Inc               Bed Bath & Beyond Inc
ValueVision Media Inc.                 Rand's Camera & Hi Fi; Inc.
Amazon.Com                             Direct Entertainment Media Group

3

ATEC Distribution NJ
Abboud Trading Corp
IQVC
Sears Holding Corporation
Compuwiz Group South Florida
Digital Data Devices Ltd
SYX Distribution Inc.
Micro Informatica, LLC
Home Shopping Network
B&H Photo-Video
Sunshine Computers

AF Services LLC
Bassgar-Illinois, Inc.
Burlington Coat Factory
Fred Meyers Stores Inc.
Best Buy Co. Inc.
J & R Electronics DBA
EGANET
Costco Wholesale Corp.
GVO Trading Inc.
The Wise Computer, Inc.
Mezuri Systems

## MAJOR INSURANCE CARRIERS, AGENTS, AND BROKERS

| Insurance | Insurer |
| --- | --- |
| Risk Management Property Policy | CAN |
| Workers Compensation | Palomar Insurance Corporation |
| Workers Compensation | American CAS Co. of Reading PA |
| General Liability | National Fire Ins of Hartford |
| Commercial Umbrella | Continental Casualty Company |
| International Commercial General Liability | The Continental Insurance Company |
| Commercial Package Policy | Palomar International Corp, LLC |
| Employers Liability | Valley Forge Ins Co |
| Medical Insurance/Dental Insurance | Horizon Blue Cross/Blue Shield of New Jersey |
| Long Term Disability, Short Term Disability, Life Insurance | Guardian |
| Long Term Care for Executives & Wives | John Hancock Financial Services |
| Long Term Disability (excess) | Mass Mutual Financial Group |

## EQUITY HOLDERS HOLDING MORE THAN 5% OF ARCHBROOK LAGUNA HOLDINGS LLC

BDI Laguna Holdings, Inc.
ABL Invest LLC

## CURRENT DIRECTORS AND OFFICERS OF THE DEBTORS

Joel Blank
Darren Marino
William Fritz Kopeinig
Daniel Lehrhoff
Michael McIntyre

## CURRENT DIRECTORS AND OFFICERS OF THE DEBTORS

John White
Arthur Lehrhoff
Daniel Boverman
Michael Bohardt
Dean Sottile
Stephen Gawrylewski
Peter Handy


## OTHER PROFESSIONALS RETAINED BY THE DEBTORS

Macquarie Capital (USA) Inc.
PricewaterhouseCoopers LLC
Garden City Group, Inc.
Akin Gump Strauss Hauer & Feld LLP
Lee Garza
Dennis Killeen
David Drinan
Susan Tall

## ORDINARY COURSE PROFESSIONALS

Bondurant, Mixson & Elmore, LLC
Carruthers & Roth, P.A.
Christian & Barton LLP
Cross & Simon, LLC
Duane Morris LLP
Gibbons, P.C.
Mcelroy, Deutsch, Mulvaney & Carpenter, LLP
Seyfarth Shaw LLP
Sharma Yaskhi & Ishar LLP
O'Toole Fernandez Weiner Van Lieu


## KEY STAFF MEMBERS OF THE OFFICE OF THE UNITED STATES TRUSTEE FOR THE SOUTHERN DISTRICT OF NEW YORK

Tracy Hope Davis
Vincent Abriano
Linda A. Riffkin
Catletha Brooks
Maria Catapano
Danny A. Choy
Stephanie B. Crowder

Marylou Martin
Anna M. Martinez
Brian S. Masumoto
Ercilia A. Mendoza
Mary V. Moroney
Richard C. Morrissey
Serene Nakano

**KEY STAFF MEMBERS OF THE OFFICE OF THE UNITED STATES TRUSTEE
FOR THE SOUTHERN DISTRICT OF NEW YORK**

Elizabetta C. Dub
Marilyn Felton
Myrna R. Fields
Elizabeth Gasparini
Susan Golden
Nadkarni Joseph
Nazar Khodorovsky

Savitri Nguyen
Andrea B. Schwartz
Paul K. Schwartzberg
Sylvester Sharp
Andy Velez-Rivera
Greg M. Zipes

## FORMER DIRECTORS AND OFFICERS OF DEBTOR ENTITIES

### ARCHBROOK LAGUNA HOLDINGS LLC

| Former Directors | Former Officers |
| --- | --- |
|  | Peter Handy |

### ARCHBROOK LAGUNA LLC

| Former Directors | Former Officers |
| --- | --- |
| Peter Castenfelt | Peter Handy |

### BDI LAGUNA HOLDINGS, INC.

| Former Directors | Former Officers |
| --- | --- |
|  | Peter Handy |

### ARCHBROOK LAGUNA WEST LLC

| Former Directors | Former Officers |
| --- | --- |
| Peter Castenfelt | Peter Handy |

### LEHRHOFF ABL LLC (NEVADA)

| Former Directors | Former Officers |
| --- | --- |
| Joel Blank | Peter Handy |
| Darren Marino |  |
| Steven Silverman |  |

### EXPERT WAREHOUSE LLC

| Former Directors | Former Officers |
| --- | --- |
| Peter Castenfelt | Peter Handy |
| Robert Lawrence | David Meekings |
| James Ristow |  |

## PROSPECTIVE DIP LENDERS

GE Capital Commercial Services, Inc.

# FORMER DIRECTORS AND OFFICERS OF DEBTOR ENTITIES

## PROSPECTIVE DIP AGENT

GE Capital Commercial Services, Inc.

## COUNSEL TO PROSPECTIVE DIP AGENT

Latham & Watkins LLP