## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Archbrook Laguna Holdings LLC ., *et al.*,[1] | Case No. 11-13292 (SCC) |
| Debtors. | Jointly Administered |

## FINAL ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POST-PETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362 AND 364, AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (II) GRANTING LIENS AND SUPER-PRIORITY CLAIMS; AND (III) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364

Archbrook Laguna LLC ("ABL") and Lehrhoff ABL LLC ("*Lehrhoff*," and, together with ABL, the "*Borrowers*") and certain of their affiliates, each as a debtor and debtor-in-possession (collectively, the "*Debtors*") in the above captioned chapter 11 cases (collectively, the "*Cases*") having filed a motion, dated July 8, 2011 (the "*Motion*") [Docket No. 14] requesting entry of an interim order and a final order (the "*Final Order*") pursuant to sections 105, 361, 362, 363, 364, and 507 of chapter 11 of title 11 of the United States Code (as amended, the "*Bankruptcy Code*"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and the Local Bankruptcy Rules for the Southern District of New York (the "*Local Rules*") seeking, among other things:

(i)     authorization for the Borrowers to obtain post-petition financing (the "*DIP Facility*"), and for certain of the Borrowers' affiliates and each subsidiary of the Borrower that is

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: ArchBrook Laguna LLC (6166); ArchBrook Laguna Holdings LLC (6156); Chimerica Global Logistics LLC (3745); ArchBrook Laguna West LLC (9631); Lehrhoff ABL LLC; Expert Warehouse LLC (4487); and ArchBrook Laguna New York LLC (5385).

party to the DIP Credit Agreement (as defined below) (collectively, the "***Guarantors***"), to guaranty the Borrowers' obligations in connection with the DIP Facility, up to the aggregate principal amount of $50,000,000 from GE Capital Commercial Services, Inc. ("***GE Capital***"), acting as administrative agent (in such capacity, the "***DIP Agent***"), for itself and certain other lenders (collectively, including GE Capital, the "***DIP Lenders***");

(ii)    approval of the terms of, and authorization for the Debtors to execute and perform under, that certain Senior Super-Priority Debtor-In-Possession Credit Agreement, dated as of July 12, 2011  (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "***DIP Credit Agreement***"),[2] and the other Loan Documents (as defined in the DIP Credit Agreement and, together with the DIP Credit Agreement, the "***DIP Loan Documents***") and to perform such other and further acts as may be required in connection with the DIP Loan Documents;

(iii)    authorization for the Debtors to grant (x) to the DIP Agent, for the benefit of itself and the other DIP Lenders, the DIP Liens (as defined below) on all of the DIP Collateral (as defined below) pursuant to sections 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, which DIP Liens shall be senior to the Primed Liens (as defined below) but shall be junior to any Permitted Prior Liens and (y) to the DIP Lenders, pursuant to section 364(c)(1) of the Bankruptcy Code, super-priority administrative claims having recourse to all pre-petition and post-petition property of the Debtors' estates, now owned or hereafter acquired, including proceeds ("***Avoidance Action Proceeds***") of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law ("***Avoidance***

---

[2] Unless otherwise specified, all capitalized terms used herein without definition shall have the respective meanings given such terms in the DIP Credit Agreement.

*Actions*"), whether received by judgment, settlement or otherwise, and any Debtors' rights under section 506(c) of the Bankruptcy Code and the proceeds thereof;

(iv)    authorization for the Debtors to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "***Cash Collateral***"), including Cash Collateral in which the Pre-Petition Lenders (as defined below) and/or the DIP Lenders have a lien or other interest, in each case whether existing as of the Petition Date (as defined below), arising pursuant to this Final Order or otherwise;

(v)    authorization for the Debtors to grant, as of the Petition Date and as further described below, certain adequate protection to each lender (collectively, the "***Pre-Petition Lenders***") under a senior secured revolving asset based credit facility (the "***Pre-Petition Credit Facility***") pursuant to that certain Second Amended and Restated Credit Agreement, dated as of December 22, 2010 (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "***Pre-Petition Credit Agreement***" and, together with all other loan and security documents executed in connection therewith, the "***Pre-Petition Credit Documents***"), by and among ABL, Lehrhoff and Expert Warehouse LLC, as borrowers, Archbrook Laguna Holdings LLC ("***Holdings***"), Archbrook Laguna West LLC ("***ABL West***"), Chimerica Global Logistics LLC and Archbrook Laguna New York as Guarantors, GE Capital as Pre-Petition Lender and administrative agent (the "***Pre-Petition Agent***"), and the other Pre-Petition Lenders as parties thereto;

(vi)    authorization for the Debtors to grant, as of the Petition Date and as further described below, certain adequate protection to (i) Bank of America N.A. ("***BofA***") under and in connection with that certain Loan Agreement dated as of December 31, 2008 between ABL and BofA (as the same may be amended, restated, supplemented or otherwise

modified from time to time, the "**BofA Facility**") and (ii) General Electric Capital Corporation acting through its Corporate Finance Core Leasing Division ("**CLD**") under and in connection with that certain Master Lease Agreement dated as of December 9, 2005 between ABL (acting under its former name, BDI-Laguna, Inc.) and CLD (as the same may be amended, restated, supplemented or otherwise modified from time to time, and together with the security documents thereto, the "**CLD Financing Facility**");

(vii)    to vacate the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Final Order and subject in all respects to the Debtors' rights under paragraph 21 herein;

(viii)    authorization for the Debtors to borrow under the DIP Facility for the purposes of (a) indefeasibly repaying in full in cash any Pre-Petition Credit Obligations (as defined below) that remain outstanding as of the date hereof and (b) funding the operations of the Debtors' businesses, paying certain transaction fees and expenses and other costs and expenses of administration of the Cases, all subject to, and in accordance with, the DIP Loan Documents, this Final Order and the Approved Budget (as defined below); and

(ix)    waiver of any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Final Order.

Having considered the Motion, the DIP Credit Agreement, the *Declaration of Daniel J. Boverman, Interim Chief Financial Officer, In Support of First Day Pleadings* (the "**Boverman Declaration**"), and the evidence submitted or proffered at the hearings held and concluded before this Court on July 12, 2011 (the "**Interim Hearing**") and August [2], 2011 (the "**Final Hearing**"); and the Court having entered on July 13, 2011 that certain *Corrected Interim Order*

*(I) Authorizing Debtors (A) To Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364 and (B) To Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Granting Liens and Super-Priority Claims; (III) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364; and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* (the "**Interim Order**") [Docket No. 46] in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d) and 9014 and all applicable Local Rules, notice of the Motion, the Interim Hearing, the Interim Order and the Final Hearing having been provided in a sufficient manner and in accordance with the Interim Order; and it appearing that approval of the relief requested in the Motion is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and all parties in interest, and is essential for maximizing the value of the Debtors' businesses and assets for the benefit of the Debtors' creditors and all parties in interests; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED,[3] that:**

A.      **Petition Date**.  On July 8, 2011, (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (this "**Court**").  The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.    On July 18, 2011, a statutory committee of unsecured creditors (the "**Committee**"), was appointed in the Cases.

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

B. **Jurisdiction and Venue**. This Court has core jurisdiction over the Cases, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue for the Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014.

C. **Interim Order**. Based upon the Motion, the Boverman Declaration, the DIP Loan Documents and the evidence submitted or proffered at the Interim Hearing, the Court approved the Debtors' entry into and performance under the DIP Credit Agreement and the other DIP Loan Documents and entered the Interim Order. Pursuant to the Interim Order, the Debtors were authorized, among other things, to incur secured borrowings and repay Pre-Petition Credit Obligations pursuant to the terms of the DIP Loan Documents and the Interim Order pending the Final Hearing on the Motion.

D. **Notice**. The Final Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001. Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, on July 13, 2011, to certain parties in interest in accordance with the Interim Order, including: (a) the Office of the United States Trustee for the Southern District of New York, (b) the entities listed on the *Declaration Concerning List of the Debtors' 30 Largest Unsecured Claims on a Consolidated Basis*, (c) GE Capital, as administrative agent under the Pre-Petition Credit Facility and the DIP Facility, (d) Latham & Watkins, LLP, as counsel to GE Capital, (e) BofA, (f) CLD, (g) the Internal Revenue Service (h) the Securities and Exchange Commission and (i) the United States Attorney for the Southern District of New York. Under the

circumstances, such notice of the DIP Motion, the relief requested therein, the entry of the Interim Order and the Final Hearing complies with Bankruptcy Rule 4001(b), (c) and (d) and the Local Rules.

E.    **<u>Debtors' Stipulations Regarding the Pre-Petition Credit Facilities</u>**.  Without prejudice to the rights of parties in interest to the extent set forth in paragraph 9 below, the Debtors admit, stipulate, acknowledge and agree (paragraphs E(i) through E(x) hereof shall be referred to herein collectively as the "***Debtors' Stipulations***") as follows:

(i)    <u>Pre-Petition Credit Facility</u>.    Pursuant to the Pre-Petition Credit Agreement, the Pre-Petition Agent and Pre-Petition Lenders extended loans to, and issued letters of credit for the account of, the Debtors from time to time in connection with the Pre-Petition Credit Facility.  All obligations of the Debtors arising under the Pre-Petition Credit Facility (including the "Obligations" as defined in the Pre-Petition Credit Agreement) shall collectively be referred to herein as the "***Pre-Petition Credit Obligations***."

(ii)    <u>Pre-Petition Indebtedness</u>.  As of the Petition Date, the Debtors were truly and justly indebted to the Pre-Petition Agent and the Pre-Petition Lenders pursuant to the Pre-Petition Credit Documents, without defense, counterclaim or offset of any kind, in respect of loans made and letters of credit issued by the Pre-Petition Agent and the Pre-Petition Lenders in the aggregate principal amount of not less than $36,907,752.85 (including the Pre-Petition Discretionary Overadvances), *plus* all accrued and unpaid interest thereon and any additional fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the Pre-Petition Credit Documents) now or hereafter due under the Pre-Petition Credit Agreement and the other Pre-Petition Credit Documents (the "***Pre-Petition Indebtedness***").

(iii)  Pre-Petition First Priority Liens and Collateral.  Pursuant to the Pre-Petition Credit Documents, the Debtors granted to the Pre-Petition Agent, for the benefit of itself and the Pre-Petition Lenders, to secure the Pre-Petition Credit Obligations, a first-priority security interest in and continuing lien (the "*Pre-Petition First Priority Liens*") on all or substantially all of the Debtors' assets and property (which for the avoidance of doubt includes Cash Collateral and the "Collateral" as defined in the Pre-Petition Credit Agreement) and all proceeds, products, accessions, rents and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (the "*Pre-Petition Collateral*").  As of the Petition Date, the Pre-Petition First Priority Liens (a) are valid, binding, enforceable, and perfected liens, (b) were granted to, or for the benefit of, the Pre-Petition Lenders for fair consideration and reasonably equivalent value and (c) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming contemplated herein).  The Pre-Petition First Priority Liens are subject and subordinate in all respects only to (A) the DIP Liens, (B) the Carve-Out (as defined below) and (C) (1) valid, senior, prior, perfected and unavoidable Permitted Encumbrances (as defined in the Pre-Petition Credit Agreement) permitted under the Pre-Petition Credit Documents (the "*Pre-Petition Permitted Encumbrances*"),[4] (2) the BofA First Priority Liens (as defined below) solely on the BofA Priority Collateral (as defined below) and (3) the CLD First Priority Liens (as defined below and, together with the Pre-Petition Permitted Encumbrances and the BofA First Priority Liens, the "*Permitted Prior Liens*") solely on the CLD Priority Collateral (as defined below). The Pre-Petition Credit Obligations and the Pre-Petition Credit Documents constitute legal, valid

---

[4] For purposes of this Final Order, Pre-Petition Permitted Encumbrances shall include any liens that were valid, senior, prior and perfected under applicable law as of the Petition Date.  Nothing herein shall constitute a finding or ruling by this Court that any such Pre-Petition Permitted Encumbrances are valid, senior, enforceable, prior, perfected or non-avoidable.  Moreover, nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtors, the Pre-Petition Agent, the Pre-Petition Lenders, the DIP Agent, the DIP Lenders and any Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Pre-Petition Permitted Encumbrances and/or security interests.

and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable Pre-Petition Credit Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code). No setoffs, recoupments, offsets, defenses or counterclaims to any of the Pre-Petition Credit Obligations exist and no portion of the Pre-Petition Credit Obligations or any payments made to any or all of the Pre-Petition Agent or the Pre-Petition Lenders is subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law. Each of the Guaranties continues in full force and effect notwithstanding any use of Cash Collateral permitted hereunder or any financing and financial accommodations extended by the DIP Agent or DIP Lenders to the Debtors pursuant to the terms of this Final Order or the DIP Loan Documents. As of the Petition Date, the value of the Pre-Petition Collateral securing the Pre-Petition Indebtedness exceeded the amount of the Pre-Petition Indebtedness, and accordingly, the claims of the Pre-Petition Lenders on account of the Pre-Petition Indebtedness are allowed secured claims within the meaning of Section 506 of the Bankruptcy Code in an amount not less than the amount set forth in paragraph E(ii) of this Final Order.

(iv)    Cash Collateral.    The Debtors represent that all of the Debtors' cash, including the cash in its deposit accounts, wherever located, whether original collateral or proceeds of other Pre-Petition Collateral, constitutes the Cash Collateral of the DIP Agent, the DIP Lenders, the Pre-Petition Agent and the Pre-Petition Lenders.

(v)    BofA and CLD Financing Facilities.    Prior to the Petition Date, the Debtors (a) granted to BofA, pursuant to the BofA Facility, a first priority security interest in and continuing lien on (the "**BofA First Priority Lien**") certain assets of ABL (the "**BofA Priority**

*Collateral*") and (b) granted to CLD, pursuant to the CLD Financing Facility, a first priority security interest in and continuing lien on (the "*CLD First Priority Lien*") certain assets of ABL (the "*CLD Priority Collateral*") and a second priority subordinate security interest in and lien upon substantially all of the assets of ABL (the "*CLD Second Priority Lien*," and together with the CLD First Priority Lien, the "*CLD Security Interests*").  As of the Petition Date, (a) the BofA First Priority Lien and the CLD First Priority Lien are valid, binding, enforceable, and perfected Liens and (b) the BofA First Priority Lien and the CLD Security Interests were granted to, or for the benefit of, BofA or CLD, as applicable, for fair consideration and reasonably equivalent value and are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming contemplated herein).  The BofA First Priority Lien and the CLD First Priority Lien are subject and subordinate in all respects only to (A) the Carve-Out (as defined below) and (B) any valid, perfected and unavoidable liens permitted under the BofA Facility or the CLD Financing Facility, as applicable.  The CLD Second Priority Lien is subject and subordinate in all respects only to (A) the DIP Liens, (B) the Carve-Out, (C) the Adequate Protection Replacement Liens, (D) the Pre-Petition First Priority Liens, (E) the Pre-Petition Permitted Encumbrances and (F) any valid, perfected and unavoidable liens permitted under the CLD Financing Facility.  The obligations under the BofA Facility and the CLD Financing Facility constitute legal, valid and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the BofA  Facility or the CLD Financing Facility, as applicable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code).  No setoffs, recoupments, offsets, defenses or counterclaims to any of the obligations under the BofA  Facility or the CLD Financing Facility exist and no portion of the obligations or any payments made to BofA or CLD

is subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(vi)     <u>Intercreditor Agreements</u>.  The Pre-Petition Agent is party to (a) that certain Subordination Agreement, dated as of December 31, 2008 by and between the Pre-Petition Agent and BofA (the "***BofA Intercreditor Agreement***"), which governs the respective rights, obligations and priorities of the Pre-Petition Agent and BofA with respect to their relative interests in the BofA Priority Collateral and certain other matters, (b) that certain Second Amended and Restated Intercreditor Agreement, dated as of December 22, 2010 by and between the Pre-Petition Agent and CLD (the "***CLD Intercreditor Agreement***"), which governs the respective rights, obligations and priorities of the Pre-Petition Lenders and CLD with respect to their relative interests in the CLD Priority Collateral, the other assets of ABL and certain other matters, (c) that certain Second Amended and Restated Subordination Agreement, dated as of December 22, 2010 by and between the Pre-Petition Agent and Toshiba American Information Systems, Inc. ("***Toshiba***") (the "***Toshiba Subordination Agreement***"), which subordinates Toshiba's security interests in the goods sold by Toshiba to the Debtors to the Pre-Petition First Liens and (d) that certain Amended and Restated Shareholder Subordination Agreement, dated as of December 22, 2010 (the "***Shareholder Subordination Agreement***") by and between the Pre-Petition Agent, the borrowers under the Pre-Petition Credit Facility, Holdings and ABL West as Guarantors, and BDI Laguna Holdings, Inc. ("***Laguna Holdings***") as holder of the preferred stock of Holdings, pursuant to which Laguna Holdings subordinated all of its interests and rights to payment in any assets of the Borrowers or the Guarantors to the Pre-Petition First Priority Liens.   Each of the BofA Intercreditor Agreement, the CLD Intercreditor Agreement, the

Toshiba Subordination Agreement and the Shareholder Subordination Agreement is a "subordination agreement" for purposes of section 510(a) of the Bankruptcy Code and is enforceable on its terms.

(vii) <u>Release of Claims</u>. Subject to the reservation of rights set forth in paragraph 9 below, each Debtor and its estate shall be deemed to have forever waived, discharged, and released the Pre-Petition Agent, the Pre-Petition Lenders, BofA and CLD, together with their respective affiliates, agents, attorneys, financial advisors, consultants, officers, directors, and employees (all of the foregoing, collectively, the "***Pre-Petition Secured Party Releasees***") of any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, setoff, recoupment, or other offset rights against any and all of the Pre-Petition Secured Party Releasees, whether arising at law or in equity, with respect to the Pre-Petition Credit Obligations, the Pre-Petition First Priority Liens, the BofA First Priority Lien, the obligations owing under the BofA Facility, the CLD Security Interests and the obligations owing under the CLD Financing Facility, including (a) any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code, or under any other similar provisions of applicable state or federal law, and (b) any right or basis to challenge or object to the amount, validity, characterization or enforceability of the Pre-Petition Credit Obligations, the obligations owing under the BofA Facility, or the obligations owing under the CLD Financing Facility, or the validity, characterization, enforceability, priority, or non-avoidability of the Pre-Petition First Priority Liens, the BofA First Priority Lien and the CLD Security Interests.

F.      **Findings Regarding the DIP Facility**.

(i)      <u>Need for Post-Petition Financing</u>.  The Debtors require the DIP Facility and the use of Cash Collateral to, among other things, permit the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, and to satisfy other working capital and operational needs, and to facilitate the orderly liquidation of the Debtors' businesses through one or more sales of substantially all of the Debtors' assets.  The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral and borrowing under the DIP Facility is vital to maximizing the value of the Debtors' assets and businesses for the benefit of the Debtors' creditors and parties in interest.

(ii)     <u>No Credit Available on More Favorable Terms</u>.  As set forth in the Motion and in the Boverman Declaration, and based on the evidence submitted or proffered at the Interim Hearing and the Final Hearing, the Debtors have been and continue to be unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Loan Documents.  The Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without (i) granting to the DIP Lenders the rights, remedies, privileges, benefits and protections provided herein and in the DIP Loan Documents, including the DIP Liens and the DIP Super-Priority Claims (as defined below), (ii) allowing certain of the Pre-Petition Lenders to provide the DIP Facility on the terms set forth herein and in the DIP Loan Documents (all of the foregoing described in clauses (i) and (ii) above, including the DIP Liens and the DIP Super-Priority Claims, collectively, the "***DIP Protections***"), and (iii) providing the

Pre-Petition Agent, the Pre-Petition Lenders, BofA and CLD the adequate protection more fully described in paragraphs 4 through 6 below.

(iii) <u>Application of Proceeds of Collateral</u>. As a condition to the entry into the DIP Loan Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral and other Pre-Petition Collateral, the Debtors have agreed that they shall apply Cash Collateral, the proceeds of Pre-Petition Collateral and the proceeds of the DIP Facility solely as set forth in paragraph 2 below. Payment of the Pre-Petition Discretionary Overadvances (as defined in the Interim Order) and the Pre-Petition Credit Obligations in accordance with the Interim Order and Final Order is necessary as the Pre-Petition Agent and the Pre-Petition Lenders will not otherwise consent to the use of their Cash Collateral and other Pre-Petition Collateral or the subordination of their liens to the Carve-Out and to the DIP Liens. Such payment will not prejudice the Debtors or their estates because, among other things, payment of such amounts is subject to the rights of this Court and parties in interest under paragraph 9 of this Final Order.

G. **<u>Adequate Protection for, and Good Faith of, the Pre-Petition Agent and Pre-Petition Lenders</u>**. The Pre-Petition Agent and Pre-Petition Lenders have negotiated in good faith regarding the Debtors' use of the Pre-Petition Collateral (including the Cash Collateral) to fund the administration of the Debtors' estates and continued operation of their businesses. The Pre-Petition Agent and the Pre-Petition Lenders have agreed to permit the Debtors to use the Pre-Petition Collateral, including the Cash Collateral, subject to the terms and conditions set forth herein, including the protections afforded a party acting in "good faith" under section 364(e) of the Bankruptcy Code. In addition, the DIP Facility contemplated hereby provides for a priming of the Pre-Petition First Priority Liens pursuant to section 364(d) of the Bankruptcy Code. The

Pre-Petition Agent and the Pre-Petition Lenders are entitled to the adequate protection as set forth herein pursuant to sections 361, 362, 363, 364 and 507(b) of the Bankruptcy Code for the diminution in value of the Pre-Petition Collateral. Based on the Motion and on the record presented to the Court at the Interim Hearing and the Final Hearing, the terms of the proposed adequate protection arrangements and the use of the Cash Collateral contemplated hereby are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the Pre-Petition Agent's and Pre-Petition Lenders' consent thereto.

H.    **Limited Consent**.    The consent of the Pre-Petition Agent, the Pre-Petition Lenders and CLD to the priming of their liens by the DIP Liens is limited to the DIP Facility presently before this Court, with GE Capital as DIP Agent, and shall not, and shall not be deemed to, extend to any other post-petition financing or to any modified version of this DIP Facility with any party other than GE Capital as DIP Agent. Nothing in this Final Order, including any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of any of the Pre-Petition Agent, the Pre-Petition Lenders, BofA or CLD are or will be adequately protected with respect to any non-consensual use of Cash Collateral or non-consensual priming of the Pre-Petition First Priority Liens, the BofA First Priority Lien or the CLD Security Interests.

I.    **Section 552**.    In light of the subordination of their liens and super-priority administrative claims (i) in the case of the DIP Lenders, to the Carve-Out, the Permitted Prior Liens, the BofA Senior Replacement Liens (as defined below) and the CLD Senior Replacement Liens (as defined below), and (ii) in the case of the Pre-Petition Lenders, the Carve-Out, the DIP Liens, the Permitted Prior Liens, the BofA Senior Replacement Liens and the CLD Senior

Replacement Liens, each of the DIP Lenders and the Pre-Petition Lenders is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

J.    **Business Judgment and Good Faith Pursuant to section 364(e)**.

(i)    The DIP Lenders have indicated a willingness to provide post-petition secured financing pursuant to the DIP Facility to the Debtors in accordance with the DIP Loan Documents and this Final Order.

(ii)    The terms and conditions of the DIP Facility pursuant to the DIP Loan Documents and this Final Order, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

(iii)    The DIP Facility and DIP Loan Documents were negotiated in good faith and at arm's length among the Debtors, the DIP Agent and the DIP Lenders with the assistance and counsel of their respective advisors, and all of the DIP Obligations shall be deemed to have been extended by the DIP Lenders and their affiliates for valid business purposes and uses and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Liens, the DIP Super-Priority Claims and the other DIP Protections shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event this Final Order or any other order or any provision hereof or thereof is vacated, reversed, amended or modified, on appeal or otherwise.

K.    **Relief Essential; Best Interests**.  For the reasons stated above, the Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2),

4001(c)(2) and the Local Rules. Absent entry of this Final Order, the Debtors' businesses, assets and estates will be harmed. Consummation of the DIP Facility and authorization of the use of Cash Collateral in accordance with this Final Order and the DIP Loan Documents is therefore in the best interests of the Debtors' estates and consistent with their fiduciary duties.

**NOW, THEREFORE**, on the Motion and the record before this Court with respect to the Motion, and with the consent or non-objection of the Debtors, the Pre-Petition Agent, the Pre-Petition Lenders, BofA, CLD, the DIP Agent and the DIP Lenders to the form and entry of this Final Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED THAT**:

1. **Motion Granted**. The Motion is granted in accordance with the terms and conditions set forth in this Final Order and the DIP Loan Documents. This Final Order shall become effective immediately upon its entry. Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are denied and overruled.

2. **DIP Loan Documents and DIP Protections**.

    (a)    <u>Ratification of the Interim Order; Approval of DIP Loan Documents</u>. The terms of the Interim Order are hereby ratified and confirmed, except to the extent amended or modified by this Final Order, and all DIP Obligations (as defined below) incurred and borrowings and payments made thereunder are ratified and confirmed on a final basis and shall be deemed made in accordance with and pursuant to this Final Order. The DIP Loan Documents are hereby approved on a final basis. The Debtors are expressly and immediately authorized on a final basis to perform under the DIP Loan Documents and to incur the DIP Obligations in accordance with, and subject to, the terms of this Final Order and the DIP Loan Documents, and

to execute, deliver and perform under all other instruments, certificates, agreements and documents which may be required or necessary for the performance by the applicable Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in, and provided for by, this Final Order and the DIP Loan Documents. The Debtors are hereby authorized and directed on a final basis to do and perform all acts and pay the principal, interest, fees, expenses and other amounts described in the DIP Loan Documents as such become due pursuant to the DIP Loan Documents and this Final Order, including all closing fees, administrative fees, letter of credit fees, commitment fees and reasonable attorneys', financial advisors', and accountants' fees, and disbursements arising under the DIP Loan Documents and this Final Order, which amounts shall not be subject to further approval of this Court and shall be non-refundable; provided, however, that the payment of the fees and expenses of the Lender Professionals (as defined below) incurred after the Closing Date shall be subject to the provisions of paragraph 24(a). The DIP Loan Documents shall represent valid and binding obligations of the applicable Debtors enforceable against such Debtors in accordance with their terms. Each Responsible Officer of a Debtor acting singly is hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive of their respective authority to act in the name of and on behalf of the Debtors.

(b)     DIP Obligations.     For purposes of this Final Order, the term "*DIP Obligations*" shall mean all amounts owing under the DIP Credit Agreement and other DIP Loan Documents (including all "Obligations" as defined in the DIP Credit Agreement and letters of credit outstanding under the Pre-Petition Credit Facility as of the Petition Date, which letters of credit shall be deemed issued under the DIP Facility) and shall include the principal of, interest on and fees, costs, expenses and other charges owing in respect of, such amounts (including any

reasonable attorneys', accountants', financial advisors' and other fees, costs and expenses that are chargeable or reimbursable under the DIP Loan Documents), and any obligations in respect of indemnity and reimbursement claims, whether contingent or otherwise.

(c)     <u>Authorization to Incur DIP Obligations</u>.     Subject to the terms and conditions of this Final Order, the DIP Loan Documents and the Approved Budget, the Debtors are hereby authorized on a final basis to borrow under and pursuant to the terms of the DIP Facility in an aggregate outstanding principal amount not to exceed $50,000,000.    All DIP Obligations shall be unconditionally guaranteed by the Guarantors, as further provided in the DIP Loan Documents.

(d)     <u>Approved Budget</u>.    Attached hereto as <u>Exhibit A</u> is an 8-week cash flow budget (as such budget may be subsequently amended, modified or supplemented with the approval of the DIP Agent and the DIP Lenders pursuant to the DIP Credit Agreement, the "***Initial Approved Budget***") which reflects, on a line-item basis, the Debtors' projected cash receipts and disbursements, unused availability under the DIP Facility and unrestricted cash on hand.  For the ninth week of the Cases, the Debtors shall deliver to the DIP Agent (with a copy to counsel for the Committee) a 13-week cash flow budget in form and substance acceptable to the DIP Agent and the DIP Lenders (the "***Interim Approved Budget***") without further notice, motion or application to, order of, or hearing before this Court, supplementing and replacing the Initial Approved Budget commencing from the end of the eighth week through and including thirteen weeks thereafter; <u>provided</u> that unless and until the DIP Agent and the DIP Lenders have approved such Interim Approved Budget (which approval shall not be effective earlier than two (2) Business Days following delivery of such budget to the DIP Agent), the Debtors shall still be subject to and be governed by the terms of the Initial Approved Budget and none of the DIP

Agent, Pre-Petition Agent, DIP Lenders and Pre-Petition Lenders shall have any obligation to fund to such 13-week budget or permit the use of Cash Collateral with respect thereto. On a weekly basis thereafter, the Debtors shall deliver to the DIP Agent (with a copy to counsel for the Committee) an updated "rolling" 13-week cash flow budget in form and substance satisfactory to the DIP Agent and the DIP Lenders (each such updated budget, a "***Supplemental Approved Budget***") without further notice, motion or application to, order of, or hearing before this Court, supplementing and replacing the Interim Approved Budget or a Supplemental Approved Budget, as applicable, then in effect commencing from the end of the previous week through and including thirteen weeks thereafter; <u>provided</u> that unless and until the DIP Agent and the DIP Lenders have approved of such updated budget (which approval shall not be effective earlier than two (2) Business Days following delivery of such budget to the DIP Agent), the Debtors shall still be subject to and be governed by the terms of the Interim Approved Budget or Supplemental Approved Budget, as applicable, then in effect and none of the DIP Agent, Pre-Petition Agent, DIP Lenders and Pre-Petition Lenders shall have any obligation to fund to such updated "rolling budget" or permit the use of Cash Collateral with respect thereto. The aggregate, without duplication, of all items in the Initial Approved Budget, the Interim Approved Budget and any Supplemental Approved Budgets shall constitute an "***Approved Budget***."

(e) <u>Interest, Fees, Costs and Expenses</u>. The DIP Obligations shall bear interest at the rates, and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Final Order and the DIP Loan Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court. Subject to the provisions of paragraph 24(a) of this Order, as applicable, the Debtors shall pay all fees, costs,

expenses (including reasonable and documented legal and other professional fees and expenses of the DIP Agent) and other charges payable under the terms of the DIP Loan Documents without regard to the amounts set forth with respect thereto in the Approved Budget. All such fees, costs, expenses and disbursements, whether incurred, paid or required to be paid pre-petition or post-petition, are hereby affirmed, ratified, authorized and payable (and any funds held by the DIP Agent and/or its professionals as of the Petition Date for payment of such fees, costs, expenses and disbursements may be applied for payment) as contemplated in this Final Order and the DIP Loan Documents filed with the Court, and shall be non-refundable.

(f)     Use of DIP Facility Proceeds.    Subject to the terms and conditions contained in this Final Order and the DIP Loan Documents, from and after the Petition Date, the Debtors are authorized to use borrowings under the DIP Facility only for the purposes specifically set forth in this Final Order and the DIP Loan Documents and subject to and in accordance with the Approved Budget. Upon entry of this Final Order, the Debtors are authorized and directed to use the proceeds of the DIP Facility (i) to repay immediately any Pre-Petition Credit Obligations (including any Pre-Petition Discretionary Overadvances) that remain outstanding on the date of entry of this Final Order until all such Pre-Petition Credit Obligations have been indefeasibly repaid in full in cash and (ii) to fund the Cases and the businesses of the Debtors, subject to, and in accordance with, this Final Order, the DIP Loan Documents and the Approved Budget.

(g)     Application of Collateral Proceeds.    Subject to the Carve-Out, and as a condition to the entry into the DIP Loan Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the Debtors have agreed that proceeds of Pre-Petition Collateral, any amounts held or collected on account of Pre-Petition Collateral, and

all payments and collections received by the Debtors on account of business activities conducted by the Debtors prior to the Petition Date shall be applied as follows:

> (i)      Prior to the Termination Declaration Date, <u>first</u>, to repay the Pre-Petition Credit Obligations on a dollar-for-dollar basis until the Pre-Petition Credit Obligations are indefeasibly paid in full in cash and <u>second</u>, to reduce the DIP Obligations then due and owing in accordance with the DIP Loan Documents and this Final Order.

> (ii)     Upon the occurrence of the Termination Declaration Date, and at all times upon receipt of payments in connection with a sale or disposition of DIP Collateral outside the ordinary course of business:  <u>first</u>, to permanently reduce the DIP Obligations and all other obligations owing to the DIP Agent and/or the DIP Lenders until indefeasibly paid in full in cash and cash collateralize, obtain back to back and/or cancel all outstanding letters of credit issued or deemed issued under the DIP Loan Documents in accordance with the DIP Loan Documents and this Final Order; <u>second</u>, to permanently reduce the Pre-Petition Credit Obligations until indefeasibly paid in full in cash, and, <u>third</u>, to the Debtors' estates.  Following the Termination Declaration Date prior to application of proceeds in the immediately preceding sentence funds sufficient to fund the Carve-Out shall first be wired to the Debtors.  The Debtors shall hold these funds in an interest-bearing account in trust for the benefit of parties claiming under the Carve-Out, and upon satisfaction of all such claims any remaining funds shall be returned to the DIP Agent for application in accordance with this paragraph 2(g).

For the avoidance of doubt, to the extent any application of Pre-Petition Collateral, any amounts held or collected on account of Pre-Petition Collateral, and all payments and collections received by the Debtors on account of business activities conducted by the Debtors prior to the Petition Date to the Pre-Petition Discretionary Overadvances or the Pre-Petition Credit Obligations is avoided, disallowed, set aside or otherwise invalidated, in whole or in part, in any judicial proceeding or otherwise, then such Pre-Petition Discretionary Overadvances or Pre-Petition Credit Obligations shall be reinstated in full force and effect and all guarantees and security in respect thereof shall be restored.

> (h)     <u>Conditions Precedent</u>.  The DIP Lenders shall have no obligation to make any DIP Loan unless and until all conditions precedent to the making of any such DIP Loan under the DIP Loan Documents and this Final Order have been satisfied in full or waived by the

DIP Agent and/or the requisite threshold of DIP Lenders in accordance with the DIP Loan Documents and this Final Order.

(i)　　DIP Liens.　As security for the DIP Obligations, the following security interests and liens, which shall, immediately and without any further action, be valid, binding, permanent, fully perfected, continuing, enforceable and non-avoidable upon the date the Court enters this Final Order (the "*DIP Liens*"), are hereby granted by the Debtors to the DIP Agent for its own benefit and the ratable benefit of the DIP Lenders on substantially all of the property of the Debtors, now existing or hereinafter acquired, including all Cash Collateral, cash and cash equivalents (whether maintained with the DIP Agent or otherwise), and any investment in such cash or cash equivalents, money, inventory, goods, accounts receivable, other rights to payment, intercompany loans and other investments, investment property, contracts, contract rights, properties, plants, equipment, machinery, general intangibles, payment intangibles, accounts, deposit accounts, documents, instruments, chattel paper, documents of title**,** letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds, real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, capital stock of subsidiaries, tax and other refunds, insurance proceeds, commercial tort claims, rights under section 506(c) of the Bankruptcy Code, Avoidance Action Proceeds, all other collateral  and all other "property of the estate" (within the meaning of the Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible or mixed, and all rents, products, substitutions, accessions, profits, replacements and cash and non-cash proceeds of all of the foregoing (all of the foregoing collateral collectively referred to as the "*DIP Collateral*," and together with the Pre-Petition Collateral, the "*Collateral*,"):

(i)　　pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected, binding, continuing, enforceable and non-avoidable first priority Lien on all

unencumbered DIP Collateral, including Avoidance Action Proceeds, provided, however, that Avoidance Action Proceeds shall be the last DIP Collateral used to repay the DIP Obligations;

(ii)    pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected, binding, continuing, enforceable and non-avoidable junior Lien on all DIP Collateral that is subject to the BofA Senior Replacement Liens, the CLD Senior Replacement Liens and any Permitted Prior Lien (whether existing immediately prior to the Petition Date or perfected on or after the Petition Date pursuant to section 546(b) of the Bankruptcy Code); and

(iii)    pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected, binding, continuing, enforceable and non-avoidable first priority senior priming Lien on all DIP Collateral of the Debtors (including Cash Collateral) that is senior in all respects to (x) the Pre-Petition First Priority Liens and (y) except for the Permitted Prior Liens, any other liens in favor of any other person or entity, including all Liens junior to the Pre-Petition First Priority Liens (the "***Primed Liens***"), which Primed Liens, together with any Liens granted on or after the Petition Date to provide adequate protection in respect of any of the Primed Liens, shall be primed by and made subject and subordinate to the DIP Liens; provided, however, that the Liens described in this clause (III) shall be subject and subordinate to the Carve-Out and the Permitted Prior Liens.

(j)    DIP Lien Priority.  Notwithstanding anything to the contrary contained in this Final Order or the other DIP Loan Documents, for the avoidance of doubt, the DIP Liens granted to the DIP Agent for the ratable benefit of the DIP Lenders shall in each and every case be first priority senior Liens that (i) are subject only to the BofA Senior Replacement Liens, the CLD Senior Replacement Liens, the Permitted Prior Liens and, to the extent provided in the provisions of this Final Order and the DIP Loan Documents, shall also be subject to the Carve-Out, and (ii) except as provided in clause (i) of this paragraph 2(j), are senior to all pre-petition and post-petition Liens of any other person or entity (including the Primed Liens and the Adequate Protection Replacement Liens (as defined below)).  The DIP Liens and the DIP Super-Priority Claims (as defined below) (A) shall not be subject to sections 506(c) 510, 549, 550 or 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with any intercompany or affiliate Liens of the Debtors, and (C) shall be valid and enforceable against any trustee or any

other estate representative appointed in the Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (each, a "*Successor Case*"), and/or upon the dismissal of any of the Cases.  Except as otherwise expressly permitted by this Final Order or the DIP Loan Documents, no claim or Lien having a priority superior to or *pari passu* with those granted by this Final Order with respect to the DIP Obligations shall be granted or allowed until (x) all DIP Obligations have been indefeasibly paid in full in cash and (y) all commitments under the DIP Loan Documents have been irrevocably terminated.

(k)     Enforceable Obligations.  The DIP Loan Documents shall constitute and evidence the valid and binding DIP Obligations of the applicable Debtors, which DIP Obligations shall be enforceable against such Debtors, their estates and any successors thereto (including any trustee or other estate representative in any Successor Case), and their creditors, in accordance with their terms.  No obligation, payment, transfer or grant of security under the DIP Credit Agreement, the other DIP Loan Documents or this Final Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, 547, 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise) counterclaim, cross-claim, defense or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

(l)     Super-Priority Administrative Claim Status.  In addition to the DIP Liens granted herein, effective immediately upon entry of this Final Order, all of the DIP Obligations

shall constitute allowed super-priority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the payment of the Carve-Out, over all other administrative expense claims, adequate protection and other diminution claims (including the First Lien Super-Priority Claims (as defined below)), unsecured claims and all other claims against the applicable Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503, 506(c), 507, 546, 726, 1113 and 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment (the "***DIP Super-Priority Claims***"). The DIP Super-Priority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof. Other than as provided in the DIP Credit Agreement and this Final Order with respect to the Carve-Out, no costs or expenses of administration, including professional fees allowed and payable under sections 328, 330, 331 and 503 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no administrative priority claims or other priority claims are, or will be, senior to, prior to or *pari passu* with the DIP Liens and the DIP Super-Priority Claims or the DIP Obligations, or with any other claims of the DIP Lenders arising hereunder.

3. **Authorization to Use Cash Collateral**. Subject to the terms and conditions of this Final Order, the Debtors are authorized, pursuant to section 363 of the Bankruptcy Code, to use the Cash Collateral for a period of time from the date hereof until the earliest to occur of (i)

the termination of the commitments under the DIP Facility or the acceleration of the DIP Obligations as set forth in the DIP Credit Agreement, (ii) the date that this Final Order ceases to be in full force and effect, (iii) immediately upon delivery of written notice to the Debtors by the DIP Agent of any breach or default by the Debtors of the terms and provisions of this Final Order, which breach or default has not been cured by the Debtors or waived in a manner consistent with the terms and conditions of the DIP Credit Agreement; (iv) immediately upon delivery of written notice to the Debtors by the DIP Agent of an Event of Default under the DIP Credit Agreement, which Event of Default has not been cured by the Debtors or waived in a manner consistent with the terms and conditions of the DIP Credit Agreement; (v) the conversion of any of the Cases to a chapter 7 case; or (vi) appointment of a trustee or examiner with expanded powers. Each Debtor shall be prohibited from using Cash Collateral except in accordance with the terms and conditions of this Final Order, the DIP Loan Documents and the Approved Budget, and nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside of the ordinary course of business or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in the Final Order or the DIP Loan Documents.

4.    **Adequate Protection for Pre-Petition Lenders**.  In consideration for the use of Cash Collateral, the consent of the Pre-Petition Lenders to the entry of this Final Order and the priming of the Pre-Petition Lenders' liens, claims and interests in the Pre-Petition Collateral (including Cash Collateral) from and after the Petition Date, the Pre-Petition Lenders collectively shall receive the following adequate protection (collectively, the "***First Lien Adequate Protection***"):

(a) <u>Replacement Liens</u>.  To the extent of any diminution in value of the pre-petition interests of the Pre-Petition Lenders in the Pre-Petition Collateral, the Pre-Petition Lenders are hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e) and 364 of the Bankruptcy Code, replacement Liens upon all of the DIP Collateral (the "***First Lien Replacement Liens***"), which First Lien Replacement Liens on such DIP Collateral shall be subject and subordinate only to the DIP Liens, the Permitted Prior Liens, the BofA Senior Replacement Liens, the CLD Senior Replacement Liens, and the Carve-Out, to the extent expressly provided in the DIP Loan Documents and this Final Order.

(b) <u>Super-Priority Claims</u>.  To the extent of any diminution in value of the pre-petition interests of the Pre-Petition Lenders in the Pre-Petition Collateral, the Pre-Petition Lenders are hereby granted allowed super-priority administrative claims (such adequate protection super-priority claims, the "***First Lien Super-Priority Claims***"), pursuant to section 507(b) of the Bankruptcy Code, junior only to the DIP Super-Priority Claims and the Carve-Out to the extent provided herein and in the DIP Loan Documents and payable from and having recourse to all of the DIP Collateral; <u>provided</u>, <u>however</u>, that the Pre-Petition Lenders shall not receive or retain any payments, property or other amounts in respect of the First Lien Super-Priority Claims unless and until (x) all DIP Obligations have been indefeasibly paid in full in cash and (y) all credit commitments under the DIP Loan Documents have been irrevocably terminated.  Subject to the relative priorities set forth above, the First Lien Super-Priority Claims against each Debtor shall be against each Debtor on a joint and several basis.

(c) <u>Professional Fees</u>.  Without limiting any rights of the Pre-Petition Agent and the Pre-Petition Lenders under section 506(b) of the Bankruptcy Code which are hereby preserved, the Pre-Petition Agent and Pre-Petition Lenders shall receive current cash payment of

fees and expenses due from time to time under the Pre-Petition Credit Agreement, including the reimbursement of reasonable fees and expenses of counsel, financial advisors and other professionals of the Pre-Petition Agent, without regard to the amounts set forth with respect thereto in the Approved Budget. Except as set forth in paragraph 24 below, none of the fees, costs and expenses incurred by professionals engaged by the Pre-Petition Agent and the Pre-Petition Lenders shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.

(d)     Interest Payments. The Pre-Petition Agent and Pre-Petition Lenders shall receive current cash payment of interest due under the Pre-Petition Credit Agreement, in arrears on the first business day of each month at the default rate of interest as set forth in the Pre-Petition Credit Agreement, provided, that, upon entry of a final, non-appealable order by the Court determining that any payments described in this paragraph 4(d) were not proper pursuant to section 506(b) of the Bankruptcy Code, such payments may be recharacterized as a payment of principal on the Pre-Petition Indebtedness or as the Court may otherwise order.

(e)     Current Payment of Proceeds from Pre-Petition Collateral. As additional adequate protection, all proceeds from Pre-Petition Collateral, any amounts held or collected on account of Pre-Petition Collateral, and all payments and collections received by the Debtor on account of business activities conducted by the Debtors prior to the Petition Date shall be applied as set forth in paragraph 2(g) of this Final Order.

(f)     Right to Seek Additional Adequate Protection. Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is

reasonable and sufficient to protect the interests of the Pre-Petition Lenders.  However, the Pre-Petition Agent and/or any Pre-Petition Lender may request Court approval for additional or alternative adequate protection, without prejudice to any objection of the Debtors or any other party in interest to the grant of any additional or alternative adequate protection; provided that any such additional or alternative adequate protection shall at all times be subordinate and junior to the claims and Liens of the DIP Lenders granted under this Final Order and the DIP Loan Documents.

5.     **Adequate Protection for BofA**.  In consideration for the consent of BofA to the entry of this Final Order and the Debtors' use of Cash Collateral, BofA shall receive the following adequate protection (collectively referred to as the "***BofA Adequate Protection***"):

(a)     Payments from BofA Priority Collateral.  BofA will be entitled to receive all proceeds of the BofA Priority Collateral, which proceeds shall be applied to the BofA Facility until the BofA Facility is repaid in full.

(b)     BofA Replacement Liens.  To the extent of any diminution in value of BofA's pre-petition interest in the BofA Priority Collateral, BofA is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e) and 364 of the Bankruptcy Code, replacement Liens on the BofA Priority Collateral (the "***BofA Senior Replacement Liens***"), which shall be subject only to the Carve-Out and senior to the DIP Liens, the First Lien Replacement Liens and the Pre-Petition First Priority Liens, solely in respect of the BofA Priority Collateral.

(c)     Additional Adequate Protection and BofA Intercreditor Agreement.  BofA shall be entitled to seek approval for additional or alternative adequate protection, without prejudice to any objection of the Debtors or any other party in interest to the grant of any

additional or alternative adequate protection; provided that the rights of BofA shall at all times be subject to the terms and conditions of the BofA Intercreditor Agreement, which shall remain in full force and effect. Any and all funds or other consideration received under the BofA Facility shall be governed by the terms of the BofA Intercreditor Agreement.

6. **Adequate Protection for CLD**. In consideration for the entry of this Final Order, the priming of the CLD Second Priority Lien and the consent of CLD to the Debtors' use of Cash Collateral, CLD shall receive the following adequate protection (collectively, the "***CLD Adequate Protection***," and, together with the First Lien Adequate Protection and the BofA Adequate Protection, the "***Adequate Protection***"):

(a) <u>Payments from CLD Priority Collateral</u>. CLD will be entitled to receive all proceeds of the CLD Priority Collateral, which proceeds shall be applied to the CLD Financing Facility until the CLD Financing Facility is repaid in full.

(b) <u>CLD Replacement Liens</u>. To the extent of any diminution in value of CLD's pre-petition interest in the CLD Priority Collateral and in the assets of ABL, CLD is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e) and 364 of the Bankruptcy Code, (i) replacement liens on the CLD Priority Collateral (the "***CLD Senior Replacement Liens***"), which shall be subject only to the Carve-Out and senior to the DIP Liens, the First Lien Replacement Liens and the Pre-Petition First Priority Liens solely in respect of the CLD Priority Collateral and (ii) replacement liens on all of the assets of ABL, which shall be subject and subordinate only to the DIP Liens, the First Lien Replacement Liens, the Pre-Petition First Priority Liens, the Carve-Out, and any Pre-Petition Permitted Encumbrances (the "***CLD Junior Replacement Liens***," and, together with the First Lien

Replacement Lien, the BofA Senior Replacement Liens and the CLD Senior Replacement Liens, the "***Adequate Protection Replacement Liens***").

(c)     <u>Additional Adequate Protection and CLD Intercreditor Agreement</u>.  CLD shall be entitled to seek approval for additional or alternative adequate protection, without prejudice to any objection of the Debtors or any other party in interest to the grant of any additional or alternative adequate protection; <u>provided</u> that the rights of CLD shall at all times be subject to the terms and conditions of the CLD Intercreditor Agreement, which shall remain in full force and effect.  Any and all funds or other consideration received under the CLD Financing Facility shall be governed by the terms of the CLD Intercreditor Agreement.

7.     **<u>Consent to Priming and Adequate Protection</u>**.  The Pre-Petition Agent, the Pre-Petition Lenders, BofA and CLD consent and/or do not object to the Adequate Protection and the priming provided for herein; <u>provided</u>, <u>however</u>, that such consent of the Pre-Petition Agent and the Pre-Petition Lenders to the priming of their Pre-Petition First Priority Liens, the use of Cash Collateral, and the sufficiency of the Adequate Protection provided for herein is expressly conditioned upon the entry of this Final Order and such consent shall not be deemed to extend to any other replacement financing or debtor-in-possession financing other than the DIP Facility provided under the DIP Loan Documents.

8.     **<u>Automatic Post-Petition Lien Perfection</u>**.  This Final Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection and priority of the DIP Liens and the Adequate Protection Replacement Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or (b) taking any other action to validate or perfect the DIP Liens and the Adequate Protection Replacement Liens or to entitle the DIP

Liens and the Adequate Protection Replacement Liens to the priorities granted herein. Notwithstanding the foregoing, each of the DIP Agent, the Pre-Petition Agent, BofA and CLD (in the case of the Pre-Petition Agent, BofA and CLD, solely with respect to the Adequate Protection Replacement Liens) may, each in their sole discretion, file financing statements, mortgages, security agreements, notices of Liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the Petition Date. The applicable Debtors shall execute and deliver to the DIP Agent, the Pre-Petition Agent, BofA and CLD, as applicable, all such financing statements, mortgages, notices and other documents as such parties may reasonably request to evidence and confirm the contemplated priority of, the DIP Liens and the Adequate Protection Replacement Liens, as applicable, granted pursuant hereto. Without limiting the foregoing, each of the DIP Agent, the Pre-Petition Agent, BofA and CLD, each in its discretion, may file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Final Order. Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the payment of any fees or obligations to any governmental entity or non-governmental entity in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with

respect to the Liens on such leasehold interests or other applicable Collateral or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lenders in accordance with the terms of the DIP Loan Documents and this Final Order. To the extent that the Pre-Petition Agent is the secured party under any account control agreements, listed as loss payee under any of the Debtors' insurance policies or is the secured party under any Pre-Petition Credit Document, the DIP Agent shall also be deemed to be the secured party under such account control agreements, loss payee under the Debtors' insurance policies and the secured party under each such Pre-Petition Credit Document, shall have all rights and powers attendant to that position (including rights of enforcement) and shall act in that capacity and distribute any proceeds recovered or received in accordance with the DIP Loan Documents and this Final Order. The Pre-Petition Agent shall serve as agent for the DIP Agent for purposes of perfecting their respective Liens on all DIP Collateral that is of a type such that perfection of a Lien therein may be accomplished only by possession or control by a secured party.

9. **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**.

(a)     The Debtors' Stipulations shall be binding upon the Debtors in all circumstances and upon the Committee as set forth in paragraph 10 of this Final Order. The Debtors' Stipulations shall be binding upon all other parties in interest unless, on or before August 7, 2011 (such time period shall be referred to as the "***Challenge Period***," and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as the "***Challenge Period Termination Date***"), such other party in interest other than the Debtors and the Committee obtains the authority to commence and commences, or a chapter 7 trustee commences in any Successor Case, prior to the expiration of the Challenge Period, a contested

matter or adversary proceeding (x) challenging or otherwise objecting to any part of the Debtors'

Stipulations, or (y) against any or all of the Pre-Petition Agent and/or the Pre-Petition Lenders

challenging any aspect of the Pre-Petition Indebtedness, or the actions or inactions of any of the

Pre-Petition Agent or the Pre-Petition Lenders arising out of or related to the Pre-Petition

Indebtedness, including any claim against the Pre-Petition Agent or any Pre-Petition Lender in

the nature of "lender liability" causes of action, setoff, avoidance, counterclaim or defense to the

Pre-Petition Indebtedness (including but not limited to those under sections 506, 544, 547, 548,

549, 550 and/or 552 of the Bankruptcy Code or by way of suit against the Pre-Petition Agent or

any Pre-Petition Lender) (the objections, challenges, actions and claims referenced in clauses (x)

and (y), collectively, the "***Claims and Defenses***") and (b) this Court rules in favor of the plaintiff

in any such timely and properly commenced contested matter or adversary proceeding; provided,

that as to the Debtors, for themselves and not their estates, all such Claims and Defenses are

irrevocably waived and relinquished as of the Petition Date. Until the Challenge Period

Termination Date, any party in interest may assert any Claims and Defenses. If no Claims and

Defenses have been timely asserted in any such adversary proceeding or contested matter, then,

upon the Challenge Period Termination Date, and for all purposes in these Cases and any

Successor Case, (i) no payments made to the Pre-Petition Agent and the Pre-Petition Lenders

pursuant to this Final Order or otherwise shall be subject to counterclaim, set-off, subordination,

recharacterization, defense or avoidance, (ii) any and all such Claims and Defenses by any party

in interest shall be deemed to be forever released, waived and barred, (iii) the Pre-Petition

Indebtedness shall be deemed to be an allowed claim, and (iv) the Debtors' Stipulations,

including the release provisions therein, shall be binding on all creditors and parties in interest,

including any subsequent trustee of the Debtors' estates in these Cases or in any Successor Case.

Notwithstanding the foregoing, to the extent any Claims and Defenses are timely asserted in any such adversary proceeding or contested matter, (i) the Debtors' Stipulations and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on any person, entity, party in interest or any subsequent trustee of the Debtors' estates in these Cases or in any Successor Case from and after the Challenge Period Termination Date, except to the extent that such Debtors' Stipulations or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were expressly challenged in such adversary proceeding or contested matter, and (ii) any portion of the Debtors' Stipulations or other provision in clauses (i) through (iv) in the immediately preceding sentence that is the subject of a timely filed Claim and Defense shall become binding and preclusive on any person, entity, party in interest and any subsequent trustee of the Debtors' estates in these Cases or any Successor Case to the extent set forth in any order of the Court resolving such Claim and Defense.  Nothing in this Final Order vests or confers on any person, entity or party in interest standing or authority to pursue any cause of action belonging to any or all of the Debtors or their estates, including any Claim and Defense or other claim against the Pre-Petition Agent, the DIP Agent, any Pre-Petition Lender or any DIP Lender, and the Pre-Petition Agent, the DIP Agent, Pre-Petition Lenders and DIP Lenders reserve all rights to challenge and object to such standing or authority.

(b)     The Court reserves the right, after notice and a hearing, to unwind any payments made to the Pre-Petition Agent or the Pre-Petition Lenders in the event that (i) any Claims or Defenses brought within the Challenge Period are found to have successfully challenged the validity, enforceability, extent, perfection or priority of any of the Pre-Petition Agent's or the Pre-Petition Lenders' claims and/or Liens or (ii) a determination is made that the

claims of the Pre-Petition Agent and the Pre-Petition Lenders in respect of the Pre-Petition Indebtedness were undersecured as of the Petition Date and the payments made on account of the Pre-Petition Indebtedness after the Petition Date unduly advantaged the Pre-Petition Agent and the Pre-Petition Lenders. For the avoidance of doubt, to the extent the Court unwinds any payments to the Pre-Petition Agent or the Pre-Petition Lenders as set forth in the preceding sentence, then the Pre-Petition Credit Obligations in respect of which such payments were made shall be reinstated in full force and effect and all guarantees and security in respect thereof shall be restored.

10. **Waiver of Investigation and Challenge Rights**. The Committee has completed its review and investigation with respect to the claims of the Pre-Petition Agent and the Pre-Petition Lenders arising from the Pre-Petition Credit Facility, the Pre-Petition Indebtedness and the Pre-Petition First Priority Liens and has concluded that it will not file any Claim or Defense against the Pre-Petition Agent and the Pre-Petition Lenders. Based upon the stipulations and agreements set forth in this Final Order and as stated on the record during the Final Hearing, the Committee hereby waives and releases any and all rights to further investigate the validity, amount, perfection, priority and enforceability of the Pre-Petition First Priority Liens and the Pre-Petition Indebtedness, or to assert any Claims and Defenses against the Pre-Petition Agent or any Pre-Petition Lender, specifically including, but not limited to, any challenge with respect to the Pre-Petition Indebtedness, the Pre-Petition First Priority Liens and the First Lien Adequate Protection. All of the stipulations, agreements and releases contained in paragraph E of this Final Order or otherwise contained in any other paragraph of this Final Order are binding upon the Committee without further action by any party or this Court. The Committee is forever

barred from bringing or asserting any Claims and Defenses against the Pre-Petition Agent or any Pre-Petition Lender directly, derivatively on behalf of the Debtors' estates or otherwise.

11.  **Carve-Out**.  Subject to the terms and conditions contained in this paragraph 11, each of the DIP Liens, DIP Super-Priority Claims, Pre-Petition First Priority Liens, BofA First Priority Lien, CLD Security Interests, Adequate Protection Replacement Liens and First Lien Super-Priority Claims shall be subject and subordinate in all respects to payment of the Carve-Out (as defined below):

(a)  For purposes of this Final Order, "***Carve-Out***" means an amount equal to (i) the unpaid fees and expenses of retained professionals of the Debtors (the "***Debtor Professionals***," and such fees, the "***Debtor Professional Fees***") incurred before the delivery of a Carve-Out Trigger Notice (as defined below) that are ultimately allowed by final order of the Court (whether such Debtor Professional Fees are allowed before or after the delivery of a Carve-Out Trigger Notice), but solely to the extent the same are incurred in accordance with Schedule 1 to the Approved Budget on a cumulative basis with respect to each Debtor Professional, (ii) the amount of unpaid fees and expenses of professionals retained by the Committee (the "***Committee Professionals***," and such fees, the "***Committee Professional Fees***") incurred before the delivery of a Carve-Out Trigger Notice that are ultimately allowed by final order of the Court (whether such Committee Professional Fees are allowed before or after the delivery of a Carve-Out Trigger Notice), but solely to the extent the same are incurred in accordance with Schedule 1 to the Approved Budget on an cumulative basis with respect to each Committee Professional, (iii) the amount of reasonable and documented out-of-pocket expenses incurred by members of the Committee in connection with attending Committee meetings in an aggregate amount not in excess of $15,000, provided, that no Committee members shall be

entitled under this paragraph to reimbursement of any fees and expenses of professionals (including legal counsel) retained by individual Committee members incurred in connection with the Cases, (iv) all allowed and unpaid Debtor Professional Fees and Committee Professional Fees that are incurred from and after the delivery of a Carve-Out Trigger Notice in an aggregate amount not in excess of $500,000, (v) all allowed and unpaid fees and expenses of the trustee appointed under chapter 7 in any Successor Case in an aggregate amount not in excess of $50,000, (vi) all fees payable pursuant to 28 U.S.C. § 1930(a) and 31 U.S.C. § 3717 and (vii) all fees due the Clerk of the Court. The amount set forth in clause (iv) in the preceding sentence is referred to herein as the "*Carve-Out Cap*." Following the delivery of a Carve-Out Trigger Notice, the Debtor Professional Fees and the Committee Professional Fees shall be paid <u>first</u> from retainers held by such professionals, which shall reduce the Carve-Out Cap on a dollar-for-dollar basis before such Debtor Professional Fees and Committee Professional Fees may be paid from encumbered funds.

(b)     The term "*Carve-Out Trigger Notice*" shall mean a written notice delivered by the DIP Agent to the Debtors' lead counsel, the U.S. Trustee, and lead counsel to the Committee, which notice may be delivered at any time following the occurrence and during the continuation of any Event of Default under the DIP Loan Documents or this Final Order, expressly stating that the Carve-Out is invoked.

(c)     So long as no Carve-Out Trigger Notice has been delivered to the Debtors, the Debtors are authorized to use advances under the DIP Facility, subject to the DIP Loan Documents and this Final Order and in accordance with and limited to the amounts set forth on <u>Schedule 1</u> to the Approved Budget, on a cumulative basis by Debtor Professional or Committee

Professional, as applicable, to pay such compensation and expense reimbursements of the Debtor Professionals and the Committee Professionals as may be awarded by the Court.

(d)     The DIP Agent shall be entitled to establish and maintain reserves against borrowing availability under the DIP Facility on account of the Carve-Out in accordance with the terms of the DIP Credit Agreement.

(e)     No portion of the Carve-Out, DIP Collateral, Pre-Petition Collateral, Cash Collateral or any proceeds of the DIP Facility may be used for the payment of the fees and expenses of any person incurred challenging, or in relation to the challenge of, (i) the Liens or claims of any or all of the DIP Agent and/or the DIP Lenders, or the initiation or prosecution of any claim or cause of action against any or all of the DIP Agent or the DIP Lenders, including any claim under Chapter 5 of the Bankruptcy Code or (ii) any claims or causes of actions (including any claims or causes of action under Chapter 5 of the Bankruptcy Code) against any or all of the Pre-Petition Agent and the Pre-Petition Lenders, their respective affiliates, agents, attorneys, financial advisors, consultants, officers, directors and employees, including formal discovery proceedings in anticipation thereof, and/or challenging any Lien or claim of any or all of the Pre-Petition Agent and the Pre-Petition Lenders, or asserting any other lender liability or other claim or cause of action against any of the Pre-Petition Agent and the Pre-Petition Lenders. The foregoing notwithstanding, no more than $25,000, in the aggregate, of the Carve-Out, DIP Collateral, Pre-Petition Collateral, Cash Collateral or any proceeds of the DIP Facility may be used by the Committee, or any representative of the estate, to investigate the claims and liens of the Pre-Petition Agent, the Pre-Petition Lenders or any other agents and lenders under the Pre-Petition Credit Agreement and no such funds or proceeds may be used following entry of this Final Order.

(f)     Furthermore, none of the Carve-Out, DIP Collateral, Pre-Petition Collateral, Cash Collateral or any proceeds of the DIP Facility shall be used to prevent, hinder or delay the DIP Lenders or the DIP Agent from enforcing or realizing upon the DIP Collateral once a Default or Event of Default has been determined by the Court to have occurred and to be continuing under the DIP Loan Documents or this Final Order.  For the avoidance of doubt, the foregoing shall not operate to prevent the payment of the Debtor Professional Fees to the extent otherwise payable in accordance with the terms of the DIP Loan Documents and the Approved Budget.

(g)     Nothing herein shall be construed as consent to the allowance of any Debtor Professional Fees, Committee Professional Fees or the professional fees or expenses of any unofficial committee or any other party in interest, or shall affect the right of the DIP Agent, any DIP Lender, the Pre-Petition Agent or any Pre-Petition Lender to object to the allowance and payment of such fees and expenses.

(h)     The DIP Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Lenders, BofA and CLD shall not be responsible for the direct payment or reimbursement of any Debtor Professional Fees or Committee Professional Fees incurred in these Cases or any Successor Case.  Nothing in this Final Order or otherwise shall be construed (i) to obligate the DIP Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Lenders, BofA or CLD in any way to pay compensation or to reimburse expenses of any of the Debtor Professionals or the Committee Professionals or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; (ii) to increase the Carve-Out if the actual Debtor Professional Fees or Committee Professional Fees are higher than reflected in the Approved Budget; or (iii) as consent to the allowance of any Debtor Professional Fees or Committee Professional Fees.  Any

funding of the Carve-Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Final Order, the DIP Loan Documents, the Bankruptcy Code and applicable law.

12. **Credit Bid**.  The Pre-Petition Agent shall have the unqualified right to credit bid up to the full amount of any Pre-Petition Indebtedness in any sale of the Pre-Petition Collateral, under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code.  The Debtors, on behalf of themselves and their estates, stipulate and agree that any sale of all or part of the Collateral that does not include an unqualified right to credit bid up to the full amount of the Pre-Petition Indebtedness would mean that the Pre-Petition Agent and the Pre-Petition Lenders will not receive the indubitable equivalent of their claims and interests.

13. **DIP Credit Bid.**  The DIP Agent shall have the unqualified right to credit bid the DIP Obligations under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code.

14. **Waiver of Section 506(c) Claims**.  As a further condition of the DIP Facility, any obligation of the DIP Lenders to make credit extensions pursuant to the DIP Loan Documents (and their consent to the payment of the Carve-Out to the extent provided herein) and the consent of the Pre-Petition Lenders to the Debtors' use of Cash Collateral as provided herein, no costs or expenses of administration of the Cases or any Successor Case shall be charged against or recovered from or against any or all of the DIP Agent, the DIP Lenders, the Pre-Petition Agent,

the Pre-Petition Lenders, the DIP Collateral, the Pre-Petition Collateral, and the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Agent or the Pre-Petition Agent, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the DIP Lenders and the Pre-Petition Lenders.

15.     **Discharge Waiver**. The Debtors expressly stipulate, and the Court finds and adjudicates that, the DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of sections 524 and/or 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been indefeasibly paid in full in cash on or before the effective date of a confirmed plan of reorganization.  The Debtors shall not support any plan of reorganization or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the indefeasible payment in full in cash, on the effective date of such plan of reorganization or such sale, of all DIP Obligations and the cancellation, backing or cash collateralization of all letters of credit issued or deemed issued under the DIP Loan Documents.

16.     **Protection of DIP Lenders' Rights**.

(a)     Unless the DIP Agent and the Requisite Lenders shall have provided their prior written consent or all DIP Obligations have been indefeasibly paid in full in cash, there shall not be entered in these proceedings or in any Successor Case any order which authorizes (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral or that is entitled to administrative priority status, in each case which is superior to or *pari passu* with the DIP Liens, DIP Super-Priority Claims and other DIP Protections granted pursuant to this Final Order; or (ii)

the use of DIP proceeds for any purpose other than as permitted in accordance with the Approved Budget, the DIP Loan Documents and this Final Order.

(b)     The Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will (i) maintain books, records and accounts to the extent and as required by the DIP Loan Documents, (ii) reasonably cooperate, consult with, and provide to the DIP Agent and the Pre-Petition Agent all such information as required or allowed under the DIP Loan Documents or the provisions of this Final Order, (iii) permit representatives of the DIP Agent and the Pre-Petition Agent such rights to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of the Debtors' respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants as and to the extent required by the DIP Loan Documents, and (iv) permit the DIP Agent and the Pre-Petition Agent and their respective representatives to consult with the Debtors' management and advisors on matters concerning the general status of the Debtors' businesses, financial condition and operations.

17.     **Proceeds of Subsequent Financing**.    Without limiting the provisions and protections of paragraph 16 above, if at any time prior to the indefeasible payment in full in cash of all DIP Obligations, the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d) or any other provision of the Bankruptcy Code in violation of the DIP Loan Documents or this Final Order, then all of the cash proceeds derived from such credit

or debt and all Cash Collateral shall immediately be turned over to the DIP Agent until indefeasible payment in full in cash of the DIP Obligations.

18.    **Cash Collection**.    From and after the date of the entry of this Final Order, collections and proceeds of any DIP Collateral or Pre-Petition Collateral, and all Cash Collateral shall be swept daily either directly into an account or accounts (the "***Cash Collection Accounts***") under the sole dominion and control of the DIP Agent in accordance with the DIP Loan Documents and this Final Order or otherwise pursuant to a structure acceptable to the DIP Agent. The blocked account control agreements in place under the Pre-Petition Credit Documents are deemed amended so as to effectively grant "control" (within the meaning of the Uniform Commercial Code) to the DIP Agent for the benefit of the DIP Lenders over all accounts subject thereto, including the Cash Collection Accounts, and so as to perfect the DIP Lenders' liens on and interests in such accounts.  Unless otherwise agreed to by the DIP Agent, the Debtors shall maintain no accounts except those specifically identified in any order of the Court approving the Debtors' cash management system (the "***Cash Management Order***").    The Debtors and the financial institutions where the Debtors' Cash Collection Accounts are maintained (including those accounts identified in any Cash Management Order), are authorized and directed to remit funds in such Cash Collection Accounts upon receipt of any direction to that effect from the DIP Agent.

19.    **Disposition of DIP Collateral**.    The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the DIP Agent and the Requisite Lenders (and no such consent shall be implied from any other action, inaction or acquiescence by any DIP Secured Party or any order of this Court),

except for (a) as permitted in the DIP Loan Documents and this Final Order and (b) approved by the Court to the extent required under applicable bankruptcy law.

20. **Events of Default**. The following shall constitute an event of default under this Final Order, unless waived in writing by the DIP Agent and the Requisite Lenders under the DIP Loan Documents (the "*Events of Default*"):

(a)      The occurrence of an "Event of Default" under the DIP Credit Agreement, as set forth therein.

(b)      The Debtors' failure to perform the obligations (the "*Sale Milestones*") as set forth on and when required by Exhibit B attached hereto.

(c)      Any other breach or default by any of the Debtors of the terms and provisions of this Final Order.

21. **Rights and Remedies Upon Event of Default**.

(a)      Immediately upon the occurrence and during the continuation of an Event of Default, the DIP Agent may, and at the written direction of the Requisite Lenders shall, (i)(1) declare all DIP Obligations to be immediately due and payable, (2) declare the termination, reduction or restriction of any further commitment to extend credit to the Debtors, to the extent any such commitment remains, and (3) terminate the DIP Facility and any other DIP Loan Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; and (ii) declare a termination, reduction or restriction on the ability of the Debtors to use any Cash Collateral (any such declaration shall be made to the Debtors, the Committee and the U.S. Trustee, and shall be referred to herein as a "*Termination Declaration*" and the date which is the

earliest to occur of any such Termination Declaration being herein referred to as the "*Termination Declaration Date*").

(b)     In addition to the remedies described above and other customary remedies, seven (7) days following the Termination Declaration Date, the DIP Agent shall have relief from the automatic stay and may foreclose on all or any portion of the DIP Collateral, collect accounts receivable and apply the proceeds thereof to the DIP Obligations, occupy the Debtors' premises to sell or otherwise dispose of the DIP Collateral or otherwise exercise remedies against the DIP Collateral permitted by applicable non-bankruptcy law.  During such seven (7) day period, the Debtors and any Committee shall be entitled to an emergency hearing before the Bankruptcy Court for the sole purpose of contesting whether an Event of Default has occurred.  Unless the Court at such hearing determines that an Event of Default has not occurred and is not continuing, the automatic stay, as to the DIP Lenders and DIP Agent, shall automatically terminate at the end of such seven (7) business day period, without further notice or order.  Notwithstanding the foregoing, nothing herein shall preclude the DIP Agent from seeking an order from the Court authorizing the DIP Agent to exercise any enforcement rights or remedies with respect to the DIP Collateral on less than seven (7) days' notice.

(c)     All proceeds realized in connection with the exercise of the rights and remedies of the DIP Lenders shall be turned over to the DIP Agent for application to the DIP Obligations under, and in accordance with the provisions of, the DIP Loan Documents and this Final Order until indefeasible payment in full in cash of the DIP Obligations.

(d)     Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agent or the other DIP Lenders contained in this Final Order or the DIP Loan Documents, or otherwise available at law or in equity, upon

reasonable prior written notice to the Debtors and any landlord, lienholder, licensor or other third party owner of any leased or licensed premises or intellectual property that an Event of Default has occurred and is continuing, the DIP Agent (i) may, unless otherwise provided in any separate agreement by and between the applicable landlord or licensor and the DIP Agent, enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a Lien of any third party and which are used by Debtors in their businesses, in all cases without interference from lienholders or licensors thereunder, provided, however, that the DIP Agent, on behalf of the DIP Lenders, shall pay only rent and additional rent, fees, royalties or other obligations of the Debtors that first arise after the written notice referenced above from the DIP Agent and that are payable during the period of such occupancy or use by such DIP Agent calculated on a *per diem* basis.  Nothing herein shall require the Debtors, the DIP Agent or the other DIP Lenders to assume any lease or license under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the DIP Agent and the other DIP Lenders in this paragraph 21(d).

(e)     The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of this Final Order and the DIP Loan Documents as necessary to (i) permit the Debtors to grant the Adequate Protection Replacement Liens and the DIP Liens and to incur all liabilities and obligations to the Pre-Petition Lenders, the DIP Lenders, BofA and CLD under the DIP Loan Documents, the DIP Facility and this Final Order, (ii) authorize the DIP Lenders, the Pre-Petition Lenders, BofA and CLD to retain and apply

payments hereunder, and (iii) as otherwise necessary to implement and effectuate the provisions of this Final Order.

22.    **Proofs of Claim**.  The Pre-Petition Agent shall be authorized (but not required) to file a master proof of claim against the Debtors (the "***Master Proof of Claim***") on behalf of itself and the other Pre-Petition Lenders on account of their pre-petition claims arising under the Pre-Petition Loan Documents, and the Pre-Petition Agent shall not be required to file a verified statement pursuant to Bankruptcy Rule 2019.  The Debtors' Stipulations in paragraph D herein shall be deemed to constitute a timely filed proof of claim of the Pre-Petition Agent and each Pre-Petition Lender.  If the Pre-Petition Agent so files a Master Proof of Claim against the Debtors, the Pre-Petition Agent and each Pre-Petition Lender, as the case may be, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against the Debtors arising under the Pre-Petition Credit Documents, and the claims of the Pre-Petition Agent and each Pre-Petition Lender, as the case may be, and each of their respective successors and assigns, named in the Master Proof of Claim shall be allowed or disallowed as if such entity had filed a separate proof of claim in each Case in the amount set forth opposite each name listed in the Master Proof of Claim.  The Pre-Petition Agent, shall further be authorized to amend its Master Proof of Claim from time to time to, among other things, reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of such claims.  The provisions set forth in this paragraph 22 and any Master Proof of Claim filed pursuant to the terms hereof are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest or their respective successors in interest, including the rights of the Pre-Petition Agent and each Pre-Petition Lender

as the holder of a claim against the Debtors under applicable law, and the numerosity requirements set forth in section 1126 of the Bankruptcy Code.

23. **Preservation of Rights Granted under the Final Order**.

(a) <u>No Non-Consensual Modification or Extension of Final Order</u>. Unless all DIP Obligations shall have been indefeasibly paid in full in cash, the Debtors shall not seek, and it shall constitute an Event of Default, if there is entered (i) an order amending, supplementing, extending or otherwise modifying this Final Order or (ii) an order converting or dismissing any of the Cases, in each case, without the prior written consent of the DIP Agent, which consent shall not be implied by any other action, inaction or acquiescence.

(b) <u>Dismissal</u>. If any order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) to the fullest extent permitted by law that (i) the DIP Protections and the Adequate Protection shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations have been indefeasibly paid in full in cash and all Adequate Protection has been indefeasibly paid in full in cash or otherwise satisfied in full (and that all DIP Protections and the Adequate Protection shall, notwithstanding such dismissal, remain binding on all parties in interest), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such DIP Protections and the Adequate Protection.

(c) <u>Modification of Final Order</u>. Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Final Order, in the event any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed by a subsequent order of this

Court or any other court, the DIP Agent, the DIP Lenders, the Pre-Petition Agent and the Pre-Petition Lenders shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code, and no such reversal, modification, vacatur or stay shall affect (i) the validity, priority or enforceability of any DIP Protections and the Adequate Protection granted or incurred prior to the actual receipt of written notice by the DIP Agent or the Pre-Petition Agent, as the case may be, of the effective date of such reversal, modification, vacatur or stay or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Loan Documents with respect to any DIP Obligations and the Adequate Protection. Notwithstanding any such reversal, modification, vacatur or stay, any use of Cash Collateral or any DIP Obligations or Adequate Protection incurred or granted by the Debtors prior to the actual receipt of written notice by the DIP Agent or the Pre-Petition Agent, as applicable, of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this Final Order, and the DIP Lenders and the Pre-Petition Lenders shall be entitled to all of the DIP Protections and the Adequate Protection, as the case may be, and all other rights, remedies, Liens, priorities, privileges, protections and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order and pursuant to the DIP Loan Documents with respect to all uses of Cash Collateral and all DIP Obligations and Adequate Protection.

(d)     <u>Survival of Final Order</u>. The provisions of this Final Order and the DIP Loan Documents, any actions taken pursuant hereto or thereto, and all of the DIP Protections, the Adequate Protection, and all other rights, remedies, liens, priorities, privileges, protections and benefits granted to any or all of the DIP Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Lenders, BofA and CLD shall survive, and shall not be modified, impaired or discharged by, the entry of any order confirming any plan of reorganization in any Case, converting any

Case to a case under chapter 7, dismissing any Case, withdrawal of the reference as to any Case or any Successor Case or providing for abstention from handling or retaining of jurisdiction of any Case in this Court, or terminating the joint administration of these Cases or by any other act or omission. The terms and provisions of this Final Order, including all of the DIP Protections, Adequate Protection and all other rights, remedies, liens, priorities, privileges, protections and benefits granted to any or all of the DIP Lenders, the Pre-Petition Lenders, BofA and CLD, shall continue in full force and effect notwithstanding the entry of any such order, and such DIP Protections and Adequate Protection shall continue in these proceedings and in any Successor Case, and shall maintain their respective priorities as provided by this Final Order.

24. **Other Rights and Obligations**.

(a) Expenses. As provided in the DIP Loan Documents, the Debtors will pay all reasonable expenses incurred by the DIP Agent and the DIP Lenders (including the reasonable fees and disbursements of all counsel for the DIP Agent and any internal or third-party appraisers, consultants, financial advisors and auditors advising the DIP Agent) in connection with the preparation, execution, delivery, administration and enforcement of the DIP Loan Documents, the Interim Order, this Final Order and any other agreements, instruments, pleadings or other documents prepared or reviewed in connection with any of the foregoing, without regard to the amounts set forth with respect thereto in the Approved Budget, whether or not any or all of the transactions contemplated hereby or by the DIP Loan Documents are consummated. Payment of such fees shall not be subject to allowance by this Court. Professionals for the DIP Agent, the DIP Lenders, the Pre-Petition Agent and the Pre-Petition Lenders (collectively, the "***Lender Professionals***") shall not be required to comply with the U.S. Trustee fee guidelines or submit invoices to the Court, U.S. Trustee, any Committee or any other

party-in-interest absent further court order. Copies of summary invoices submitted to the Debtors by such Lender Professionals shall be forwarded by the Debtors to the U.S. Trustee, counsel for any Committee, and such other parties as the Court may direct. The invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses (without limiting the right of the various professionals to redact privileged, confidential, or sensitive information). If the Debtors, U.S. Trustee or any Committee objects to the reasonableness of the fees and expenses of any Lender Professional and cannot resolve such objection within ten (10) days of receipt of such invoices, the objecting party shall file with the Court and serve on such Lender Professional an objection (the "*Fee Objection*") limited to the issue of reasonableness of such fees and expenses. The Debtors shall timely pay in accordance with the terms and conditions of this Final Order the undisputed fees, costs and expenses reflected on any invoice to which a Fee Objection has been timely filed.

(b) Binding Effect. Subject to paragraph 9 above, the provisions of this Final Order, including all findings herein, and the DIP Loan Documents shall be binding upon all parties in interest in these Cases, including the DIP Lenders, the Pre-Petition Lenders, BofA, CLD, any Committee and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, any examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary or responsible person appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), whether in any of the Cases, in any Successor Case, or upon dismissal of any such Case or Successor Case; provided, however, that the DIP Lenders and the Pre-Petition Lenders shall have no obligation to permit the use of Cash

Collateral or to extend any financing to any chapter 7 or chapter 11 trustee or other responsible person appointed for the estates of the Debtors in any Case or Successor Case.

(c)      <u>No Waiver</u>.  Neither the failure of the Pre-Petition Agent or the Pre-Petition Lenders to seek relief or otherwise exercise their rights and remedies under this Final Order, the Pre-Petition Credit Documents or otherwise (or any delay in seeking or exercising same), nor the failure of the DIP Agent or the DIP Lenders to seek relief or otherwise exercise their respective rights and remedies under this Final Order, the DIP Loan Documents or otherwise (or any delay in seeking or exercising same), shall constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise.  Except as expressly provided herein, nothing contained in this Final Order (including the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Pre-Petition Agent, any Pre-Petition Lender, the DIP Agent or any DIP Lender, including rights of a party to a swap agreement, securities contract, commodity contract, forward contract or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion).  Except as prohibited by this Final Order, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, the ability of the Pre-Petition Agent, the Pre-Petition Lenders, the DIP Agent or the DIP Lenders under the Bankruptcy Code or under non-bankruptcy law to (i) request conversion of the Cases to cases under Chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any chapter 11 plan or plans with respect to any of the Debtors, or (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Lenders, respectively.  Except

to the extent otherwise expressly provided in this Final Order, neither the commencement of the Cases nor the entry of this Final Order shall limit or otherwise modify the rights and remedies of the Pre-Petition Agent or the Pre-Petition Lenders with respect to non-Debtor entities or their respective assets, whether such rights and remedies arise under the Pre-Petition Credit Documents, applicable law, or equity.

(d)    No Third Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.  In determining to make any loan (whether under the DIP Credit Agreement or otherwise) or to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Loan Documents, the DIP Agent, the DIP Lenders, the Pre-Petition Agent and the Pre-Petition Lenders shall not (i) be deemed to be in control of the operations of the Debtors, or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates.

(e)    No Marshaling.  Except as provided in this Final Order or in the DIP Loan Documents, none of the DIP Agent, the DIP Lenders, the Pre-Petition Agent, the  Pre-Petition Lenders, BofA  or CLD shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral, as applicable, provided, that as set forth in paragraph 2(i) of this Final Order, Avoidance Action Proceeds shall be the last DIP Collateral used to repay the DIP Obligations.

(f)    Amendments.   The Debtors are authorized and empowered, without further notice and hearing or approval of this Court, to amend, modify, supplement or waive any provision of the DIP Loan Documents in accordance with the provisions thereof, unless such amendment, modification, supplement or waiver (i) increases the interest rate (other than as a

result of the imposition of the default rate), (ii) increases the aggregate lending commitments of all of the DIP Lenders in respect of the DIP Facility, (iii) changes the Scheduled Commitment Termination Date, or (iv) adds or amends (in any respect unfavorable to the Debtors) any Event of Default. No waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by on behalf of all the Debtors and the DIP Agent (after having obtained the requisite approval required under the DIP Loan Documents) and, except as provided herein, approved by this Court.

(g)  _Inconsistency_.  In the event of any inconsistency between the terms and conditions of this Final Order and the terms and conditions of either the DIP Loan Documents or the Interim Order, the provisions of this Final Order shall govern and control.

(h)  _Enforceability_.  This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable _nunc pro tunc_ to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule or Local Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Final Order.

(i)  _Headings_.  Paragraph headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

25.  **Treatment of Avoidance Actions**.  The DIP Agent and DIP Lenders shall be granted a lien on Avoidance Action Proceeds as set forth in paragraph 2 of this Final Order,

provided, that the Debtors shall consult with the Committee and the DIP Agent prior to the commencement of any Avoidance Actions by the Debtors.

26. **Wind-Down Budget**. Upon the closing of a sale of all or substantially all of the Debtors' assets in accordance with the DIP Credit Agreement and this Final Order, the Debtors, in consultation with the Committee, shall deliver a proposed wind-down budget (the "***Wind-Down Budget***") to the DIP Agent and the DIP Lenders for purposes of the orderly wind-down of the Debtors' estates following the closing of such sale. The Wind-Down Budget shall be satisfactory to the DIP Agent and the DIP Lenders in all respects and neither the DIP Agent nor the DIP Lenders shall have any obligation to agree to a Wind-Down Budget delivered by the Debtors. The effectiveness of any agreed Wind-Down Budget shall be subject to the approval of this Court and such agreed Wind-Down Budget shall be submitted to this Court for approval via stipulation by and among the Debtors and the DIP Agent in conjunction with, or as soon as practicable following, the closing of a sale of all or substantially all of the Debtors' assets in accordance with the DIP Credit Agreement and this Final Order.

27. **Retention of Jurisdiction**. The Bankruptcy Court has and will retain jurisdiction to enforce this Final Order according to its terms.

New York, New York                    */s/ Shelley C. Chapman*
Date: August 3, 2011                    THE HONORABLE SHELLEY C. CHAPMAN
                                                    UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A

## Initial Approved Budget

# DIP Budget

| | Pre Petition | Post Petition | | | | | | | | Post Petition | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Period ending: | 0 7/8/11 | 1 7/10/11 | 2 7/17/11 | 3 7/24/11 | 4 7/31/11 | 5 8/7/11 | 6 8/14/11 | 7 8/21/11 | 8 8/28/11 | 5 Week Total | 8 Week Total |
| Sale of eligible inventory | $ - | $ - | $ 3,828,000 | $ 6,466,000 | $ 6,846,000 | $ 10,301,000 | $ 5,377,000 | $ 6,352,000 | $ 5,702,000 | $ 27,441,000 | $ 44,872,000 |
| Sale of ineligible Inventory | | | 1,000,000 | 850,000 | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 | 2,850,000 | 4,350,000 |
| **Total Sales** | | - | 4,828,000 | 7,316,000 | 7,346,000 | 10,801,000 | 5,877,000 | 6,852,000 | 6,202,000 | 30,291,000 | 49,222,000 |
| **Cash Receipts:** | | | | | | | | | | | |
| A/R Collections | | | 6,195,000 | 6,996,000 | 8,737,250 | 7,427,600 | 7,772,500 | 7,034,700 | 6,720,400 | 29,355,850 | 50,883,450 |
| Other Cash Inflows (debt, asset sales, etc.) | | | | | 250,000 | | | | | 250,000 | 250,000 |
| Total Cash Receipts | | - | 6,195,000 | 6,996,000 | 8,987,250 | 7,427,600 | 7,772,500 | 7,034,700 | 6,720,400 | 29,605,850 | 51,133,450 |
| **Cash Disbursements:** | | | | | | | | | | | |
| Payments to Vendors | | | 4,475,972 | 5,410,000 | 4,615,500 | 5,000,000 | 5,165,115 | 5,000,000 | 1,124,402 | 19,501,472 | 30,790,990 |
| Vendor Deposits | | | 1,175,000 | | | | | | | 1,175,000 | 1,175,000 |
| Utility Deposits | | | 48,500 | | | | | | | 48,500 | 48,500 |
| First Day Motions (including freight) | | | 1,700,000 | | | | | | | 1,700,000 | 1,700,000 |
| [1] Key Employee Incentive Plan | | | | | | | | | 900,000 | | 900,000 |
| Other | | | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 200,000 | 350,000 |
| Payroll, Taxes and Benefits | | - | 158,065 | 946,713 | - | 749,565 | - | 829,466 | - | 1,854,343 | 2,683,809 |
| Freight | | - | 168,980 | 256,060 | 257,110 | 378,035 | 205,695 | 239,820 | 217,070 | 1,060,185 | 1,722,770 |
| SG&A | | - | 630,033 | 15,512 | 1,233,853 | 15,512 | 15,512 | 15,512 | 871,938 | 1,894,910 | 2,797,873 |
| Total Operating Disbursements | | - | 8,406,550 | 6,678,286 | 6,156,463 | 6,193,112 | 5,436,322 | 6,134,799 | 3,163,410 | 27,434,411 | 42,168,942 |
| Capital Expenditures | | | - | - | - | - | - | - | - | - | - |
| DIP Fees | | | 600,000 | - | - | - | - | - | - | 600,000 | 600,000 |
| US Trustee Fees | | | | | | | | | | | |
| Restructuring Fees | | 129,600 | 94,100 | 89,600 | 89,600 | 2,321,500 | 94,600 | 86,600 | 2,438,019 | 2,724,400 | 5,343,619 |
| Principal and Interest (Excluding Revolver Principal) | | 53,588 | 53,799 | 57,810 | 58,286 | 56,054 | 59,063 | 56,545 | 55,672 | 279,537 | 450,817 |
| Total Non-operating Disbursements | | 183,188 | 747,899 | 147,410 | 147,886 | 2,377,554 | 153,663 | 143,145 | 2,493,691 | 3,603,937 | 6,394,436 |
| Total Disbursements | | 183,188 | 9,154,449 | 6,825,695 | 6,304,349 | 8,570,667 | 5,589,986 | 6,277,944 | 5,657,101 | 31,038,348 | 48,563,378 |
| **Net Cash Flow** | $ - | $ (183,188) | $ (2,959,449) | $ 170,305 | $ 2,682,901 | $ (1,143,067) | $ 2,182,514 | $ 756,756 | $ 1,063,299 | $ (1,432,498) | $ 2,570,072 |
| DIP, Beginning | $ - | $ - | $ 183,188 | $ 9,337,637 | $ 16,163,332 | $ 22,467,681 | $ 41,188,221 | $ 39,005,706 | $ 38,248,950 | $ - | $ - |
| Plus: Disbursements | | 183,188 | 9,154,449 | 6,825,695 | 6,304,349 | 8,570,667 | 5,589,986 | 6,277,944 | 5,657,101 | 31,038,348 | 48,563,378 |
| Plus: Assumption of DIP Balance | | | | | | 10,149,873 | | | | | |
| Less: Cash Receipts when Revolver is paid down | | - | - | - | - | | (7,772,500) | (7,034,700) | (6,720,400) | | (21,527,600) |
| DIP, Ending | | - | 183,188 | 9,337,637 | 16,163,332 | 22,467,681 | 41,188,221 | 39,005,706 | 38,248,950 | 37,185,651 | 41,188,221 | 37,185,651 |
| Revolver, Beginning (Excludes L/Cs) | 39,755,723 | 39,755,723 | 39,755,723 | 33,560,723 | 26,564,723 | 17,577,473 | - | - | - | 39,755,723 | 39,755,723 |
| Less: Cash Receipts | | | (6,195,000) | (6,996,000) | (8,987,250) | (7,427,600) | - | - | - | (29,605,850) | (29,605,850) |
| Less: Paydown of Revolver transfer to DIP | | | | | | (10,149,873) | | | | | |
| Revolver, Ending (Excludes L/Cs) | 39,755,723 | 39,755,723 | 33,560,723 | 26,564,723 | 17,577,473 | - | - | - | - | - | - |
| **Total Borrowings** | $ 39,755,723 | $ 39,938,911 | $ 42,898,360 | $ 42,728,055 | $ 40,045,154 | $ 41,188,221 | $ 39,005,706 | $ 38,248,950 | $ 37,185,651 | $ 1,432,498 | $ (2,570,072) |

[1] The Key Employee Incentive Plan is subject to court and lender approval.

# DIP Budget

| | Pre Petition | Post Petition | | | | | | | | Post Petition | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 5 Week | 8 Week |
| **Period ending:** | 7/8/11 | 7/10/11 | 7/17/11 | 7/24/11 | 7/31/11 | 8/7/11 | 8/14/11 | 8/21/11 | 8/28/11 | Total | Total |

## Schedule 1

**Professional Fees Schedule**

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| HW | | 129,600 | 94,100 | 89,600 | 89,600 | 97,600 | 94,600 | 86,600 | 86,600 | 500,500 | 768,300 |
| AG | | 255,780 | 255,780 | 255,780 | 255,780 | 255,780 | 131,473 | 131,473 | 131,473 | 1,278,900 | 1,673,319 |
| GCG | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 50,000 | 80,000 |
| Mac | | - | - | 150,000 | - | - | - | 150,000 | - | 150,000 | 300,000 |
| FTI | | 39,500 | 39,500 | 39,500 | 39,500 | 39,500 | 39,500 | 39,500 | 39,500 | 197,500 | 316,000 |
| Latham | | 39,500 | 39,500 | 39,500 | 39,500 | 39,500 | 39,500 | 39,500 | 39,500 | 197,500 | 316,000 |
| UCC Professionals | | 75,000 | 75,000 | 75,000 | 75,000 | 50,000 | 50,000 | 50,000 | 50,000 | 350,000 | 500,000 |
| Completion Fee 1 | | - | - | - | - | - | - | - | 1,250,000 | - | 1,250,000 |
| Completion Fee 2 | | - | - | - | - | - | - | - | 400,000 | - | 400,000 |
| Less Retainers | | - | - | - | - | - | - | - | (260,000) | - | (260,000) |
| | | 549,380 | 513,880 | 659,380 | 509,380 | 492,380 | 365,073 | 507,073 | 1,747,073 | 2,724,400 | 5,343,619 |
| **Timing:** | | | | | | | | | | | |
| HW | | 129,600 | 94,100 | 89,600 | 89,600 | 97,600 | 94,600 | 86,600 | 486,600 | 500,500 | 1,168,300 |
| Other | | - | - | - | - | 2,223,900 | - | - | 2,211,419 | 2,223,900 | 4,435,319 |
| Less Retainers | | - | - | - | - | - | - | - | (260,000) | - | (260,000) |
| Cash Flow Timing | | 129,600 | 94,100 | 89,600 | 89,600 | 2,321,500 | 94,600 | 86,600 | 2,438,019 | 2,724,400 | 5,343,619 |
| | | | | | | | | | | | |
| *Paid* | | *129,600* | *94,100* | *89,600* | *89,600* | *2,321,500* | *94,600* | *86,600* | *2,438,019* | *2,724,400* | *5,343,619* |
| *Paid Cumulative* | | *129,600* | *223,700* | *313,300* | *402,900* | *2,724,400* | *2,819,000* | *2,905,600* | *5,343,619* | | |
| | | | | | | | | | | | |
| *Incurred* | | *549,380* | *513,880* | *659,380* | *509,380* | *492,380* | *365,073* | *507,073* | *1,747,073* | *2,724,400* | *5,343,619* |
| *Incurred Cumulative* | | *549,380* | *1,063,260* | *1,722,640* | *2,232,020* | *2,724,400* | *3,089,473* | *3,596,546* | *5,343,619* | | |
| | | | | | | | | | | | |
| *Incurred Not Paid* | | *419,780* | *419,780* | *569,780* | *419,780* | *(1,829,120)* | *270,473* | *420,473* | *(690,946)* | | |
| *Incurred Not Paid Cumulative* | | *419,780* | *839,560* | *1,409,340* | *1,829,120* | *-* | *270,473* | *690,946* | *-* | | |

# EXHIBIT B

## Sale Milestones

# Sale Milestones

1) On the Petition Date, the Debtors shall file and properly serve a motion, in form and substance satisfactory to the DIP Agent, the Requisite Lenders and the Pre-Petition Agent (the "***Bidding Procedures Motion***") seeking Bankruptcy Court approval of bidding procedures acceptable to the DIP Agent in its sole discretion for the sale of all or substantially all of the Debtors' assets pursuant to one or more sales, whether such sale is a going concern sale of the Debtors' business, a piecemeal sale of the Debtors' assets or a liquidation, in each case pursuant to section 363 and section 365 of the Bankruptcy Code. The terms of such sale or liquidation shall be acceptable to the DIP Agent, the Requisite Lenders and the Pre-Petition Agent in their sole discretion.

2) Within fifteen (15) days after the Petition Date, the Bankruptcy Court shall have entered a sales procedures order (the "***Bidding Procedures Order***") approving the bidding procedures contained in the Bidding Procedures Motion, which Bidding Procedures Order shall be acceptable to the DIP Agent, the Requisite Lenders and the Pre-Petition Agent in their sole discretion.

3) Within thirty-five (35) days after the Petition Date, unless the DIP Agent, the Requisite Lenders and the Pre-Petition Agent agree otherwise, the Debtors shall hold and complete an auction in accordance with the provisions of the Bidding Procedures Order and shall have selected for approval by the Bankruptcy Court at a sale hearing to be held in accordance with the Bidding Procedures Order, the highest and otherwise best bid(s) for the Debtors' assets made by any bidder at the auction, whether such bid(s) be for the purchase of the Debtors' business as a going concern, the liquidation of the Debtors' assets or the piecemeal sale of the Debtors assets (any such highest and otherwise best bid(s), a "***Winning Bid***"). The Winning Bid shall be acceptable to the DIP Agent, the Requisite Lenders and the Pre-Petition Agent in their sole discretion.

4) Within forty (40) days after the Petition Date, unless the DIP Agent, the Requisite Lenders and the Pre-Petition Agent agree otherwise, the Bankruptcy Court shall have entered one or more orders (the "***Sale Approval Order***") approving each Winning Bid, the transaction or transactions (each, an "***Approved Transaction***") and the terms and conditions of the Approved Transaction, which Sale Approval Order and Approved Transaction shall be in form and substance acceptable to the DIP Agent, the Requisite Lenders and the Pre-Petition Agent in their sole discretion.

5) On or before the date that is forty-five (45) days after the Petition Date, in the event the Approved Transaction is (i) a liquidation, the Debtors shall have executed all of the agency and other documents necessary to effectuate such a liquidation, and the liquidation shall have commenced or (ii) a sale, the Debtors shall have executed all purchase agreements and all other relevant documents in connection with the sale and the sale shall have been consummated. The documents required to be executed in each of the foregoing clauses (i) and (ii) shall be in form and substance acceptable to the DIP Agent, the Requisite Lenders and the Pre-Petition Agent in their sole discretion.